11

1  FEAR WADDELL, P.C.
   Peter L. Fear, No. 207238
2  pfear@fearlaw.com
   Gabriel J. Waddell, No. 256289
3  gwaddell@fearlaw.com
   Peter A. Sauer, No. 255957
4  psauer@fearlaw.com
   7650 North Palm Avenue, Suite 101
5  Fresno, California 93711
   (559) 436-6575
6  (559) 436-6580 (fax)

7

Proposed Counsel for CAPITAL FARMS, INC.
8    Debtor in Possession

9              UNITED STATES BANKRUPTCY COURT

      EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION
10

| 11 | In re: | Case No. 25-10074-A-12 |
|---|---|---|
| 12 | | Chapter 12 |
| 13 | CAPITAL FARMS, INC., | D.C. No. FW-2 |
| 14 | | **Preliminary Hearing**<br>Date:   January 16, 2025 |
| 15 | | Time:   9:30 a.m. |
| 16 | Debtor and Debtor-in-Possession. | Place:  Dept. A, Courtroom 11, 5th Floor<br>        United States Courthouse<br>        2500 Tulare St., Fresno, California |
| 17 | | Judge: Hon. Jennifer E. Niemann |
| 18 | | **Final Hearing**<br>Date:   January 29, 2025 |
| 19 | | Time:   9:30 a.m. |
| 20 | | Place:  Dept. A, Courtroom 11, 5th Floor<br>        United States Courthouse<br>        2500 Tulare St., Fresno, California |
| 21 | | Judge: Hon. Jennifer E. Niemann |

22

23          **DECLARATION OF SHAWN GILL IN SUPPORT OF**
       **MOTION FOR AUTHORITY TO USE CASH COLLATERAL**
24

I, SHAWN GILL, declare as follows:

1.      I am the president of Capital Farms, Inc., Debtor and Debtor-in-Possession in the above-captioned bankruptcy matter. My full name is Sukhwant Singh Gill, but I usually go by Shawn Gill.

2.      I make this Declaration in support of the Motion for Authority to Use Cash Collateral. Unless otherwise indicated, all statements in this Declaration are based on my personal knowledge, my review of relevant personal documents, or my opinion.

3.      I am the authorized appointee of the Debtor, as president, with authority to make, execute, and file the petition for reorganization, including all schedules and other documents (including this Declaration) necessary to carry out the bankruptcy reorganization of the Debtor

4.      Debtor is a corporation with significant assets located in Fresno County, Madera County, Sutter County, Placer County, Glenn County, and Colusa County, California, all of which are in the Eastern District of California. Currently, Debtor is using 15555 S. Brawley Ave., Caruthers, CA  93609 as Debtor's address, and 5550 W Spruce Ave., Ste. 107, Fresno, CA 93722 as Debtor's mailing address. The primary reason for the filing of this case was a lawsuit filed against Debtor by Rabo Agrifinance, LLC, bearing Case No. 24CECG05217 (the "Rabo Lawsuit"), in Fresno County Superior Court. For all of these reasons, Debtor filed this case in the Fresno Division of this Court.

5.      Debtor is an almond farmer and almost all of Debtor's income is from almond farming. Debtor also provides harvesting services for other farms and earns a relatively small percentage of its income from those services.

6.      In the 1980s, in California's agricultural heartland and specifically the almond growing regions, Gurmej Gill, Debtor's founder, spent countless hours as a laborer crafting and

Declaration in Support of Motion for Authority to Use Cash Collateral (etc.) - 2

honing skills in cultivating and growing many different crops including row crops, fruits and nuts. He then applied these skills and practices to the cultivation of almonds. Gurmej and the Gill family's knowledge, expertise and almond farming practices developed over decades then helped them become owners of quality almond orchards.

7.      As Gurmej's reputation and respect grew in the industry, so did the size and scope of the almond growing operation. The Gill family graduated from day laborers to owning and leasing with purchase option their own almond orchards. In 2012, with his decades of farming knowledge, Gurmej Gill set out to not only create a company in Capital Farms that reflected the family's breadth of experience growing almonds but also one that valued sustainability and production of quality almonds.

