1   DIRK B. PALOUTZIAN     #173676
    dpaloutzian@bakermanock.com
2   NATALYA M. FERDINANDI     #337122
    nferdinandi@bakermanock.com
3   FERNANDO A. ALMARAZ     #355059
    falmaraz@bakermanock.com
4   Baker Manock & Jensen, PC
    5260 North Palm Avenue, Suite 201
5   Fresno, California 93704
    Telephone: 559.432.5400
6   Facsimile: 559.432.5620

7   Attorneys for RABO AGRIFINANCE LLC

8               UNITED STATES BANKRUPTCY COURT

9       EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

10

11  In re                                    Case No. 25-10074-A-12

12                                           Chapter 12
    CAPITAL FARMS, INC.,
13                                           Adv No. D.C. No. BMJ-1

14          Debtor and Debtor-in-Possession.   **RABO AGRIFINANCE LLC'S
                                               OPPOSITION TO DEBTOR'S MOTION
15                                             FOR AUTHORITY TO USE CASH
                                               COLLATERAL**
16

17                                           **Preliminary Hearing**
                                             Judge:   Hon. Jennifer E. Niemann
18                                           Date:    January 22, 2025
                                             Time:    9:30 a.m.
19                                           Dept.:   Dept. A, Courtroom 11, 5th Floor
                                                      United States Courthouse 2500
20                                                    Tulare St., Fresno, California

21

22

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

3643239v2 / 22061.0195

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................1

II. REQUEST FOR JUDICIAL NOTICE.............................................................................2

III. PROCEDURAL AND FACTUAL BACKGROUND ...................................................3

IV. SACKETT'S SCOPE OF AUTHORITY ....................................................................5

V. POINTS & AUTHORITIES ........................................................................................6

    A.    Rabo has Standing to Contest Debtor's Motion for Authority to Use Cash Collateral. ........................................................................................................6

    B.    The Assets Claimed by Debtor Are Not Property of the Bankruptcy Estate. ...........6

        1.    *The proceeds of the 2024 Almond Crop are not part of the Bankruptcy estate because just 3% of the crop is held on the account of Debtor.* ...........................................................................................7

        2.    *The 2024 Almond Crop is not part of the Bankruptcy estate because it has been absolutely assigned to Rabo which precludes Debor's use of the asset as "cash collateral."* ...........................................7

        3.    *Assets in the possession and control of the Court-Appointed Receiver are not part of the Bankruptcy Estate.* ......................................10

        4.    *Alternatively, Debtor's Request to Use Cash Collateral Should be Denied Because Rabo's Interests Are Not Adequately Protected.* ..............11

    C.    The Court Should Expand Receiver's Receivership Authority to Serve as Receiver. ...................................................................................................14

    D.    In the Alternative, the Court Should Order the Chapter 12 Bankruptcy Trustee to Hire Scott Sackett. .........................................................................16

    E.    In the Alternative, the 2024 Almond Crop Proceeds Should be Used to Preserve and Protect the assets of the Two Ranches Subject Rabo's Deeds of Trust (Brawley and Brewer.) ...............................................................17

    F.    Reservation of Rights. ...........................................................................17

VI. CONCLUSION .......................................................................................................17

VII. REQUESTED RELIEF ..........................................................................................17

# **TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

Annis v. First State Bank of Joplin, 96 B.R. 917 (W.D.Mo.1987). ................................... 3

Butner v. United States, 440 U.S. 48, 54-55 (1979) ...................................................... 7

Darby v. Zimmerman (In re Popp), 323 B.R. 260 (B.A.[. 9th Circ. 2005) ...................................... 10

In re AMR Corp., 490 B.R. 470, 477 (S.D.N.Y. 2013) ................................................... 12

In re Calder, 907 F.2d 953, 955 n. 2 (10th Cir.1990); .................................................... 3

In re Diaconx Corp., 69 B.R. 333, 338 (Bankr. E.D. Pa. 1987) ............................................ 12, 15

In re Feather River Orchards, 56 B.R. 972, 974 (Bankr. E.D. Cal. 1986) ..................................... 14

In re Negus-Sons, Inc., 428 B.R. 511, 515 (Bankr. D. Neb. 2009) ........................................ 13

In re Parmely, 2024 WL 4500850, at 3 (Bankr. N.D. Iowa, Oct. 15, 2024, No. BR 23-00362) ......................... 12

In re Turtle Creek, LTD., 194 B.R. 267, 278 (Bankr. N.D. Ala. 1996) ........................................... 8

In re Walters, 188 B.R. 582, 583 n. 1 (Bankr. E.D. Ark. 1995) ........................................... 3

McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit), 217 F.3d 1072, 1078 (9th Cir.2000) .......................... 7

**FEDERAL STATUTES**

11 U.S.C. § 1205(b)(1)–(4) ................................................................ 11

11 U.S.C. § 323(a) ........................................................................... 15

11 U.S.C. § 363(e) ........................................................................... 11

11 U.S.C. § 363. ............................................................................. 6

11 U.S.C. § 541 ............................................................................. 6

11 U.S.C. §§ 361 and 363(e) ................................................................. 6

Federal Rule of Bankruptcy Procedure 9017 ................................................... 2

Federal Rule of Evidence 201(b) ............................................................ 2, 3

Federal Rules of Evidence and Fed. R. Civ. P. 43, 44, and 44 .......................................... 2

Federal Rules of Evidence, Rule 201(b) ................................................ 3

**<u>TREATISES</u>**

16 <u>Collier on Bankruptcy</u>, ¶ 363.06[1] ................................................ 9

<u>Collier on Bankruptcy</u> ¶541.03 (16th ed. 2013). ............................................ 6

Rabo AgriFinance LLC ("Rabo" or "Secured Lender") respectfully submits this Opposition to Capital Farms, Inc.'s ("Debtor") Motion for Authority to Use Cash Collateral (the "Debtor's Motion") and supporting Declaration of Shawn Gill and attached Exhibits. In support of this Opposition, Rabo relies upon this Memorandum Points and Authorities and the Declaration of Dirk B Paloutzian and exhibits attached thereto, including selected records from Fresno County Superior Court Case No. 24CECG05217.

