FEAR WADDELL, P.C.
Peter L. Fear, No. 207238
pfear@fearlaw.com
Gabriel J. Waddell, No. 256289
gwaddell@fearlaw.com
Peter A. Sauer, No. 255957
psauer@fearlaw.com
7650 North Palm Avenue, Suite 101
Fresno, California 93711
(559) 436-6575
(559) 436-6580 (fax)

Proposed Counsel for CAPITAL FARMS, INC.
  Debtor in Possession

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>CAPITAL FARMS, INC.,<br><br><br>Debtor and Debtor-in-Possession. | Case No. 25-10074-A-12<br><br>Chapter 12<br><br>D.C. No. FW-2<br><br>**Cont'd Preliminary Hearing**<br>Date:　January 22, 2025<br>Time:　9:30 a.m.<br>Place:　Dept. A, Courtroom 11, 5th Floor<br>　　　　United States Courthouse<br>　　　　2500 Tulare St., Fresno, California<br>Judge:　Hon. Jennifer E. Niemann |

**SUPPLEMENTAL DECLARATION OF SHAWN GILL IN SUPPORT OF MOTION FOR AUTHORITY TO USE CASH COLLATERAL**

I, SHAWN GILL, declare as follows:

1. I am the president of Capital Farms, Inc., Debtor and Debtor-in-Possession in the above-captioned bankruptcy matter. My full name is Sukhwant Singh Gill, but I usually go by Shawn Gill.

- 1 -

2. I make this supplemental Declaration in support of the Motion for Authority to Use Cash Collateral. Unless otherwise indicated, all statements in this Declaration are based on my personal knowledge, my review of relevant personal documents, or my opinion.

3. I understand that Rabo Agrifinance LLC ("Rabo") asserts it was unaware of the involvement of H & J Management Services ("H&J") until December 17, 2024. This is not true. We had earlier discussions with Ryan Popwell at Rabo and explained what we were trying to do with H&J. I am 59 years old and my brother, Gurmej Gill, is 70 years old. We anticipate needing to retire from farming in the next few years, and were desirous of getting our sons established in farming. The owner of H&J is Harsaajan S Gill, my son. My son has been involved with farming and by reporting some farming revenue under H&J, the intent is to establish his credit. He is student at UC Davis with Ag Business major and forming H&J was to develop credit. The formation of H&J (in November of 2023) was discussed and acknowledged on numerous occasions via telephone calls between Gurmej Gill and Shawn Gill and Rabo's representative Ryan Popwell dating back to October 2024. In addition, according to discussions with our contacts at Duche Nut, Ryan Popwell called and spoke to these processors individually and confirmed delivery the portions of almond crop under H&J. Ryan Popwell also confirmed this via telephone with Gurmej.

4. After we learned in December that Rabo disfavored the action of bringing in H&J, H&J took immediate action to assign any interest they had in the crops and leases to Capital Farm. Included herewith as Exhibit C are copies of these assignments. We had no intention of diverting proceeds from Rabo. We had been in active discussions with Rabo before they filed their state court complaint about a workout plan to pay off the Rabo debt. To even think about

diverting proceeds would have been foolish because we have all personally guaranteed the Rabo debt (along with significant other debt for our various entities.)

5. I understand from various court pleadings that Rabo does not trust us, in part, because of our attempts to obtain credit for my son through the H&J transactions discussed above. As noted above, we had no intention of diverting those proceeds. However, if it would help to re-establish trust, we have no objection to the appointment of an independent Chief Restructuring Officer or some similar external oversight with the goal of protecting all creditors of the bankruptcy estate. We would not object to the appointment of Mr. Sackett to this role if he is able to be employed by the estate pursuant to 11 U.S.C. § 327. But whoever is in charge of the Debtor must ensure that all assets of the Debtor are protected, not just the collateral of Rabo.

6. I understand that the state court Receivership Order establishes four separate receivership estates over Rabo's collateral owned by the following entities: (a) Sutter Land LLC ("Sutter Land"), (b) United Farm, LLC ("United Farm"), (c) Sutter Enterprises, LLC ("Sutter Enterprises"), and (d) Capital Farms, Inc. ("Debtor").

7. The primary asset in Sutter Enterprises was 237 acres of wine grapes located in Lodi. At the strong urging of Rabo, that property was sold in August of 2024. The remaining minimal proceeds from last year's harvest will be paid out to Rabo. Consequently, there are almost no assets in Sutter Enterprises for the receiver to take possession of.

8. United Farm is not farming this year. The only assets owned by United Farm are some proceeds from last year's crop and some equipment. I understand that the receiver will take possession of the crop owned by United Farm and administer that in accordance with the state court receivership order. We are not asking to use crop proceeds owned by United Farm.

