2

FEAR WADDELL, P.C.
Peter L. Fear, No. 207238
pfear@fearlaw.com
Gabriel J. Waddell, No. 256289
gwaddell@fearlaw.com
Peter A. Sauer, No. 255957
psauer@fearlaw.com
7650 North Palm Avenue, Suite 101
Fresno, California 93711
(559) 436-6575
(559) 436-6580 (fax)

Proposed Counsel for CAPITAL FARMS, INC.,
   Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In re:<br><br><br>CAPITAL FARMS, INC.,<br><br><br><br><br>Debtor and Debtor-in-Possession. | Case No. 25-10074-A-12<br><br>Chapter 12<br><br>D.C. No. FW-2<br><br>**Cont'd Preliminary Hearing**<br>Date:   January 22, 2025<br>Time:   9:30 a.m.<br>Place:  Dept. A, Courtroom 11, 5th Floor<br>          United States Courthouse<br>          2500 Tulare St., Fresno, California<br>Judge: Hon. Jennifer E. Niemann |

**SUPPLEMENTAL EXHIBITS H THROUGH P FOR MOTION FOR AUTHORITY TO USE CASH COLLATERAL**

**INDEX OF EXHIBITS**

| Exhibit | Title | Page No. |
|---|---|---|
| H | Agricultural Lease between Sukhwant S. Gill & Capital Farms, Inc. (Jameson Ranch) | 100 |
| I | Agricultural Lease between Sutter Land, LLC & Capital Farms, Inc. (Baseline Ranch) | 110 |

EXHIBIT - 1

| Exhibit | Title | Page No. |
|---|---|---|
| J | Deed of Trust, Assignment of Rents, Security Agreement & Fixture Filing in favor of Metropolitan Tower Life Ins. Co. for Baseline Ranch | 121 |
| K | Deed of Trust, Assignment of Rents, Security Agreement & Fixture Filing in favor of Metropolitan Tower Life Ins. Co. for Sankey Ranch | 138 |
| L | UCC Filing for Metropolitan Tower Life Ins. Co. regarding Baseline Ranch | 157 |
| M | UCC Filing for Metropolitan Tower Life Ins. Co. regarding Sankey Ranch | 162 |
| N | 2024 Grower Statements for Capital Farms, Inc. | 167 |
| O | 2024 Grower Statements United Farm | 170 |
| P | 2024 Grower Statements for H&J Management Services | 174 |

# EXHIBIT

# H

# AGRICULTURAL LEASE

This Agricultural Lease ("Lease") is made and entered into on this day of June 24, 2022, at Caruthers, California by SUKHWANT S. GILL (hereinafter "Lessor") and CAPITAL FARMS, INC (hereinafter "Lessee").

## RECITALS

WHEREAS Lessor is the owner of certain farm land real property, commonly referred to as "The Jameson Ranch", located in Fresno County and composed of 152 +/- acres of farm land which is planted to almonds. It is composed of 3 parcels , identified as Assessor's Parcel Numbers: 041-070-32s , 041-070-29s , 041-070-27s . and legally described in Exhibit "A" which, along with property descriptions, is attached to this Lease and incorporated herein by this reference (hereinafter "the Leased Property");

WHEREAS there is 1 pump and well located on the Leased Property.

WHEREAS the Lessee desires to lease the Leased Property pursuant to this lease as set forth herein;

NOW, THEREFORE, the Lessor and Lessee agree as follows:

## AGRICULTURAL LEASE

The following constitutes the terms and conditions of the Lease including the above Recitals which are included by reference.

1. <u>Leased Property</u>. Lessor hereby exclusively leases to Lessee and Lessee exclusively hires from Lessor that certain agricultural real property in the County of Fresno, State of California composed of approximately 152 +/- acres identified by the Fresno County Tax Assessor's Office as APN: 041-070-32s , 041-070-29s , 041-070-27s , legally described on Exhibit A attached hereto and incorporated herein.

2. <u>Water - Pump and Well</u>: There is one pump and well on the Leased Property. Lessor is also the owner of 152 acres, planted to almonds (the "Adjacent Property"), which is located adjacent to the Leased Property. The Lessor and Lessee will enter into a pump, water and well sharing agreement for the joint use of these pumps and wells on the Leased Property and the Adjacent Property. The Leased Property is in the Consolidated Irrigation District and eligible to receive water from the District.

3. <u>Term of the Lease</u>. The initial term of this Lease term shall be a 5 year, commencing on June 24, 2022 and terminating on December 31, 2027 unless sooner terminated as provided herein.

4. <u>Extensions of the Lease Term</u>. Included in this Lease are two one-year options to extend the Lease term. At the end of the initial 5- year Lease term, December 31, 2027, the Lessee shall have an option to extend the Lease term an additional one-year period on the same

terms and conditions and, at the end of that first one-year Lease extension, the Lessee shall have an additional option to extend the Lease term an additional one year period on the same terms and conditions, with the final termination being December 31, 2028. Lessee shall give notice to Lessor of intent to exercise its options to extend the lease by December 1, 2028 for the first option and by December 1, 2029 for the second option.

     5.    <u>Rent for the Leased Property</u>.  The rent for the property shall be set forward as follows:

     a.    The first 5 years lease payment shall be minimum rent equals debt service.

     b.    The 6th year lease payment (if extended) shall be minimum rent equals plus $10,0000 due December 31, 2028.

     c.    The 7th year lease payment (if extended) shall be minimum rent equals debt service pus $15,000 due December 31, 2029.

     6.    <u>Compliance</u>.  Lessee shall, at Lessee's sole cost and expense, comply with any and all laws, ordinances, rules, regulations, requirements and orders present or future and any federal, state, county or municipal government regulations which may in any way apply to the use, maintenance and production of crops on the Leased Property or the sale or disposition of those crops.

     7.    <u>Operating Costs</u>.  During the term of this Lease, the Lessee shall be responsible for and pay for all growing and harvesting costs in connection with Lessee's operations upon the Leased Property including but not limited to, farming costs, production costs, costs of tools and labor, electricity and other utilities.

     8.    <u>Taxes and Assessments</u>.  The Lessor shall be responsible for land and current structures, pumps wells, etc. , and county property taxes. .  Any irrigation district taxes, assessments and water costs will be paid by Lessee.  The Lessee agrees to keep said property taxes paid current each year.

     9.    <u>Insurance</u>.  Lessee shall maintain on the Leased Property during the Lease term at Lessee's expense, general liability insurance and adequate workman's compensation insurance. The limits of general liability policy are to be in amounts not less than Two Million Dollars ($2,000,000) for any one person injured, or less than One Million Dollars ($1,000,000) for property damage.  Lessee shall furnish proof of said insurance to Lessor within thirty (30) days of the execution hereof and shall name Lessor as an additional insured on such policy(s) and the policy(s) shall provide that the carrier shall provide Lessor at least 30 days prior written notice of any termination or policy modification.  The Lessee shall annually furnish to Lessor copies of certificates of workers compensation and general liability insurance, with Lessor as additional insured.

     10.    <u>Improvements and Mechanics Liens</u>. During the term of the Lease and respecting the Lessee constructing improvements on the Leased Property then in such event the Lessee shall pay for all materials adjoined or fixed to said Leased Property and pay in full all persons who perform labor upon said Leased Property at the Lessee's instance and request. Lessee shall not

permit or suffer any mechanic or materialman's liens of any kind or nature to be enforced against the Leased Property for any work done, or materials furnished thereon at Lessees' instance or request. Lessee agrees to indemnify and hold Lessor harmless against any and all such liens. Lessor shall have the right to pay any amount to obtain releases of any such liens, or to defend any action brought thereon, and to pay any judgment entered therein. Lessee shall be liable to Lessors for all costs, damages and reasonable attorneys fees and any amounts expended in defending any proceeding, or in the payment of any of said liens or any judgment obtained therefor. Lessor may post and maintain upon the Leased Property notices of non-responsibility as provided by law.

11.  Waste and/or Nuisance. During the term of the Lease the Lessee shall not commit or permit others to commit any waste upon the Leased Property. The Lessee shall not maintain, commit, or permit the maintenance or commission of any nuisances as defined in Civil Code Section 3479 on the Leased Property. Furthermore, the Lessee shall not use or permit the use of the Leased Property for any unlawful purpose. Lessee agrees that any waste or nuisance will be cleaned up within five (5) days from receiving notice from Lessor.

12.  Crop Financing. Lessee shall have the right to mortgage or hypothecate only the growing crops grown and produced upon the Leased Premises during the Lease. The land shall not be encumbered, only the growing crops. Lessor reserves all rights and the right to exercise all rights and remedies conferred upon Lessor under the terms of this Lease and under the laws of the State of California. Lessee shall notify Lessor at the time of recording any lien on the crops. The Lessee does not have the right to record any deeds of trust on the Lease Property.

13.  Chemicals, Hazardous Material.

a.  Chemicals. Lessee agrees not to use pesticides that will have a residual effect beyond the existence of the Lease without the prior written consent of Lessor. No poison, herbicide, pesticide, fertilizer or other chemical or substance (hereinafter "Chemicals"), other than those approved by the United States Department of Agriculture, and by the California Department of Agriculture, shall be applied to the Leased Property or crops growing thereon. Any and all of such Chemicals shall be applied in strict compliance with, and only at the time or times set forth on the label or manufacturer's instructions. No experimental Chemicals shall be applied to the Leased Property, or the crops growing thereon, without the prior written consent of Lessor. Lessee shall make and keep pertinent records of all such Chemicals used or applied on the Leased Property, including identity, dates of, and rates of application during the term hereof and shall make them available to Lessor and Lessor's agents and assigns, at all reasonable times, for inspection and copying. All Chemicals which Lessee may apply to the Leased Property, or crops growing thereon, shall be used and applied at Lessee's sole cost, risk and liability, and Lessee does hereby agree to indemnify, defend, hold and save Lessor, its successors and assigns and their agents and employees free, clear and harmless from and against any and all claims, demands, damages or liabilities of whatever kind, character or nature which in any manner arise out of or result from any use or application of any of such Chemicals.

b.  Hazardous Material.

(1)     As used herein, the term "Hazardous Material" means any hazardous or toxic substance, material, or waste which is or becomes regulated by any local, state or federal governmental authority, the State of California, or the United States government.

(2)     Lessor represents and warrants that to the best of its knowledge the Leased Property is as of the day before Lessee came into possession, in compliance with all laws and regulations then in existence regulating the handling, transportation, storage, treatment use and disposition of Hazardous Material.

(3)     Lessee shall not cause or permit any Hazardous Material to be brought upon or used in or about the Leased Property by Lessee, its agents, contractors or invitees without the prior consent of Lessor, which shall not be unreasonably withheld by Lessor conditioned upon Lessee's demonstration to Lessor's reasonable satisfaction that such Hazardous Material is necessary or useful to Lessee's farming effort and will be used and stored in compliance with all laws, regulations and ordinances regulating such Hazardous Material.  Notwithstanding the above, Lessee shall not be required to obtain any prior written consent from Lessor for the use of any Chemicals actually consumed or utilized in the farming of the Leased Property in compliance with all then existing applicable laws, regulations and ordinances.

14.     <u>Lessees Acceptance of Property Condition</u>. Subject to Lessee's due diligence and inspection pursuant to this Paragraph 14 and Paragraph 15, Lessee accepts the Leased Property, as well as the improvements thereon and facilities appurtenant thereto in their present "As Is" condition. The Lessee agrees and represents to Lessor, that the Leased Property has been inspected by Lessee and Lessee has been assured by means independent of Lessor or Lessor's agents of the truth of all facts material to this Lease and that the Leased Property is being leased by Lessee as a result of its inspection and investigation and not as a result of any representations by Lessors or Lessors' agents.  Lessees agree to indemnify and save the Lessors harmless of and from all claims and demands of every person, firm, or corporation for injuries to persons, wrongful death, or damage to property which may arise with respect to the Leased Premises, the condition thereof, or any act or mission occurring thereon during the term of this Lease, and shall carry public liability and property damage insurance as set forth above.

15.     <u>Inspections by Lessors and Lessees</u>. During the term of the Lease, the Lessees shall permit the Lessors or Lessors' agents, or employees to enter the Leased Property at reasonable times to determine whether the Lessees are complying with the terms of this Lease and for the purpose of doing other lawful acts that may be necessary to protect the Lessors' interest in the Leased Property.

16.     <u>Indemnity</u>.  Lessee shall indemnify, hold harmless and defend Lessor, its employees, agents and successors and assigns from all liabilities, damages, claims, penalties or actions including attorneys' fees and costs, arising from any death, injury or damage to any person, or property of any kind while upon or in any way connected with the Leased Property or Lessee's farming operation including, but not limited to the Lessee's farming expenses.  Lessee's obligations to indemnify, hold harmless and defend under this paragraph shall include, without limitation (I) all consequential damages, directly or indirectly arising out of the use, generation,

storage, or disposal of Hazardous Material and/or chemicals on the Leased Property by Lessee or any of its agents or employees, and (ii) the cost of any required or necessary repair, cleanup, or detoxification and the preparation of any required plans, whether such action is required or necessary during the term of this Lease or subsequent thereto to the full extent that such action is attributable, directly or indirectly, to the presence or use, generation, storage, release, threatened release, or disposal of Hazardous Material by any person on the Leased Property during the term of this Lease.

17. _Assignment_. The Lessee shall have a right to assign or transfer all or any portion of the Lease only with the approval of the Lessor. Lessee will provide financial and other information about the proposed assignee to Lessor. Lessee shall have the right to assign this Lease to an entity owned and controlled 100% by the Lessee. Lessee shall have a right to assign or transfer all or any portion of the Lease only with the written approval of the Lessor. Lessee will provide to Lessor financial and other pertinent information regarding the proposed assignee. Lessee will remain fully responsible of the Lease, regardless of an assignment or transfer of the Lease.

18. _Acts Constituting Default_. Any or all of the following actions shall constitute a default of this Lease if Lessee, upon 30 days prior written notice of default, fails to cure or initiate a cure and pursue to completion (where the cure will take more than 30 days), within such 30 day period:

    a.    Use of the Premises for any purpose other than as authorized in this Lease;

    b.    Default in the payment of rent or any other sums owing when due;

    c.    Abandonment or vacation by Lessee from the Premises;

    d.    A default in the performance of any of the terms, covenants, and conditions hereof;

    e.    Filing of voluntary petition in bankruptcy or adjudication as a bankrupt in any involuntary bankruptcy proceeding; or

    f.    Appointment of a receiver or judicial trustee or custodian for Lessee, or if any lien or any writ of attachment, garnishment or execution shall be levied upon Lessee's rights or interests under this Lease.

19. _Remedies Upon Default_. In the event of a default of this Lease, and in addition to all other rights and remedies Lessor may have at law, in equity or otherwise, Lessor shall have the option to do any or all of the following:

    a.    _Reentry_. After expiration of the 30 day notice period, immediately reenter and remove all persons and property from the Leased Property, storing the personal property in a public warehouse or elsewhere at the sole cost and expense of and for the account of Lessee. No such reentry or taking possession of the Leased Property by Lessor shall be construed as an election on Lessor's part to terminate this Lease unless a written notice of such intention is given by Lessor to Lessee.

b.    <u>Collection of Rent</u>.  To collect by suit or otherwise, pursuant to the provisions of section 1951.4 of the California Civil Code, each installment of rent or other sum as it becomes due hereunder, or to enforce, by suit or otherwise, any other term or provision hereof on the part of Lessee required to be kept or performed, it being specifically agreed that all unpaid installments of rent or other sums shall bear interest at the highest rate authorized by law from the due date thereof until paid.

c.    <u>Termination of Lease</u>.  After the expiration of the 30 day notice period, termination of this Lease, in which event Lessee shall immediately surrender possession of the Leased Property, and pay to Lessor, in addition to any other remedy Lessor may have, all damages Lessor may incur by reason of Lessee's default, including the cost of recovering the Leased Property.

20.    <u>Holding Over</u>. Any holding over by the Lessee after the expiration of the term hereof,  with the consent of the Lessor, provided said consent is express and in writing, shall extend the term of the Lease to a new date by written agreement of the Lessor and Lessee.

21.    <u>DISCLAIMER OF WARRANTIES</u>. LESSORS MAKES NO WARRANTY OF (I) THE SOIL'S SUITABILITY FOR GROWING AUTHORIZED CROPS; (ii) THE ABSENCE OF DELETERIOUS ORGANISMS OR CHEMICALS IN THE SOIL, AND (iii) THE PREVAILING CLIMATIC CONDITIONS AND/OR OTHER FACTORS THAT MIGHT PERTAIN TO THE ABILITY TO SUCCESSFULLY PRODUCE CROPS. LESSEE HAS MADE ITS OWN INDEPENDENT INVESTIGATION OF THE SUITABILITY OF THE GROWING CONDITIONS.

22.    <u>Condemnation</u>. Lessor shall give Lessee Notice that a taking has been threatened, within Thirty (30) days after it receives any information that such a taking has been threatened.

a.    <u>Effect on Rights and Obligations</u>.  If, during the term of the Lease or the period between the date of execution of this Lease and the date on which the term begins, there is any condemnation of all or part of the Leased Property, the rights and obligations of the parties shall be determined under this paragraph 22, and Rent shall not be affected or abated except as expressly provided in this paragraph 22.  In case of a taking of any part of the Leased Property as the result of the exercise of the right of eminent domain, or a sale in lieu or in anticipation of such exercise (a "Taking"), this Lease shall terminate as to the part taken on the date title vests in the condemnor, and shall continue as to the remaining part, except as otherwise provided in this Lease. If all or such a substantial part of the Leased Property is taken so that, in Lessees' reasonable opinion, there does not remain a portion of the Leased Property susceptible of economic use by Lessee, this Lease shall terminate on the date title vests in the condemnor. The condemnation award shall be allocated between Lessor and Lessee, based on the years left on the Lease Term and the costs the Lessees incurred in developing the Property and the loss of net income from the Property for the balance of the Lease Term.

b.    <u>Proration of Rent</u>.  If this Lease is terminated, then the termination shall be effective as of the date title vests in the Condemnor for the calendar year in which the Lease is terminated.

c. Should the condemnation occur within the term of the Lease, the entire Lease will be terminated and Lessee will be compensated based on the government's assessment of the improvement loss evaluated by their agency or within their jurisdiction. Lessor shall not be responsible or liable for any aspects of compensation or payments. The responsible governmental agency shall be the responsible source of compensation, if any. Should there be any disagreements or disputes with any related matters concerning compensation, Lessee shall deal directly with the condemnor.

23. <u>Force Majeure</u>. A Party will not be considered to be in breach or default of its obligations under this Lease to the extent that performance of such obligations or its efforts to cure are delayed, hindered, adversely affected or prevented due to a Force Majeure Event (in each case, whether or not the applicable Force Majeure Event was foreseeable as of the Effective Date). For purposes of this Lease, "**Force Majeure Event**" means: plague, contagion, epidemics, pandemics, outbreaks of infectious disease or any other public health crisis (including, without limitation, any measures of any governmental authority related thereto, including, without limitation, quarantine or other restrictions), fire, earthquake, flood, tornado or other acts of God and natural disasters; strikes or labor disputes; war, civil strife or other violence; any law, order, proclamation, regulation, ordinance, action, demand or requirement of any government agency or supranational agency, or any other act or condition beyond the reasonable control of a Party.

24. <u>Notices</u>. Except as otherwise expressly provided by law, any and all notices, demands, requests, exercises, and other communications required or permitted by this Lease or by law to be served on or given to either party by the other party, shall be in writing and shall be deemed duly served and given when personally delivered to the other party to whom they are directed or in lieu of such personal service, deposited into the united states mail, first class postage prepaid, addressed to the other party as follows:

Lessor:    Sukhwant S. Gill
251 Shrike Circle
Sacramento, CA 95834
Cell: (916) 997-5163
Email: shawn,gill@yahoo.com

Lessee:    Capital Farms Inc
1973 Hardial Dr
Yuba City, CA 95993
Cell: ((530) 681-3112
E-mail: gurmejgill@yahoo.com

Either party may change its address for the purpose of this paragraph by giving written notice of the change to the other party in the manner provided in this paragraph.

25. <u>Amendments to the Lease</u>. This Lease may be amended only by a writing signed by the parties against whom or against whose successors and assigns enforcement of the change is sought.

26.     Effect of Partial Invalidity. If any term of provision of this Lease or any application thereof shall be held invalid or unenforceable the remainder of this Lease and any application of the terms and provision shall not be affected thereby, but shall remain valid and enforceable pursuant to the terms of this Lease or California law.

27.     Waiver. The waiver of any breach of any of the provisions of this Lease by either party hereto shall not constitute a continuing waiver or a waiver of any subsequent breach by either party, either of the same or any other provision of this Lease.

28.     Time and Specific Performance of the Essence. Time and specific performance are of the essence of this Lease and of each and every agreement contained herein, and each provision is made and declared to be a material, necessary, and essential part of this Lease.

29.     Governing Law. This Lease shall be governed by and construed in accordance with the laws of the State of California. The Property subject of this Lease is situated in Fresno County, the parties executing this agreement acknowledge that this agreement is being executed in Fresno County, and both parties agree by their signatures below that in the event of any litigation to enforce the terms and conditions of this Lease that Fresno County shall be the County of jurisdiction and venue.

30.     Attorneys' Fees and Costs.   In the event Lessor employs the services of an attorney for the purpose of enforcing this Lease or for any relief against the Lessee with respect to the Leased Premises and Lessor prevails with respect thereto, the Lessee agrees to pay any reasonable attorney's fees as are incurred by the Lessor and in the event the Lessor brings suit and said suit is prosecuted to judgment, and such judgment is in favor of Lessor, the Court shall fix the amount of such fees and the same shall become a part of the judgment.  In the event the Lessor is made a party to any litigation resulting from any transaction, act, or omission of the Lessee with respect to Lessee's performance of this Agreement or with respect to the Leased Premises, then the Lessee agrees to defend such suit and hold the Lessor harmless of and from such suit and all claims referred to therein, and will reimburse the Lessor for all reasonable attorney's fees and expenses incurred by Lessor in connection with such suit or claim.  In the event the Lessee is the prevailing party in the event of litigation between the Lessor and Lessee, then the Lessee shall be awarded its reasonable attorneys fees and costs.

31.     Right to Record Memorandum of Lease. For purposes of disclosing this Lease, the Lessor and Lessee agree that a memorandum or abstract of this Lease (See Exhibit "B" attached hereto) will be recorded by the Lessees after execution of this Lease.

32. Right of First Refusal. Lessor grants to Lessee a Right of First Refusal to purchase this Property, composing approximately 152 +/- acres, in the event Lessor elects to sell said Leased Property to third parties.  In the event Lessor elects, at any time, to sell the Leased Property, then Lessee shall have the right to purchase the Leased Property for the same price as Lessor is willing to sell to a third party.

If Lessee elects to exercise his Right of First Refusal and acquire the Leased Property on the same terms and conditions as the third party purchaser, then upon Lessor receiving an offer

from a third party which Lessor will likely accept, Lessor shall promptly inform Lessee in writing of said offer and Lessee shall have thirty (30) days from the date of receiving said offer to exercise his Right of First Refusal by accepting the purchase agreement and proceed with closing a purchase transaction on the same terms and conditions as set forward in the purchase agreement.

33.   <u>Termination of Lease</u>.   Immediately upon termination of this Lease, the Lessee shall properly execute and acknowledge and deliver to Lessor within thirty (30) days of request therefor, such documents as the Lessor requires to clear title of the Leased Property from the Lease and any crop and improvement security documentation including but not limited to a release, quitclaim deed, release of abstract of Lease, UCC termination notices in recordable form and any other documents required by the title company or Lessor to verify the termination of this Lease. Upon termination of this Lease the Lessee shall have thirty (30) days to remove all the Lessee's improvements to the Leased Property other than real property improvements such as vines or trees.

34.   <u>Entire Lease</u>. This Lease including its Exhibits attached hereto, contains the entire agreement between the parties relating to this Lease. Any oral representations or modifications concerning this Lease shall be of no force and effect excepting a subsequent modification in writing signed by the parties to be charged.

35.   <u>Mediation/Arbitration</u>.   The Lessor and Lessee agree that any and all disputes respecting their obligations and rights under this Lease Agreement shall be resolved first via mediation and, if mediation is not successful, then by binding arbitration utilizing an arbitrator agreed to by both Lessor and Lessee.

36.   <u>Review by Legal Counsel</u>. The Lessor and Lessee agree that they have had separate legal counsel review this agreement and the other related documents and have had their right and obligations fully explained to them via said separate counsel.

**LESSOR:**

SUKHWANT S GILL

By: _____   Date: June 24, 2022
   Sukhwant S. Gill

**LESSEE:**

By: _____   Date: June 24, 2022
   Capital Farms Inc / Gurmej S. Gill

# EXHIBIT

# I

# AGRICULTURAL SUB-LEASE

This Agricultural Sub-Lease ("Lease") is made and entered into on this First day July 1, 2020, at Pleasant Grove, California by SUTTER LAND LLC (hereinafter "Lessor") and CAPITAL FARMS INC (hereinafter "Lessee").

## RECITALS

WHEREAS Lessor is the owner of certain farm land real property, commonly referred to as "The Baseline Ranch", located in Placer County and composed of 157 +/- acres of farm land which is planted to almonds. It is composed of one parcel, identified as Assessor's Parcel Numbers: 017-130-051 and legally described in Exhibit "A" which, along with property descriptions, is attached to this Lease and incorporated herein by this reference (hereinafter "the Leased Property");

WHEREAS there is 1 well located on the Leased Property.