8.      Capital Farms value as quality almond growers and its standing in the industry was further enhanced in 2016 with the opportunity to lease with options to purchase land in Placer County with the acquisition of the Brewer Road property. By utilizing the skills gained over decades of farming, The Gills' turned this traditional rice growing soil into one that supported strong and fruitful almond trees. The breadth of work done to produce and sustain quality almond orchards in Placer County has further cemented the respect earned by Capital Farms as qualified leaders amongst almond farmers across the region.

9.      I have reviewed the results of research conducted on the website for the California Secretary of State which reflects the following filings of record affecting cash collateral.

a.   Multiple filings by Rabobank N.A. and Rabo AgriFinance, LLC, including those listed below. Debtor believes the total amount Debtor owes to Rabobank affiliated entities to be approximately $5,188,974. The Rabo entities are represented in the Rabo Lawsuit by Dirk B. Paloutzian of Baker

Manock & Jensen, P.C., whose e-mail address listed on court filings is dpaloutzian@bakermanock.com.

    i. Rabobank N.A. UCC filing with the California Secretary of State as Document No. 16-7534054318 on or about July 1, 2016, as assigned by document no. 1977503278 on or about December 4, 2019, to Rabo AgriFinance, LLC, as continued by the same on or about January 5, 2021.

    ii. Rabobank N.A. UCC filing with the California Secretary of State as UCC No. 187635190727 on or about February 27, 2018 (Document No. 68191640002), continued on or about December 15, 2022, as UCC No. U220251732824 in the name of "Rabo Agrifinance." Upon information and belief this refers to Rabo Agrifinance, LLC.

    iii. Rabobank N.A. UCC filing with the California Secretary of State as UCC No. 187635492893 on or about February 28, 2018, continued on or about December 15, 2022, as UCC No. USS0251733119.

    iv. Rabo Agrifinance, LLC UCC filing with the California Secretary of State as UCC No. U210089634939 filed on or about September 30, 2021.

    v. Rabo Agrifinance, LLC, UCC filing with the California Secretary of State as UCC No. U230038330326 filed on or about May 31, 2023.

  b. Wilbur-Ellis Company, LLC UCC filing with the California Secretary of State as UCC No. U230050643519 on or about July 18, 2023. Debtor's records show a balance owing to this creditor in the amount of approximately

1  $375,000.00. Wilber Ellis has filed a lawsuit against Debtor in Sutter County

2  Superior Court, bearing Case No. CVCS24-0002586. The attorney for

3  Wilber-Ellis in that case is Gabriel P. Herrera, whose e-mail address listed on

4  court filings is gherrera@kmtg.com.

5      c.  Tech Ag Financial Group, UCC filing with the California Secretary of State

6  as UCC no. U240014894636 on or about February 9, 2024. Debtor's records

7  show a balance owing to this creditor in the amount of approximately

8  $420,000.00. Tech Ag filed a lawsuit against Debtor in Sutter County

9  Superior Court, bearing Case No. CVCS24-0002314. The attorney for Tech

10  Ag in that case is Michael J. Gomez, whose e-mail address listed on court

11  filings is mgomez@frandzel.com.

12      10.   Below is a list of the four processors who are processing Debtor's 2024 crop,

13  along with the approximate number of pounds of almonds at each processor.

14      a.  Bapu Almond Company, Inc. 18,797 pounds.

15      b.  Campos Brothers Farms. 444,199 pounds.

16      c.  T.M. Duche Co., Inc. 744,877 pounds.

17      d.  Vann Family Orchards. 154,668 pounds.

18      11.   Regarding Debtor's income projections, payments are made by crop processors

19  once the almonds are delivered to them. Below is a summary of how each of Debtor's processors

20  pays:

21      a.  Campos Brothers, Duche Nut, and Bapu Farm all use a call pool. This means

22  we call these processors to sell them almonds and once an agreement is

23

24

Declaration in Support of Motion for Authority to Use Cash Collateral (etc.) - 5

reached at a certain price, the processor typically pays out the sales proceeds in about 30-60 days.

    b. Vann Family Orchards uses a seasonal pool with five (5) payments. The first payment is usually made on or around December 15th, and is usually around $1 per pound, depending on market price. The remaining four (4) payments happen quarterly in January, April, July, and October.