**I.**

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Debtor's Motion to Use Cash Collateral should be denied. Debtor fails to apprise this Court that, on December 20, 2024, the Hon. D. Tyler Tharpe, Fresno County Superior Court Judge, granted Rabo's motion to appoint a receiver and appointed Scott Sackett as receiver ("Receiver") of the assets owned by Debtor, along with three other receivership estates of related entities Sutter Land LLC, United Farm LLC and Sutter Enterprises, LLC.  Receiver, with his farm manager, personally met with Debtor's representatives as recently as Friday, January 10, 2025. Even though this was the same day Debtor filed its petition herein, Debtor's representatives did not disclose to Receiver of the intent to file a Chapter 12 petition, which is consistent with its secretive conduct that prompted Rabo to initiate Superior Court proceedings to protect its interests. In fact, Debtor admits "[t]he primary reason for the filing of [Chapter 12] was a lawsuit filed against Debtor by [Rabo]…in Fresno County Superior Court." (ECF 11, ¶ 4.) Receiver, not Debtor, has possession of and control over Debtor's assets, including, but not limited to, its crops and crop proceeds. Receiver is well-qualified and able to protect and preserve Debtor's assets.

Additionally, Debtor's Motion is premised on the erroneous assertion that the proceeds of the 2024 Almond Crop (Debtor calls it its "cash collateral") are an asset of Debtor's estate under Section 541 of the Bankruptcy Code and are merely Rabo's collateral. In reality, Debtor has no legal or equitable interest in the proceeds of the 2024 Almond Crop because Debtor assigned the proceeds of the sales of all its crops, including the 2024 Almond Crop, to Rabo a condition of the credit agreements that it entered into with Rabo. The 2024 Almond Crop proceeds are Rabo's and not Debtor's. Debtor's estate has no cash to spend on the budgeted items. It is a

misnomer to refer to the 2024 Almond Crop proceeds as "cash collateral."

Additionally, Debtor represents to this Court that *its* 2024 Almond Crop has been delivered to the following processors in the following amounts: Bapu Almond Company, Inc. 18,797 pounds; Campos Brothers Farms 444,199 pounds; T.M. Duche Co., Inc. 744,877 pounds; and Vann Family Orchards 154,660 pounds. (1,362,473 pounds total.) (ECF 9, ¶ 10.)  But, in December, counsel for Debtor (William L. Cowin, Esq.) provided Rabo's counsel with what Mr. Cowin described in an email as "[t]he summary delivery reports from the processors to which the Gill entities delivered their 2024 crops…." (Declaration of Dirk B Paloutzian In Support of Opposition to Debtor's Motion for Authority to Use Cash Collateral ("Paloutzian Dec."), ¶ 14 and Ex. 10.)  The reports indicate that a net total of just 41,987 pounds was delivered *on the account of Debtor*. The remaining 2024 Almond Crop, i.e., the vast majority of it, was delivered on the account of entities *other than Debtor*: specifically H&J Management Services and United Farm LLC. Assuming the delivery reports provided by Debtor's counsel (Mr. Cowin) are accurate, just 3% of the 2024 Almond Crop that Debtor represents to this Court are its is actually held on Debtor's account. Based upon the foregoing, and as explained in further detail below, Debtor's Motion should be denied.

**II.**

**<u>REQUEST FOR JUDICIAL NOTICE</u>**

Rabo respectfully requests that the Court take judicial notice of selected pleadings from Fresno County Superior Court Case No. 24CECG05217 that are attached as exhibits to the concurrently filed Declaration of Dirk B. Paloutzian, pursuant to Federal Rule of Bankruptcy Procedure 9017 and Federal Rule of Evidence 201(b). Pursuant to the Federal Rules of Bankruptcy Procedure, Rule 9017, "the Federal Rules of Evidence and Fed. R. Civ. P. 43, 44, and 44.1 apply in a bankruptcy case. Bankruptcy courts can take notice of pleadings of record and of facts that are not subject to reasonable dispute in that they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. See <u>In re Walters</u>, 188 B.R. 582, 583 n. 1 (Bankr. E.D. Ark. 1995) citing, <u>In re Calder</u>, 907 F.2d 953, 955 n. 2 (10th Cir.1990); <u>Annis v. First State Bank of Joplin</u>, 96 B.R. 917 (W.D.Mo.1987). Pursuant to

Federal Rules of Evidence, Rule 201(b) "the court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

In this case, the documents and pleadings in Fresno County Superior Court Case No. 24CECG05217 are relevant and necessary for the Court's consideration. Under Federal Rule of Evidence 201(b), the Court may judicially notice a fact if it is not subject to reasonable dispute, either because the fact is generally known within the court's territorial jurisdiction or because it can be easily verified from reliable sources. The court records from the Fresno County Superior Court, including pleadings and filings, are public records and meet these criteria, as their authenticity and accuracy are not in dispute.