9. Sutter Land owns land that is leased primarily to Capital Farm. In addition, Capital Farm leases property from an unrelated 3rd party (Brewer 315) and myself. Included herewith as Exhibits D, E, F, G, H, and I are copies of the leases between Capital Farm and the lessors listed below (this includes leases that were assigned from H&J to Capital Farm). Below is a list of these leases and the current status of each lease. I do not recall if there are any Subordination, Non-Disturbance, and Attornment Agreements ("SNDA") for any of these leases.

| Ranch | Acres | Lessor | Status of lease |
|---|---|---|---|
| Brewer | 315 | Brewer 315 | Current until January 2025, when a payment of $130,000 is due. |
| Brawley | 277 | Sutter Land | Behind by 2 payments. Amount needed to cure is $374,000. |
| Sankey | 238 | Sutter Land | Current until March 5, 2025; then payment of $146,000 due. |
| Natomas | 158 | Sutter Land | Behind by 1 payment for Jan 1st due date. Amount to cure is $19,500 plus late fees. Payments are paid monthly, in the approximate amount of $19,500 each. |
| Jameson | 152 | Sukhwant Gill | Behind by 4 payments. Amount to cure is approximately $33,000 including late fees. Payments are $7,500 per month. |
| Baseline | 157 | Sutter Land | Current until Jan 15, 2025, when a payment of $81,000 is due. Payments of $81,000 are due in January and July of each year. |

10. Below is a list of the real property ranches owned by Sutter Land, along with the secured creditors on each and approximate balances of each mortgage.

| Ranch | Acres | Mortgage holder | Approx. Bal. | Arrearage (if any) |
|---|---|---|---|---|
| Brawley | 277 | Rabo | $3,700,000 | 2 payments behind, totaling approx.. $374,000, plus late fees. |
| Sankey | 238 | Metlife | $4,015,000 | Current |
| Natomas | 158 | All Star Capital | $2,340,000 | 1 payment behind, in the amount of approx.. $19,500 plus late fees. |

Declaration in Support of Motion for Authority to Use Cash Collateral (etc.) - 4

11.　　The Jameson Ranch is in my name personally, and the lender on that property is Parminder S Virk and Rajvinder S Virk. The principal balance of that debt is $750,000 and the status of the loan is behind by four (4) months, with an approximate arrearage owing of $33,000 plus late fees.

12.　　The Baseline Ranch is owned by Lakhbir S. Bains, who leased that property to Sutter Land, who in turn has subleased that property to Debtor. The mortgage on Baseline Ranch is owed to Metlife and the approximate balance on that loan is $2,400,000. I understand that the payments on that loan are current. The payments on this loan are in the amount of $81,000 each and are paid in January and July.

13.　　In reviewing documents to provide the above information, I reviewed the two Metlife deeds of trust, one on the Baseline Ranch property and one on the Sankey Ranch property, and saw that both contain UCC security agreements. A true and correct copy of the deed of trust and security agreement on Baseline is included herewith as Exhibit J. A true and correct copy of the deed of trust and security agreement on Sankey is included herewith as Exhibit K. I have also reviewed UCC filings for each of these security agreements. A true and correct copy of the UCC-1 related to the Baseline security agreement is included herewith as Exhibit L. A true and correct copy of the UCC-1 related to the Sankey security agreement is included herewith as Exhibit M.

14.　　Included herewith as Exhibits N, O, and P are the processor delivery reports for our 2024 almond crop. The reports originally provided to us by our processors (and which were then provided to Rabo) contained a few errors, and the processors provided us corrected reports which I am including herewith. In summary, these reports show that the following portions of the 2024 almond crop was delivered under the name of the following entities:

Declaration in Support of Motion for Authority to Use Cash Collateral (etc.) - 5

a. Capital Farms - 385,396 lbs.

b. United Farm - 246,286 lbs.

c. H&J - 730,859 lbs.

d. Total - 1,362,541 lbs.

15. Below is a summary of the source (by ranch) of these nuts, along with the value of these nuts based on an average sale price of $2.25 per pound, less deductions for advances (the only one being from Campos on Brawley):

| Ranch | Acres | Pounds | Value | Less advance |
|---|---|---|---|---|
| Brewer | 315 | 215,759 | $485,457.75 | $485,457.75 |
| Brawley | 277 | 444,199 | $999,447.75 | $699,447.75 |
| Sankey | 238 | 237,335 | $534,003.75 | $534,003.75 |
| Natomas | 158 | 153,978 | $346,450.50 | $346,450.50 |
| Jameson | 152 | 231,010 | $519,772.50 | $519,772.50 |
| Baseline | 157 | 80,260 | $180,585.00 | $180,585.00 |