WHEREAS the Lessee desires to lease the Leased Property pursuant to this lease as set forth herein;

NOW, THEREFORE, the Lessor and Lessee agree as follows:

## AGRICULTURAL LEASE

The following constitutes the terms and conditions of the Lease including the above Recitals which are included by reference.

1.    <u>Leased Property</u>. Lessor hereby exclusively leases to Lessee and Lessee exclusively hires from Lessor that certain agricultural real property in the County of Placer, State of California composed of approximately 157 +/- acres identified by the Fresno County Tax Assessor's Office as APN: 017-130-051 , legally described on Exhibit A attached hereto and incorporated herein.

2.    <u>Water - Pump and Well</u>: There is 1 well on the Leased Property. Lessor is also the owner of 157 acres, planted to almonds. The well on the Leased Property is used to irrigate the Leased Property. The Lessor and Lessee will enter a pump, water and well sharing agreement for the joint use of these pumps and wells on the Leased Property and the Adjacent Property. The Leased Property is in the Consolidated Irrigation District and eligible to receive water from the District.

3.    <u>Term of the Lease</u>. The initial term of this Lease term shall be 5 year, commencing on July 1, 2020 and terminating on December 31, 2025 unless sooner terminated as provided herein.

4.    <u>Extensions of the Lease Term</u>. Included in this Lease are two one-year options to extend the Lease term. At the end of the 5 year Lease term, December 31, 2025, the Lessee shall have an option to extend the Lease term an additional one-year period on the same terms and

conditions and, at the end of that first one-year Lease extension, the Lessee shall have an additional option to extend the Lease term an additional one year period on the same terms and conditions, with the final termination being December 31, 2026. Lessee shall give notice to Lessor of intent to exercise its options to extend the lease by December 31, 2026 for the first option and by December 31, 2027 for the second option.

  5. <u>Rent for the Leased Property</u>. The rent for the property shall be set forward as follows:

    a. The first 5-year lease payment shall be minimum rent equal to debt service,

    b. The 6th year lease payment (if extended) shall be minimum rent equals debt service plus $10,000.00, due December 31, 2026.

    c. The 7th year lease payment (if extended) shall be minimum rent quals debt service plus $15,000.00 due December 31, 2027.

  6. <u>Compliance</u>. Lessee shall, at Lessee's sole cost and expense, comply with any and all laws, ordinances, rules, regulations, requirements and orders present or future and any federal, state, county or municipal government regulations which may in any way apply to the use, maintenance and production of crops on the Leased Property or the sale or disposition of those crops.

  7. <u>Operating Costs</u>. During the term of this Lease, the Lessee shall be responsible for and pay for all growing and harvesting costs in connection with Lessee's operations upon the Leased Property including but not limited to, farming costs, production costs, costs of tools and labor, electricity and other utilities.

  8. <u>Taxes and Assessments</u>. The Lessor shall be responsible for land and current structures, pumps wells, etc. , and county property taxes. . Any irrigation district taxes, assessments and water costs will be paid by Lessee. The Lessee agrees to keep said property taxes paid current each year.

  9. <u>Insurance</u>. Lessee shall maintain on the Leased Property during the Lease term at Lessee's expense, general liability insurance and adequate workman's compensation insurance. The limits of general liability policy are to be in amounts not less than Two Million Dollars ($2,000,000) for any one person injured, or less than One Million Dollars ($1,000,000) for property damage. Lessee shall furnish proof of said insurance to Lessor within thirty (30) days of the execution hereof and shall name Lessor as an additional insured on such policy(s) and the policy(s) shall provide that the carrier shall provide Lessor at least 30 days prior written notice of any termination or policy modification. The Lessee shall annually furnish to Lessor copies of certificates of workers compensation and general liability insurance, with Lessor as additional insured.

  10. <u>Improvements and Mechanics Liens</u>. During the term of the Lease and respecting the Lessee constructing improvements on the Leased Property then in such event the Lessee shall

pay for all materials adjoined or fixed to said Leased Property and pay in full all persons who perform labor upon said Leased Property at the Lessee's instance and request. Lessee shall not permit or suffer any mechanic or materialman's liens of any kind or nature to be enforced against the Leased Property for any work done, or materials furnished thereon at Lessees' instance or request. Lessee agrees to indemnify and hold Lessor harmless against any and all such liens. Lessor shall have the right to pay any amount to obtain releases of any such liens, or to defend any action brought thereon, and to pay any judgment entered therein. Lessee shall be liable to Lessors for all costs, damages and reasonable attorneys fees and any amounts expended in defending any proceeding, or in the payment of any of said liens or any judgment obtained therefor. Lessor may post and maintain upon the Leased Property notices of non-responsibility as provided by law.

11. <u>Waste and/or Nuisance</u>. During the term of the Lease the Lessee shall not commit or permit others to commit any waste upon the Leased Property. The Lessee shall not maintain, commit, or permit the maintenance or commission of any nuisances as defined in Civil Code Section 3479 on the Leased Property. Furthermore, the Lessee shall not use or permit the use of the Leased Property for any unlawful purpose. Lessee agrees that any waste or nuisance will be cleaned up within five (5) days from receiving notice from Lessor.

12. <u>Crop Financing</u>. Lessee shall have the right to mortgage or hypothecate only the growing crops grown and produced upon the Leased Premises during the Lease. The land shall not be encumbered, only the growing crops. Lessor reserves all rights and the right to exercise all rights and remedies conferred upon Lessor under the terms of this Lease and under the laws of the State of California. Lessee shall notify Lessor at the time of recording any lien on the crops. The Lessee does not have the right to record any deeds of trust on the Lease Property.

13. <u>Chemicals, Hazardous Material</u>.

a. <u>Chemicals</u>. Lessee agrees not to use pesticides that will have a residual effect beyond the existence of the Lease without the prior written consent of Lessor. No poison, herbicide, pesticide, fertilizer or other chemical or substance (hereinafter "Chemicals"), other than those approved by the United States Department of Agriculture, and by the California Department of Agriculture, shall be applied to the Leased Property or crops growing thereon. Any and all of such Chemicals shall be applied in strict compliance with, and only at the time or times set forth on the label or manufacturer's instructions. No experimental Chemicals shall be applied to the Leased Property, or the crops growing thereon, without the prior written consent of Lessor. Lessee shall make and keep pertinent records of all such Chemicals used or applied on the Leased Property, including identity, dates of, and rates of application during the term hereof and shall make them available to Lessor and Lessor's agents and assigns, at all reasonable times, for inspection and copying. All Chemicals which Lessee may apply to the Leased Property, or crops growing thereon, shall be used and applied at Lessee's sole cost, risk and liability, and Lessee does hereby agree to indemnify, defend, hold and save Lessor, its successors and assigns and their agents and employees free, clear and harmless from and against any and all claims, demands, damages or liabilities of whatever kind, character or nature which in any manner arise out of or result from any use or application of any of such Chemicals.

b. <u>Hazardous Material</u>.

(1) As used herein, the term "Hazardous Material" means any hazardous or toxic substance, material, or waste which is or becomes regulated by any local, state or federal governmental authority, the State of California, or the United States government.

(2) Lessor represents and warrants that to the best of its knowledge the Leased Property is as of the day before Lessee came into possession, in compliance with all laws and regulations then in existence regulating the handling, transportation, storage, treatment use and disposition of Hazardous Material.

(3) Lessee shall not cause or permit any Hazardous Material to be brought upon or used in or about the Leased Property by Lessee, its agents, contractors or invitees without the prior consent of Lessor, which shall not be unreasonably withheld by Lessor conditioned upon Lessee's demonstration to Lessor's reasonable satisfaction that such Hazardous Material is necessary or useful to Lessee's farming effort and will be used and stored in compliance with all laws, regulations and ordinances regulating such Hazardous Material. Notwithstanding the above, Lessee shall not be required to obtain any prior written consent from Lessor for the use of any Chemicals actually consumed or utilized in the farming of the Leased Property in compliance with all then existing applicable laws, regulations and ordinances.

14. Lessees Acceptance of Property Condition. Subject to Lessee's due diligence and inspection pursuant to this Paragraph 14 and Paragraph 15, Lessee accepts the Leased Property, as well as the improvements thereon and facilities appurtenant thereto in their present "As Is" condition. The Lessee agrees and represents to Lessor, that the Leased Property has been inspected by Lessee and Lessee has been assured by means independent of Lessor or Lessor's agents of the truth of all facts material to this Lease and that the Leased Property is being leased by Lessee as a result of its inspection and investigation and not as a result of any representations by Lessors or Lessors' agents. Lessees agree to indemnify and save the Lessors harmless of and from all claims and demands of every person, firm, or corporation for injuries to persons, wrongful death, or damage to property which may arise with respect to the Leased Premises, the condition thereof, or any act or mission occurring thereon during the term of this Lease, and shall carry public liability and property damage insurance as set forth above.

15. Inspections by Lessors and Lessees. During the term of the Lease, the Lessees shall permit the Lessors or Lessors' agents, or employees to enter the Leased Property at reasonable times to determine whether the Lessees are complying with the terms of this Lease and for the purpose of doing other lawful acts that may be necessary to protect the Lessors' interest in the Leased Property.

16. Indemnity. Lessee shall indemnify, hold harmless and defend Lessor, its employees, agents and successors and assigns from all liabilities, damages, claims, penalties or actions including attorneys' fees and costs, arising from any death, injury or damage to any person, or property of any kind while upon or in any way connected with the Leased Property or Lessee's farming operation including, but not limited to the Lessee's farming expenses. Lessee's obligations to indemnify, hold harmless and defend under this paragraph shall include, without

limitation (I) all consequential damages, directly or indirectly arising out of the use, generation, storage, or disposal of Hazardous Material and/or chemicals on the Leased Property by Lessee or any of its agents or employees, and (ii) the cost of any required or necessary repair, cleanup, or detoxification and the preparation of any required plans, whether such action is required or necessary during the term of this Lease or subsequent thereto to the full extent that such action is attributable, directly or indirectly, to the presence or use, generation, storage, release, threatened release, or disposal of Hazardous Material by any person on the Leased Property during the term of this Lease.

17. Assignment. The Lessee shall have a right to assign or transfer all or any portion of the Lease only with the approval of the Lessor. Lessee will provide financial and other information about the proposed assignee to Lessor. Lessee shall have the right to assign this Lease to an entity owned and controlled 100% by the Lessee. Lessee shall have a right to assign or transfer all or any portion of the Lease only with the written approval of the Lessor. Lessee will provide to Lessor financial and other pertinent information regarding the proposed assignee. Lessee will remain fully responsible of the Lease, regardless of an assignment or transfer of the Lease.

18. Acts Constituting Default. Any or all of the following actions shall constitute a default of this Lease if Lessee, upon 30 days prior written notice of default, fails to cure or initiate a cure and pursue to completion (where the cure will take more than 30 days), within such 30 day period:

a. Use of the Premises for any purpose other than as authorized in this Lease;

b. Default in the payment of rent or any other sums owing when due;

c. Abandonment or vacation by Lessee from the Premises;

d. A default in the performance of any of the terms, covenants, and conditions hereof;

e. Filing of voluntary petition in bankruptcy or adjudication as a bankrupt in any involuntary bankruptcy proceeding; or

f. Appointment of a receiver or judicial trustee or custodian for Lessee, or if any lien or any writ of attachment, garnishment or execution shall be levied upon Lessee's rights or interests under this Lease.

19. Remedies Upon Default. In the event of a default of this Lease, and in addition to all other rights and remedies Lessor may have at law, in equity or otherwise, Lessor shall have the option to do any or all of the following:

a. Reentry. After expiration of the 30 day notice period, immediately reenter and remove all persons and property from the Leased Property, storing the personal property in a public warehouse or elsewhere at the sole cost and expense of and for the account of Lessee. No such reentry or taking possession of the Leased Property by Lessor shall be construed as an election on Lessor's part to terminate this Lease unless a written notice of such intention is given by Lessor to Lessee.

b. <u>Collection of Rent</u>. To collect by suit or otherwise, pursuant to the provisions of section 1951.4 of the California Civil Code, each installment of rent or other sum as it becomes due hereunder, or to enforce, by suit or otherwise, any other term or provision hereof on the part of Lessee required to be kept or performed, it being specifically agreed that all unpaid installments of rent or other sums shall bear interest at the highest rate authorized by law from the due date thereof until paid.

c. <u>Termination of Lease</u>. After the expiration of the 30 day notice period, termination of this Lease, in which event Lessee shall immediately surrender possession of the Leased Property, and pay to Lessor, in addition to any other remedy Lessor may have, all damages Lessor may incur by reason of Lessee's default, including the cost of recovering the Leased Property.

20. <u>Holding Over</u>. Any holding over by the Lessee after the expiration of the term hereof, with the consent of the Lessor, provided said consent is express and in writing, shall extend the term of the Lease to a new date by written agreement of the Lessor and Lessee.

21. <u>DISCLAIMER OF WARRANTIES</u>. LESSORS MAKES NO WARRANTY OF (I) THE SOIL'S SUITABILITY FOR GROWING AUTHORIZED CROPS; (ii) THE ABSENCE OF DELETERIOUS ORGANISMS OR CHEMICALS IN THE SOIL, AND (iii) THE PREVAILING CLIMATIC CONDITIONS AND/OR OTHER FACTORS THAT MIGHT PERTAIN TO THE ABILITY TO SUCCESSFULLY PRODUCE CROPS. LESSEE HAS MADE ITS OWN INDEPENDENT INVESTIGATION OF THE SUITABILITY OF THE GROWING CONDITIONS.

22. <u>Condemnation</u>. Lessor shall give Lessee Notice that a taking has been threatened, within Thirty (30) days after it receives any information that such a taking has been threatened.

a. <u>Effect on Rights and Obligations</u>. If, during the term of the Lease or the period between the date of execution of this Lease and the date on which the term begins, there is any condemnation of all or part of the Leased Property, the rights and obligations of the parties shall be determined under this paragraph 22, and Rent shall not be affected or abated except as expressly provided in this paragraph 22. In case of a taking of any part of the Leased Property as the result of the exercise of the right of eminent domain, or a sale in lieu or in anticipation of such exercise (a "Taking"), this Lease shall terminate as to the part taken on the date title vests in the condemnor, and shall continue as to the remaining part, except as otherwise provided in this Lease. If all or such a substantial part of the Leased Property is taken so that, in Lessees' reasonable opinion, there does not remain a portion of the Leased Property susceptible of economic use by Lessee, this Lease shall terminate on the date title vests in the condemnor. The condemnation award shall be allocated between Lessor and Lessee, based on the years left on the Lease Term and the costs the Lessees incurred in developing the Property and the loss of net income from the Property for the balance of the Lease Term.

b. <u>Proration of Rent</u>. If this Lease is terminated, then the termination shall be effective as of the date title vests in the Condemnor for the calendar year in which the

**Lease is terminated.**

c.      Should the condemnation occur within the term of the Lease, the entire Lease will be terminated and Lessee will be compensated based on the government's assessment of the improvement loss evaluated by their agency or within their jurisdiction. Lessor shall not be responsible or liable for any aspects of compensation or payments. The responsible governmental agency shall be the responsible source of compensation, if any. Should there be any disagreements or disputes with any related matters concerning compensation, Lessee shall deal directly with the condemnor.

23.     Force Majeure. A Party will not be considered to be in breach or default of its obligations under this Lease to the extent that performance of such obligations or its efforts to cure are delayed, hindered, adversely affected or prevented due to a Force Majeure Event (in each case, whether or not the applicable Force Majeure Event was foreseeable as of the Effective Date). For purposes of this Lease, "**Force Majeure Event**" means: plague, contagion, epidemics, pandemics, outbreaks of infectious disease or any other public health crisis (including, without limitation, any measures of any governmental authority related thereto, including, without limitation, quarantine or other restrictions), fire, earthquake, flood, tornado or other acts of God and natural disasters; strikes or labor disputes; war, civil strife or other violence; any law, order, proclamation, regulation, ordinance, action, demand or requirement of any government agency or supranational agency, or any other act or condition beyond the reasonable control of a Party.

24.     Notices. Except as otherwise expressly provided by law, any and all notices, demands, requests, exercises, and other communications required or permitted by this Lease or by law to be served on or given to either party by the other party, shall be in writing and shall be deemed duly served and given when personally delivered to the other party to whom they are directed or in lieu of such personal service, deposited into the united states mail, first class postage prepaid, addressed to the other party as follows:

Lessor:     Sutter Land LLC
            130 Shrike Circle
            Sacramento, CA 95834
            Cell: (916) 997-5163
            Email: shawn,gill@yahoo.com

Lessee:     Capital Farms Inc
            Gurmej S. Gill
            1973 Hardial Dr
            Yuba City, CA 95993
            Cell: (530) 681-3112
            E-mail: gurmejgill@yahoo.com

Either party may change its address for the purpose of this paragraph by giving written notice of the change to the other party in the manner provided in this paragraph.

25. <u>Amendments to the Lease</u>. This Lease may be amended only by a writing signed by the parties against whom or against whose successors and assigns enforcement of the change is sought.

26. <u>Effect of Partial Invalidity</u>. If any term of provision of this Lease or any application thereof shall be held invalid or unenforceable the remainder of this Lease and any application of the terms and provision shall not be affected thereby, but shall remain valid and enforceable pursuant to the terms of this Lease or California law.

27. <u>Waiver</u>. The waiver of any breach of any of the provisions of this Lease by either party hereto shall not constitute a continuing waiver or a waiver of any subsequent breach by either party, either of the same or any other provision of this Lease.

28. <u>Time and Specific Performance of the Essence</u>. Time and specific performance are of the essence of this Lease and of each and every agreement contained herein, and each provision is made and declared to be a material, necessary, and essential part of this Lease.

29. <u>Governing Law</u>. This Lease shall be governed by and construed in accordance with the laws of the State of California. The Property subject of this Lease is situated in Fresno County, the parties executing this agreement acknowledge that this agreement is being executed in Fresno County, and both parties agree by their signatures below that in the event of any litigation to enforce the terms and conditions of this Lease that Fresno County shall be the County of jurisdiction and venue.

30. <u>Attorneys' Fees and Costs</u>. In the event Lessor employs the services of an attorney for the purpose of enforcing this Lease or for any relief against the Lessee with respect to the Leased Premises and Lessor prevails with respect thereto, the Lessee agrees to pay any reasonable attorney's fees as are incurred by the Lessor and in the event the Lessor brings suit and said suit is prosecuted to judgment, and such judgment is in favor of Lessor, the Court shall fix the amount of such fees and the same shall become a part of the judgment. In the event the Lessor is made a party to any litigation resulting from any transaction, act, or omission of the Lessee with respect to Lessee's performance of this Agreement or with respect to the Leased Premises, then the Lessee agrees to defend such suit and hold the Lessor harmless of and from such suit and all claims referred to therein, and will reimburse the Lessor for all reasonable attorney's fees and expenses incurred by Lessor in connection with such suit or claim. In the event the Lessee is the prevailing party in the event of litigation between the Lessor and Lessee, then the Lessee shall be awarded its reasonable attorneys fees and costs.

31. <u>Right to Record Memorandum of Lease</u>. For purposes of disclosing this Lease, the Lessor and Lessee agree that a memorandum or abstract of this Lease (See Exhibit "B" attached hereto) will be recorded by the Lessees after execution of this Lease.

32. <u>Right of First Refusal</u>. Lessor grants to Lessee a Right of First Refusal to purchase this Property, composing approximately 157 +/- acres, in the event Lessor elects to sell said Leased Property to third parties. In the event Lessor elects, at any time, to sell the Leased Property, then Lessee shall have the right to purchase the Leased Property for the same price as Lessor is willing to sell to a third party.

If Lessee elects to exercise his Right of First Refusal and acquire the Leased Property on the same terms and conditions as the third party purchaser, then upon Lessor receiving an offer from a third party which Lessor will likely accept, Lessor shall promptly inform Lessee in writing of said offer and Lessee shall have thirty (30) days from the date of receiving said offer to exercise his Right of First Refusal by accepting the purchase agreement and proceed with closing a purchase transaction on the same terms and conditions as set forward in the purchase agreement.

33.  <u>Termination of Lease</u>.  Immediately upon termination of this Lease, the Lessee shall properly execute and acknowledge and deliver to Lessor within thirty (30) days of request therefor, such documents as the Lessor requires to clear title of the Leased Property from the Lease and any crop and improvement security documentation including but not limited to a release, quitclaim deed, release of abstract of Lease, UCC termination notices in recordable form and any other documents required by the title company or Lessor to verify the termination of this Lease. Upon termination of this Lease the Lessee shall have thirty (30) days to remove all the Lessee's improvements to the Leased Property other than real property improvements such as vines or trees.

34.  <u>Entire Lease</u>. This Lease including its Exhibits attached hereto, contains the entire agreement between the parties relating to this Lease. Any oral representations or modifications concerning this Lease shall be of no force and effect excepting a subsequent modification in writing signed by the parties to be charged.

35.  <u>Mediation/Arbitration</u>.  The Lessor and Lessee agree that any and all disputes respecting their obligations and rights under this Lease Agreement shall be resolved first via mediation and, if mediation is not successful, then by binding arbitration utilizing an arbitrator agreed to by both Lessor and Lessee.

36.  <u>Review by Legal Counsel</u>. The Lessor and Lessee agree that they have had separate legal counsel review this agreement and the other related documents and have had their right and obligations fully explained to them via said separate counsel

**LESSOR:**

Sutter Land, LLC

By: _____     Date: July 1, 2020

**LESSEE:**

Capital Farms INC
Gurmej S. Gill

By: _____     Date: July 1, 2020

# EXHIBIT

# J

RECORDING REQUESTED BY:

SYNRGO
Placer Title Company
Branch Number: 301

WHEN RECORDED MAIL TO:

Metropolitan Tower Life Insurance Company, a
Nebraska Corporation
c/o 205 E. River Park Circle Ste#430
Fresno, CA 93720

```
PLACER, County Recorder
RYAN RONCO
DOC- 2020-0027950-00
AGENT - SPL EXPRESS
FRIDAY, MAR 27, 2020 02:28 PM
MIC    $12.00| AUT    $19.00| SBS    $15.00
ERD     $4.00| SB2   $225.00| REC    $51.00
ADD     $0.00

Ttl Pd    $326.00    Rcpt # 02873933
                     CLKBZQJ9T2/KO/4-16
```

| Order No: P-365957 | APN: 017-130-051-000 |
|---|---|

## Deed of Trust, Assignment of Rents, Security Agreement
## And Fixture Filing

(Please fill in document title(s) on this line)

[ ] Exempt from fee per GC27388.1(a)(2) due to being recorded in connection with concurrent transfer that is subject to the imposition of documentary transfer tax, or,

[X] Exempt from fee per GC27388.1(a)(1) due to the maximum fees being paid on documents in this transaction, or,

[ ] Partially exempt from fee per GC27388.1(a)(1). Only $75.00 to be charged as $150.00 in fees has been paid on documents recorded immediately prior hereto or,

[ ] Exempt from fee per GC27388.1(a)(2) due to being recorded in connection with concurrent transfer that is a residential dwelling to an owner-occupier, or,

[ ] Exempt from the fee per GC27388.1 (1); Not related to real property, or,

[ ] Exempt from fee under GC27388.1(a)(1) for the following reasons:

NOTE:  The following exemptions may not be acceptable for use in all counties:

[ ] Exempt from fee per GC27388.1 due to being recorded in connection with a transfer that was subject to documentary transfer tax which was paid on document recorded previously on  (date) as document number  of Official Records, or,

[ ] Exempt from fee per GC27388.a due to the maximum fees having been paid on documents in the transaction(s) recorded previously on  (date) as document number(s)  of Official Records, or,

[ ] Partially exempt from fee per GC27388.1.  Only $75.00 to be charged as $150.00 in fees having been paid on documents in this transaction(s) recorded previously on  (date) as document number(s)  of Official Records, or,

[ ] Exempt from fee per GC27388.1 due to it being recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier.  The recorded document transferring the dwelling to the owner-occupier was recorded on  (date) as document number(s) .

THIS PAGE ADDED TO PROVIDE SENATE BILL 2 EXEMPTION INFORMATION
(Additional recording fee applies)

_____          Print Name: _____Date: _____
          (Signature)

RECORDING REQUESTED BY:
Matthew Ellis
Downey Brand
621 Capitol Mall
18th Floor
Sacramento, CA 95814
(916) 520-5495

WHEN RECORDED MAIL TO:
Metropolitan Tower Life Insurance Company,
c/o MetLife Investment Management, LLC
205 E River Park Circle, Suite 430
Fresno, CA 93720
Attn: Loan Manager, Western Region

_____
Space above this line for Recorder's Use

Bains
Loan No: 200617

## DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT, AND FIXTURE FILING

THIS DEED OF TRUST ALSO CONSTITUTES A FINANCING STATEMENT FILED AS A FIXTURE FILING UNDER THE UCC

SEE ARTICLE 7 FOR ADDRESS OF TRUSTOR, TRUSTEE AND BENEFICIARY

This deed of trust is dated as of March 24, 2020, and is by LAKHBIR S. BAINS ("**Trustor**"), whose address is 417 Mace Blvd J338, Davis, California 95618, to and in favor of LEON A. MORENO, a resident of the state of California, as trustee ("**Trustee**"), for the benefit of METROPOLITAN TOWER LIFE INSURANCE COMPANY, a Nebraska corporation ("**Beneficiary**").