12. All of Debtor's farming operations are conducted on leased properties, several of which are long-term leases. Debtor has spent a substantial amount developing portions of these properties, which are just now coming into full production. The remaining value of the 2024 crop is estimated to be approximately $2.5 million (after approximately $300,000 in advances for harvest). But the total value of the 2025 crop is estimated to be approximately $5.8 million. Consequently, to adequately protect Debtor's creditors, it is essential that Debtor use the proceeds of the 2024 almond crop to pay the expenses needed to grow the 2025 crop. Almost all of the cash collateral of Debtor is the 2024 almond crop. If Debtor is unable to use these proceeds, Debtor would be unable to pay the lease payments and farm expenses necessary to grow the 2025 almond crop and Debtor's creditors would be substantially harmed.

13. Included herewith as Exhibit B is a chart showing projections for Debtor's 2025 and 2026 crops. Following are some explanatory notes regarding those projections:

    a. Baseline Road: First leaf for this 157 acre ranch was in 2021, which means that this year will be the 5th leaf. Almond orchards generally reach full production in the 7th leaf. Consequently, this ranch will have a substantially higher yield this year than last year and it will continue to grow over the next two years.

b.  Sankey Ranch: These 238 acres are also 5th leaf, and consequently, production will be increasing substantially this year and then again next year.

c.  Natomas Road: This 160 acre ranch is entering 4th leaf, so it will also be substantially increasing in production this year, and over the next several years.

14.  Since Debtor's continued operation and production is necessary to maintain the value of the 2025 (and future) crop (in which secured creditors will continue to maintain a security interest), Debtor should be able to use the cash collateral without harming the interests of its creditors. Debtor proposes that any current lien on Debtor's cash collateral remain in place. I believe this motion and the resulting use of cash collateral, if granted, is in the best interests of the creditors of this bankruptcy estate.

15.  Included herewith as Exhibit A is a projected 2025 budget. The January column shows only cash collateral I believe is necessary to be used on an emergency basis until a final hearing can be had on the issue of Debtor's use of cash collateral. It is crucial that these expenses be paid to preserve the value of the 2025 crop, as described in more detail below.

16.  Because I anticipate that the final hearing will be at the end of January, I placed any non-emergency expenses into the columns for months following January. For these subsequent months, I am requesting to use cash collateral on a final basis each month through the presumed confirmation of a Plan of Reorganization in this case.

17.  Following are some specific notes regarding the budget:

a.  Income: Debtor anticipates that approximately $637,318 is owed to Debtor from Campos Brothers and is payable immediately, and approximately $63,262.50 is immediately payable to Debtor from Vann Family Orchards.

Debtor plans to use these funds to pay the urgently needed cultivation expenses listed for January and February. Debtor also anticipates receiving crop insurance payments in February for the 2024 crop. For the remainder of the 2024 crop, Debtor plans to sell in the call pool as necessary to pay monthly expenses and to use the remainder of the quarterly payments from Vann Family Orchards for the same purpose. Debtor anticipates needing an advance on its 2025 crop starting in approximately July. By that time, the crop size and value should be sufficiently well established that Debtor should be able to obtain a crop advance, as is usual and customary for expenses close to harvest. Because the 2025 crop is anticipated to be significantly larger than the 2024 crop, the income from the 2025 crop will allow Debtor to farm and to pay a substantial amount down on its debt. As will be shown in future budge projections, a substantial amount of Debtor's orchards will be coming into full production over the next few years, so Debtor's income will be substantially increasing. This budget shows the remainder of the 2025 income in December 2025, but as a practical matter, Debtor anticipates that that income will be spread through 2026 similar to the 2024 crop proceeds.