**III.**

**PROCEDURAL AND FACTUAL BACKGROUND**

On November 25, 2024, Rabo filed a verified Complaint for Judicial Foreclosure, Damages, and Other Relief, Including Appointment of Receiver in Fresno County Superior Court (Case No. 24CECG05217) against Sutter Land LLC, United Farm LLC, Sutter Enterprises, LLC, Debtor herein Capital Farms, Inc., and individual guarantors Baljit Singh Gill, Sukhwant ("Shawn") Singh Gill, and Gurmej Singh Gill (collectively referred to herein as "Borrower Defendants"). (Paloutzian Dec., Ex. 9.) On December 11, 2024, Rabo filed an *Ex Parte* Application for an Order to Show Cause, followed by a Proposed Order to appoint a receiver, which was granted after an *ex parte* hearing on December 12, 2024. On December 16, 2024, additional declarations and Rabo's Nomination of Scott Sackett for Receiver were filed, and a Proposed Order Granting Motion and Appointing Receiver was received. On December 19, 2024**,** an Opposition to Request for Receiver was filed on behalf of Borrower Defendants. On December 20, 2024**,** Hon. D. Tyler Tharpe appointed Scott Sackett as receiver. (Paloutzian Dec., Ex. 3.)

Among other things, the Order Appointing Scott Sackett as Receiver states, "[t]hat the Receiver shall take possession and control of the proceeds of the 2024 Almond Crop pursuant to the Crop Assignment, attached as Exhibit WW in the verified Complaint." (Paloutzian Dec., Ex.

3, 3:10-11.).  On January 3, 2025, Rabo filed a First Amended Complaint in Case No. 24CECG05217 that added allegations regarding other assignments of crop proceeds by the Borrower Defendants in favor of Rabo (Paloutzian Dec., Ex. 1.), in addition to the crop assignment for processor T.M. Duche Nut Co. Those additional crop assignments include processors Vann Family Orchards, Campos Brothers Farms, Lions Raisins, and Allied Grape Growers. (Ibid.)

Borrower Defendants, including Debtor, are in default on numerous loans and guaranty obligations, as alleged in the verified First Amended Complaint. (See, generally, Paloutzian Dec., Ex. 1.) Borrower Defendants, including Debtor, assigned to Rabo all of Borrower Defendants' right, title and interest in and to the proceeds arising out of or generated from the sale or other disposition of Borrower Defendants' crops. (See Paloutzian Dec., Ex., 1, Exs. RR, SS, TT, ZZ, AAA, and BBB.)

Rabo resorted to litigation in late 2024 after the Borrower Defendants repeatedly failed to disclose to Rabo the location and size of the 2024 Almond Crop. (Paloutzian Dec., Ex. 2, ¶¶ 14-16.)  And, it was only after Rabo moved for an order to appoint a receiver that, on December 17, 2024, the Borrower Defendants, through their counsel, disclosed via the delivery reports that the 2024 Almond Crop had been delivered to four processors, rather than solely to T.M. Duche Nut, Co. (Paloutzian Dec., ¶ 14 and Ex. 10.) Moreover, the delivery reports revealed for the first time that Borrower Defendants had delivered a significant portion of the 2024 Almond Crop under the account of "H&J Management Services," which has no relationship with Rabo and had been unknown to Rabo until then. (Ibid.)  Borrowing Defendants also delivered 18,797 pounds to Bapu Almond Company, Inc., for which there is no acknowledgment of a crop assignment.  (ECF 6, ¶ 8.)  This has the potential effect of circumventing the assignments of crop proceeds.

In light of the foregoing, Rabo is confident that Scott Sackett, as compared to the Borrower Defendants, including Debtor, is the better choice to preserve and protect Debtor's assets and Rabo's collateral.

# IV.

## SACKETT'S SCOPE OF AUTHORITY

Scott Sackett was appointed by the Hon. D. Tyler Tharpe and granted broad authority to manage and oversee the Jointly Administered Receivership Estates. However, he does not have authority to farm all of Debtor's six real properties, rather he has control of two, (referred to as "Brewer" and "Brawley" in Debtor's proposed budget) for which Rabo holds deeds of trust. Despite this, Receiver retains significant authority to access, manage, control, and protect collateral that impacts the real property. The Court's granting of this authority to the Receiver is consistent in the 2021 RLOC Security Agreement, the Master Security Agreement, and the 2020 NRLOC Security Agreement[1] (the "Security Agreements".) The Receivership Estates Scott Sackett has management and control over include: the Sutter Land Receivership Estate; the United Farm Receivership Estate; the Sutter Enterprises Receivership Estate; and the Capital Farms Receivership Estate. *Only* Capital Farms, Inc. is before the court. Receiver will remain to be in control and management of the other three Receivership Estates.