16. For comparison and to show the value of the 2025 crop that is at risk for each of these ranches, below is a summary of by ranch of the projected pounds for the 2025 crop, along with the value of this crop based on an average sale price of $2.25 per pound:

| Ranch | Acres | Pounds | Value |
|---|---|---|---|
| Brewer | 315 | 660,000 | $1,485,000 |
| Brawley | 277 | 700,000 | $1,575,000 |
| Sankey | 238 | 399,500 | $898,875 |
| Natomas | 158 | 232,500 | $523,125 |
| Jameson | 152 | 375,000 | $843,750 |
| Baseline | 157 | 225,000 | $506,250 |

17. We have had longstanding relationships with all four of the processors we used this year, including with Campos Bros since 2014, with Vann brothers since 2018, with Duche Nut since 2018 and with Bapu Farms since 2021. We have delivered almonds to all processors

Declaration in Support of Motion for Authority to Use Cash Collateral (etc.) - 6

going back to the listed years even if these processors had no acknowledgement of crop assignments.

18. In our relationship with Rabo, no loans or guaranty obligations were in default and all scheduled were made accordingly until Rabo began to accelerate all loan notes and put us into default around May of 2024. The first defaulted loan was a line of credit operating loan. Subsequently, no payments were made including mortgage thereafter due to lack of capital as no operating line of credit was available from Rabo. It was during this time, the principals had to obtain private financing to continue our farming operation. Payments to Rabo were not made because the loans were already in default.

19. While Rabo has characterized us as not operating in good faith, we have been doing everything in our power to preserve the value of Rabo's collateral. We have personally obtained loans from friends and family to protect almond orchards and crop which constitute Rabo's collateral. Rabo has not provided any crop financing since approximately April 30, 2024.

20. Rabo should not be surprised that we had to file a bankruptcy case. We had many discussions where the potential of a bankruptcy case was discussed. Specifically, at an in-person meeting on or about August 22, 2024, with myself, Baljit Gill, Fred Bush, and Ryan Popwell, it was mentioned that if we cannot come to an agreement that all options, including bankruptcy, are on the table for us. Ryan Popwell further acknowledged this option of bankruptcy to Shawn Gill during a conversation on or numerous times via phone call. On the last call Nov, 20th 2024, we discussed with Ryan Popwell that we had a very strong selling offer for Brawley property. I offered to him that we are willing to accept this offer if Rabo will work with us on the remaining balance of around $3 million dollars, which Ryan Popwell replied that Rabo refuses to work with us and stated that Rabo will not agree unless we pay them the entire balance in full, except

Declaration in Support of Motion for Authority to Use Cash Collateral (etc.) - 7

for the development loan of $910,000 on Brewer Rd property. I then explicitly stated to Ryan that he is not giving us any choice but to file for bankruptcy protection. Ryan acknowledged this statement and responded that bankruptcy would not be an attractive option for Baljit Gill specifically, due to his profession as a Physician.

21. No communications have been made with individual processors to delay delivery of crops or proceeds to Rabo. It is common practice in the almond industry to sell almond crops at various times according to each farmer's needs and favorable price conditions. In the past, we have had crops sitting at processors until December of the next year which helped us maximize profits. This practice has also benefited Rabo to increase their returns.

22. The "Mummy Shake" that I described in my previous declaration urgently needs to take place. Due to the warmer weather, there are some buds starting on the trees in the Fresno area. The Mummy Shake needs to be done before those buds start. Because of the urgency, I have been working on doing this work on my own for the property in Fresno County, understanding that I may not be able to be reimbursed for this. This is essential to protect the collateral of all parties involved.

23. Following is a description of the various entities involved in this case and the relationships between those entities.

    a. Sutter Land is owned by Baljit S Gill and Sukhwant S Gill. As noted above, it holds real estate and leases it to Debtor.

    b. Sutter Enterprises was owned by Baljit S Gill and Sukhwant S Gill. Because its primary asset was sold as noted above, it is no longer doing business.

Declaration in Support of Motion for Authority to Use Cash Collateral (etc.) - 8

     c. United Farm is owned by Shawn Gill. It previously operated Jameson Ranch. It will not do any farming this year. The basis of an obligation to United Farms, LLC stated in the schedules is an intercompany receivable.

     d. Sukhwant Gill (myself). I personally own one of the parcels of real property that is being leased to the Debtor.

24. Debtor received the following crop advances from the 2024 crop:

     e. Bapu Almond Company, Inc. - $0.00

     f. Campos Brothers Farms - $300,000.

     g. T.M. Duche Nut Co., Inc. - $0.00 [Note: the debt to T.M. Duche Nut Co., Inc listed in the schedules is not a crop advance.]

     h. Vann Family Orchards - $0.00

I declare under penalty of perjury that the foregoing statements are true and correct and that if called as a witness herein I could and would competently testify thereto, and that this declaration was executed on 1/20/25, at Sacramento, California.

_____
SHAWN GILL

Declaration in Support of Motion for Authority to Use Cash Collateral (etc.) - 9