Beneficiary has agreed to make a loan in the original principal sum of $2,522,000.00 (the "**Loan**") to Trustor and NAVJOT KAUR BAINS ("**Navjot**") (Trustor and Navjot are individually and collectively, "**Borrower**") under the terms and conditions of the Promissory Note by Borrower in favor of Beneficiary dated as of the date of this deed of trust (the "**Note**").

### ARTICLE 1 – GRANT

To secure repayment of the indebtedness evidenced by the Note and payment and performance of all other Secured Obligations (defined herein), Trustor irrevocably and unconditionally, grants, bargains, sells, and conveys to Trustee, in trust, for the benefit of Beneficiary, WITH POWER OF SALE, all of Trustor's estate, right, title and interest which Trustor now has or may later acquire in the following, wherever located, and whether constituting real estate or personal property (individually and collectively, the "**Property**"): (1) the real estate and any interest in the real estate located in Placer County, California, and described in EXHIBIT A (the "**Land**"); (2) buildings, structures, improvements, and fixtures now or hereafter erected on, affixed or attached to the Land, including all trellises, farm products storage and handling units and equipment, and fences, gates and loading chutes (the "**Improvements**"); (3) (A) wells, irrigation and drainage pumps, motors, pipes, windmills, frost protection equipment, center pivot irrigators, sprinklers, drip line and emitters, filters, water measurement meters and control structures and other watering and irrigation equipment; and (B) all other equipment now or hereafter affixed or installed in any manner on the Land or the Improvements or used in connection with the operation of the Property (other than rolling stock and implements customarily towed) (the "**Equipment**"); (4) easements, rights-of-way, and other rights and entitlements appurtenant to the Land or used in connection with the Land or as a means of access thereto; (5) other tenements, hereditaments and appurtenances to the Land; (6) rights to the use and enjoyment of water, whether surface or subsurface, whether riparian, appropriative, prescriptive or otherwise, and whether or not appurtenant, now or hereafter relating or available to the Land or Improvements or used in connection

1812455v2

therewith: (A) water allocations, water banking rights or interests, carryover rights, supplemental water, storage and exchange rights drainage rights, distribution rights, storage rights, delivery rights, and other water-related rights or entitlements, whether available through any public or private irrigation projects, companies, districts, agencies or otherwise, together with all shares of stock evidencing any such rights or entitlements, and all voting rights and other rights and privileges that now or hereafter may exist with respect to such stock or with respect to participation, membership, or other involvement in any such projects, companies, districts, or agencies; (B) water and water inventory in storage; (C) rights under well, pump and filter sharing agreements; and (D) all easements, permits, licenses, leases, contracts, grants, reservations and any other rights and entitlements, however created, to drill, install and maintain wells, pumps and pipeline systems, or to use, appropriate, pump, extract, receive, transport, store or transfer water ("**Water Rights**"); (7) shares, and rights under such shares, of any private water company, mutual water company, or other non-governmental entity pursuant to which Trustor or the Property may receive water and any other certificated and uncertificated securities, securities entitlements, securities accounts and commodities accounts; (8) coal, oil, gas, and other hydrocarbon substances, geothermal resources, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and estates in, under or produced from the Land and other coal, oil, gas, geothermal, and mineral interests with which any of the foregoing interests or estates are pooled or unitized and other "as-extracted collateral"; (9) timber now or hereafter standing on or cut from the Land; (10) leases, subleases, licenses and other agreements, granting a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Property, (individually and collectively, the "**Leases**"); (11) bushes, groves, trees, plants, vines or other plantings, upon or under the Land (the "**Permanent Plantings**"); (12) intellectual property rights now or hereafter held by Trustor with respect to Permanent Plantings, including all such patents, patent licenses, trademarks and trademark licenses; (13) crops growing or to be grown on or under the Land (including all such crops following severance from the Land and seed and propagative portions of plants) (the "**Crops**"); (14) permits and licenses relating or pertaining to the use or enjoyment of the Property; (15) proceeds of and any unearned premiums on any insurance policies covering the Property, including the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property ("**Insurance Claims**"); (16) all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Land or Improvements ("**Condemnation Awards**"); (17) accessions, attachments and other additions to, substitutes or replacements for, all proceeds and products of, the Property; and (18) books, records and files relating to the Property, including computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data.

## ARTICLE 2 - ASSIGNMENT OF RENTS

Trustor irrevocably and unconditionally assigns Beneficiary all rents and other benefits derived from the Leases, and all other issues, profits, royalties, bonuses, income and other proceeds of the Property, whether now due, past due or to become due, including all prepaid rents, security deposits and other supporting obligations (collectively, the "**Rents**").

Notwithstanding the provisions of this Article 2, Beneficiary confers upon Trustor a revocable license to collect and retain the Rents as they become due and payable, so long as there is no Event of Default (the "**License**"). If an Event of Default has occurred, Beneficiary may terminate the License without notice to or demand upon Trustor.

Subject to the License, Beneficiary has the right, power and authority to collect any and all Rents. Beneficiary, by its acceptance of this deed of trust does not assume any duty or obligation under the Leases.

All lessees under the Leases are hereby irrevocably authorized and notified by Trustor to rely upon and to comply with (and are fully protected in so doing) any notice or demand by Beneficiary for the payment to Beneficiary of Rents, or for the performance of any of lessees' undertakings under the Leases, and lessees shall have no right or duty to inquire as to whether any Event of Default has actually occurred or is then existing hereunder. Subject to the License, Beneficiary may notify any person that the Leases have been assigned to Beneficiary and that all Rents are to be paid directly to Beneficiary, whether or not Beneficiary has commenced or completed foreclosure of or taken possession of the Property.

1612456v2
Bains
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200617          Rev. 03.17.2017
2

Exhibits, Page 124 of 182

Beneficiary may apply all amounts received by it pursuant to this assignment to pay any of the following in such order and amounts as Beneficiary deems appropriate: (1) Secured Obligations; (2) expenses of leasing, operating, maintaining and managing the Property, including without limitation, salaries, fees, commissions and wages of a managing agent and such other employees, agents or independent contractors as Beneficiary deems necessary or desirable; (3) taxes, charges, claims, assessments, any other liens, and premiums for insurance relating to the Property that Beneficiary deems necessary or desirable; and (4) the cost of alterations, renovations, repairs or replacements, and expenses incident to taking and retaining possession of the Property.

## ARTICLE 3 – SECURITY AGREEMENT/FIXTURE FILING

Trustor grants Beneficiary a security interest in and pledges and assigns to Beneficiary all of Trustor's right, title and interest in all Property that may be characterized as personal property (the "**Personalty**"). Trustor authorizes Beneficiary to file any UCC financing statements required by Beneficiary, from time to time, to perfect Beneficiary's security interest in the Property.

The address adjacent to Trustor's signature below, (a) if Trustor is an individual, is Trustor's principal residence; (b) if Trustor is other than an individual and has only one place of business, is Trustor's principle place of business; and (c) if Trustor is anything other than an individual and has more than one place of business, is Trustor's chief executive office. The address for Beneficiary in Article 7 is its address as secured party under the Uniform Commercial Code as adopted in the Governing Law State (the "**UCC**").

This deed of trust constitutes a financing statement filed as a fixture filing under the UCC, covering any Property which now is or later may become a fixture attached to the Land or any Improvement. For this purpose, the "debtor" is Trustor, the "secured party" is Beneficiary and the collateral is the Property.

## ARTICLE 4 – SECURED OBLIGATIONS

Trustor makes the grant, conveyance, transfer and assignment in Article 1, makes the irrevocable and absolute assignment in Article 2, and grants the security interest under Article 3 to secure payment and performance of the following obligations (individually and collectively, the "**Secured Obligations**"): (1) all Obligations (as defined in the Note); (2) all obligations of Trustor under this deed of trust; (3) all modifications, amendments, extensions, and renewals, however evidenced, of any of the Secured Obligations; and (4) any of the foregoing that arises after the filing of a petition by or against Trustor under an insolvency or bankruptcy proceeding.

**Future Secured Obligations.** The Secured Obligations include future advances made by Beneficiary for any purpose, and all other future Secured Obligations. Those future advances and other future Secured Obligations, together with interest thereon, are secured by this deed of trust to the same extent as if made or incurred on the date of the execution of this deed of trust, and have priority as to third persons with or without actual notice from the time this deed of trust is filed for record as provided by law. The total amount of indebtedness secured by this deed of trust may decrease or increase from time to time. Nothing in this Section will constitute a commitment to make additional or future advances in any amount.

**General.** All persons who have or acquire an interest in the Property will be deemed to have received notice of, and will be bound by, the terms of the Note, this deed of trust and all other agreements and instruments evidencing and or securing the Loan (individually and collectively, the "**Loan Documents**"; provided, however, the Loan Documents specifically do not include the Unsecured Environmental Indemnity Agreement, dated as of the date hereof between, without limitation, Trustor and Beneficiary; that agreement, the "**Environmental Indemnity**"). The Loan Documents may include terms which permit or provide that the rate of interest on one or more of the Secured Obligations may vary from time to time. Without limitation, the Note expressly provides that Beneficiary may at its option change or adjust the interest rate as referenced therein. This deed of trust does not secure any indebtedness, liability or obligation that is expressly stated to be unsecured.

## ARTICLE 5 – WARRANTY AND COVENANTS

**Warranty of Title.** Trustor represents and warrants that, other than the exceptions to title expressly listed on a schedule of exceptions to coverage in the final commitment for title insurance or pro forma policy of title insurance accepted by Beneficiary prior to the Closing (defined in the Note), Trustor lawfully possesses

18124562
Bains
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200617      Rev. 03.17.2017
3

and holds fee simple title to all of the Land and Improvements; and that Trustor has the right, power and authority to mortgage, grant, convey and assign the Property. Trustor especially agrees and declares that the separate estate of each of them, whether vested, contingent or in expectancy, is hereby conveyed and shall be bound for the payment and performance of the Secured Obligations.

**Water Rights.** Trustor represents and warrants that the Water Rights afford the continuing, enforceable right to receive irrigation water on the Property from such sources, in such quantities and at such times and locations as has historically been available to the Property without interruption or substantially increased cost and in any event, based on current projections, sufficient to provide adequate water and/or drainage to continue the current and proposed agricultural operations on the Property

**Performance of Secured Obligations.** Trustor shall promptly pay and perform each Secured Obligation in accordance with its terms.

**Maintenance of Property.** Trustor shall: maintain and preserve all rights and privileges Trustor now has in the Property; make any repairs, renewals or replacements to keep the Property in good working condition and repair; operate the Property, whether improved pastures, orchards, groves, grazing, timber, or crop lands, in a good and husband-like manner in accordance with accepted principles of sound agricultural and forestry practices in the area in which the Land is located; take all reasonable precautions to control wind and water erosion; fertilize improved pastures, if any, where necessary to maintain a good stand of desirable grasses; protect orchards and timber, if any, by reasonable precautions against loss or damage by fire including the maintenance of appropriate fire breaks; and neither remove nor permit the removal of any oil, gas, mineral, stone, rock, clay, or gravel owned by Trustor, or any timber, buildings, top soil, or fertilizer, without the prior written consent of Beneficiary.

**Water Rights.** Trustor shall maintain the Water Rights during the term of the Loan at a level and of a nature sufficient to provide the continuing, enforceable right to receive irrigation water on the Property from such sources, in such quantities and at such times and locations as has historically been available to the Property without interruption or substantially increased cost and in any event sufficient to provide adequate water and/or drainage to continue the current and proposed agricultural operations on the Property. All existing Water Rights benefiting or available to the Property shall be maintained in full force and effect for the benefit of the Property by Trustor and applied to beneficial use so as to maintain the validity and priority of such rights. Trustor shall fully comply with, and not permit a default to occur under any water licenses, permits or delivery contracts used to provide water to the Property, and shall timely exercise all renewal or extension rights in such contracts. Trustor shall not modify, amend or terminate any Water Rights without Beneficiary's prior written consent. Trustor shall comply with the rules, regulations and ordinances of any water district, water agency or groundwater management agency in which the Property or any portion thereof is located and pay all related fees and assessments prior to delinquency. All irrigation wells and related facilities used to deliver irrigation water to any portion of the Property shall remain physically located within the boundaries of such Property or the subject of valid, enforceable easements appurtenant to the Property and encumbered hereby. If the use of any irrigation facilities or water serving the Property requires consent or the use of other property, Trustor shall maintain in effect all requisite easements or other legally enforceable and assignable rights to use such facilities and/or water to service the Property. Trustor shall notify Beneficiary if the irrigation water supply to any portion of the Property is interrupted or subject to interruption for any reason other than temporarily for routine maintenance or repairs in a manner that does not impair the operation of the Property.

**Patented and Trademarked Varieties.** Trustor shall not plant on the Land, or graft to any trees or vines on the Land, patented or trademarked varieties of trees or vines unless (1 Trustor owns the patent or trademark for such trees, vines or rootstock or a license to plant or graft such trees, vines or rootstock which is transferable to a successor owner of the Land, and (2) Trustor has, prior to such planting or grafting, provided to Beneficiary written evidence of such ownership or transferable license.

**Compliance with Applicable Law.** Trustor shall not commit or allow any act upon or use of the Property which would violate any applicable law, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property.

161245542
Bains
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200617       Rev. 03.17.2017
4

**Taxes and Assessments.** Trustor shall pay prior to delinquency all taxes, levies, charges and assessments imposed by applicable law or any public or quasi-public authority or utility company which are (or if not paid, may become) a lien on all or part of the Property or any interest in it, and any and all intangible taxes and documentary stamp taxes determined at any time to be due on or as a result of the Secured Obligations, this deed of trust or any other Loan Documents, together with any and all interest and penalties thereon (individually and collectively, "**Imposition**"). If after the date of this deed of trust, the State of California passes any law deducting from the value of Land for the purpose of taxation any lien thereon, or changing in any way the laws for the taxation of mortgages or debts secured by a mortgage for state or local purposes, or the manner of the collection of any such taxes, so as to affect this deed of trust, then within 180 days after notice by Beneficiary to Trustor, Trustor shall pay all Secured Obligations. Notwithstanding the foregoing provisions of this Section, Trustor may, at its expense, contest the validity or application of any Imposition by appropriate legal proceedings promptly initiated and conducted in good faith and with due diligence, provided that: (1) Beneficiary is satisfied that neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, or lost as a result of such contest; and (2) Trustor shall have posted a bond or furnished such other security required from time to time by Beneficiary.

**Damages and Insurance and Condemnation Awards.** Beneficiary may, at its option: (1) in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on warranty, or for damage, injury or loss to all or part of the Property, and Beneficiary may make any compromise or settlement of the action or proceeding; (2) participate in any action or proceeding relating to any Condemnation Award; and (3) join Trustor in adjusting any Insurance Claim. All insurance proceeds, Condemnation Awards, and proceeds of any other claim based on warranty, or for damage, injury or loss to the Property which Trustor may receive or be entitled to must be paid to Beneficiary. Beneficiary may apply those proceeds first toward reimbursement of all of Beneficiary's costs and expenses, including Legal Fees (defined in the Note), incurred in connection with such recovery. The balance shall, at Beneficiary's option, be applied to pay or prepay some or all of the Secured Obligations in such order and proportions as it may choose. TRUSTOR HEREBY SPECIFICALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ALL RIGHTS OF A PROPERTY OWNER GRANTED UNDER CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1265.225(A), WHICH PROVIDES FOR ALLOCATION OF CONDEMNATION AWARDS BETWEEN A PROPERTY OWNER AND A LIENHOLDER, AND ANY OTHER LAW OR SUCCESSOR STATUTE OF SIMILAR IMPORT.

**Site Visits, Observation and Testing.** Beneficiary and its agents and representatives may enter and visit the Property at any reasonable time for the purposes of observing it, performing appraisals, taking and removing soil or groundwater samples, and conducting tests on any part of it, as provided in the Environmental Indemnity, and otherwise to determine Trustor's compliance with this deed of trust.

**Prohibited Transfers.** Trustor agrees that a material factor in Beneficiary's decision to enter into the Loan Documents is the expertise, financial status and other characteristics of Trustor. Trustor shall not make or permit any Prohibited Transfer. Upon any Prohibited Transfer Beneficiary may declare all Secured Obligations to be due and payable immediately. "**Prohibited Transfer**" means: (1) any sale, contract to sell, conveyance, encumbrance, pledge, mortgage, or other transfer of all or any material part or interest of the Property, whether voluntary, involuntary, by operation of law or otherwise; provided, however, Trustor may sell or dispose of fixtures and Equipment in the ordinary course of their business so long as such items are replaced with items of equal or greater value and utility; (2) if Trustor is a corporation, any transfer or transfers of shares of more than ten percent (or such other portion, if any, permitted under the Note) of the voting power or the direct or indirect beneficial ownership of Trustor, on a cumulative basis, or any dissolution of the corporation; (3) if Trustor is a partnership, withdrawal or removal of any general partner, dissolution of the partnership under applicable law, or any transfer or transfers of more than ten percent (or such other portion, if any, permitted under the Note) of the partnership interests, on a cumulative basis; (4) if Trustor is a limited liability company, withdrawal or removal of any manager or managing member, termination of the limited liability company or any transfer or transfers of more than ten percent (or such other portion, if any, permitted under the Note) of the voting power or the ownership of the economic interest in the Trustor, on a cumulative basis; or (5) if Trustor is a trust, withdrawal or removal of any trustee or revocation of the trust.

181245542
Bains
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200617                                    Rev. 03.17.2017
5

**Prohibited Transfer Rate.** If there is a Prohibited Transfer, Beneficiary may deem the principal balance of the Loan and, to the extent permitted by applicable law, all other Obligations, increase at the Contract Rate (as defined in the Note) by 2.000% per annum, retroactive to the date of the Prohibited Transfer. Beneficiary's rights under this Section are an option available to Beneficiary, and unless elected by Beneficiary, a Prohibited Transfer will constitute an Event of Default and all Obligations will bear interest at the Default Rate (as defined in the Note).

**Compensation and Reimbursement of Costs and Expenses.** Trustor shall pay (1) for any services rendered in connection with this deed of trust; (2) all of Trustee and Beneficiary's costs and expenses incurred in rendering any such services; and (3) all costs, expenses and other advances incurred or made by Trustee or Beneficiary in an effort to enforce the terms of this deed of trust or protect the Property, whether any lawsuit is filed or not, including any bankruptcy or other voluntary or involuntary proceeding, in or out of court, or in defending any action or proceeding arising under or relating to this deed of trust, including Legal Fees, and costs of any Foreclosure Sale. If Beneficiary chooses to dispose of Property through more than one Foreclosure Sale, Trustor must pay all costs, expenses or other advances incurred by Trustee or Beneficiary in each of those Foreclosure Sales.

**Indemnification.** TRUSTOR SHALL INDEMNIFY TRUSTEE AND BENEFICIARY AGAINST AND SHALL HOLD THEM HARMLESS FROM ALL LOSSES, DAMAGES, LIABILITIES, CLAIMS, CAUSES OF ACTION, JUDGMENTS, COURT COSTS, LEGAL FEES, COST OF EVIDENCE OF TITLE, COST OF EVIDENCE OF VALUE, AND OTHER COSTS AND EXPENSES WHICH EITHER OF THEM MAY SUFFER OR INCUR: (1) IN PERFORMING ANY ACT REQUIRED OR PERMITTED BY THIS DEED OF TRUST OR ANY OF THE OTHER LOAN DOCUMENTS OR BY LAW; (2) BECAUSE OF ANY FAILURE OF TRUSTOR TO PAY OR PERFORM ANY OF THE SECURED OBLIGATIONS; OR (3) BECAUSE OF ANY ALLEGED OBLIGATION OF OR UNDERTAKING BY TRUSTEE AND BENEFICIARY TO PERFORM OR DISCHARGE ANY OF THE REPRESENTATIONS, WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN ANY DOCUMENT RELATING TO THE PROPERTY (OTHER THAN SUCH WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN THE LOAN DOCUMENTS). THIS AGREEMENT BY TRUSTOR TO INDEMNIFY TRUSTEE AND BENEFICIARY SURVIVES THE RELEASE AND CANCELLATION OF ANY OR ALL OF THE SECURED OBLIGATIONS AND THE FULL OR PARTIAL RELEASE AND/OR RECONVEYANCE OF THIS DEED OF TRUST.

**Payments Due Under This Deed of Trust.** Trustor must pay all obligations to pay money arising under this deed of trust immediately upon demand by Trustee or Beneficiary. Each such obligation shall bear interest from the date the obligation arises at the Default Rate (as defined in the Note).

<div align="center">ARTICLE 6 – EVENTS OF DEFAULT AND REMEDIES</div>

**Events of Default.** The following each shall be an event of default under this deed of trust (an "**Event of Default**"): (1) an Event of Default (as defined in the Note); (2) a Prohibited Transfer; (3) if Trustor is in default beyond applicable notice and grace periods under any other mortgage, deed of trust, deed to secure debt or other security agreement covering any part of the Property, whether it be superior or junior in lien to this deed of trust; (4) for more than ten days after notice from Beneficiary, Trustor is in default under any term, covenant or condition of this deed of trust not separately described as an Event of Default, which can be cured by the payment of a sum of money; or (5) for 30 days after notice from Trustee or Beneficiary, Trustor is in default under any term, covenant or condition of this deed of trust not separately described as an Event of Default; provided that if: (A) it is reasonably certain that the default cannot be cured by Trustor within that 30 day period; and (B) Trustor has commenced curing that default within that 30 day period and thereafter diligently and expeditiously proceeds to cure that default, then that 30 day period shall be extended for so long as reasonably required by Trustor in the exercise of due diligence to cure that default, up to a maximum of 90 days after the notice to Trustor of the Event of Default.

**Remedies.** At any time after an Event of Default, Trustee and Beneficiary may invoke any and all of the rights and remedies described below. All of such rights and remedies are cumulative, and the exercise of any one or more of them does not constitute an election of remedies.

**Acceleration.** Trustee or Beneficiary may declare any or all of the Secured Obligations to be due and payable immediately.

**Receiver**.  Trustee or Beneficiary may, to the extent permitted by applicable law, make an ex parte application to any court of competent jurisdiction, and obtain appointment of, a receiver, trustee, liquidator or conservator of the Property, without notice, without giving bond, and without regard for the adequacy of the security for the Secured Obligations and without regard for the solvency of Borrower, any guarantor of all or any portion of the Secured Obligations, or of any person liable for the payment of the Secured Obligations.  TRUSTOR HEREBY WAIVES NOTICE OF THE APPLICATION FOR, AND CONSENTS TO THE APPOINTMENT OF A RECEIVER, TRUSTEE, LIQUIDATOR OR CONSERVATOR OF THE PROPERTY IN ACCORDANCE WITH THE PROVISIONS OF THIS SECTION; AND TRUSTOR AGREES TO NOT OPPOSE SUCH APPOINTMENT.

**Entry**.  To the extent permitted by applicable law, Trustee or Beneficiary, in person, by agent or by court-appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and may also do any and all other things in connection with those actions that Beneficiary may consider necessary and appropriate to protect the security of this deed of trust.  Such other things may include: taking and possessing all of Trustor's or the then owner's books and records; entering into, enforcing, modifying, or canceling leases on such terms and conditions as Trustee or Beneficiary may consider proper; obtaining and evicting tenants; fixing or modifying rents; collecting and receiving any payment of money owing to Trustor; completing any unfinished construction; and/or contracting for and making repairs and alterations.  If Trustee or Beneficiary so requests, Trustor will assemble all of the Property that has been removed from the Land and make all of it available to Trustee or Beneficiary at the site of the Land.  TRUSTOR HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS TRUSTEE AND BENEFICIARY AS TRUSTOR'S ATTORNEY-IN-FACT TO PERFORM SUCH ACTS AND EXECUTE SUCH DOCUMENTS AS TRUSTEE OR BENEFICIARY CONSIDERS APPROPRIATE IN CONNECTION WITH TAKING THESE MEASURES, INCLUDING ENDORSEMENT OF TRUSTOR'S NAME ON ANY INSTRUMENTS.  Regardless of any provision of this deed of trust or the other Loan Documents, neither Trustee or Beneficiary shall not be considered to have accepted any property other than cash or immediately available funds in satisfaction of any obligation of Trustor to Beneficiary, unless Trustee or Beneficiary respectively, has given express written notice of its election of that remedy in accordance with the UCC.

**Cure; Protection of Security**.  Trustee or Beneficiary may cure any breach or default of Trustor, and if Beneficiary chooses to do so in connection with any such cure, Trustee or Beneficiary may also enter the Property and/or do any and all other things which it considers necessary or appropriate to protect the security of this deed of trust.  Such other things may include: (1) appearing in and/or defending any action or proceeding which purports to affect the security of, or the rights or powers of Trustee or Beneficiary under, this deed of trust; (2) paying, purchasing, contesting or compromising any encumbrance, charge, lien or claim of lien which in Trustee's or Beneficiary's judgment is or may be senior in priority to this deed of trust, such judgment of Trustee or Beneficiary to be conclusive as among the parties to this deed of trust; (3) obtaining insurance and/or paying any premiums or charges for insurance required to be carried under the Note; (4) otherwise caring for and protecting any and all of the Property; and/or (5) employing counsel, accountants, contractors and other appropriate persons to assist Trustee or Beneficiary.  Beneficiary may take any of the actions permitted under this Article either with or without giving notice to any person.  Notwithstanding the foregoing, in no event will Trustee or Beneficiary have any obligation to take any of the actions set forth in this Section.