b.  Payroll: Debtor has four non-insider employees that make approximately $4,000 per month each. In addition, the following insiders of Debtor are employed by Debtor: Gurmej S. Gill ($7,000 per month); myself (Shawn Gill) ($7,000 per month); Gurpreet Gill ($5,000 per month) and Harsaajan and Hasjreen Gill ($500 per month each). Each of these insider employees perform essential functions for the Debtor. Gurmej Gill manages day to day

operation, such as fertilizer and chemical decisions and provides tasks to employees. Sukhwant ("Shawn") Gill (myself) currently serves as president of the Debtor and I manage all aspects of the Debtor's operation. Gurpreet Gill manages financing and payroll, bookkeeping, administration and clerical work. Jashreen Gill ensures health and safety standards for employees, finds parts and supplies and delivers for farm operations (since we are spread across the central valley, north and south). Harsaajan Gill communicates with suppliers, finds parts and supplies for equipment and farm operations across the central valley. We have over 30 years of experience, and are known in the community to operate smoothly and efficiently and most cost effectively. Finding labor to do deliveries up and down the valley is more costly due to the rules and regulations put in place in the past few years by California. Since it is a family operation, we have to pay out of our own pockets so we are cautious about spending money.

c.   Contractors (labor). To handle any labor needs over that which can be handled by Debtor's regular employees, Debtor will employ labor contractors to provide the additional labor.

d.   Lease / Loan payments: Debtor is providing for lease payments to be made on Debtor's various leased properties. It is crucial that these lease payments be made because the lease of these properties is essential for Debtor's continued operation. For the leases with Sutter Land, LLC, the lease payments are essentially paying a sufficient amount to pay the mortgages on the real property, many of which mortgages are also loans made by one of the Rabo-

1    affiliated entities.

2    e.   Expenses by ranch: To the extent it is possible to do so, Debtor has broken

3         out its expenses by ranch so that the profitability of each ranch can be

4         determined.

5    18.   The expenses shown on the budget include the following cultural practices over

6    the next few months, which are essential to achieve a good 2025 crop:

7    a.   Mummy Shake/Sanitation - This process is required for the almonds left over

8         from the previous harvest season. It is important to shake them down, and

9         crush them in order to minimize the worm damage for the next year's crop.

10        This step takes about two (2) weeks.

11   b.   Pre-Emergent Spray - This step is a berm spray to prevent grass and weeds

12        growing. This step takes about three (3) to four (4) days and is started

13        approximately one (1) to two (2) weeks after the mummy shake/sanitation is

14        completed, depending on the weather.

15   c.   Bees - this is the most important step to pollinate the future crop. Bees are

16        brought into the field during the first week of February, and they are kept in

17        the field until the leaves come on, which happens after the bloom. This usually

18        ends up being during the month of February and March.

19   d.   Foliar Spray - This step is a spray to provide nutrients to the almonds and for

20        the budding almonds to retain the maximum crop from the blooms. This spray

21        is done in February while the almonds are blooming. This step takes about

22        three (3) to four (4) days. There are two (2) to three (3) different sprays

23

24

Declaration in Support of Motion for Authority to Use Cash Collateral (etc.) - 10

1    included in the foliar spray that need to be applied at different times during

2    the bloom.

3        e.   Fertilizer - This step is similar in process to that used for the foliar spray:

4           nutrients are provided through the ground and water. This step starts as soon

5           as the first leaves come after the bloom. This step goes on until April because

6           there are different fertilizers that the almonds require to maintain the nutrients

7           and maximize the crop.

8        f.   Removal of Dead Trees - Remove and replace the damaged trees with new

9           ones. Depending on the amount of fallen trees, this step can take a couple

10          days.

11      19.     On behalf of the Debtor, I seek authority to permit the Debtor to use the cash

12 collateral to provide funding needed to operate and maintain the business and pay critical

13 expenses during the pendency of this case. In order to maintain and preserve the going concern

14 value of the business, it is critical that there be no further disruption in operations.

15      20.     Debtor has been unable to obtain financing with unsecured credit pursuant to

16 Bankruptcy Code Section 364(a) or (b) allowed as an administrative expense under Bankruptcy

17 Code Sections 503(b)(1), or secured credit pursuant to Bankruptcy Code Section 364(c), or on

18 more favorable terms from any other sources.

19      I declare under penalty of perjury that the foregoing statements are true and correct and

20 that if called as a witness herein I could and would competently testify thereto, and that this

21 declaration was executed on *1-12-25*, at *Sacramento* California.

22

23                          SHAWN GILL

24

Declaration in Support of Motion for Authority to Use Cash Collateral (etc.) - 11