Specifically, Receiver is authorized to collect, sell, manage, preserve, and maintain the estates assets. (See Paloutzian Dec., ¶7 and Ex. 3.) He is also empowered to perform *all necessary acts* to preserve, protect, manage, and control the property of the estates, including acting in the name of the Defendant Borrowers. (Id. at ¶4 and ¶8(b).) This authority extends to gaining access to all real property and personal property collateral related to the estates. (Id. at ¶4.) Receiver's authority reaches a wide range of personal property collateral pursuant to the Court's order and under the Security Agreements. The collateral includes, among other things, "all investment property," "all inventory," "all equipment," "all fixtures," "all farm products, including crops grown, growing or to be grown, all livestock born or unborn," and "supplies used or produced in Borrower Defendants' farming operation." (See Paloutzian Dec., Ex. 1, Ex. HH, Article 1, PP, Article 1; R, Section 1.) Additionally, the collateral includes all rights to payment,

---

[1] The 2020 NRLOC Security Agreement does not include Capital Farms, however the Master Security Agreement reaffirmed the terms and provisions of the prior agreements.(See Paloutzian Dec., Ex., 1., Ex. RR, Section 12.)

including those for crops or farm products, and any proceeds, products, rents, or profits derived from the collateral (Ibid.)

        The import of the foregoing is that Receiver has control over and has been granted the right to enter the other Defendant Borrowers' properties. Receiver has the right to right to control *all* of Defendant Borrower's personal property, including the equipment, the crop once its severed from the land of the other four ranches, and the proceeds from such crop. While presently Receiver cannot control the Debtor's other four real properties, Receiver has the ability to manage, control, and access all other assets necessary for the administration of the Receivership Estates.

## V.

## POINTS & AUTHORITIES

**A.**     **Rabo has Standing to Contest Debtor's Motion for Authority to Use Cash Collateral.**

        Rabo is a secured creditor with substantial collateral at risk. Debtor's Motion and this Opposition are contested matters pursuant to Bankruptcy Rule 9014 and this Opposition is filed pursuant to 11 U.S.C. §§ 361 and 363(e) and Bankruptcy Rule 4001 (a) to obtain adequate protection of Rabo's interests in certain property of Debtor and to preclude Debtor from using Rabo's cash collateral under 11 U.S.C. § 363.

**B.**     **The Assets Claimed by Debtor Are Not Property of the Bankruptcy Estate.**

        Under 11 U.S.C. § 541, the bankruptcy estate encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." However, courts have consistently held that while federal law determines whether an interest claimed by the debtor constitutes "property of the estate," bankruptcy courts must rely on state law to establish the nature and extent of the debtor's legal or equitable interests in the property at the time the case begins. McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit), 217 F.3d 1072, 1078 (9th Cir.2000); Butner v. United States, 440 U.S. 48, 54-55 (1979) [Holding courts look to state law to determine debtors' interests in property.] Furthermore, section 541 only provides a "framework for determining the scope of the debtor's estate and what property will be included in the estate, it does not provide any rules for determining whether the debtor has an interest in property in the first place." 5 Collier on Bankruptcy ¶541.03 (16th ed. 2013). The Debtor's

claimed asset, namely the proceeds of the 2024 Almond Crop, is not part of the bankruptcy estate for three reasons explained below.

1.     *The proceeds of the 2024 Almond Crop are not part of the Bankruptcy estate because just 3% of the crop is held on the account of Debtor.*

On October 25, 2024, Debtor, through its principal, Shawn Gill, assured Rabo that Borrowing Defendants' projected 2024 Almond Crop would range from approximately 1,400,000 to 1,500,000 pounds. (Paloutzian Dec., Ex. 2, ¶ 13.) On October 28, 2024, processor, T.M. Duche Nut Co. informed Rabo that for the 2024 crop year, approximately 22,000 pounds had been delivered to T.M. Duche Nut Co. on Debtor's grower account and approximately 20,000 pounds had been delivered to T.M. Duche Nut Co. on United Farms' grower account. (Id. at ¶ 15.) Despite the Borrowing Defendants' crop proceeds assignments and the processors' acknowledgments of same, the Borrowing Defendants failed to provide a full accounting of the crop's size or its whereabouts until the December 17, 2024 email that provided the delivery reports. On that date, Rabo discovered that a significant portion of the 2024 Almond Crop had been delivered under the name of H&J Management Services, which is reportedly a sole proprietorship operated by the son of Shawn Gill. Additionally, and particularly relevant to the instant motion, much of the remainder of the crop is held on the account of entities other than Debtor. (Paloutzian Dec., Ex. 10.)

Ultimately, the 97% of the 2024 Almond Crop was not delivered on the account of Debtor, but rather is held on the accounts of H&J Management Services or United Farm LLC. (Paloutzian Dec., Ex. 10.) Neither H&J Management Services nor United Farm LLC is before this Court. However, United Farm LLC is one of the Receivership Estates that Receiver is managing and will continue to manage. Yet, Debtor through its Motion is requesting the use of "cash collateral" to the *entire* 2024 Almond Crop proceeds, including proceeds not held under its account.

2.     *The 2024 Almond Crop is not part of the Bankruptcy estate because it has been absolutely assigned to Rabo which precludes Debor's use of the asset as "cash collateral."*

A debtor is forbidden from using "cash collateral" without either the consent of the secured creditor or the authorization of the Court. 11 U.S.C. § 363(c)(2). As a preliminary matter,

the funds Debtor seeks approval to use have been absolutely assigned to Rabo and therefore are not property of the bankruptcy estate and they are not "cash collateral." Debtor's Motion fails to disclose and acknowledge the true legal effect of the assignment of crop proceeds to Rabo, since an assignment creates a lien that is enforceable against third parties, including the bankruptcy estate. In re Turtle Creek, LTD., 194 B.R. 267, 278 (Bankr. N.D. Ala. 1996); In re Village Properties, Ltd., 723 F.2d 441, 443 (5th Cir. 1984) ("An absolute assignment passes title to the rents instead of creating a security interest."). The assignment of the 2024 Almond Crop proceeds to Rabo constitutes an absolute assignment rather than a security interest or collateral assignment. As such, Debtor held no legal or equitable interest in the 2024 Almond Crop proceeds when the bankruptcy proceeding was initiated.