**Uniform Commercial Code Remedies**.  Beneficiary may exercise any or all of the remedies granted to a secured party under the UCC.  To the extent that applicable law imposes the duty on Beneficiary to exercise remedies in a commercially reasonable manner, Trustor acknowledges and agrees that it is not commercially unreasonable for Beneficiary to:  (1) fail to incur expenses reasonably deemed significant by Beneficiary to prepare the Personalty for disposition or to fail to complete raw material or work in process into finished goods or other finished products for disposition; (2) fail to exercise collection remedies against account debtors or other persons obligated on the Personalty (directly or through the use of collection specialists), or to fail to remove liens, encumbrances or adverse claims against the Personalty; (3) advertise dispositions of the Personalty through publications or media of general circulation, whether or not the Personalty is of a specialized nature; (4) contact persons for expressions of interest in acquiring all or any portion of the Personalty; (5) hire professional auctioneers to assist in the disposition of the Personalty,

161245542
Bains
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200917                                       Rev. 03.17.2017
7

Exhibits, Page 129 of 182

whether or not the Personalty is of a specialized nature; (6) dispose of the Personalty by utilizing Internet sites that provide for or are reasonably capable of auction of assets of the types included in the Personalty; (7) dispose of the Personalty in wholesale rather than retail markets; (8) disclaim disposition warranties; (9) purchase insurance or credit enhancements to insure Beneficiary against risks of loss, collection or disposition of the Personalty or to provide to Beneficiary a guaranteed return from the collection or disposition of the Personalty; or (10) sell any Personalty jointly with any of the Property or to sell any Personalty in a sale separate from a sale of any of the Property. Trustor acknowledges that the purpose of this Section is to provide a non-exhaustive indication of what actions or omissions by Beneficiary would fulfill Beneficiary's duties under the UCC in Beneficiary's exercise of remedies against the Personalty, and that other actions or omissions by Beneficiary shall not be deemed to fail to fulfill such duties solely on account of not being expressly included or indicated in this Section.

**Power of Sale**.  Beneficiary may cause some or all of the Property, including any Personalty, to be sold or otherwise disposed of in any combination and in any manner permitted by applicable law.

**Judicial Action**.  Beneficiary may bring an action in any court of competent jurisdiction to foreclose this deed of trust in the manner provided under applicable law for the foreclosure of mortgages on real property or to obtain specific enforcement of any of the covenants or agreements of this deed of trust.

**Sales of Personal Property**.  Beneficiary may elect to treat as Personalty any Property which is intangible or which can be severed from the Land or Improvements without causing structural damage.  If it chooses to do so, Beneficiary may dispose of any Personalty separately from the sale of real property, in any manner permitted by Article 9 of the UCC, including any public or private sale, or in any manner permitted by any other applicable law.  Any proceeds of any such disposition shall not cure any Event of Default or reinstate any Secured Obligation for purposes of Section 2924c of the California Civil Code.

**Single or Multiple Foreclosure Sales**.  If the Property consists of more than one lot, parcel or item of property, in connection with any sale of the Property described in or permitted under this Article, Beneficiary may: (1) designate the order in which the lots, parcels and/or items shall be sold or disposed of or offered for sale or disposition; and (2) elect to dispose of the lots, parcels and/or items through a single consolidated sale or disposition to be held or made in connection with judicial proceedings, or by virtue of a judgment and decree of foreclosure and sale; or through two or more such sales or dispositions; or in any other manner Beneficiary may deem to be in its best interests (any such sale or disposition, a "**Foreclosure Sale**").  If it chooses to have more than one Foreclosure Sale, Beneficiary at its option may cause the Foreclosure Sales to be held simultaneously or successively, on the same day, or on such different days and at such different times and in such order as it may deem to be in its best interests.  No Foreclosure Sale will terminate or affect the liens of this deed of trust on any part of the Property which has not been sold, until all of the Secured Obligations have been paid in full.

**Additional Rights**.  In addition to the rights and powers given to Beneficiary under this deed of trust, Beneficiary shall have all such other rights both in law and equity for collection of the indebtedness secured hereby as it would have but for this deed of trust.

**Credit Bids**.  At any Foreclosure Sale, any person, including Trustor or Beneficiary, may bid for and acquire the Property or any part of it to the extent permitted by then applicable law.  Instead of paying cash for that Property, Beneficiary may settle for the purchase price by crediting the sales price of the Property against the following obligations: first, the portion of the Secured Obligations attributable to the expenses of sale, costs of any action and any other sums for which Trustor is obligated to reimburse Beneficiary; and second, all other Secured Obligations in any order and proportions as Beneficiary may choose.

**Application of Foreclosure Sale Proceeds, Rents and Other Sums**.  Beneficiary shall apply the proceeds of any Foreclosure Sale to pay (or reimburse Beneficiary for payment of) the Secured Obligations in any order and proportions as Beneficiary may choose, with the surplus, if any, to be paid over to Trustor. Beneficiary has no liability for any funds which it does not actually receive.

**Request for Notice**.  Trustor hereby requests that, unless otherwise prescribed by law, a copy of any notice of default and a copy of any notice of sale pursuant to the nonjudicial foreclosure of this deed of trust be sent to Trustor at the address specified for Notices (defined below).

1612453v2
Bains
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200617                                    Rev. 03.17.2017
8

Exhibits, Page 130 of 182

**Waivers.** Trustor waives: (1) any right to require Trustee or Beneficiary to proceed against Borrower, proceed against or exhaust any security held from Borrower, or pursue any other remedy in Trustee's or Beneficiary's power to pursue; (2) any defense based on any legal disability of Borrower, any discharge or limitation of the liability of Borrower to Trustee or Beneficiary, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding, or from any other cause, or any claim that Trustor's obligations exceed or are more burdensome than those of Borrower; (3) all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this deed of trust and of the existence, creation, or incurring of new or additional indebtedness of Borrower, and demands and notices of every kind; (4) any defense based on or arising out of any defense that Borrower may have to the payment or performance of the Secured Obligations or any part of it; and (5) until the Secured Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that Trustee or Beneficiary may have against Borrower, and all rights to participate in any security now or later to be held by Trustee or Beneficiary for the Secured Obligations. Trustor waives any rights or defenses that are or may become available to Trustor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code. Trustor waives all rights and defenses that Trustor may have because the Secured Obligations may be secured by real property other than the Property hereby encumbered. This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the Secured Obligations may be secured by real property other than the Property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure. Trustor waives any right or defense it may have at law or equity, including all rights and defenses under California Code of Civil Procedure Section 580a, to a fair market value hearing or action to determine a deficiency judgment after a foreclosure of any real property other than the Property hereby encumbered. No provision or waiver in this deed of trust shall be construed as limiting the generality of any other provision or waiver contained in this deed of trust.

**Information.** Trustor is solely responsible for keeping informed of Borrower's financial condition and business operations and all other circumstances affecting Borrower's ability to pay and perform its obligations to Trustee or Beneficiary, and agrees that Trustee or Beneficiary will have no duty to disclose to Trustor any information which Trustee or Beneficiary may receive about Borrower's financial condition, business operations, or any other circumstances bearing on its ability to perform.

**No Mortgagee in Possession.** Neither the enforcement of any of the remedies under this Article, the assignment of the Rents and Leases under Article 2, the security interests under Article 3, nor any other remedies afforded to Beneficiary under the Loan Documents, at law or in equity shall cause Beneficiary or Trustee to be deemed or construed to be a mortgagee in possession of the Property, to obligate Beneficiary or Trustee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

18124552
Bains
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200617       Rev. 03.17.2017
9

Exhibits, Page 131 of 182

## ARTICLE 7 -- MISCELLANEOUS

**Notices.** All notices, approvals, consents, and other communications, under this deed of trust (**"Notices"**) must be in writing and mailed or delivered to the address specified herein. All Notices will be deemed to be given or made upon the earlier to occur of: (1) actual receipt by the intended recipient; or (2) (A) if delivered by hand or by courier, upon delivery; or (B) if delivered by mail, four Business Days after deposit in the U.S. mail, properly addressed, postage prepaid; except that notices and other communications to Beneficiary will not be effective until actually received by Beneficiary. Notices must be mailed or delivered, if to Trustor, to the address adjacent Trustor's signature below; if to Trustee, at 205 E. River Park Circle, Suite 430, Fresno, CA 93720; if to Beneficiary, to METROPOLITAN TOWER LIFE INSURANCE COMPANY, a Nebraska corporation c/o MetLife Investment Management, LLC, 10801 Mastin Blvd., Ste. 700, Overland Park, KS 66210, with a carbon copy to MetLife Investment Management, LLC, 205 E River Park Circle, Ste. 430, Fresno, CA 93720, Attn: Director, WRO.

## ARTICLE 8– TRUSTEE

From time to time, Beneficiary may substitute a successor to any Trustee named in or acting under this deed of trust in any manner now or later to be provided at law, or by a written instrument executed and acknowledged by Beneficiary and recorded in the office(s) of the recorder(s) of the county or counties where the Land and Improvements are situated. Any such instrument is conclusive proof of the proper substitution of the successor Trustee, who will automatically upon recordation of the instrument succeed to all estate, title, rights, powers and duties of the predecessor Trustee, without conveyance from it. Trustor waives any requirement that Trustee make an oath or give a bond. Trustee, or any one acting in its stead, may, employ agents and attorneys in the execution of this trust and/or in the conducting of any sale made pursuant to the terms hereof, and pay for such services rendered out of the proceeds of the sale of the Property; and if there is no sale or if the proceeds of sale are insufficient to pay for such services, then Trustor will pay the cost of such services to Trustee. Trustee may rely on any document believed by it in good faith to be genuine. All money received by Trustee shall, until used or applied as herein provided, be held in trust, but except to the extent otherwise required by applicable law, need not be segregated; and Trustee will not be liable for interest thereon.

## ARTICLE 9 – RELEASE AND CONVEYANCE

When all of the Secured Obligations have been paid and performed in full, upon written request by Trustor, Beneficiary shall request Trustee in writing to release and reconvey the Property. When Trustee receives Beneficiary's written request for release and reconveyance and all fees and other sums owed to Trustee by Trustor, Trustee shall release this deed of trust and reconvey the Property, or so much of it as is then held under this deed of trust, without warranty to the person or persons legally entitled to it. That person or those persons must pay any costs of recordation. In the reconveyance, the grantee may be described as "the person or persons legally entitled thereto," and the recitals of any matters or facts are conclusive proof of their truthfulness. Neither Beneficiary nor Trustee will have any duty to determine the rights of persons claiming to be rightful grantees of any reconveyance.

**Entire Agreement.** This deed of trust and the other Loan Documents collectively: (1) represent the sum of the understandings and agreements between Beneficiary and Trustor concerning the Loan; (2) replace any prior oral or written agreements between Beneficiary and Trustor concerning the Loan; and (3) are intended by Beneficiary and Trustor as the final, complete and exclusive statement of the terms agreed to by them.

**No Waiver or Cure.** Each waiver by Trustee or Beneficiary must be in writing, and no waiver is to be construed as a continuing waiver. No waiver is to be implied from any delay or failure by Trustee or Beneficiary to take action on account of any default of Trustor. Consent by Trustee or Beneficiary to any act or omission by Trustor must not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Trustee's or Beneficiary's consent to be obtained in any future or other instance. The exercise by Trustee or Beneficiary of any right or remedy under this deed of trust or the other Loan Documents or under applicable law, shall not cure or waive a breach, Event of Default or notice of default under this deed of trust or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid

18124552
Bains
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200617                                    Rev. 03.17.2017
10

Exhibits, Page 132 of 182

and performed and all other defaults under the Loan Documents, have been cured); or impair the security of this deed of trust; or prejudice Trustee, Beneficiary or any receiver appointed in accordance with this deed of trust, in the exercise of any right or remedy afforded any of them under this deed of trust; or be construed as an affirmation by Trustee or Beneficiary of any tenancy, lease or option, or a subordination of the lien of this deed of trust.

**Merger**. No merger shall occur as a result of Trustee's or Beneficiary's acquiring any other estate in or any other lien on the Property.

**Waiver of Dower, Homestead, and Distributive Share.** Trustor relinquishes all right of dower, if any, and waives all right of homestead exemption and distributive share in and to the Property. Trustor waives any right of exemption as to the Property.

**Waiver of Marshalling.** Trustor waives all rights, legal and equitable, it may now or hereafter have to require marshalling of assets or to require upon foreclosure sales of assets in a particular order, including all rights under California Code of Civil Procedure Sections 2899 and 3433. Each successor and assign of Trustor, including any holder of a lien subordinate to this deed of trust, by acceptance of its interest or lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

**Waiver of Certain Other Laws.** To the extent permitted by applicable law, Trustor shall not at any time insist upon, plead, claim or take the benefit or advantage of any applicable law providing for appraisement, valuation, stay, extension, equity or redemption, any statutory or common law right of redemption, and all other exemptions, and Trustor, for Trustor, and its representatives, successors and assigns, and for any and all persons ever claiming any interest in the Property, to the extent permitted by law, hereby waives and releases all rights of redemption (including, without limitation, any common law or statutory right of redemption), and all other exceptions, as well as valuation, appraisement, stay of execution, or notice of election to mature or declare due the whole of the Secured Obligations in the event of foreclosure of the lien created by this deed of trust. WITHOUT LIMITATION, IF THE UNDERSIGNED TRUSTOR, OR ANY OF THEM, IS A CORPORATION, TRUSTOR HEREBY RELEASES AND WAIVES ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY JUDGMENT OF FORECLOSURE AND EACH OF THE ITEMS WAIVED AND RELEASED ABOVE, ON BEHALF OF TRUSTOR, AND EACH AND EVERY PERSON ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY, SUBSEQUENT TO THE DATE OF THIS DEED OF TRUST, AND ON BEHALF OF ALL OF THE PERSONS TO THE EXTENT PERMITTED BY APPLICABLE LAW OF THE STATE OF CALIFORNIA.

**Joint and Several Obligations.** If Trustor consists of more than one person, each Trustor (1) acknowledges and undertakes, together with every other Trustor, joint and several liability for the indebtedness, liabilities and obligations of Trustor under this deed of trust; (2) acknowledges that this deed of trust is the independent and several obligation of each Trustor and may be enforced against each Trustor separately, whether or not enforcement of any right or remedy hereunder has been sought against any other Trustor; and (3) agrees that its liability hereunder and under any other Loan Document shall be absolute, unconditional, continuing and irrevocable. TRUSTOR EXPRESSLY WAIVES ANY REQUIREMENT THAT TRUSTEE EXHAUST ANY RIGHT, POWER OR REMEDY AND PROCEED AGAINST ANY OTHER TRUSTOR UNDER THIS DEED OF TRUST, OR ANY OTHER LOAN DOCUMENTS, OR AGAINST ANY OTHER PERSON UNDER ANY GUARANTY OF, OR SECURITY FOR, ANY OF THE SECURED OBLIGATIONS.

**Governing Law/Jurisdiction and Venue.** This deed of trust shall be governed exclusively by the laws of the State of California without regard or reference to its conflict of laws principles.

**General.** This deed of trust may not be amended, changed, modified, altered or terminated without the prior written consent of Beneficiary. This deed of trust may be executed in counterparts, each of which will be an original and all of which together are deemed one and the same instrument. Trustee and Beneficiary is authorized to execute any other documents or take any other actions necessary to effectuate this deed of trust and the consummation of the transactions contemplated herein. Time is of the essence of this deed of trust. Each party has participated in negotiating and drafting this deed of trust, so if an ambiguity or a question of intent or interpretation arises, this deed of trust is to be construed as if the parties had drafted it jointly, as opposed to being construed against a party because it was responsible for drafting one or more

1512455v2
Bains
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200617                              Rev. 03.17.2017
11

Exhibits, Page 133 of 182

provisions of this deed of trust. When all Secured Obligations have been paid in full, Beneficiary shall execute and deliver to Trustor, a release of the Property from the lien of this deed of trust. Headings and captions are provided for convenience only and do not affect the meaning of the text which follows.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

18124582
Bains
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200617　　　　　　　　　　　　　　Rev. 03.17.2017
12

Exhibits, Page 134 of 182

[SIGNATURE PAGE TO DEED OF TRUST]

TRUSTOR BY EXECUTION AND DELIVERY OF THIS DEED OF TRUST TO BENEFICIARY, AND BENEFICIARY, BY ACCEPTANCE HEREOF, TO THE EXTENT PERMITTED BY APPLICABLE LAW (1) COVENANT AND AGREE NOT TO ELECT A TRIAL BY JURY IN ANY ACTION OR PROCEEDING FOR THE RESOLUTION OF ANY CONTROVERSY OR CLAIM THAT ARISES OUT OF OR RELATES TO: (A) THIS DEED OF TRUST; OR (B) ANY OTHER LOAN DOCUMENT, WHETHER ARISING IN CONTRACT, TORT OR BY STATUTE (INDIVIDUALLY AND COLLECTIVELY, A "CONTROVERSY OR CLAIM"); AND (2) WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY CONTROVERSY OR CLAIM TO THE EXTENT SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THE PROVISIONS OF THIS SECTION ARE GIVEN KNOWINGLY AND VOLUNTARILY AND ARE A MATERIAL INDUCEMENT FOR BENEFICIARY ENTERING INTO THE NOTE AND OTHER LOAN DOCUMENTS.

Trustor is executing this deed of trust effective as of the day and year first written above.

TRUSTOR

Address for notices:
417 Mace Blvd J338
Davis, California 95618

_____
LAKHBIR S. BAINS

[ACKNOWLEDGEMENTS OF DEED OF TRUST ON FOLLOWING PAGE]

[ACKNOWLEDGEMENTS OF DEED OF TRUST]

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA        )
                           ) SS
COUNTY OF ___Yolo___       )

On March 24, 2020, before me, _Brenda Green_, NOTARY PUBLIC, personally appeared LAKHBIR S. BAINS, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

(SEAL)

_Brenda Green_
Notary Public
_Brenda Green_

> BRENDA GREEN
> COMM. #2144769
> Notary Public - California
> Solano County
> My Comm. Expires Mar. 30, 2020

18124556
Bains
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200617                          Rev. 03.17.2017
14

**EXHIBIT A**

Bains
Loan No: 200617

DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT,
AND FIXTURE FILING

**Legal Description of Real Estate**

Placer County, California

The land described herein is situated in the State of California, County of Placer, unincorporated area, described as follows:

The Southeast quarter of Section 31, Township 11 North, Range 5 East, M. D. B. & M.

Excepting therefrom 1/2 of all mineral rights and 1/2 of all gas and oil deposits existing 500 feet below the surface, as reserved by Leah Moore Stuller Urch, recorded October 29, 1959, in Book 815, Page 121, Official Records.

APN: 017-130-051-000

1612495v2

# EXHIBIT

# K

**RECORDING REQUESTED BY:**
First American Title Company

**WHEN RECORDED MAIL DOCUMENT TO:**
Metropolitan Tower Life Insurance Compan c/o
MetLife Investment Mangement, LLC
205 E. River Park Circle, Suite 430
Fresno, CA 93720



**2019-0018439**

| | | |
|---|---|---|
| Recorded | REC FEE | 115.00 |
| Offidal Records | | |
| County of | HFE-DTT | 0.00 |
| Sutter | | |
| Donna M. Johnston | | |
| Clerk Recorder | | |
| | MM | |
| 10:58AM 20-Dec-2019 | Page 1 of 18 | |

_____ Space Above This Line for Recorder's Use Only _____

A.P.N.: 35-170-074

File No.: 5701-6040727 (ER)

Property Address:  +/-238 Acres, Pleasant Grove, CA 95668

Deed of Trust, Assignmnet of Rents, Security Agreement and Fixture Filing
Title of Document

Pursuant to Senate Bill 2 - Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fee, per each single transaction per parcel of real property.  The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

(x ) Recorded [concurrently] in connection with a transfer of real property subject to the imposition of Documentary Transfer Tax per GC 27388.1 (a) (2).

( ) Recorded [concurrently] in connection with a transfer of real property that is residential dwelling to an owner-occupier per GC 27388.1 (a) (2).

( ) Maximum fee of $225 has been reached per GC 27388.1 (a) (1).

( ) Not related to real property GC 27388.1 (a) (1).

Failure to include an exemption reason will result in the imposition of the $75 Building Homes and Jobs Act fee. Fees collected are deposited to the State and may not be available for refund.

_____          *12-19-19*

Signature                                                  Date

THIS PAGE ADDED TO PROVIDE EXEMPTION INFORMATION FOR THE BUILDING HOMES AND JOBS ACT FEE
(SB-2; AFFORDABLE HOUSING FEE)  ($3.00 Additional recording fee applies)

3

2

RECORDING REQUESTED BY:
Matthew Ellis
Downey Brand
621 Capitol Mall
18th Floor
Sacramento, CA  95814
(916) 520-5495

WHEN RECORDED MAIL TO:
Metropolitan Tower Life Insurance Company
c/o MetLife Investment Management, LLC
205 E River Park Circle, Suite 430
Fresno, CA  93720
Attn:  Loan Manager, Western Region

_____
Space above this line for Recorder's Use

Sutter Land
Loan No: 200478

## <u>DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT,</u><br><u>AND FIXTURE FILING</u>

THIS DEED OF TRUST ALSO CONSTITUTES A FINANCING STATEMENT FILED AS A FIXTURE FILING UNDER THE UCC

SEE ARTICLE 7 FOR ADDRESS OF TRUSTOR, TRUSTEE AND BENEFICIARY

This deed of trust is dated as of December 5, 2019, and is by SUTTER LAND LLC, a California limited liability company ("**Trustor**"), to and in favor of LEON A. MORENO, a resident of the state of California, as trustee ("**Trustee**"), for the benefit of METROPOLITAN TOWER LIFE INSURANCE COMPANY, a Nebraska corporation ("**Beneficiary**").

Beneficiary has agreed to make a loan in the original principal sum of $4,150,000.00 (the "**Loan**") to Trustor under the terms and conditions of the Promissory Note by Trustor in favor of Beneficiary dated as of the date of this deed of trust (the "**Note**").

### ARTICLE 1 – GRANT

To secure repayment of the indebtedness evidenced by the Note and payment and performance of all other Secured Obligations (defined herein), Trustor irrevocably and unconditionally, grants, bargains, sells, and conveys to Trustee, in trust, for the benefit of Beneficiary, WITH POWER OF SALE, all of Trustor's estate, right, title and interest which Trustor now has or may later acquire in the following, wherever located, and whether constituting real estate or personal property (individually and collectively, the "**Property**"): (1) the real estate and any interest in the real estate located in Sutter County, California, and described in EXHIBIT A (the "**Land**"); (2) buildings, structures, improvements, and fixtures now or hereafter erected on, affixed or attached to the Land, including all trellises, farm products storage and handling units and equipment, and fences, gates and loading chutes (the "**Improvements**"); (3) (A) wells, irrigation and drainage pumps, motors, pipes, windmills, frost protection equipment, center pivot irrigators, sprinklers, drip line and emitters, filters, water measurement meters and control structures and other watering and irrigation equipment; and (B) all other equipment now or hereafter affixed or installed in any manner on the Land or the Improvements or used in connection with the operation of the Property (other than rolling stock and implements customarily towed) (the "**Equipment**"); (4) easements, rights-of-way, and other rights and entitlements appurtenant to the Land or used in connection with the Land or as a means of access thereto; (5) other tenements, hereditaments and appurtenances to the Land; (6) rights to the use and enjoyment of water, whether surface or subsurface, whether riparian, appropriative, prescriptive or otherwise, and whether or not appurtenant, now or hereafter relating or available to the

*3*

Land or Improvements or used in connection therewith: (A) water allocations, water banking rights or interests, carryover rights, supplemental water, storage and exchange rights drainage rights, distribution rights, storage rights, delivery rights, and other water-related rights or entitlements, whether available through any public or private irrigation projects, companies, districts, agencies or otherwise, together with all shares of stock evidencing any such rights or entitlements, and all voting rights and other rights and privileges that now or hereafter may exist with respect to such stock or with respect to participation, membership, or other involvement in any such projects, companies, districts, or agencies; (B) water and water inventory in storage; (C) rights under well, pump and filter sharing agreements; and (D) all easements, permits, licenses, leases, contracts, grants, reservations and any other rights and entitlements, however created, to drill, install and maintain wells, pumps and pipeline systems, or to use, appropriate, pump, extract, receive, transport, store or transfer water (**"Water Rights"**); (7) shares, and rights under such shares, of any private water company, mutual water company, or other non-governmental entity pursuant to which Trustor or the Property may receive water and any other certificated and uncertificated securities, securities entitlements, securities accounts and commodities accounts; (8) coal, oil, gas, and other hydrocarbon substances, geothermal resources, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and estates in, under or produced from the Land and other coal, oil, gas, geothermal, and mineral interests with which any of the foregoing interests or estates are pooled or unitized and other "as-extracted collateral"; (9) timber now or hereafter standing on or cut from the Land; (10) leases, subleases, licenses and other agreements, granting a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Property, (individually and collectively, the **"Leases"**); (11) bushes, groves, trees, plants, vines or other plantings, upon or under the Land (the **"Permanent Plantings"**); (12) intellectual property rights now or hereafter held by Trustor with respect to Permanent Plantings, including all such patents, patent licenses, trademarks and trademark licenses; (13) crops growing or to be grown on or under the Land (including all such crops following severance from the Land and seed and propagative portions of plants) (the **"Crops"**); (14) rights to payment whether or not earned by performance, under state or federal farm programs with respect to the Mortgaged Land, including Commodity Credit Corp program payments, payments in kind, deficiency payments, letters of entitlement, storage payments, emergency assistance, diversion payments, production flexibility contracts, and contract reserve payments (collectively, **"Government Farm Program Payments"**); (15) permits and licenses relating or pertaining to the use or enjoyment of the Property; (16) proceeds of and any unearned premiums on any insurance policies covering the Property, including the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property (**"Insurance Claims"**); (17) all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Land or Improvements (**"Condemnation Awards"**); (18) accessions, attachments and other additions to, substitutes or replacements for, all proceeds and products of, the Property; and (19) books, records and files relating to the Property, including computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data.