In its Motion, Debtor asserts the use of purported "cash collateral" will be used to "provide funding needed to operate and maintain the business and pay critical expenses during the pendency of [the bankruptcy] case." (ECF 6, ¶ 11.) Debtor claims "almost all of the cash is the proceeds from the sale of the 2024 almond crop." (ECF 6, ¶ 12.) However, Borrower Defendants, including Debtor, assigned to Rabo *all* of Borrower Defendants' right, title and interest in and to the proceeds arising out of or generated from the sale or other disposition of Borrower Defendants' crops. (See Paloutzian Dec., Ex., 1, Exs. RR, SS, TT, ZZ, AAA, and BBB.) Specifically, the Debtor assigned and transferred to Rabo "*all of [Debtor's] right, title and interest* in and to the *proceeds* arising out of or generated from the sale or other disposition of *Grower's farm products*…including any unpaid proceeds from [Debtor's] farm products already delivered to Buyer." (Ibid.) This language is included in the Campos Bros. Crop Assignment dated September 27, 2021, the Lion Raisins Crop Assignment dated September 27, 2021, the Allied Crop Assignment No. 1 dated June 27, 2023, the Duche Crop Assignment dated June 27, 2023[2], and the Vann Brothers Crop Assignment dated June 27, 2023 (the "Assignment Documents".) (Ibid.)

Debtor, without justification, and fully aware of its crop assignment to Rabo, claims the sales proceeds from the 2024 Almond Crop are merely collateral. In reality, Rabo holds

---

[2] See Paloutzian Dec., Ex., ZZ, the word "net" is interlined in place of "all".

title to *all* crop proceeds, including the 2024 Almond Crop produced on *all ranches*, and such

amounts are not "cash collateral" nor property of the Debtor's bankruptcy estate.

Under California law, an absolute assignment occurs when the assignor clearly

intends to transfer ownership of a claim to the assignee, extinguishing the assignor's rights and

granting them to the assignee. See McCown v. Spencer, 8 Cal.App.3d 216, 224 (Ct. App. 1970).

In McCown the court reasoned:

> "An assignor may not maintain an action upon a claim after making an absolute
> assignment of it to another; his right to demand performance is extinguished, the
> assignee acquiring such right. To 'assign' ordinarily means to transfer title or
> ownership of property, but an assignment, to be effective, must include
> manifestation to another person by the owner of his intention to transfer the
> right, without further action, to such other person or to a third person. It is the
> substance and not the form of a transaction which determines whether an
> assignment was intended. If from the entire transaction and the conduct of the
> parties it clearly appears that the intent of the parties was to pass title to the
> chose in action, then an assignment will be held to have taken place."
> (McCown, 8 Cal.App.3d 216 at 225, internal citations omitted).

Because the 2024 Almond Crop proceeds were absolutely assigned, any direct

proceeds from the 2024 Almond Crop are Rabo's property, irrespective of its ranch source. These

proceeds are neither part of the Debtor's estate nor the bankruptcy estate. See In re Fry Road

Associates, 64 B.R. 808 (Bankr. W.D. Tex. 1986). The Assignment Documents unequivocally

demonstrates that the Debtor retained no proprietary interest in the crop. (See Paloutzian Dec.,

Ex., 1, Exs. RR, SS, TT, ZZ, AAA, and BBB.)

Furthermore, under Section 363(f), the Bankruptcy Court may not authorize a sale

free and clear of property that is not property of the estate, such as the 2024 Almond Crop

proceeds. If disputed, the court must first determine who owns the property before it may

authorize a sale free and clear. 3 Collier on Bankruptcy, ¶ 363.06[1] (16th ed. 2013); Darby v.

Zimmerman (In re Popp), 323 B.R. 260 (B.A.P. 9th Circ. 2005). Here, the Assignment Documents

show that Rabo holds "*all of [Debtor's] right, title and interest* in and to the *proceeds*" and the

assignment is clear and needs no room for interpretation.

In addition, Debtor admits some of the "critical expenses" to be paid with the cash

collateral include salaries to insiders (i.e. the Debtor-owners of Capital Farms, Inc.). (ECF 6,

¶14(b).) Rabo acknowledges that some of these insider employees "perform essential functions for

the Debtor." (Ibid.) Nevertheless, it is unjustifiable that Debtor is proposing this Court grant it access to funds that are not its – previously assigned and belonging to Rabo – to pay insiders' salaries.