## ARTICLE 2 - ASSIGNMENT OF RENTS

Trustor irrevocably and unconditionally assigns Beneficiary all rents and other benefits derived from the Leases, and all other issues, profits, royalties, bonuses, income and other proceeds of the Property, whether now due, past due or to become due, including all prepaid rents, security deposits and other supporting obligations (collectively, the **"Rents"**).

Notwithstanding the provisions of this Article 2, Beneficiary confers upon Trustor a revocable license to collect and retain the Rents as they become due and payable, so long as there is no Event of Default (the **"License"**).  If an Event of Default has occurred, Beneficiary may terminate the License without notice to or demand upon Trustor.

Subject to the License, Beneficiary has the right, power and authority to collect any and all Rents. Beneficiary, by its acceptance of this deed of trust does not assume any duty or obligation under the Leases.

All lessees under the Leases are hereby irrevocably authorized and notified by Trustor to rely upon and to comply with (and are fully protected in so doing) any notice or demand by Beneficiary for the payment to Beneficiary of Rents, or for the performance of any of lessees' undertakings under the Leases, and lessees shall have no right or duty to inquire as to whether any Event of Default has actually occurred or is then existing hereunder.  Subject to the License, Beneficiary may notify any person that the Leases have been assigned to Beneficiary and that all Rents are to be paid directly to Beneficiary, whether or not Beneficiary has commenced or completed foreclosure of or taken possession of the Property.

Beneficiary may apply all amounts received by it pursuant to this assignment to pay any of the following in such order and amounts as Beneficiary deems appropriate:  (1) Secured Obligations; (2) expenses of leasing, operating, maintaining and managing the Property, including without limitation, salaries, fees, commissions and wages of a managing agent and such other employees, agents or independent contractors as Beneficiary deems necessary or desirable; (3) taxes, charges, claims, assessments, any other liens, and premiums for insurance relating to the Property that Beneficiary deems necessary or desirable; and (4) the cost of alterations, renovations, repairs or replacements, and expenses incident to taking and retaining possession of the Property.

## ARTICLE 3 – SECURITY AGREEMENT/FIXTURE FILING

Trustor grants Beneficiary a security interest in and pledges and assigns to Beneficiary all of Trustor's right, title and interest in all Property that may be characterized as personal property (the "**Personalty**"). Trustor authorizes Beneficiary to file any UCC financing statements required by Beneficiary, from time to time, to perfect Beneficiary's security interest in the Property.

The address adjacent to Trustor's signature below, (a) if Trustor is an individual, is Trustor's principal residence; (b) if Trustor is other than an individual and has only one place of business, is Trustor's principle place of business; and (c) if Trustor is anything other than an individual and has more than one place of business, is Trustor's chief executive office.  The address for Beneficiary in Article 7 is its address as secured party under the Uniform Commercial Code as adopted in the Governing Law State (the "**UCC**").

This deed of trust constitutes a financing statement filed as a fixture filing under the UCC, covering any Property which now is or later may become a fixture attached to the Land or any Improvement.  For this purpose, the "debtor" is Trustor, the "secured party" is Beneficiary and the collateral is the Property.

## ARTICLE 4 – SECURED OBLIGATIONS

Trustor makes the grant, conveyance, transfer and assignment in Article 1, makes the irrevocable and absolute assignment in Article 2, and grants the security interest under Article 3 to secure payment and performance of the following obligations (individually and collectively, the "**Secured Obligations**"):  (1) all Obligations (as defined in the Note); (2) all obligations of Trustor under this deed of trust; (3) all modifications, amendments, extensions, and renewals, however evidenced, of any of the Secured Obligations; and (4) any of the foregoing that arises after the filing of a petition by or against Trustor under an insolvency or bankruptcy proceeding.

**Future Secured Obligations.**  The Secured Obligations include future advances made by Beneficiary for any purpose, and all other future Secured Obligations.  Those future advances and other future Secured Obligations, together with interest thereon, are secured by this deed of trust to the same extent as if made or incurred on the date of the execution of this deed of trust, and have priority as to third persons with or without actual notice from the time this deed of trust is filed for record as provided by law.  The total amount of indebtedness secured by this deed of trust may decrease or increase from time to time. Nothing in this Section will constitute a commitment to make additional or future advances in any amount.

**General.**  All persons who have or acquire an interest in the Property will be deemed to have received notice of, and will be bound by, the terms of the Note, this deed of trust and all other agreements and instruments evidencing and or securing the Loan (individually and collectively, the "**Loan Documents**"; provided, however, the Loan Documents specifically do not include the Unsecured Environmental Indemnity Agreement, dated as of the date hereof between, without limitation, Trustor and Beneficiary; that agreement, the "**Environmental Indemnity**").  The Loan Documents may include terms which permit



or provide that the rate of interest on one or more of the Secured Obligations may vary from time to time. Without limitation, the Note expressly provides that Beneficiary may at its option change or adjust the interest rate as referenced therein. This deed of trust does not secure any indebtedness, liability or obligation that is expressly stated to be unsecured.

## ARTICLE 5 – WARRANTY AND COVENANTS

**Warranty of Title.** Trustor represents and warrants that, other than the exceptions to title expressly listed on a schedule of exceptions to coverage in the final commitment for title insurance or pro forma policy of title insurance accepted by Beneficiary prior to the Closing (defined in the Note), Trustor lawfully possesses and holds fee simple title to all of the Land and Improvements; and that Trustor has the right, power and authority to mortgage, grant, convey and assign the Property. Trustor especially agrees and declares that the separate estate of each of them, whether vested, contingent or in expectancy, is hereby conveyed and shall be bound for the payment and performance of the Secured Obligations.

**Water Rights.** Trustor represents and warrants that the Water Rights afford the continuing, enforceable right to receive irrigation water on the Property from such sources, in such quantities and at such times and locations as has historically been available to the Property without interruption or substantially increased cost and in any event, based on current projections, sufficient to provide adequate water and/or drainage to continue the current and proposed agricultural operations on the Property

**Performance of Secured Obligations**. Trustor shall promptly pay and perform each Secured Obligation in accordance with its terms.

**Maintenance of Property.** Trustor shall: maintain and preserve all rights and privileges Trustor now has in the Property; make any repairs, renewals or replacements to keep the Property in good working condition and repair; operate the Property, whether improved pastures, orchards, groves, grazing, timber, or crop lands, in a good and husband-like manner in accordance with accepted principles of sound agricultural and forestry practices in the area in which the Land is located; take all reasonable precautions to control wind and water erosion; fertilize improved pastures, if any, where necessary to maintain a good stand of desirable grasses; protect orchards and timber, if any, by reasonable precautions against loss or damage by fire including the maintenance of appropriate fire breaks; and neither remove nor permit the removal of any oil, gas, mineral, stone, rock, clay, or gravel owned by Trustor, or any timber, buildings, top soil, or fertilizer, without the prior written consent of Beneficiary.

**Water Rights.** Trustor shall maintain the Water Rights during the term of the Loan at a level and of a nature sufficient to provide the continuing, enforceable right to receive irrigation water on the Property from such sources, in such quantities and at such times and locations as has historically been available to the Property without interruption or substantially increased cost and in any event sufficient to provide adequate water and/or drainage to continue the current and proposed agricultural operations on the Property. All existing Water Rights benefiting or available to the Property shall be maintained in full force and effect for the benefit of the Property by Trustor and applied to beneficial use so as to maintain the validity and priority of such rights. Trustor shall fully comply with, and not permit a default to occur under any water licenses, permits or delivery contracts used to provide water to the Property, and shall timely exercise all renewal or extension rights in such contracts. Trustor shall not modify, amend or terminate any Water Rights without Beneficiary's prior written consent. Trustor shall comply with the rules, regulations and ordinances of any water district, water agency or groundwater management agency in which the Property or any portion thereof is located and pay all related fees and assessments prior to delinquency. Trustor shall not cause or permit a reduction in the number of acres of Reclamation Property consisting of non-excess land eligible to obtain water from sources subject to Reclamation Law or the reduction of the number of acres of Reclamation Property presently eligible to receive Reclamation Water at a "non full cost rate" within the meaning of 43 C.F.R. Section 426.4(v) without Beneficiary's prior written consent Trustor shall comply or cause to be complied with all reporting and certification requirements of Reclamation Law, including without limitation the provisions of 43 C.F.R. Section 426.10(b) through (g), inclusive. As used in this deed of trust: (1) "**Reclamation Law**" means The Reclamation Act of 1902, the Omnibus Adjustment Act of 1926, the Reclamation Reform Act of 1982 and any act or law supplementary thereto and all rules and regulations promulgated thereunder; (2)

"**Reclamation Property**" means any portion of the Property that is subject to reclamation Law; and (3) "**Reclamation Water**" means irrigation water applied to reclamation Property that is subject to Reclamation Law. All irrigation wells and related facilities used to deliver irrigation water to any portion of the Property shall remain physically located within the boundaries of such Property or the subject of valid, enforceable easements appurtenant to the Property and encumbered hereby. If the use of any irrigation facilities or water serving the Property requires consent or the use of other property, Trustor shall maintain in effect all requisite easements or other legally enforceable and assignable rights to use such facilities and/or water to service the Property. Trustor shall notify Beneficiary if the irrigation water supply to any portion of the Property is interrupted or subject to interruption for any reason other than temporarily for routine maintenance or repairs in a manner that does not impair the operation of the Property.

**Patented and Trademarked Varieties.** Trustor shall not plant on the Land, or graft to any trees or vines on the Land, patented or trademarked varieties of trees or vines unless (1) Trustor owns the patent or trademark for such trees, vines or rootstock or a license to plant or graft such trees, vines or rootstock which is transferable to a successor owner of the Land, and (2) Trustor has, prior to such planting or grafting, provided to Beneficiary written evidence of such ownership or transferable license.

**Compliance with Applicable Law** Trustor shall not commit or allow any act upon or use of the Property which would violate any applicable law, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property.

**Taxes and Assessments**. Trustor shall pay prior to delinquency all taxes, levies, charges and assessments imposed by applicable law or any public or quasi-public authority or utility company which are (or if not paid, may become) a lien on all or part of the Property or any interest in it, and any and all intangible taxes and documentary stamp taxes determined at any time to be due on or as a result of the Secured Obligations, this deed of trust or any other Loan Documents, together with any and all interest and penalties thereon (individually and collectively, "**Imposition**"). If after the date of this deed of trust, the State of California passes any law deducting from the value of Land for the purpose of taxation any lien thereon, or changing in any way the laws for the taxation of mortgages or debts secured by a mortgage for state or local purposes, or the manner of the collection of any such taxes, so as to affect this deed of trust, then within 180 days after notice by Beneficiary to Trustor, Trustor shall pay all Secured Obligations. Notwithstanding the foregoing provisions of this Section, Trustor may, at its expense, contest the validity or application of any Imposition by appropriate legal proceedings promptly initiated and conducted in good faith and with due diligence, provided that: (1) Beneficiary is satisfied that neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, or lost as a result of such contest; and (2) Trustor shall have posted a bond or furnished such other security required from time to time by Beneficiary.

**Damages and Insurance and Condemnation Awards**. Beneficiary may, at its option: (1) in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on warranty, or for damage, injury or loss to all or part of the Property, and Beneficiary may make any compromise or settlement of the action or proceeding; (2) participate in any action or proceeding relating to any Condemnation Award; and (3) join Trustor in adjusting any Insurance Claim. All insurance proceeds, Condemnation Awards, and proceeds of any other claim based on warranty, or for damage, injury or loss to the Property which Trustor may receive or be entitled to must be paid to Beneficiary. Beneficiary may apply those proceeds first toward reimbursement of all of Beneficiary's costs and expenses, including Legal Fees (defined in the Note), incurred in connection with such recovery. The balance shall, at Beneficiary's option, be applied to pay or prepay some or all of the Secured Obligations in such order and proportions as it may choose. TRUSTOR HEREBY SPECIFICALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ALL RIGHTS OF A PROPERTY OWNER GRANTED UNDER CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1265.225(A), WHICH PROVIDES FOR ALLOCATION OF CONDEMNATION AWARDS BETWEEN A PROPERTY OWNER AND A LIENHOLDER, AND ANY OTHER LAW OR SUCCESSOR STATUTE OF SIMILAR IMPORT.

**Site Visits, Observation and Testing.** Beneficiary and its agents and representatives may enter and visit the Property at any reasonable time for the purposes of observing it, performing appraisals, taking

7

and removing soil or groundwater samples, and conducting tests on any part of it, as provided in the Environmental Indemnity, and otherwise to determine Trustor's compliance with this deed of trust.

**Prohibited Transfers.** Trustor agrees that a material factor in Beneficiary's decision to enter into the Loan Documents is the expertise, financial status and other characteristics of Trustor. Trustor shall not make or permit any Prohibited Transfer. Upon any Prohibited Transfer Beneficiary may declare all Secured Obligations to be due and payable immediately. **"Prohibited Transfer"** means: (1) any sale, contract to sell, conveyance, encumbrance, pledge, mortgage, or other transfer of all or any material part or interest of the Property, whether voluntary, involuntary, by operation of law or otherwise; provided, however, Trustor may sell or dispose of fixtures and Equipment in the ordinary course of their business so long as such items are replaced with items of equal or greater value and utility; (2) if Trustor is a corporation, any transfer or transfers of shares of more than ten percent (or such other portion, if any, permitted under the Note) of the voting power or the direct or indirect beneficial ownership of Trustor, on a cumulative basis, or any dissolution of the corporation; (3) if Trustor is a partnership, withdrawal or removal of any general partner, dissolution of the partnership under applicable law, or any transfer or transfers of more than ten percent (or such other portion, if any, permitted under the Note) of the partnership interests, on a cumulative basis; (4) if Trustor is a limited liability company, withdrawal or removal of any manager or managing member, termination of the limited liability company or any transfer or transfers of more than ten percent (or such other portion, if any, permitted under the Note) of the voting power or the ownership of the economic interest in the Trustor, on a cumulative basis; or (5) if Trustor is a trust, withdrawal or removal of any trustee or revocation of the trust.

**Prohibited Transfer Rate.** If there is a Prohibited Transfer, Beneficiary may deem the principal balance of the Loan and, to the extent permitted by applicable law, all other Obligations, increase at the Contract Rate (as defined in the Note) by 2.000% per annum, retroactive to the date of the Prohibited Transfer. Beneficiary's rights under this Section are an option available to Beneficiary, and unless elected by Beneficiary, a Prohibited Transfer will constitute an Event of Default and all Obligations will bear interest at the Default Rate (as defined in the Note).

**Compensation and Reimbursement of Costs and Expenses.** Trustor shall pay (1) for any services rendered in connection with this deed of trust; (2) all of Trustee and Beneficiary's costs and expenses incurred in rendering any such services; and (3) all costs, expenses and other advances incurred or made by Trustee or Beneficiary in an effort to enforce the terms of this deed of trust or protect the Property, whether any lawsuit is filed or not, including any bankruptcy or other voluntary or involuntary proceeding, in or out of court, or in defending any action or proceeding arising under or relating to this deed of trust, including Legal Fees, and costs of any Foreclosure Sale. If Beneficiary chooses to dispose of Property through more than one Foreclosure Sale, Trustor must pay all costs, expenses or other advances incurred by Trustee or Beneficiary in each of those Foreclosure Sales.

**Indemnification.** TRUSTOR SHALL INDEMNIFY TRUSTEE AND BENEFICIARY AGAINST AND SHALL HOLD THEM HARMLESS FROM ALL LOSSES, DAMAGES, LIABILITIES, CLAIMS, CAUSES OF ACTION, JUDGMENTS, COURT COSTS, LEGAL FEES, COST OF EVIDENCE OF TITLE, COST OF EVIDENCE OF VALUE, AND OTHER COSTS AND EXPENSES WHICH EITHER OF THEM MAY SUFFER OR INCUR: (1) IN PERFORMING ANY ACT REQUIRED OR PERMITTED BY THIS DEED OF TRUST OR ANY OF THE OTHER LOAN DOCUMENTS OR BY LAW; (2) BECAUSE OF ANY FAILURE OF TRUSTOR TO PAY OR PERFORM ANY OF THE SECURED OBLIGATIONS; OR (3) BECAUSE OF ANY ALLEGED OBLIGATION OF OR UNDERTAKING BY TRUSTEE AND BENEFICIARY TO PERFORM OR DISCHARGE ANY OF THE REPRESENTATIONS, WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN ANY DOCUMENT RELATING TO THE PROPERTY (OTHER THAN SUCH WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN THE LOAN DOCUMENTS). THIS AGREEMENT BY TRUSTOR TO INDEMNIFY TRUSTEE AND BENEFICIARY SURVIVES THE RELEASE AND CANCELLATION OF ANY OR ALL OF THE SECURED OBLIGATIONS AND THE FULL OR PARTIAL RELEASE AND/OR RECONVEYANCE OF THIS DEED OF TRUST.



**Payments Due Under This Deed of Trust**. Trustor must pay all obligations to pay money arising under this deed of trust immediately upon demand by Trustee or Beneficiary. Each such obligation shall bear interest from the date the obligation arises at the Default Rate (as defined in the Note).

## ARTICLE 6 – EVENTS OF DEFAULT AND REMEDIES

**Events of Default**. The following each shall be an event of default under this deed of trust (an **"Event of Default"**): (1) an Event of Default (as defined in the Note); (2) a Prohibited Transfer; (3) if Trustor is in default beyond applicable notice and grace periods under any other mortgage, deed of trust, deed to secure debt or other security agreement covering any part of the Property, whether it be superior or junior in lien to this deed of trust; (4) for more than ten days after notice from Beneficiary, Trustor is in default under any term, covenant or condition of this deed of trust not separately described as an Event of Default, which can be cured by the payment of a sum of money; or (5) for 30 days after notice from Trustee or Beneficiary, Trustor is in default under any term, covenant or condition of this deed of trust not separately described as an Event of Default; provided that if: (A) it is reasonably certain that the default cannot be cured by Trustor within that 30 day period; and (B) Trustor has commenced curing that default within that 30 day period and thereafter diligently and expeditiously proceeds to cure that default, then that 30 day period shall be extended for so long as reasonably required by Trustor in the exercise of due diligence to cure that default, up to a maximum of 90 days after the notice to Trustor of the Event of Default.

**Remedies**. At any time after an Event of Default, Trustee and Beneficiary may invoke any and all of the rights and remedies described below. All of such rights and remedies are cumulative, and the exercise of any one or more of them does not constitute an election of remedies.

**Acceleration**. Trustee or Beneficiary may declare any or all of the Secured Obligations to be due and payable immediately.

**Receiver**. Trustee or Beneficiary may, to the extent permitted by applicable law, make an ex parte application to any court of competent jurisdiction, and obtain appointment of, a receiver, trustee, liquidator or conservator of the Property, without notice, without giving bond, and without regard for the adequacy of the security for the Secured Obligations and without regard for the solvency of Trustor, any guarantor of all or any portion of the Secured Obligations, or of any person liable for the payment of the Secured Obligations. TRUSTOR HEREBY WAIVES NOTICE OF THE APPLICATION FOR, AND CONSENTS TO THE APPOINTMENT OF A RECEIVER, TRUSTEE, LIQUIDATOR OR CONSERVATOR OF THE PROPERTY IN ACCORDANCE WITH THE PROVISIONS OF THIS SECTION; AND TRUSTOR AGREES TO NOT OPPOSE SUCH APPOINTMENT.

**Entry**. To the extent permitted by applicable law, Trustee or Beneficiary, in person, by agent or by court-appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and may also do any and all other things in connection with those actions that Beneficiary may consider necessary and appropriate to protect the security of this deed of trust. Such other things may include: taking and possessing all of Trustor's or the then owner's books and records; entering into, enforcing, modifying, or canceling leases on such terms and conditions as Trustee or Beneficiary may consider proper; obtaining and evicting tenants; fixing or modifying rents; collecting and receiving any payment of money owing to Trustor; completing any unfinished construction; and/or contracting for and making repairs and alterations. If Trustee or Beneficiary so requests, Trustor will assemble all of the Property that has been removed from the Land and make all of it available to Trustee or Beneficiary at the site of the Land. TRUSTOR HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS TRUSTEE AND BENEFICIARY AS TRUSTOR'S ATTORNEY-IN-FACT TO PERFORM SUCH ACTS AND EXECUTE SUCH DOCUMENTS AS TRUSTEE OR BENEFICIARY CONSIDERS APPROPRIATE IN CONNECTION WITH TAKING THESE MEASURES, INCLUDING ENDORSEMENT OF TRUSTOR'S NAME ON ANY INSTRUMENTS. Regardless of any provision of this deed of trust or the other Loan Documents, neither Trustee or Beneficiary shall not be considered to have accepted any property other than cash or immediately available funds in satisfaction of any obligation of Trustor to Beneficiary, unless Trustee or Beneficiary respectively, has given express written notice of its election of that remedy in accordance with the UCC.

Sutter Land
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200478        Rev. 03.17.2017

7

1598668.2

Exhibits, Page 146 of 182

**Cure; Protection of Security.**  Trustee or Beneficiary may cure any breach or default of Trustor, and if Beneficiary chooses to do so in connection with any such cure, Trustee or Beneficiary may also enter the Property and/or do any and all other things which it considers necessary or appropriate to protect the security of this deed of trust.   Such other things may include:  (1) appearing in and/or defending any action or proceeding which purports to affect the security of, or the rights or powers of Trustee or Beneficiary under,  this deed of trust;  (2) paying, purchasing, contesting or compromising any encumbrance, charge, lien or claim of lien which in Trustee's or Beneficiary's judgment is or may be senior in priority to this deed of trust, such judgment of Trustee or Beneficiary to be conclusive as among the parties to this deed of trust; (3) obtaining insurance and/or paying any premiums or charges for insurance required to be carried under the Note; (4) otherwise caring for and protecting any and all of the Property; and/or (5) employing counsel, accountants, contractors and other appropriate persons to assist Trustee or Beneficiary.  Beneficiary may take any of the actions permitted under this Article either with or without giving notice to any person.  Notwithstanding the foregoing, in no event will Trustee or Beneficiary have any obligation to take any of the actions set forth in this Section.

**Uniform Commercial Code Remedies.**  Beneficiary may exercise any or all of the remedies granted to a secured party under the UCC.   To the extent that applicable law imposes the duty on Beneficiary to exercise remedies in a commercially reasonable manner, Trustor acknowledges and agrees that it is not commercially unreasonable for Beneficiary to:  (1) fail to incur expenses reasonably deemed significant by Beneficiary to prepare the Personalty for disposition or to fail to complete raw material or work in process into finished goods or other finished products for disposition; (2) fail to exercise collection remedies against account debtors or other persons obligated on the Personalty (directly or through the use of collection specialists), or to fail to remove liens, encumbrances or adverse claims against the Personalty; (3) advertise dispositions of the Personalty through publications or media of general circulation, whether or not the Personalty is of a specialized nature; (4) contact persons for expressions of interest in acquiring all or any portion of the Personalty; (5) hire professional auctioneers to assist in the disposition of the Personalty, whether or not the Personalty is of a specialized nature; (6) dispose of the Personalty by utilizing Internet sites that provide for or are reasonably capable of the auction of assets of the types included in the Personalty; (7) dispose of the Personalty in wholesale rather than retail markets; (8) disclaim disposition warranties; (9) purchase insurance or credit enhancements to insure Beneficiary against risks of loss, collection or disposition of the Personalty or to provide to Beneficiary a guaranteed return from the collection or disposition of the Personalty; or (10) sell any Personalty jointly with any of the Property or to sell any Personalty in a sale separate from a sale of any of the Property.  Trustor acknowledges that the purpose of this Section is to provide a non-exhaustive indication of what actions or omissions by Beneficiary would fulfill Beneficiary's duties under the UCC in Beneficiary's exercise of remedies against the Personalty, and that other actions or omissions by Beneficiary shall not be deemed to fail to fulfill such duties solely on account of not being expressly included or indicated in this Section.

**Power of Sale.**  Beneficiary may cause some or all of the Property, including any Personalty, to be sold or otherwise disposed of in any combination and in any manner permitted by applicable law.

**Judicial Action.**  Beneficiary may bring an action in any court of competent jurisdiction to foreclose this deed of trust in the manner provided under applicable law for the foreclosure of mortgages on real property or to obtain specific enforcement of any of the covenants or agreements of this deed of trust.