        3.    *Assets in the possession and control of the Court-Appointed Receiver are not part of the Bankruptcy Estate.*

The Fresno County Superior Court's receivership order granted the receiver exclusive possession and control over the Debtor's assets. (See, Paloutzian Dec,. Ex. 3.) The signed order states "[t]hat the Receiver shall take possession and control of the 2024 Almond Crop pursuant to the Crop Assignment, attached as Exhibit WW in the verified Complaint." (Ibid., and Ex. 1.) As a result, those assets are not "property of the estate" under Section 541 and cannot be used by the Debtor without first obtaining a modification of the state court's order or consent from Receiver. The Order Appointing Receiver also provides:

> **IT IS FURTHER ORDERED** that the Defendants, and all persons and entities now in possession of any part of the Jointly Administered Receivership Estates, shall forthwith surrender their possession thereof to the Receiver, and that all third parties in possession of any part of the Jointly Administered Receivership Estates, are hereby directed, until further order of this Court, to pay over to the Receiver all proceeds of the Jointly Administered Receivership Estates now due and unpaid or that may hereafter become due, and all persons and entities liable for such proceeds are hereby enjoined and restrained from paying any payables or proceeds for the Jointly Administered Receivership Estates to the Defendants, their agents, servants or attorneys. Violation of this Order by payment of any payables or proceeds of the Jointly Administered Receivership Estates to the Defendants, their agents, servants or attorneys shall not operate to discharge the debt of the person or entity that makes such payment in violation of this Order.

The receiver is empowered to carry out the very duties and obligations that the Debtor is now attempting to have this Court allow the Debtor to perform independently. In other words, the Debtor's request is unnecessary and counterproductive, as the receiver is already authorized to manage Debtor's property, address the issues, and protect the interests of all parties concerned.

4.     *Alternatively, Debtor's Request to Use Cash Collateral Should be Denied Because Rabo's Interests Are Not Adequately Protected.*

The Debtor's Motion should be denied because the Debtor has failed to provide sufficient adequate protection to Rabo. Rabo's perfected security interest gives it priority over the Debtor's interest in the Crop Proceeds. The Debtor's Motion does not provide adequate protection as required by 11 U.S.C. § 363(e), nor does it propose any mechanism for satisfying Rabo's secured claim. Without adequate protection, the Debtor's use of these funds would unlawfully impair Rabo's collateral. Even if the Court finds that the 2024 Almond Crop and its proceeds are property of the estate, Rabo holds a valid, first priority, properly perfected security interest in such collateral, and Debtor has not offered sufficient adequate protection to Rabo for the use of its collateral.

In a motion requesting the use of cash collateral, the burden of proving adequate protection of the creditor is on the debtor. In re Diaconx Corp., 69 B.R. 333, 338 (Bankr. E.D. Pa. 1987); In re AMR Corp., 490 B.R. 470, 477 (S.D.N.Y. 2013) ["the [debtor] has the burden of proof on the issue of adequate protection."] In a Chapter 12 case, adequate protection may consist of cash payments to the secured creditor, additional or replacement liens, rental payments for the use of farmland, or "such other relief ... as will adequately protect the value of the property securing a claim or of such entity's ownership interest in property." In re Parmely, 2024 WL 4500850, at 3 (Bankr. N.D. Iowa, Oct. 15, 2024, No. BR 23-00362) ; 11 U.S.C. § 1205(b)(1)–(4). In determining whether or not to permit the use of cash collateral "(1) the Court must establish the value of the secured creditor's interest; (2) The court must identify risk to the secured creditor's value resulting from the debtor's request for use of cash collateral; and (3) The court must determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence." In re Negus-Sons, Inc., 428 B.R. 511, 515 (Bankr. D. Neb. 2009). Here, Debtor has failed to meet its burden, and Rabo will not be adequately protected by Debtor's proposal.

First, as noted above, the cash collateral the Debtor claims ownership of in its Motion is neither cash collateral nor estate property. Granting the Debtor's motion would

essentially allow the Debtor to use Rabo's cash to fund its operations while circumventing the appointment of the receiver.

Second, even if the court were to find the crop proceeds to be part of the Bankruptcy Estate, the Court should deny the Debtor's Motion because Debtor has already placed in danger Rabo's security interest.

(a)     Debtor still has not paid the annual Lease amount of $126,767.20, which is required for Debtor to continue its farming activities. (See Paloutzian Dec., Ex. 2, ¶19.)

(b)  Borrowing Defendants delivered a portion of the 2024 Almond Crop to a processor who did not acknowledge the Assignment of crop proceeds to Rabo. (ECF, 6, ¶8.)

(c)  Rabo, even after appointment of the receiver, is concerned that the 2024 Almond Crop, or its proceeds, will be diverted to circumvent Rabo's security interest by way of Debtor's Motion. Even though Debtor expressly agreed to the appointment of receiver. (See Paloutzian Dec., Ex., 1, H, Article 6, PP, Article 6; R, Article 8.)

(d)  Motion states, "Debtors also anticipates receiving crop insurance payments in February for the 2024 crop." (ECF, 6 ¶14.) This statement is misleading, based on information and belief, the listed insurance claims in Exhibit A, which is attached to their Motion, lists some expected insurance claim proceeds which are not under Capital Farms, Inc., but rather other Borrower Defendants' name. (ECF, 8, Ex., A.)

(e)  Rabo's interests were placed in danger when the Debtor failed to provide the Court with information about the Receiver.

(f)  Debtor has not generally acted in good faith as exemplified, based on information and belief, Debtor failed to inform Receiver during the meeting on Friday, January 10, about the bankruptcy filing.

It is apparent that Debtor's financial condition has continued to deteriorate and Debtor lacks the means to maintain Rabo's collateral, which is why a Receiver was appointed. With the outstanding debt of the Defendant Borrowers exceeding $9 million, and no realistic prospect of repayment, Rabo's security interests are not protected. Debtor has informed Rabo, and this Court, it is unable to maintain essential post-harvest maintenance and does not have funds

available to sustain operations. (See Paloutzian Dec., Ex. 3.) Even if the use of the cash collateral is granted, Debtor has not adequately assured, by its past words and conduct, or adequate future assurances, that Rabo's security interests will be protected.