**Sales of Personal Property.**  Beneficiary may elect to treat as Personalty any Property which is intangible or which can be severed from the Land or Improvements without causing structural damage.  If it chooses to do so, Beneficiary may dispose of any Personalty separately from the sale of real property, in any manner permitted by Article 9 of the UCC, including any public or private sale, or in any manner permitted by any other applicable law.  Any proceeds of any such disposition shall not cure any Event of Default or reinstate any Secured Obligation for purposes of Section 2924c of the California Civil Code.

**Single or Multiple Foreclosure Sales.**  If the Property consists of more than one lot, parcel or item of property, in connection with any sale of the Property described in or permitted under this Article, Beneficiary may: (1) designate the order in which the lots, parcels and/or items shall be sold or disposed of or offered for sale or disposition; and (2) elect to dispose of the lots, parcels and/or items through a single consolidated sale or disposition to be held or made in connection with judicial proceedings, or by

virtue of a judgment and decree of foreclosure and sale; or through two or more such sales or dispositions; or in any other manner Beneficiary may deem to be in its best interests (any such sale or disposition, a "**Foreclosure Sale**"). If it chooses to have more than one Foreclosure Sale, Beneficiary at its option may cause the Foreclosure Sales to be held simultaneously or successively, on the same day, or on such different days and at such different times and in such order as it may deem to be in its best interests. No Foreclosure Sale will terminate or affect the liens of this deed of trust on any part of the Property which has not been sold, until all of the Secured Obligations have been paid in full.

**Additional Rights**. In addition to the rights and powers given to Beneficiary under this deed of trust, Beneficiary shall have all such other rights both in law and equity for collection of the indebtedness secured hereby as it would have but for this deed of trust.

**Credit Bids**. At any Foreclosure Sale, any person, including Trustor or Beneficiary, may bid for and acquire the Property or any part of it to the extent permitted by then applicable law. Instead of paying cash for that Property, Beneficiary may settle for the purchase price by crediting the sales price of the Property against the following obligations: first, the portion of the Secured Obligations attributable to the expenses of sale, costs of any action and other sums for which Trustor is obligated to reimburse Beneficiary; and second, all other Secured Obligations in any order and proportions as Beneficiary may choose.

**Application of Foreclosure Sale Proceeds, Rents and Other Sums**. Beneficiary shall apply the proceeds of any Foreclosure Sale to pay (or reimburse Beneficiary for payment of) the Secured Obligations in any order and proportions as Beneficiary may choose, with the surplus, if any, to be paid over to Trustor. Beneficiary has no liability for any funds which it does not actually receive.

**Request for Notice.** Trustor hereby requests that, unless otherwise prescribed by law, a copy of any notice of default and a copy of any notice of sale pursuant to the nonjudicial foreclosure of this deed of trust be sent to Trustor at the address specified for Notices (defined below).

**Waivers.** Trustor waives: (1) any right to require Trustee or Beneficiary to proceed against Trustor, proceed against or exhaust any security held from Trustor, or pursue any other remedy in Trustee's or Beneficiary's power to pursue; (2) any defense based on any legal disability of Trustor, any discharge or limitation of the liability of Trustor to Trustee or Beneficiary, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding, or from any other cause, or any claim that Trustor's obligations exceed or are more burdensome than those of Trustor; (3) all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this deed of trust and of the existence, creation, or incurring of new or additional indebtedness of Trustor, and demands and notices of every kind; (4) any defense based on or arising out of any defense that Trustor may have to the payment or performance of the Secured Obligations or any part of it; and (5) until the Secured Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that Trustee or Beneficiary may have against Trustor, and all rights to participate in any security now or later to be held by Trustee or Beneficiary for the Secured Obligations. Trustor waives any rights or defenses that are or may become available to Trustor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code. Trustor waives all rights and defenses that Trustor may have because the Secured Obligations may be secured by real property other than the Property hereby encumbered. This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the Secured Obligations may be secured by real property other than the Property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure. Trustor waives any right or defense it may have at law or equity, including all rights and defenses under California Code of Civil Procedure Section 580a, to a fair market value hearing or action to determine a deficiency judgment after a foreclosure of any real property other than the Property hereby encumbered. No provision or waiver in this deed of trust shall be construed as limiting the generality of any other provision or waiver contained in this deed of trust.

Sutter Land
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200478                                                                                      Rev. 03.17.2017
9
1598668.2

Exhibits, Page 148 of 182

{(

**Information.** Trustor is solely responsible for keeping informed of Trustor's financial condition and business operations and all other circumstances affecting Trustor's ability to pay and perform its obligations to Trustee or Beneficiary, and agrees that Trustee or Beneficiary will have no duty to disclose to Trustor any information which Trustee or Beneficiary may receive about Trustor's financial condition, business operations, or any other circumstances bearing on its ability to perform.

**No Mortgagee in Possession.** Neither the enforcement of any of the remedies under this Article, the assignment of the Rents and Leases under Article 2, the security interests under Article 3, nor any other remedies afforded to Beneficiary under the Loan Documents, at law or in equity shall cause Beneficiary or Trustee to be deemed or construed to be a mortgagee in possession of the Property, to obligate Beneficiary or Trustee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

## ARTICLE 7 – MISCELLANEOUS

**Notices.** All notices, approvals, consents, and other communications, under this deed of trust ("**Notices**") must be in writing and mailed or delivered to the address specified herein. All Notices will be deemed to be given or made upon the earlier to occur of: (1) actual receipt by the intended recipient; or (2) (A) if delivered by hand or by courier, upon delivery; or (B) if delivered by mail, four Business Days after deposit in the U.S. mail, properly addressed, postage prepaid; except that notices and other communications to Beneficiary will not be effective until actually received by Beneficiary. Notices must be mailed or delivered, if to Trustor, to the address adjacent Trustor's signature below; if to Trustee, at 205 E. River Park Circle, Suite 430, Fresno, CA 93720; if to Beneficiary, to Metropolitan Tower Life Insurance Company, c/o MetLife Investment Management, LLC, 10801 Mastin Blvd., Ste. 700, Overland Park, KS 66210, Attn: LMG Director, with a carbon copy to Metropolitan Tower Life Insurance Company, c/o MetLife Investment Management, LLC, 205 E River Park Circle, Ste. 430, Fresno, CA 93720, Attn: Director, WRO.

## ARTICLE 8– TRUSTEE

From time to time, Beneficiary may substitute a successor to any Trustee named in or acting under this deed of trust in any manner now or later to be provided at law, or by a written instrument executed and acknowledged by Beneficiary and recorded in the office(s) of the recorder(s) of the county or counties where the Land and Improvements are situated. Any such instrument is conclusive proof of the proper substitution of the successor Trustee, who will automatically upon recordation of the instrument succeed to all estate, title, rights, powers and duties of the predecessor Trustee, without conveyance from it. Trustor waives any requirement that Trustee make an oath or give a bond. Trustee, or any one acting in its stead, may, employ agents and attorneys in the execution of this trust and/or in the conducting of any sale made pursuant to the terms hereof, and pay for such services rendered out of the proceeds of the sale of the Property; and if there is no sale or if the proceeds of sale are insufficient to pay for such services, then Trustor will pay the cost of such services to Trustee. Trustee may rely on any document believed by it in good faith to be genuine. All money received by Trustee shall, until used or applied as herein provided, be held in trust, but except to the extent otherwise required by applicable law, need not be segregated; and Trustee will not be liable for interest thereon.

## ARTICLE 9 – RELEASE AND CONVEYANCE

When all of the Secured Obligations have been paid and performed in full, upon written request by Trustor, Beneficiary shall request Trustee in writing to release and reconvey the Property. When Trustee receives Beneficiary's written request for release and reconveyance and all fees and other sums owed to Trustee by Trustor, Trustee shall release this deed of trust and reconvey the Property, or so much of it as is then held under this deed of trust, without warranty to the person or persons legally entitled to it. That person or those persons must pay any costs of recordation. In the reconveyance, the grantee may be described as "the person or persons legally entitled thereto," and the recitals of any matters or facts are conclusive proof of their truthfulness. Neither Beneficiary nor Trustee will have any duty to determine the rights of persons claiming to be rightful grantees of any reconveyance.

**Entire Agreement.** This deed of trust and the other Loan Documents collectively: (1) represent the sum of the understandings and agreements between Beneficiary and Trustor concerning the Loan; (2) replace any prior oral or written agreements between Beneficiary and Trustor concerning the Loan; and (3) are intended by Beneficiary and Trustor as the final, complete and exclusive statement of the terms agreed to by them.

**No Waiver or Cure.** Each waiver by Trustee or Beneficiary must be in writing, and no waiver is to be construed as a continuing waiver. No waiver is to be implied from any delay or failure by Trustee or Beneficiary to take action on account of any default of Trustor. Consent by Trustee or Beneficiary to any act or omission by Trustor must not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Trustee's or Beneficiary's consent to be obtained in any future or other instance. The exercise by Trustee or Beneficiary of any right or remedy under this deed of trust or the other Loan Documents or under applicable law, shall not: cure or waive a breach, Event of Default or notice of default under this deed of trust or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed and all other defaults under the Loan Documents, have been cured); or impair the security of this deed of trust; or prejudice Trustee, Beneficiary or any receiver appointed in accordance with this deed of trust, in the exercise of any right or remedy afforded any of them under this deed of trust; or be construed as an affirmation by Trustee or Beneficiary of any tenancy, lease or option, or a subordination of the lien of this deed of trust.

**Merger.** No merger shall occur as a result of Trustee's or Beneficiary's acquiring any other estate in or any other lien on the Property.

**Waiver of Dower, Homestead, and Distributive Share.** Trustor relinquishes all right of dower, if any, and waives all right of homestead exemption and distributive share in and to the Property. Trustor waives any right of exemption as to the Property.

**Waiver of Marshalling.** Trustor waives all rights, legal and equitable, it may now or hereafter have to require marshalling of assets or to require upon foreclosure sales of assets in a particular order, including all rights under California Code of Civil Procedure Sections 2899 and 3433. Each successor and assign of Trustor, including any holder of a lien subordinate to this deed of trust, by acceptance of its interest or lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

**Waiver of Certain Other Laws.** To the extent permitted by applicable law, Trustor shall not at any time insist upon, plead, claim or take the benefit or advantage of any applicable law providing for appraisement, valuation, stay, extension, equity or redemption, any statutory or common law right of redemption, and all other exemptions, and Trustor, for Trustor, and its representatives, successors and assigns, and for any and all persons ever claiming any interest in the Property, to the extent permitted by law, hereby waives and releases all rights of redemption (including, without limitation, any common law or statutory right of redemption), and all other exceptions, as well as valuation, appraisement, stay of execution, or notice of election to mature or declare due the whole of the Secured Obligations in the event of foreclosure of the lien created by this deed of trust. WITHOUT LIMITATION, IF THE UNDERSIGNED TRUSTOR, OR ANY OF THEM, IS A CORPORATION, TRUSTOR HEREBY RELEASES AND WAIVES ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY JUDGMENT OF FORECLOSURE AND EACH OF THE ITEMS WAIVED AND RELEASED ABOVE, ON BEHALF OF TRUSTOR, AND EACH AND EVERY PERSON ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY, SUBSEQUENT TO THE DATE OF THIS DEED OF TRUST, AND ON BEHALF OF ALL OF THE PERSONS TO THE EXTENT PERMITTED BY APPLICABLE LAW OF THE STATE OF CALIFORNIA.

**Joint and Several Obligations.** If Trustor consists of more than one person, each Trustor (1) acknowledges and undertakes, together with every other Trustor, joint and several liability for the indebtedness, liabilities and obligations of Trustor under this deed of trust; (2) acknowledges that this deed of trust is the independent and several obligation of each Trustor and may be enforced against each Trustor separately, whether or not enforcement of any right or remedy hereunder has been sought against any other Trustor; and (3) agrees that its liability hereunder and under any other Loan Document shall be absolute, unconditional, continuing and irrevocable. TRUSTOR EXPRESSLY WAIVES ANY

*13*

REQUIREMENT THAT TRUSTEE EXHAUST ANY RIGHT, POWER OR REMEDY AND PROCEED AGAINST ANY OTHER TRUSTOR UNDER THIS DEED OF TRUST, OR ANY OTHER LOAN DOCUMENTS, OR AGAINST ANY OTHER PERSON UNDER ANY GUARANTY OF, OR SECURITY FOR, ANY OF THE SECURED OBLIGATIONS.

**Governing Law/Jurisdiction and Venue.**  This deed of trust shall be governed exclusively by the laws of the State of California without regard or reference to its conflict of laws principles.

**General.**  This deed of trust may not be amended, changed, modified, altered or terminated without the prior written consent of Beneficiary.  This deed of trust may be executed in counterparts, each of which will be an original and all of which together are deemed one and the same instrument.  Trustee and Beneficiary is authorized to execute any other documents or take any other actions necessary to effectuate this deed of trust and the consummation of the transactions contemplated herein.  Time is of the essence of this deed of trust.  Each party has participated in negotiating and drafting this deed of trust, so if an ambiguity or a question of intent or interpretation arises, this deed of trust is to be construed as if the parties had drafted it jointly, as opposed to being construed against a party because it was responsible for drafting one or more provisions of this deed of trust.  When all Secured Obligations have been paid in full, Beneficiary shall execute and deliver to Trustor, a release of the Property from the lien of this deed of trust.  Headings and captions are provided for convenience only and do not affect the meaning of the text which follows.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

Sutter Land
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200478                                                                        Rev. 03.17.2017

1598668.2

12

Iц

[SIGNATURE PAGE TO DEED OF TRUST]

**TRUSTOR BY EXECUTION AND DELIVERY OF THIS DEED OF TRUST TO BENEFICIARY, AND BENEFICIARY, BY ACCEPTANCE HEREOF, TO THE EXTENT PERMITTED BY APPLICABLE LAW (1) COVENANT AND AGREE NOT TO ELECT A TRIAL BY JURY IN ANY ACTION OR PROCEEDING FOR THE RESOLUTION OF ANY CONTROVERSY OR CLAIM THAT ARISES OUT OF OR RELATES TO: (A) THIS DEED OF TRUST; OR (B) ANY OTHER LOAN DOCUMENT, WHETHER ARISING IN CONTRACT, TORT OR BY STATUTE (INDIVIDUALLY AND COLLECTIVELY, A "CONTROVERSY OR CLAIM"); AND (2) WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY CONTROVERSY OR CLAIM TO THE EXTENT SUCH RIGHT EXISTS NOW OR IN THE FUTURE.  THE PROVISIONS OF THIS SECTION ARE GIVEN KNOWINGLY AND VOLUNTARILY AND ARE A MATERIAL INDUCEMENT FOR BENEFICIARY ENTERING INTO THE NOTE AND OTHER LOAN DOCUMENTS.**

Trustor is executing this deed of trust effective as of the day and year first written above.

**TRUSTOR**

Address for notices:                          **SUTTER LAND LLC,** a California limited liability
130 Shrike Circle                             company
Sacramento, California  95834

By: _____
      BALJIT S. GILL
      Member

By: _____
      SUKHWANT S. GILL
      Member

[ACKNOWLEDGEMENTS OF DEED OF TRUST ON FOLLOWING PAGE]

Sutter Land
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200478                                                            Rev. 03.17.2017
1598668.2

13

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )

COUNTY OF _____Yolo_____ ) SS

On December 12, 2019, before me, _Elizabeth K. Rodriguez_, NOTARY PUBLIC, personally appeared SUKHWANT S. GILL, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

        I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

        WITNESS my hand and official seal.

        (SEAL)

_____
Notary Public

```
ELIZABETH K. RODRIGUEZ
Notary Public – California
Yolo County
Commission # 2202265
My Comm. Expires Jul 20, 2021
```

Sutter Land
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200478

Rev. 03.17.2017

1598668.2

15

[SIGNATURE PAGE TO DEED OF TRUST]

**TRUSTOR BY EXECUTION AND DELIVERY OF THIS DEED OF TRUST TO BENEFICIARY, AND BENEFICIARY, BY ACCEPTANCE HEREOF, TO THE EXTENT PERMITTED BY APPLICABLE LAW (1) COVENANT AND AGREE NOT TO ELECT A TRIAL BY JURY IN ANY ACTION OR PROCEEDING FOR THE RESOLUTION OF ANY CONTROVERSY OR CLAIM THAT ARISES OUT OF OR RELATES TO: (A) THIS DEED OF TRUST; OR (B) ANY OTHER LOAN DOCUMENT, WHETHER ARISING IN CONTRACT, TORT OR BY STATUTE (INDIVIDUALLY AND COLLECTIVELY, A "CONTROVERSY OR CLAIM"); AND (2) WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY CONTROVERSY OR CLAIM TO THE EXTENT SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THE PROVISIONS OF THIS SECTION ARE GIVEN KNOWINGLY AND VOLUNTARILY AND ARE A MATERIAL INDUCEMENT FOR BENEFICIARY ENTERING INTO THE NOTE AND OTHER LOAN DOCUMENTS.**

Trustor is executing this deed of trust effective as of the day and year first written above.

**<u>TRUSTOR</u>**

Address for notices:
130 Shrike Circle
Sacramento, California  95834

**SUTTER LAND LLC,** a California limited liability company

By: _____
     BALJIT S. GILL
     Member

By: _____
     SUKHWANT S. GILL
     Member

[ACKNOWLEDGEMENTS OF DEED OF TRUST ON FOLLOWING PAGE]

Sutter Land
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200478

1598668.2

13

Rev. 03.17.2017

*17*

[ACKNOWLEDGEMENTS OF DEED OF TRUST]

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA           )
                                 ) SS
COUNTY OF _Sacramento_ )

       On December 12, 2019, before me, _Charles Mitch Morrow_, NOTARY PUBLIC, personally appeared BALJIT S. GILL, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

       I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

       WITNESS my hand and official seal.

         (SEAL)

                                      Notary Public

CHARLES MITCH MORROW
COMM. # 2232195
NOTARY PUBLIC - CALIFORNIA
SACRAMENTO COUNTY
MY COMM. EXP. MAR. 10, 2022

Sutter Land
Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing
Loan no. 200478                                           Rev. 03.17.2017

1598668.2

14

Exhibits, Page 155 of 182

*18*

**EXHIBIT A**

Sutter Land
Loan No: 200478

DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT,
AND FIXTURE FILING

**Legal Description of Real Estate**

Sutter County, California

Real property in the unincorporated area of the County of Sutter, State of California, described as follows:

THE NORTHWEST ¼ AND THE NORTH ½ OF THE SOUTHWEST ¼ OF SECTION 25, TOWNSHIP 11 NORTH, RANGE 4 EAST, MOUNT DIABLO BASE & MERIDIAN.

EXCEPTING THEREFROM PARCEL NO. 1, AS SHOWN ON "PARCEL MAP NO. 664", FILED IN THE OFFICE OF THE COUNTY RECORDER OF SUTTER COUNTY, CALIFORNIA, ON OCTOBER 5, 1982 IN BOOK 4 OF PARCEL MAPS, PAGE 14.

APN: 35-170-074

1598668.2

End Of Document

# EXHIBIT

# L

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Matthew W. Ellis |
| 916-520-5396 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Downey Brand LLP
621 Capitol Mall, 18th Floor
Sacramento, CA 95814
USA

**DOCUMENT NUMBER: 84748210002**
**FILING NUMBER: 19-7753539514**
**FILING DATE: 12/23/2019 15:48**

IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | SUTTER LAND LLC | | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 130 Shrike Circle | Sacramento | CA | 95834 | USA |

**2. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | | | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | METROPOLITAN TOWER LIFE INSURANCE COMPANY | | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o MetLife Investment Management, LLC, 205 E. River Park Circle | Fresno | CA | 93720 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

   **See Attachment(s)**

5. Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check <u>only</u> if applicable and check <u>only</u> one box: | 6b. Check <u>only</u> if applicable and check <u>only</u> one box: |
|---|---|
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
Loan No.: 200478

**FILING OFFICE COPY**

## EXHIBIT A TO UCC-1 FINANCING STATEMENT

### *Debtors*:  SUTTER LAND LLC

### *Secured Party:*  METROPOLITAN TOWER LIFE INSURANCE COMPANY

Debtor grants to Secured Party a security interest in, and pledges and assigns to Secured Party, all of Debtor's estate, right, title and interest now or hereafter acquired in and to all of the following wherever located, and whether constituting real estate or personal property (individually and collectively, the **"Property"**) (collectively, the **"Collateral"**) described in this **EXHIBIT A:**

(1)     the real estate and any interest in the real estate located in Sutter County, California, and described in **EXHIBIT B** (the **"Land"**);

(2)     buildings, structures, improvements, and fixtures now or hereafter erected on, affixed or attached to the Land, including all trellises, farm products storage and handling units and equipment, and fences, gates and loading chutes (the **"Improvements"**);

(3)     (A) wells, irrigation and drainage pumps, motors, pipes, windmills, frost protection equipment, center pivot irrigators, sprinklers, drip line and emitters, filters, water measurement meters and control structures and other watering and irrigation equipment; and (B) all other equipment now or hereafter affixed or installed in any manner on the Land or the Improvements or used in connection with the operation of the Property (other than rolling stock and implements customarily towed) (the **"Equipment"**);

(4)     easements, rights-of-way, and other rights and entitlements appurtenant to the Land or used in connection with the Land or as a means of access thereto;

(5)     other tenements, hereditaments and appurtenances to the Land;

(6)     rights to the use and enjoyment of water, whether surface or subsurface, whether riparian, appropriative, prescriptive or otherwise, and whether or not appurtenant, now or hereafter relating or available to the Land or Improvements or used in connection therewith: (A) water allocations, water banking rights or interests, carryover rights, supplemental water, storage and exchange rights drainage rights, distribution rights, storage rights, delivery rights, and other water-related rights or entitlements, whether available through any public or private irrigation projects, companies, districts, agencies or otherwise, together with all shares of stock evidencing any such rights or entitlements, and all voting rights and other rights and privileges that now or hereafter may exist with respect to such stock or with respect to participation, membership, or other involvement in any such projects, companies, districts, or agencies; (B) water and water inventory in storage; (C) rights under well, pump and filter sharing agreements; and (D) all easements, permits, licenses, leases, contracts, grants, reservations and any other rights and entitlements, however created, to drill, install and maintain wells, pumps and pipeline systems, or to use, appropriate, pump, extract, receive, transport, store or transfer water (**"Water Rights"**);

(7)     shares, and rights under such shares, of any private water company, mutual water company, or other non-governmental entity pursuant to which Trustor or the Property may receive water and any other certificated and uncertificated securities, securities entitlements, securities accounts and commodities accounts;

(8)     coal, oil, gas, and other hydrocarbon substances, geothermal resources, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other

interests and estates in, under or produced from the Land and other coal, oil, gas, geothermal, and mineral interests with which any of the foregoing interests or estates are pooled or unitized and other "as-extracted collateral";

(9)      timber now or hereafter standing on or cut from the Land;

(10)      leases, subleases, licenses and other agreements, granting a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Property, (individually and collectively, the **"Leases"**);

(11)      bushes, groves, trees, plants, vines or other plantings, upon or under the Land (the **"Permanent Plantings"**);

(12)      intellectual property rights now or hereafter held by Trustor with respect to Permanent Plantings, including all such patents, patent licenses, trademarks and trademark licenses;

(13)      crops growing or to be grown on or under the Land (including all such crops following severance from the Land and seed and propagative portions of plants) (the **"Crops"**);

(14)      rights to payment whether or not earned by performance, under state or federal farm programs with respect to the Mortgaged Land, including Commodity Credit Corp program payments, payments in kind, deficiency payments, letters of entitlement, storage payments, emergency assistance, diversion payments, production flexibility contracts, and contract reserve payments (collectively, **"Government Farm Program Payments"**);

(15)      permits and licenses relating or pertaining to the use or enjoyment of the Property;

(16)      proceeds of and any unearned premiums on any insurance policies covering the Property, including the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property (**"Insurance Claims"**);

(17)      all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Land or Improvements (**"Condemnation Awards"**);

(18)      accessions, attachments and other additions to, substitutes or replacements for, all proceeds and products of, the Property; and

(19)      books, records and files relating to the Property, including computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data.

**EXHIBIT B TO UCC-1 FINANCING STATEMENT
LEGAL DESCRIPTION**

Sutter Land
Loan No: 200478

Legal Description of Real Estate
Sutter County, California

Real property in the unincorporated area of the County of Sutter, State of California, described as follows:

THE NORTHWEST ¼ AND THE NORTH ½ OF THE SOUTHWEST ¼ OF SECTION 25, TOWNSHIP 11 NORTH, RANGE 4 EAST, MOUNT DIABLO BASE & MERIDIAN.

EXCEPTING THEREFROM PARCEL NO. 1, AS SHOWN ON "PARCEL MAP NO. 664", FILED IN THE OFFICE OF THE COUNTY RECORDER OF SUTTER COUNTY, CALIFORNIA, ON OCTOBER 5, 1982 IN BOOK 4 OF PARCEL MAPS, PAGE 14.