Third, Debtor asserts that through its Motion it "grants replacement liens [on accounts receivable] to the extent cash collateral is used." (ECF 6, ¶ 19) "Whether adequate protection exists in a given case depends upon the nature of the collateral and the nature of the debtor's proposed use of that collateral." In re Feather River Orchards, 56 B.R. 972, 974 (Bankr. E.D. Cal. 1986).

Here, Debtor has shown reluctance to provide facts and updates to Rabo regarding collateral and repayments. Specifically, Debtor has failed to facilitate the delivery, from third parties, of the 2024 Almond Crop or its proceeds to Rabo. Rabo will be detrimentally impacted should the Court grant Debtor's Motion due to the considerable risk of the diminution in value of its collateral.

The Debtor relies only on projections of future crop prices and pleas for additional funding to continue its operations, at risk that the value of the crop "would diminish significantly." (ECF 6, ¶ 12.). Debtor fails to mention Rabo already took necessary and deliberate steps to secure and protect its collateral by having the Fresno County Superior Court appoint a receiver. Rabo would suffer a severe diminution in value of its collateral should the Court permit Debtor to use Rabo's 2024 Crop Proceeds as cash collateral and use it for all properties, including those in which Rabo holds no interest. Contrary to Debtor's characterization, obtaining the cash collateral is not an all-or-nothing situation, as the court-appointed receiver could continue to manage Debtor's assets. Debtor's need for the funds is not the core of the Court's consideration, rather it is Debtor's ability to provide adequate protection. See, In re Diaconx Corp., 69 B.R. 333, 338 (Bankr. E.D. Pa. 1987) (Holding an insufficiency of funds, "or lack of equity, is a basis for concluding [a Debtor's] claim is not adequately protected".)

Absent adequate protection, the Debtor's Motion should be denied to safeguard the rights of Rabo and ensure compliance with the Bankruptcy Code.

**C.      The Court Should Expand Receiver's Receivership Authority to Serve as Receiver.**

Section 105(a) of the Bankruptcy Code grants courts broad authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." This expansive mandate supports the bankruptcy court's authority to expand the role of a state court-appointed receiver to manage properties involved in Debtor's use of cash collateral. Under California law, a receiver may be appointed "in all other cases where necessary to preserve the property or rights of any party." (Cal. Civ. Proc. Code § 564.) These provisions collectively empower the court to act in a manner that preserves the estate's value and serves the interests of creditors and the debtor.

The interplay between bankruptcy law and receivership is well established. Section 105(b) of the Bankruptcy Code prohibits a bankruptcy court from appointing a receiver, but this restriction does not seem to extend to receivers previously appointed by state courts. As noted in In re Halvorson, "Section 105(b) prohibits a bankruptcy court only from appointing a receiver and does not address receivers appointed by other courts prior to the commencement of bankruptcy." (In re Halvorson, 607 B.R. 680, 682 fn. 2 (Bankr. C.D. Cal. 2019)). Courts have affirmed this distinction, emphasizing that § 105(b) does not preclude the appointment of a receiver for limited purposes, provided the trustee does not oppose such an appointment. See In re Memorial Estates, Inc., 797 F.2d 516, 517 (7th Cir. 1986); affirmed by Craig v. McCarty Ranch Trust (In re Cassidy Land & Cattle Co.), 836 F.2d 1130, 1133 (8th Cir. 1988).

At a minimum, 11 U.S.C. § 543(d) seems to permit the Court to allow a pre-petition receiver to temporarily remain in place. As reasoned in In re Stratesec, Inc., a bankruptcy court may authorize a receiver to continue possession of estate property, particularly when the receivership court is deemed "the superior forum for controlling the debtor's property." (In re Stratesec, Inc., 324 B.R. 156, 158 (Bankr. D.D.C. 2004)). The status quo may be granted "while the court decides whether to abstain to the receivership proceeding, or instead require the receiver to turn over the property of the estate to the trustee (or to the debtor-in-possession, if no trustee has been appointed)." (Ibid.)

Bankruptcy Courts have also delineated the complementary roles of bankruptcy trustees and receivers. While a trustee serves as a representative of the bankruptcy estate (11 U.S.C. § 323(a)), a receiver acts as a court-appointed representative tasked with managing specific properties. In re Halvorson, 607 B.R. at 685. This distinction ensures that the receiver's role supplements, rather than supplants, the trustee's duties, particularly in cases where the receiver's specialized management preserves the value of estate assets.

The case law demonstrates the flexibility of bankruptcy courts in addressing unique circumstances. For example, courts have upheld the appointment of "equity receivers" in adversary proceedings or for specific purposes, provided the trustee's role remains intact. See In re Teknek, LLC, 343 B.R. 850, 867 (Bankr. N.D. Ill. 2006); In re Ehmann, 319 B.R. 200, 206 fn.10 (Bankr. D. Ariz. 2005). This tailored approach reflects the principle that a receiver may serve as an effective tool to protect estate assets without undermining the trustee's overarching responsibilities.

The Hon. D. Tyler Tharpe granted Receiver broad authority, including the power to "[m]aintain and/or manage the Jointly Administered Receivership Estates in the ordinary and usual course of business, and to perform all actions and incur risks and obligations typically assumed by owners and/or managers of property similar to the Jointly Administered Receivership Estates…" (See Paloutzian Dec., Ex. 3). Receiver's role, with obligations prescribed by the state court, will complicate the Debtor's ability, or that of any appointed Bankruptcy Trustee, to effectively manage the situation, given Receiver's broad authority over the Borrower Defendants' Receivership Estates.