APN: 35-170-074

# EXHIBIT
# M

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Matthew W. Ellis |
| 916-520-5396 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|
| |

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |
|---|
| Downey Brand LLP |
| 621 Capitol Mall, 18th Floor |
| Sacramento, CA 95814 |
| USA |

**DOCUMENT NUMBER: 84748210002**
**FILING NUMBER: 19-7753539514**
**FILING DATE: 12/23/2019 15:48**

**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| SUTTER LAND LLC | | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 130 Shrike Circle | Sacramento | CA | 95834 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| METROPOLITAN TOWER LIFE INSURANCE COMPANY | | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o MetLife Investment Management, LLC, 205 E. River Park Circle | Fresno | CA | 93720 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

    **See Attachment(s)**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Loan No.: 200478

**FILING OFFICE COPY**

## EXHIBIT A TO UCC-1 FINANCING STATEMENT

### *Debtors*:  SUTTER LAND LLC

### *Secured Party:*  METROPOLITAN TOWER LIFE INSURANCE COMPANY

Debtor grants to Secured Party a security interest in, and pledges and assigns to Secured Party, all of Debtor's estate, right, title and interest now or hereafter acquired in and to all of the following wherever located, and whether constituting real estate or personal property (individually and collectively, the **"Property"**) (collectively, the **"Collateral"**) described in this **EXHIBIT A:**

(1)      the real estate and any interest in the real estate located in Sutter County, California, and described in **EXHIBIT B** (the **"Land"**);

(2)      buildings, structures, improvements, and fixtures now or hereafter erected on, affixed or attached to the Land, including all trellises, farm products storage and handling units and equipment, and fences, gates and loading chutes (the **"Improvements"**);

(3)      (A) wells, irrigation and drainage pumps, motors, pipes, windmills, frost protection equipment, center pivot irrigators, sprinklers, drip line and emitters, filters, water measurement meters and control structures and other watering and irrigation equipment; and (B) all other equipment now or hereafter affixed or installed in any manner on the Land or the Improvements or used in connection with the operation of the Property (other than rolling stock and implements customarily towed) (the **"Equipment"**);

(4)      easements, rights-of-way, and other rights and entitlements appurtenant to the Land or used in connection with the Land or as a means of access thereto;

(5)      other tenements, hereditaments and appurtenances to the Land;

(6)      rights to the use and enjoyment of water, whether surface or subsurface, whether riparian, appropriative, prescriptive or otherwise, and whether or not appurtenant, now or hereafter relating or available to the Land or Improvements or used in connection therewith: (A) water allocations, water banking rights or interests, carryover rights, supplemental water, storage and exchange rights drainage rights, distribution rights, storage rights, delivery rights, and other water-related rights or entitlements, whether available through any public or private irrigation projects, companies, districts, agencies or otherwise, together with all shares of stock evidencing any such rights or entitlements, and all voting rights and other rights and privileges that now or hereafter may exist with respect to such stock or with respect to participation, membership, or other involvement in any such projects, companies, districts, or agencies; (B) water and water inventory in storage; (C) rights under well, pump and filter sharing agreements; and (D) all easements, permits, licenses, leases, contracts, grants, reservations and any other rights and entitlements, however created, to drill, install and maintain wells, pumps and pipeline systems, or to use, appropriate, pump, extract, receive, transport, store or transfer water (**"Water Rights"**);

(7)      shares, and rights under such shares, of any private water company, mutual water company, or other non-governmental entity pursuant to which Trustor or the Property may receive water and any other certificated and uncertificated securities, securities entitlements, securities accounts and commodities accounts;

(8)      coal, oil, gas, and other hydrocarbon substances, geothermal resources, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other

interests and estates in, under or produced from the Land and other coal, oil, gas, geothermal, and mineral interests with which any of the foregoing interests or estates are pooled or unitized and other "as-extracted collateral";

(9)    timber now or hereafter standing on or cut from the Land;

(10)    leases, subleases, licenses and other agreements, granting a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Property, (individually and collectively, the **"Leases"**);

(11)    bushes, groves, trees, plants, vines or other plantings, upon or under the Land (the **"Permanent Plantings"**);

(12)    intellectual property rights now or hereafter held by Trustor with respect to Permanent Plantings, including all such patents, patent licenses, trademarks and trademark licenses;

(13)    crops growing or to be grown on or under the Land (including all such crops following severance from the Land and seed and propagative portions of plants) (the **"Crops"**);

(14)    rights to payment whether or not earned by performance, under state or federal farm programs with respect to the Mortgaged Land, including Commodity Credit Corp program payments, payments in kind, deficiency payments, letters of entitlement, storage payments, emergency assistance, diversion payments, production flexibility contracts, and contract reserve payments (collectively, **"Government Farm Program Payments"**);

(15)    permits and licenses relating or pertaining to the use or enjoyment of the Property;

(16)    proceeds of and any unearned premiums on any insurance policies covering the Property, including the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property (**"Insurance Claims"**);

(17)    all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Land or Improvements (**"Condemnation Awards"**);

(18)    accessions, attachments and other additions to, substitutes or replacements for, all proceeds and products of, the Property; and

(19)    books, records and files relating to the Property, including computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data.

1601779.1

**EXHIBIT B TO UCC-1 FINANCING STATEMENT**
**LEGAL DESCRIPTION**

Sutter Land
Loan No: 200478

Legal Description of Real Estate
Sutter County, California

Real property in the unincorporated area of the County of Sutter, State of California, described as follows:

THE NORTHWEST ¼ AND THE NORTH ½ OF THE SOUTHWEST ¼ OF SECTION 25, TOWNSHIP 11 NORTH, RANGE 4 EAST, MOUNT DIABLO BASE & MERIDIAN.

EXCEPTING THEREFROM PARCEL NO. 1, AS SHOWN ON "PARCEL MAP NO. 664", FILED IN THE OFFICE OF THE COUNTY RECORDER OF SUTTER COUNTY, CALIFORNIA, ON OCTOBER 5, 1982 IN BOOK 4 OF PARCEL MAPS, PAGE 14.

APN: 35-170-074

# EXHIBIT

# N



# Grower Incoming Report 2024

## T.M. DUCHE NUT CO., INC

1502 RAILROAD AVE ORLAND CA 95963
Tel.: (530) 865-5511  Fax: (530) 865-7864

**Grower Code: CFI**  **Grower: CAPITAL FARMS INC**

| Rec'd Date | USDA Date | USDA # | Field Name | Delivery # | Total Weight | Foreign Material | | Shell | | Chip & Scratch | | Sample Size | Kernel Weight | Inedible | | GKW | GKW % | Lot Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INDEPENDENCE** | | | | | | | | | | | | | | | | | | |
| **Style: INSHELL** | | | | | | | | | | | | | | | | | | |
| 08/19/24 | 08/23/24 | 752240008 | Nalomas Ranch | RA01986 | 49,940 | 4,428 | 8.87% | 14,323 | 28.68% | 0 | 0.00% | 23.10 | 31,189 | 219 | 0.70% | 30,970 | 62.01% | |
| 08/19/24 | 08/27/24 | 752240117 | Nalomas Ranch | RA01990 | 49,880 | 3,594 | 7.24% | 14,900 | 29.89% | 0 | 0.00% | 22.20 | 31,188 | 407 | 1.31% | 30,779 | 61.95% | |
| 08/20/24 | 08/27/24 | 752240117 | Nalomas Ranch | RA01996 | 17,880 | 363 | 2.05% | 5,219 | 29.52% | 0 | 0.00% | 22.10 | 12,068 | 21 | 0.17% | 12,077 | 68.31% | |
| 08/21/24 | 08/27/24 | 752240117 | Nalomas Ranch | RA02002 | 22,420 | 4,223 | 18.84% | 5,682 | 25.34% | 0 | 0.00% | 21.50 | 12,515 | 204 | 1.63% | 12,311 | 54.91% | |
| 08/27/24 | 09/06/24 | 752240160 | Nalomas Ranch | RA02124 | 10,480 | 280 | 2.67% | 3,344 | 31.91% | 0 | 0.00% | 25.20 | 6,856 | 76 | 1.11% | 6,780 | 64.69% | |
| 09/03/24 | 09/06/24 | 752240180 | Nalomas Ranch | RA02132 | 45,210 | 1,028 | 2.26% | 15,002 | 33.18% | 0 | 0.00% | 24.80 | 29,312 | 193 | 0.66% | 29,139 | 64.45% | |
| 09/06/24 | 09/06/24 | 752240180 | Nalomas Ranch | RA02134 | 18,560 | 352 | 1.90% | 6,127 | 33.01% | 0 | 0.00% | 24.00 | 12,081 | 117 | 0.97% | 11,964 | 64.14% | |
| 09/10/24 | 09/10/24 | 752240210 | Nalomas Ranch | RA02170 | 10,180 | 240 | 2.37% | 3,481 | 34.19% | 0 | 0.00% | 21.80 | 6,459 | 174 | 2.69% | 6,285 | 61.74% | |
| 11/27/24 | 12/06/24 | 752240708 | Nalomas Ranch | RA02575 | 36,004 | 9,331 | 25.52% | 6,384 | 17.73% | 0 | 0.00% | 36.90 | 20,289 | 311 | 1.53% | 19,978 | 55.49% | |
| **Total for INSHELL** | | | | | 260,344 | 23,837 | 9.16% | 74,522 | 28.62% | 0 | 0.00% | 24.83 | 161,985 | 1,722 | 1.06% | 160,283 | 61.56% | |
| **Style: KERNELS** | | | | | | | | | | | | | | | | | | |
| 08/22/24 | 08/27/24 | 752240117 | Brewer Rd | RA02016 | 1,581 | 8 | 0.50% | 0 | 0.00% | 74 | 4.66% | 23.30 | 1,573 | 14 | 0.89% | 1,559 | 98.61% | |
| 08/27/24 | 08/28/24 | 752240123 | Brewer Rd | RA02023 | 12,419 | 85 | 0.69% | 0 | 0.00% | 533 | 4.29% | 22.80 | 12,334 | 143 | 1.16% | 12,191 | 98.16% | |
| 09/03/24 | 09/06/24 | 752240180 | Sankey Ranch | RA02130 | 29,509 | 50 | 0.17% | 0 | 0.00% | 676 | 2.29% | 26.20 | 29,459 | 548 | 1.86% | 28,911 | 97.97% | |
| 09/04/24 | 09/10/24 | 752240208 | Brewer Rd | RA02148 | 2,228 | 192 | 8.61% | 22 | 1.00% | 187 | 8.39% | 21.50 | 2,014 | 59 | 2.93% | 1,955 | 87.75% | |
| **Total for KERNELS** | | | | | 45,737 | 335 | 0.73% | 22 | 0.05% | 1,470 | 3.21% | 23.16 | 45,380 | 764 | 1.68% | 44,616 | 97.55% | |
| **INDEPENDENCE (13 deliveries)** | | | | | 306,081 | 24,172 | 7.90% | 74,544 | 24.35% | | 0.05% | 24.17 | 207,365 | 2,486 | 1.20% | 204,879 | 66.94% | |
| **MONTEREY** | | | | | | | | | | | | | | | | | | |
| **Style: KERNELS** | | | | | | | | | | | | | | | | | | |
| 10/04/24 | 10/24/24 | 752240503 | Brewer Rd | RA02426 | 34,460 | 139 | 0.41% | 0 | 0.00% | 1,985 | 5.76% | 25.70 | 34,321 | 1,078 | 3.14% | 33,243 | 96.47% | |
| 10/24/24 | 10/24/24 | 752240503 | Brewer Rd | RA02430 | 947 | 5 | 0.60% | 0 | 0.00% | 34 | 3.54% | 28.80 | 942 | 38 | 4.03% | 904 | 95.46% | |
| 10/24/24 | 10/28/24 | 752240523 | Sankey Ranch | RA02442 | 1,939 | 7 | 0.34% | 0 | 0.00% | 97 | 4.99% | 27.30 | 1,932 | 90 | 4.66% | 1,842 | 95.04% | |
| 10/24/24 | 10/31/24 | 752240544 | Sankey Ranch | RA02451 | 2,098 | 13 | 0.62% | 0 | 0.00% | 118 | 5.65% | 26.70 | 2,083 | 91 | 4.37% | 1,992 | 95.04% | |
| **Total for KERNELS** | | | | | 39,442 | 164 | 0.42% | 0 | 0.00% | 2,234 | 5.67% | 27.13 | 39,278 | 1,297 | 3.30% | 37,981 | 96.30% | |
| **MONTEREY (4 deliveries)** | | | | | 39,442 | 164 | 0.42% | 0 | 0.00% | 2,234 | 5.67% | 27.13 | 39,278 | 1,297 | 3.30% | 37,981 | 96.30% | |
| **NONPAREIL** | | | | | | | | | | | | | | | | | | |
| **Style: KERNELS** | | | | | | | | | | | | | | | | | | |
| 09/30/24 | 10/04/24 | 752240371 | Brewer Rd | RA02283 | 33,212 | 389 | 1.17% | 0 | 0.00% | 435 | 1.31% | 24.90 | 32,823 | 573 | 1.75% | 32,250 | 97.10% | |
| 09/30/24 | 10/04/24 | 752240371 | Brewer Rd | RA02285 | 42,782 | 549 | 1.28% | 0 | 0.00% | 612 | 1.43% | 24.90 | 42,233 | 869 | 2.03% | 41,374 | 98.71% | |
| 09/30/24 | 10/04/24 | 752240371 | Brewer Rd | RA02298 | 2,180 | 3 | 0.14% | 0 | 0.00% | 29 | 1.33% | 24.60 | 2,177 | 27 | 1.24% | 2,150 | 98.62% | |
| 09/03/24 | 10/04/24 | 752240405 | Brewer Rd | RA02295 | 19,107 | 74 | 0.39% | 0 | 0.00% | 256 | 1.34% | 23.90 | 19,033 | 252 | 1.32% | 18,781 | 98.29% | |
| 09/30/24 | 10/09/24 | 752240405 | Brewer Rd | RA02320 | 19,289 | 113 | 0.59% | 0 | 0.00% | 274 | 1.42% | 25.20 | 19,176 | 204 | 1.06% | 18,972 | 98.36% | |
| 10/02/24 | 10/09/24 | 752240405S | Sankey Ranch | RA02316 | 10,973 | 0 | 0.00% | 0 | 0.00% | 123 | 1.12% | 24.80 | 10,973 | 52 | 0.47% | 10,921 | 99.53% | |
| **Total for KERNELS** | | | | | 127,543 | 1,128 | 0.89% | 0 | 0.00% | 1,729 | 1.36% | 24.72 | 126,415 | 1,967 | 1.56% | 124,448 | 97.57% | |
| **NONPAREIL (6 deliveries)** | | | | | 127,543 | 1,128 | 0.89% | 0 | 0.00% | 1,729 | 1.36% | 24.72 | 126,415 | 1,967 | 1.56% | 124,448 | 97.57% | |
| **WOOD COLONY** | | | | | | | | | | | | | | | | | | |



# T.M. DUCHE NUT CO., INC

## Grower Incoming Report 2024

1502 RAILROAD AVE ORLAND CA 95963
Tel: (530) 865-5511  Fax: (530) 865-7864

**Grower Code: CFI**  **Grower: CAPITAL FARMS INC**

Style: KERNELS
WOOD COLONY

| Rec'd Date | USDA Date | USDA # | Field Name | Delivery # | Total Weight | Foreign Material | | Shell | | Chip & Scratch | | Sample Size | Kernel Weight | Inedible | | GKW | GKW % | Lot Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/11/24 | 11/14/24 | 752240817 | Brewer Rd | RA02527 | 8,534 | 39 | 0.45% | 0 | 0.00% | 287 | 3.36% | 23.00 | 8,495 | 196 | 2.31% | 8,299 | 97.25% | |
| 11/14/24 | 11/14/24 | 752240817 | Brewer Rd | RA02546 | 1,956 | 0 | 0.00% | 0 | 0.00% | 78 | 3.98% | 23.00 | 1,956 | 38 | 1.94% | 1,918 | 98.06% | |
| 11/14/24 | 11/18/24 | 752240634 | Brewer Rd | RA02552 | 8,050 | 27 | 0.33% | 0 | 0.00% | 427 | 5.31% | 23.20 | 8,023 | 152 | 1.89% | 7,871 | 97.78% | |
| **Total for KERNELS** | | | | | 18,540 | 66 | 0.35% | 0 | 0.00% | 792 | 4.27% | 23.07 | 18,474 | 386 | 2.09% | 18,088 | 97.56% | |
| **WOOD COLONY (3 deliveries)** | | | | | 18,540 | 66 | 0.35% | 0 | 0.00% | 792 | 4.27% | 23.07 | 18,474 | 386 | 2.09% | 18,088 | 97.56% | |

**Field Summary:**

| Variety | Kernel Weight | Good Kernel Wght |
|---|---|---|
| INDEPENDENCE | 51,839 | 50,901 |
| MONTEREY | 34,321 | 33,243 |
| NONPAREIL | 115,442 | 113,527 |
| WOOD COLONY | 18,474 | 18,088 |
| **Field Name: Brewer Rd Total:** | 220,076 | 215,759 |
| INDEPENDENCE | 155,526 | 153,978 |
| **Field Name: Natomas Ranch Total:** | 155,526 | 153,978 |
| MONTEREY | 4,957 | 4,738 |
| NONPAREIL | 10,973 | 10,821 |
| **Field Name: Sankey Ranch Total:** | 15,930 | 15,669 |

| Style | Variety | Kernel Weight | Good Kernel Wght |
|---|---|---|---|
| INSHELL | INDEPENDENCE | 161,985 | 160,263 |
| | **INSHELL Total:** | 161,985 | 160,263 |
| KERNELS (MEATS) | INDEPENDENCE | 45,380 | 44,616 |
| | MONTEREY | 39,278 | 37,981 |
| | NONPAREIL | 126,416 | 124,448 |
| | WOOD COLONY | 18,474 | 18,088 |
| | **KERNELS (MEATS) Total:** | 229,547 | 225,133 |
| | **Capital Farms Inc Total:** | 391,532 | 385,396 |

391,532

Exhibits, Page 169 of 182

# EXHIBIT

# O

# T.M. DUCHE NUT CO., INC



**Grower Incoming Report 2024**
1502 RAILROAD AVE ORLAND CA 95963
Tel: (530) 865-5511  Fax: (530) 865-7864

**Grower Code: UNITED**  **Grower: UNITED FARM LLC**

| Rec'd Date | USDA Date | USDA # | Field Name | Delivery # | Total Weight | Foreign Material | Shell | Chip & Scratch | | Sample Size | Kernel Weight | Inedible | | GKW | GKW % | Lot Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CARMEL** | | | | | | | | | | | | | | | | |
| **Style: KERNELS** | | | | | | | | | | | | | | | | |
| 10/30/24 | 11/06/24 | 752240576 | Baseline Ranch | RA02476 | 20,438 | 92 | 0.45% | 0.00% | 4,167 | 20.39% | 25.10 | 20,346 | 547 | 2.69% | 19,799 | 96.87% |
| **Total for KERNELS** | | | | | 20,438 | 92 | 0.45% | 0.00% | 4,167 | 20.39% | 25.10 | 20,346 | 547 | 2.69% | 19,799 | 96.87% |
| **CARMEL (1 delivery)** | | | | | 20,438 | 92 | 0.45% | 0.00% | 4,167 | 20.39% | 25.10 | 20,346 | 547 | 2.69% | 19,799 | 96.87% |
| **FRITZ** | | | | | | | | | | | | | | | | |
| **Style: KERNELS** | | | | | | | | | | | | | | | | |
| 10/17/24 | 10/17/24 | 752240457 | Jameson Ranch | RA02400 | 19,952 | 121 | 0.61% | 0.00% | 974 | 4.88% | 40.70 | 19,831 | 617 | 3.11% | 19,214 | 96.30% |
| **Total for KERNELS** | | | | | 19,952 | 121 | 0.61% | 0.00% | 974 | 4.88% | 40.70 | 19,831 | 617 | 3.11% | 19,214 | 96.30% |
| **FRITZ (1 delivery)** | | | | | 19,952 | 121 | 0.61% | 0.00% | 974 | 4.88% | 40.70 | 19,831 | 617 | 3.11% | 19,214 | 96.30% |
| **MONTEREY** | | | | | | | | | | | | | | | | |
| **Style: KERNELS** | | | | | | | | | | | | | | | | |
| 10/24/24 | 10/28/24 | 752240522 | Baseline Ranch | RA02445 | 8,321 | 9 | 0.11% | 0.00% | 829 | 9.96% | 24.00 | 8,312 | 193 | 2.32% | 8,119 | 97.57% |
| 10/24/24 | 10/24/24 | 752240544 | Baseline Ranch | RA02455 | 10,626 | 0 | 0.00% | 0.00% | 800 | 7.53% | 23.80 | 10,626 | 255 | 2.40% | 10,371 | 97.60% |
| 10/28/24 | 10/31/24 | 752240544 | Jameson Ranch | RA02461 | 45,848 | 113 | 0.25% | 0.00% | 1,839 | 4.01% | 25.20 | 45,735 | 1,673 | 3.65% | 44,062 | 96.10% |
| **Total for KERNELS** | | | | | 64,795 | 122 | 0.19% | 0.00% | 3,468 | 5.35% | 24.33 | 64,673 | 2,121 | 3.28% | 62,552 | 96.54% |
| **MONTEREY (3 deliveries)** | | | | | 64,795 | 122 | 0.19% | 0.00% | 3,468 | 5.35% | 24.33 | 64,673 | 2,121 | 3.28% | 62,552 | 96.54% |
| **NONPAREIL** | | | | | | | | | | | | | | | | |
| **Style: INSHELL** | | | | | | | | | | | | | | | | |
| 12/06/24 | 12/06/24 | 752240708 | Jameson Ranch | RA02582 | 4,608 | 773 | 16.77% | 23.27% | 0 | 0.00% | 36.10 | 2,763 | 42 | 1.52% | 2,721 | 59.05% |
| 12/04/24 | 12/10/24 | 752240721 | Jameson Ranch | RA02577 | 9,716 | 2,339 | 24.06% | 21.00% | 0 | 0.00% | 35.80 | 5,337 | 157 | 2.94% | 5,180 | 53.31% |
| **Total for INSHELL** | | | | | 14,324 | 3,112 | 21.72% | 21.73% | 0 | 0.00% | 35.95 | 8,100 | 199 | 2.46% | 7,901 | 55.16% |
| **Style: KERNELS** | | | | | | | | | | | | | | | | |
| 09/30/24 | 10/04/24 | 752240371 | Baseline Ranch | RA02289 | 26,887 | 434 | 1.61% | 0.00% | 245 | 0.91% | 22.50 | 26,453 | 450 | 1.70% | 26,003 | 96.71% |
| 10/02/24 | 10/09/24 | 752240405 | Baseline Ranch | RA02321 | 16,686 | 165 | 0.99% | 0.00% | 466 | 2.79% | 25.20 | 16,521 | 553 | 3.35% | 15,968 | 95.70% |
| 10/02/24 | 10/09/24 | 752240405 | Sankey Ranch | RA02315 | 7,844 | 103 | 1.32% | 0.00% | 175 | 2.23% | 23.80 | 7,741 | 164 | 2.12% | 7,577 | 96.60% |
| 12/04/24 | 12/06/24 | 752240708 | West Jameson | RA02579 | 7,981 | 58 | 0.73% | 0.00% | 236 | 2.96% | 35.60 | 7,923 | 110 | 1.39% | 7,813 | 97.90% |
| 12/04/24 | 12/10/24 | 752240721 | Jameson Ranch | RA02578 | 28,986 | 133 | 0.46% | 0.00% | 925 | 3.19% | 36.40 | 28,853 | 307 | 1.06% | 28,546 | 98.48% |
| **Total for KERNELS** | | | | | 88,384 | 893 | 1.01% | 0.00% | 2,047 | 2.31% | 28.78 | 87,491 | 1,584 | 1.81% | 85,907 | 97.20% |
| **NONPAREIL (7 deliveries)** | | | | | 102,708 | 4,005 | 3.90% | 3.03% | 2,047 | 1.99% | 30.83 | 95,591 | 1,763 | 1.87% | 93,808 | 91.33% |
| **WOOD COLONY** | | | | | | | | | | | | | | | | |
| **Style: KERNELS** | | | | | | | | | | | | | | | | |
| 11/14/24 | 11/18/24 | 752240634 | Sankey Ranch | RA02544 | 19,199 | 63 | 0.33% | 0.00% | 1,179 | 6.14% | 22.30 | 19,136 | 430 | 2.25% | 18,706 | 97.43% |
| 11/14/24 | 11/18/24 | 752240634 | Sankey Ranch | RA02545 | 4,173 | 7 | 0.18% | 0.00% | 282 | 6.76% | 22.10 | 4,166 | 102 | 2.45% | 4,064 | 97.39% |
| **Total for KERNELS** | | | | | 23,372 | 70 | 0.30% | 0.00% | 1,461 | 6.25% | 22.20 | 23,302 | 532 | 2.28% | 22,770 | 97.42% |
| **WOOD COLONY (2 deliveries)** | | | | | 23,372 | 70 | 0.30% | 0.00% | 1,461 | 6.25% | 22.20 | 23,302 | 532 | 2.28% | 22,770 | 97.42% |

# Grower Incoming Report 2024

# T.M. DUCHE NUT CO., INC

1502 RAILROAD AVE ORLAND CA 95963
Tel.: (530) 865-5511  Fax: (530) 865-7864



**Grower Code: UNITED**  **Grower: UNITED FARM LLC**

**Field Summary:**

| Rec'd Date / USDA Date | USDA # | Field Name | Delivery # | Total Weight | Foreign Material | Variety | Shell | Chip & Scratch | Sample Size | Kernel Weight | Good Kernel Wght | Inedible | GKW | GKW % | Lot Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | CARMEL | | | 20,346 | | | 19,799 | | | |
| | | | | | | MONTEREY | | | 18,938 | | | 18,480 | | | |
| | | | | | | NONPAREIL | | | 42,974 | | | 41,971 | | | |
| | | | | | | **Field Name: Baseline Ranch Total:** | | | **82,258** | | | **80,260** | | | |
| | | | | | | FRITZ | | | 19,831 | | | 19,214 | | | |
| | | | | | | MONTEREY | | | 45,735 | | | 44,062 | | | |
| | | | | | | NONPAREIL | | | 36,953 | | | 36,447 | | | |
| | | | | | | **Field Name: Jameson Ranch Total:** | | | **102,519** | | | **99,723** | | | |
| | | | | | | NONPAREIL | | | 7,741 | | | 7,577 | | | |
| | | | | | | WOOD COLONY | | | 23,302 | | | 22,770 | | | |
| | | | | | | **Field Name: Sankey Ranch Total:** | | | **31,043** | | | **30,347** | | | |
| | | | | | | NONPAREIL | | | 7,923 | | | 7,813 | | | |
| | | | | | | **Field Name: West Jameson Total:** | | | **7,923** | | | **7,813** | | | |

| Style | Variety | Kernel Weight | Good Kernel Weight |
|---|---|---|---|
| INSHELL | NONPAREIL | 8,100 | 7,901 |
| | **INSHELL Total:** | **8,100** | **7,901** |
| KERNELS (MEATS) | CARMEL | 20,346 | 19,799 |
| | FRITZ | 19,831 | 19,214 |
| | MONTEREY | 64,673 | 62,552 |
| | NONPAREIL | 87,491 | 85,907 |
| | WOOD COLONY | 23,302 | 22,770 |
| | **KERNELS (MEATS) Total:** | **215,643** | **210,242** |
| | **United Farm LLC Total:** | **223,743** | **218,143** |

223,743

**VANN FAMILY ORCHARDS**

Vann Family Orchards
6141 Abel Rd,
Williams, CA 95987
2024 Crop Year

# United Farm, LLC Grower Statement

**Contract Type: Pool**
**Contract: P2024-961163**
**Term: INDEPENDENCE**

| USDA # Huller | Manifest # | Weight | $/Lb | Grower$ | Foreign % | Foreign $ | Inedible % | Inedible $ | Double % | Double $ | Chipped/Broken % | Chipped/Broken $ | Adjustments $ | Total$ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 752240631 Yolo Hulling & | Multiple | 14,246 | $1.000 | $14,246.00 | 0.06% | $0.00 | 1.16% | $284.92 | 3.49% | $0.00 | 3.56% | $0.00 | $284.92 | $14,530.92 |
| **Term:** | | 14,246 | | $14,246.00 | | | | $284.92 | | | | | $284.92 | $14,530.92 |
| **Term: NONPAREIL** | | | | | | | | | | | | | | |
| 752240650 Yolo Hulling & | 2423-2892 | 13,897 | $1.100 | $15,286.70 | 4.13% | $0.00 | 1.54% | $277.94 | 1.84% | $0.00 | 3.34% | $0.00 | $277.94 | $15,564.64 |
| **Term: P2024-961163:** | | 13,897 | | $15,286.70 | | | | $277.94 | | | | | $277.94 | $15,564.64 |
| **Pool:** | | 28,143 | | $29,532.70 | | | | | | | | | $562.86 | $30,095.56 |
| **Totals:** | | 28,143 | | $29,532.70 | | | | | | | | | $562.86 | $30,095.56 |

**Payments**

| Settlement | Check Number | Check Date | Total$ |
|---|---|---|---|
| 4678 | 18106 | 01/15/25 | $30,095.56 |
| **Payment Totals:** | | | **$30,095.56** |

Some of the calculated values reported above may not match the values having the same name in the USDA certifications. Please refer to USDA certificates and/or grower agreement(s) for clarification.