Additionally, the Debtor's past conduct makes it clear that it lacks the capacity to manage its own assets, let alone protect the interests of its creditors. Examples of the Debtor's unfitness include omissions to the Court, failure or reluctance to inform Rabo about the location and amount of their collateral. In addition, on information and belief, Debtor withheld information from Receiver during the meeting on Friday, January 10, regarding the bankruptcy filing. Debtor's proposed plan for using the cash collateral is unpersuasive, as it would only prolong the issue currently before the Court. The Court is being asked to trust the Debtor to use the funds "to

provide the necessary funding to operate and maintain the business and pay critical expenses during the [bankruptcy] case." (ECF 6, ¶11.) However, this goal can be accomplished more effectively by Receiver, an impartial party and agent of the Court. Given Receiver's authority over the three Borrower Defendants, the Assignments conveyed to Rabo, and the cash collateral at issue, it is more appropriate for Receiver to oversee and control these matters. Receiver's experience is extensive, including his appointment as a Chapter 11 Bankruptcy Trustee (See Paloutzian Dec., Ex. 8, Ex. A).

**D.**      **In the Alternative, the Court Should Order the Chapter 12 Bankruptcy Trustee to Hire Scott Sackett.**

In the alternative, the Court should order Trustee to hire the state court-appointed receiver, Scott Sackett, to manage all of Debtor's properties. Section 105(b) does not seem to preclude a bankruptcy court from authorizing a trustee to employ a receiver for the limited purpose of managing specific assets, as affirmed in In re Cassidy Land & Cattle Co., Inc., 836 F.2d 1130, 1133 (8th Cir. 1988). This approach preserves estate value, promotes efficiency, and leverages the receiver's existing expertise with the assets. Courts have long recognized that receivers can assist trustees in administering estate property without undermining the trustee's role. See In re Memorial Estates, Inc., 797 F.2d 516 (7th Cir. 1986); See also In re Teknek, LLC, 343 B.R. 850 (Bankr. N.D. Ill. 2006). Allowing the trustee to retain the Receiver serves the best interests of creditors and the estate.

For all the reasons stated herein, Receiver's involvement is essential in the Bankruptcy proceedings. His experience makes him uniquely qualified to manage the complexities and interplay of the Bankruptcy Court and State Court orders, and oversee and manage the Debtor's Estate with the limited purpose of managing the collateral that Debtor shares with Borrower Defendants, specifically the collateral that was absolutely assigned to Rabo prior to the filing of Debtor's petition.

/ / /

/ / /

/ / /

**E.**     **In the Alternative, the 2024 Almond Crop Proceeds Should be Used to Preserve and Protect the assets of the Two Ranches Subject Rabo's Deeds of Trust (Brawley and Brewer.)**

Should the Court conclude that it is appropriate that the 2024 Almond Crop proceeds be used by the Estate, equity dictates that the use of those proceeds be limited to protect, maintain, and farm the two ranches subject to Rabo's deeds of trust. In other words, Rabo objects to the use of *its* crop proceeds for the benefit of the four ranches Scott Sackett does not have authority over under the Superior Court's order. Rabo's assets should not be used the use of Rabo's assets to support Debtor's other properties (not financed by Rabo) would dilute Rabo's security.

**F.**     **Reservation of Rights.**

Rabo reserves the right to further supplement the Opposition, including at the Hearing, prior to entry of any Interim or Final Order entered on the Debtor's Motion.

**VI.**

**CONCLUSION**

For the reasons set forth above, Rabo respectfully requests that the Court deny the Debtor's Motion for Authority to Use Cash Collateral and expand Receiver's receivership authority to all ranches. Or in the alternative, the Court should order the Chapter 12 Bankruptcy Trustee to hire Scott Sackett. Or in the alternative, the Court should order that the 2024 Almond Crop proceeds, assigned to Rabo, should be used *only* by Scott Sackett and *only* to preserve and protect the assets of the two ranches subject Rabo's deeds of trust (Brawley and Brewer.) Rabo further requests such other and further relief as the Court deems just and proper.

**VII.**

**REQUESTED RELIEF**

Rabo respectfully prayers for relief of this Court:

1.     Deny the Debtor's Motion to Use Cash Collateral.

2.     Prohibit the Debtor from using the 2024 Almond Crop and its proceeds as cash collateral.

3.  Require the Debtor to provide additional security or adequate protection for Rabo's interests, including full payment of the outstanding lease obligations and a complete accounting of the 2024 Almond Crop.

4.  Expand the Receiver's authority to serve as receiver for all properties Debtor requested to use cash collateral.

5.  In the alternative, Order the Chapter 12 Bankruptcy Trustee to hire Receiver.

6.  In the alternative, the 2024 Almond Crop Proceeds that were assigned to Rabo should be used only by Scott Sackett and only to preserve and protect the assets the two ranches subject Rabo's deeds of trust (Brawley and Brewer.)

7.  Take such other action as the Court deems appropriate to ensure the adequate protection of Rabo's interests in the collateral.

DATED:  January 16, 2025                    BAKER MANOCK & JENSEN, PC


By:  _____/s/ Dirk B. Paloutzian_____
Dirk B. Paloutzian
Attorneys for RABO AGRIFINANCE LLC