Almond Logic Reporting - CONFIDENTIAL

All information contained herein is from sources deemed reliable and is submitted subject to errors, omissions, and changes

# EXHIBIT

# P



# Grower Receipts Detail
## Crop Year 2024
### DATE RANGE: 8/1/2024 to 12/10/2024

## H & J Management Services

| | Cert | Cert Date | Meats | Foreign Material (LB) | (%) | Inedibles (LB) | (%) | Good Meats (LB) | (%) | Excess Moisture (LB) | (%) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Brawley Field 1** | | | | | | | | | | | |
| Independence | | | | | | | | | | | |
| | 6223 | 08/28/24 | 12,170 | 6 | 0.05% | 156 | 1.28% | 12,008 | 98.67% | 0 | 0.00% |
| | 6594 | 08/30/24 | 27,343 | 17 | 0.06% | 183 | 0.67% | 27,143 | 99.27% | 0 | 0.00% |
| | | Total: | 39,513 | 23 | | 339 | | 39,151 | | 0 | |
| Nonpareil | | | | | | | | | | | |
| | 6632 | 08/26/24 | 23,861 | 0 | 0.00% | 150 | 0.63% | 23,711 | 99.37% | 0 | 0.00% |
| | | Total: | 23,861 | 0 | | 150 | | 23,711 | | 0 | |
| | | Field Total: | 63,374 | 23 | | 489 | | 62,862 | | 0 | |
| **Brawley Field 2** | | | | | | | | | | | |
| Independence | | | | | | | | | | | |
| | 6231 | 08/27/24 | 8,960 | 0 | 0.00% | 47 | 0.53% | 8,913 | 99.47% | 0 | 0.00% |
| | 6221 | 08/28/24 | 5,475 | 0 | 0.00% | 24 | 0.44% | 5,451 | 99.56% | 0 | 0.00% |
| | 6924 | 08/29/24 | 6,293 | 2 | 0.03% | 61 | 0.97% | 6,230 | 99.00% | 0 | 0.00% |
| | | Total: | 20,728 | 2 | | 132 | | 20,594 | | 0 | |
| Nonpareil | | | | | | | | | | | |
| | 6291 | 08/26/24 | 5,954 | 0 | 0.00% | 37 | 0.62% | 5,917 | 99.38% | 0 | 0.00% |
| | | Total: | 5,954 | 0 | | 37 | | 5,917 | | 0 | |
| | | Field Total: | 26,682 | 2 | | 169 | | 26,511 | | 0 | |
| **Brawley Field 3** | | | | | | | | | | | |
| Monterey | | | | | | | | | | | |
| | 7579 | 09/18/24 | 14,125 | 62 | 0.44% | 590 | 4.18% | 13,473 | 95.38% | 0 | 0.00% |
| | | Total: | 14,125 | 62 | | 590 | | 13,473 | | 0 | |
| Nonpareil | | | | | | | | | | | |
| | 6558 | 08/27/24 | 25,613 | 39 | 0.15% | 225 | 0.88% | 25,349 | 98.97% | 0 | 0.00% |
| | | Total: | 25,613 | 39 | | 225 | | 25,349 | | 0 | |
| | | Field Total: | 39,738 | 101 | | 815 | | 38,822 | | 0 | |
| **Brawley Field 4** | | | | | | | | | | | |
| Monterey | | | | | | | | | | | |
| | 7573 | 09/18/24 | 13,986 | 0 | 0.00% | 944 | 6.75% | 13,042 | 93.25% | 0 | 0.00% |

Tuesday, December 10, 2024



# Grower Receipts Detail
## Crop Year 2024
### DATE RANGE: 8/1/2024 to 12/10/2024

## H & J Management Services

| Cert | Cert Date | Meats | Foreign Material (LB) | (%) | Inedibles (LB) | (%) | Good Meats (LB) | (%) | Excess Moisture (LB) | (%) |
|------|-----------|-------|------|-----|------|-----|------|-----|------|-----|
| | | **Total: 13,986** | **0** | | **944** | | **13,042** | | **0** | |
| **Nonpareil** | | | | | | | | | | |
| 6803 | 08/23/24 | 25,667 | 0 | 0.00% | 210 | 0.82% | 25,457 | 99.18% | 0 | 0.00% |
| 6561 | 08/27/24 | 12,700 | 17 | 0.13% | 86 | 0.68% | 12,597 | 99.19% | 0 | 0.00% |
| | | **Total: 38,367** | **17** | | **296** | | **38,054** | | **0** | |
| | **Field Total:** | **52,353** | **17** | | **1,240** | | **51,096** | | **0** | |
| **Brawley Field 5** | | | | | | | | | | |
| **Monterey** | | | | | | | | | | |
| 9755 | 09/24/24 | 25,297 | 2 | 0.01% | 1,242 | 4.91% | 24,053 | 95.08% | 0 | 0.00% |
| 7580 | 09/19/24 | 12,765 | 14 | 0.11% | 687 | 5.38% | 12,064 | 94.51% | 0 | 0.00% |
| 8975 | 11/20/24 | 28,997 | 3 | 0.01% | 1,507 | 5.20% | 27,487 | 94.79% | 0 | 0.00% |
| | | **Total: 67,059** | **19** | | **3,436** | | **63,604** | | **0** | |
| **Nonpareil** | | | | | | | | | | |
| 6806 | 08/27/24 | 11,350 | 0 | 0.00% | 119 | 1.05% | 11,231 | 98.95% | 0 | 0.00% |
| | | **Total: 11,350** | **0** | | **119** | | **11,231** | | **0** | |
| | **Field Total:** | **78,409** | **19** | | **3,555** | | **74,835** | | **0** | |
| **Brawley Field 6** | | | | | | | | | | |
| **Monterey** | | | | | | | | | | |
| 9473 | 12/05/24 | 14,529 | 0 | 0.00% | 526 | 3.62% | 14,003 | 96.38% | 0 | 0.00% |
| | | **Total: 14,529** | **0** | | **526** | | **14,003** | | **0** | |
| **Nonpareil** | | | | | | | | | | |
| 6696 | 08/14/24 | 36,187 | 42 | 0.12% | 738 | 2.04% | 35,407 | 97.85% | 0 | 0.00% |
| 6645 | 08/22/24 | 11,282 | 0 | 0.00% | 69 | 0.61% | 11,213 | 99.39% | 0 | 0.00% |
| | | **Total: 47,469** | **42** | | **807** | | **46,620** | | **0** | |
| | **Field Total:** | **61,998** | **42** | | **1,333** | | **60,623** | | **0** | |
| **Brawley Field 7** | | | | | | | | | | |
| **Monterey** | | | | | | | | | | |
| 7732 | 09/18/24 | 14,754 | 44 | 0.30% | 773 | 5.24% | 13,937 | 94.46% | 0 | 0.00% |
| 9472 | 12/05/24 | 14,030 | 3 | 0.02% | 334 | 2.38% | 13,693 | 97.60% | 0 | 0.00% |
| | | **Total: 28,784** | **47** | | **1,107** | | **27,630** | | **0** | |

Tuesday, December 10, 2024



# Grower Receipts Detail
## Crop Year 2024
### DATE RANGE: 8/1/2024 to 12/10/2024

## H & J Management Services

| Cert | Cert Date | Meats | Foreign Material (LB) | Foreign Material (%) | Inedibles (LB) | Inedibles (%) | Good Meats (LB) | Good Meats (%) | Excess Moisture (LB) | Excess Moisture (%) |
|------|-----------|-------|------|------|------|------|------|------|------|------|
| **Nonpareil** | | | | | | | | | | |
| 6793 | 08/23/24 | 13,205 | 5 | 0.04% | 151 | 1.14% | 13,049 | 98.82% | 0 | 0.00% |
| 6655 | 08/21/24 | 47,637 | 19 | 0.04% | 631 | 1.32% | 46,987 | 98.64% | 0 | 0.00% |
| | **Total:** | **60,842** | **24** | | **782** | | **60,036** | | **0** | |
| | **Field Total:** | **89,626** | **71** | | **1,889** | | **87,666** | | **0** | |

**Brawley Field 8**

| Cert | Cert Date | Meats | Foreign Material (LB) | Foreign Material (%) | Inedibles (LB) | Inedibles (%) | Good Meats (LB) | Good Meats (%) | Excess Moisture (LB) | Excess Moisture (%) |
|------|-----------|-------|------|------|------|------|------|------|------|------|
| **Monterey** | | | | | | | | | | |
| 8909 | 11/18/24 | 30,573 | 5 | 0.02% | 998 | 3.26% | 29,570 | 96.72% | 0 | 0.00% |
| | **Total:** | **30,573** | **5** | | **998** | | **29,570** | | **0** | |
| **Nonpareil** | | | | | | | | | | |
| 6794 | 08/23/24 | 12,387 | 6 | 0.05% | 167 | 1.35% | 12,214 | 98.60% | 0 | 0.00% |
| | **Total:** | **12,387** | **6** | | **167** | | **12,214** | | **0** | |
| | **Field Total:** | **42,960** | **11** | | **1,165** | | **41,784** | | **0** | |
| | **Ranch Total:** | **455,140** | **286** | **0.06%** | **10,655** | **2.34%** | **444,199** | | **0** | |



# Crackout Summary
### Crop Year  2024

## H & J Management Services

| Field | Variety | Lbs Recieved | Lbs Processed | Meats | % |
|---|---|---|---|---|---|
| Brawley Field 1 | Independence | 133,090 | 133,090 | 39,513 | 29.69% |
| Brawley Field 1 | Nonpareil | 101,560 | 101,560 | 23,861 | 23.49% |
| Brawley Field 2 | Independence | 94,620 | 94,620 | 20,728 | 21.91% |
| Brawley Field 2 | Nonpareil | 24,580 | 24,580 | 5,954 | 24.22% |
| Brawley Field 3 | Monterey | 52,380 | 52,380 | 14,125 | 26.97% |
| Brawley Field 3 | Nonpareil | 96,440 | 96,440 | 25,613 | 26.56% |
| Brawley Field 4 | Monterey | 53,640 | 53,640 | 13,986 | 26.07% |
| Brawley Field 4 | Nonpareil | 150,750 | 150,750 | 38,367 | 25.45% |
| Brawley Field 5 | Monterey | 215,820 | 215,820 | 67,059 | 31.07% |
| Brawley Field 5 | Nonpareil | 43,160 | 43,160 | 11,350 | 26.30% |
| Brawley Field 6 | Monterey | 52,700 | 52,700 | 14,529 | 27.57% |
| Brawley Field 6 | Nonpareil | 196,090 | 196,090 | 47,469 | 24.21% |
| Brawley Field 7 | Monterey | 102,290 | 102,290 | 28,784 | 28.14% |
| Brawley Field 7 | Nonpareil | 242,320 | 242,320 | 60,842 | 25.11% |
| Brawley Field 8 | Monterey | 103,860 | 103,860 | 30,573 | 29.44% |
| Brawley Field 8 | Nonpareil | 45,600 | 45,600 | 12,387 | 27.16% |
| | Grower Totals: | **1,708,900** | **1,708,900** | 455,140 | 26.63% |

Tuesday, December 10, 2024

# Grower Incoming Report 2024

**T.M. DUCHE NUT CO., INC**

1502 RAILROAD AVE ORLAND CA 95963
Tel.: (530) 865-5511  Fax: (530) 865-7864

**Grower Code: HJ**     **Grower: H&J MANAGEMENT SERVICES**

| Rec'd Date | USDA Date | USDA # | Field Name | Delivery # | Total Weight | Foreign Material | | Shell | | Chip & Scratch | | Sample Size | Kernel Weight | Inedible | | GKW | GKW % | Lot Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **FRITZ** | | | | | | | | | | | | | | | | | | |
| **Style: KERNELS** | | | | | | | | | | | | | | | | | | |
| 10/11/24 | 10/15/24 | 752240438 | Jameson Ranch | RA02381 | 44,294 | 71 | 0.16% | 0 | 0.00% | 3,052 | 6.89% | 38.80 | 44,223 | 1,607 | 3.63% | 42,616 | 96.21% | |
| | | | | **Total for KERNELS** | 44,294 | 71 | 0.16% | 0 | 0.00% | 3,052 | 6.89% | 38.80 | 44,223 | 1,607 | 3.63% | 42,616 | 96.21% | |
| | | | | **FRITZ (1 delivery)** | 44,294 | 71 | 0.16% | 0 | 0.00% | 3,052 | 6.89% | 38.80 | 44,223 | 1,607 | 3.63% | 42,616 | 96.21% | |
| **MONTEREY** | | | | | | | | | | | | | | | | | | |
| **Style: KERNELS** | | | | | | | | | | | | | | | | | | |
| 09/24/24 | 09/27/24 | 752240328 | Jameson Ranch | RA02242 | 38,221 | 103 | 0.27% | 0 | 0.00% | 2,802 | 7.33% | 32.20 | 38,118 | 1,404 | 3.68% | 36,714 | 96.06% | |
| | | | | **Total for KERNELS** | 38,221 | 103 | 0.27% | 0 | 0.00% | 2,802 | 7.33% | 32.20 | 38,118 | 1,404 | 3.68% | 36,714 | 96.06% | |
| | | | | **MONTEREY (1 delivery)** | 38,221 | 103 | 0.27% | 0 | 0.00% | 2,802 | 7.33% | 32.20 | 38,118 | 1,404 | 3.68% | 36,714 | 96.06% | |
| **NONPAREIL** | | | | | | | | | | | | | | | | | | |
| **Style: INSHELL** | | | | | | | | | | | | | | | | | | |
| 12/04/24 | 12/06/24 | 752240708 | Sankey Ranch | RA02580 | 38,588 | 7,175 | 18.59% | 8,828 | 22.88% | 0 | 0.00% | 36.50 | 22,585 | 393 | 1.74% | 22,192 | 57.51% | |
| 12/03/24 | 12/10/24 | 752240701 | Jameson Ranch | RA02576 | 43,138 | 7,353 | 17.04% | 10,073 | 23.35% | 0 | 0.00% | 35.10 | 25,712 | 365 | 1.42% | 25,347 | 58.76% | |
| 12/04/24 | 12/10/24 | 752240721 | Sankey Ranch | RA02584 | 25,279 | 4,582 | 18.13% | 6,074 | 24.03% | 0 | 0.00% | 37.60 | 14,623 | 154 | 1.05% | 14,469 | 57.24% | |
| | | | | **Total for INSHELL** | 107,005 | 19,110 | 17.86% | 24,975 | 23.34% | 0 | 0.00% | 36.40 | 62,920 | 912 | 1.45% | 62,008 | 57.95% | |
| | | | | **NONPAREIL (3 deliveries)** | 107,005 | 19,110 | 17.86% | 24,975 | 23.34% | 0 | 0.00% | 36.40 | 62,920 | 912 | 1.45% | 62,008 | 57.95% | |

**Field Summary:**

**Field Name: Jameson Ranch Total:**

| Variety | Sample Size | Kernel Weight | Good Kernel Wght |
|---|---|---|---|
| FRITZ | | 44,223 | 42,616 |
| MONTEREY | | 38,118 | 36,714 |
| NONPAREIL | | 25,712 | 25,347 |
| Field Name: Jameson Ranch Total: | | 108,053 | 104,677 |

**Field Name: Sankey Ranch Total:**

| Variety | Sample Size | Kernel Weight | Good Kernel Wght |
|---|---|---|---|
| NONPAREIL | | 37,208 | 36,661 |
| Field Name: Sankey Ranch Total: | | 37,208 | 36,661 |

| Style | Variety | Kernel Weight | Good Kernel Wght |
|---|---|---|---|
| INSHELL | NONPAREIL | 62,920 | 62,008 |
| | INSHELL Total: | 62,920 | 62,008 |
| KERNELS (MEATS) | FRITZ | 44,223 | 42,616 |
| | MONTEREY | 38,118 | 36,714 |
| | KERNELS (MEATS) Total: | 82,341 | 79,330 |
| | H&J Management Services Total: | 145,261 | 141,538 |

145,261

**VANN FAMILY ORCHARDS**

# H&J Management Services Grower Statement

Vann Family Orchards
6141 Abel Rd,
Williams, CA 95987
2024 Crop Year

USDA # Huller
Contract: P2024-961147
Contract Type: Pool

| USDA # | Manifest # | Weight | $/Lb | Grower$ | Foreign % | Foreign $ | Inedible % | Inedible $ | Double % | Double $ | Chipped/Broken % | Chipped/Broken $ | Adjustments$ | Total$ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Term: INDEPENDENCE** | | | | | | | | | | | | | | |
| 752240633 Yolo Hulling & | 2423-2772 | 7,728 | $1.000 | $7,728.00 | 0.01% | $0.00 | 1.43% | $154.56 | 6.68% | $0.00 | 3.04% | $0.00 | $154.56 | $7,882.56 |
| Term: | | 7,728 | | $7,728.00 | | | | $154.56 | | | | | | $7,882.56 |
| **Term: INDEPENDENCE - INSHELL** | | | | | | | | | | | | | | |
| 752240633 Yolo Hulling & | 2423-2771 | 24,312 | $1.000 | $24,312.00 | 0.52% | $0.00 | 1.55% | $486.24 | % | $0.00 | 0.00% | $0.00 | $486.24 | $24,798.24 |
| Term: | | 24,312 | | $24,312.00 | | | | $486.24 | | | | | | $24,798.24 |
| **Term: MONTEREY** | | | | | | | | | | | | | | |
| 752240339 Yolo Hulling & | 2423-1219 | 21,275 | $0.900 | $19,147.50 | 11.20% | $0.00 | 8.59% | ($2,127.50) | 7.80% | $0.00 | 11.19% | $0.00 | ($2,127.50) | $17,020.00 |
| Term: | | 21,275 | | $19,147.50 | | | | ($2,127.50) | | | | | | $17,020.00 |
| **Term: NONPAREIL** | | | | | | | | | | | | | | |
| 752240698 Yolo Hulling & | 2423-3152 | 11,592 | $1.100 | $12,751.20 | 0.22% | $0.00 | 2.61% | $0.00 | 2.84% | $0.00 | 5.81% | $0.00 | $0.00 | $12,751.20 |
| 752240698 Yolo Hulling & | 2423-3151 | 13,399 | $1.100 | $16,938.90 | 0.60% | $0.00 | 4.45% | ($461.97) | 0.46% | $0.00 | 6.31% | $0.00 | ($461.97) | $16,476.93 |
| Term: | | 26,991 | | $29,690.10 | | | | | | | | | ($461.97) | $29,228.13 |
| **Term: NONPAREIL - INSHELL** | | | | | | | | | | | | | | |
| 752240693 Yolo Hulling & | 2423-3268 | 12,896 | $1.100 | $14,185.60 | 1.24% | $0.00 | 0.67% | $386.88 | % | $0.00 | 0.00% | $0.00 | $386.88 | $14,572.48 |
| 752240693 Yolo Hulling & | 2423-3269 | 12,227 | $1.100 | $13,449.70 | 0.24% | $0.00 | 0.36% | $489.08 | % | $0.00 | 0.00% | $0.00 | $489.08 | $13,938.78 |
| Term: | | 25,123 | | $27,635.30 | | | | | | | | | $875.96 | $28,511.26 |
| **Term: WOOD COLONY** | | | | | | | | | | | | | | |
| 752240394 Yolo Hulling & | Multiple | 21,096 | $0.900 | $18,986.40 | 0.05% | $0.00 | 2.26% | $0.00 | 5.54% | $0.00 | 7.17% | $0.00 | $0.00 | $18,986.40 |
| Term: | | 21,096 | | $18,986.40 | | | | | | | | | $0.00 | $18,986.40 |
| P2024-961147: Pool: | | 126,525 | | $127,499.30 | | | | | | | | | ($1,072.71) | $126,426.59 |
| | | 126,525 | | $127,499.30 | | | | | | | | | ($1,072.71) | $126,426.59 |
| **Totals:** | | 126,525 | | $127,499.30 | | | | | | | | | ($1,072.71) | $126,426.59 |

Some of the calculated values reported above may not match the values having the same name in the USDA certificates. Please refer to USDA certificates and/or grower agreement(s) for clarification.

Almond Logic Reporting - CONFIDENTIAL

All information contained herein is from sources deemed reliable and is submitted subject to errors, omissions, and changes

1/17/2025 2:23:46 PM

Page 1 of 2

1/17/2025 2:23:46 PM

Some of the calculated values reported above may not match the values having the same name in the USDA certifications. Please refer to USDA certificates and/or grower agreement(s) for clarification.

Almond Logic Reporting - CONFIDENTIAL
All information contained herein is from sources deemed reliable and is submitted subject to errors, omissions, and changes

**Payments**

| Settlement | Check Number | Check Date | Totals |
|---|---|---|---|
| 4703 | 18002 | 01/15/25 | $126,426.59 |
| | | **Payment Totals:** | **$126,426.59** |

Page 2 of 2

**BAPU**
A•&•B•D•N•U•S CO., INC.

**Bapu Almond Company, Inc.**
24341 Avenue 14
Madera, Ca 93637

# Grower Statement
## 2024 Crop Year

**Grower Name**　H&J Management Services

| Hauler Manifest# | USDA Cert# | Variety | Ranch | Gross Wt Meats | % Inedible Kernels | % Foreign Material | % Excess Moisture | Net Good Meats | Penalty | Premium | Size |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2410-5918 | 76424170 | Monterey | Jameson Ranch | 19,752 | 3.535 | 0.3 | 0.598 | 18,797 | $0.00 | $0.00 | 32.2 |

### Settlement Summary

| | | |
|---|---|---|
| Total Jameson Ranch | 18,797 | |
| Total Monterey | 18,797 | |
| Total H&J Management Services | 18,797 | |

* USDA exceeds maximum tolerances.  Penalties will be imposed.

*Wednesday, December 18, 2024*