FEAR WADDELL, P.C.
Peter L. Fear, No. 207238
pfear@fearlaw.com
Gabriel J. Waddell, No. 256289
gwaddell@fearlaw.com
Peter A. Sauer, No. 255957
psauer@fearlaw.com
7650 North Palm Avenue, Suite 101
Fresno, California 93711
(559) 436-6575
(559) 436-6580 (fax)

Counsel for CAPITAL FARMS, INC.,
  Debtor in Possession

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In re:<br><br><br>CAPITAL FARMS, INC.,<br><br><br><br><br>Debtor and Debtor-in-Possession. | Case No. 25-10074-A-12<br><br>Chapter 12<br><br>D.C. No. FW-5<br><br>Date:   March 6, 2025<br>Time:  10:30 a.m.<br>Place:  Dept. A, Courtroom 11, 5th Floor<br>       United States Courthouse<br>       2500 Tulare St., Fresno, California<br>Judge: Hon. Jennifer E. Niemann |

**EXHIBIT FOR DEBTOR'S MOTION FOR ORDER AUTHORIZING EMPLOYMENT OF CHIEF RESTRUCTURING OFFICER PURSUANT TO 11 U.S.C. §363(b)**

**<u>INDEX OF EXHIBITS</u>**

| Exhibit | Title | Page No. |
|---|---|---|
| A | Chief Restructuring Officer Services Agreement | 2 |

EXHIBIT - 1

# Exhibit A

## CHIEF RESTRUCTURING OFFICER SERVICES AGREEMENT

This agreement (the "Agreement") is entered into in conjunction with the Chapter 12 case pending in the United States Bankruptcy Court for the Eastern District of California, In re Capital Farms, Inc., Case No. 25-10074-A-12 between the Capital Farms, Inc. Bankruptcy Estate ("Capital Farms") and Fiduciary Management Technologies, Inc. ("FMT") for FMT to provide its President, Scott Sackett to serve as the Chief Restructuring Officer ("CRO").

Capital Farms agrees that Scott Sackett will provide services as CRO as specified in the Scope of Services approved and Ordered by the Bankruptcy Court. The Scope of Services is attached hereto. The engagement of FMT to perform the services shall be subject to the approval of the Bankruptcy Court and shall be substantially as provided in this Agreement as modified by the retention order approved by the Bankruptcy Court.

FMT's fees for services provided to Capital Farms pursuant to this agreement will be calculated and billed based upon the hourly rate of $300.00 for Scott Sackett. Additionally, services provided by FMT Agents (e.g., field agents, farming services providers, etc.) will be calculated and billed based upon the hourly rate of $175.00 and Services provided by FMT clerical staff on administrative matters (e.g., bookkeepers, secretaries, etc.) will be calculated and billed based upon the hourly rate of $75.00. Additionally, FMT will receive a monthly legal cost allowance not to exceed $2,500.00 for legal costs incurred to help FMT provide services under this Agreement (for the avoidance of doubt, if less than $2,500.00 is incurred in any month, the bankruptcy estate will only be billed for the actual costs incurred). The personnel assigned to the Capital Farms matter may confer among themselves about the matter, as required. When they do confer, each person will charge for the time expended, as long as the work done is reasonably necessary and not duplicative. Likewise, if more than one of the FMT personnel attends a meeting or other proceeding, each will charge for the time spent. Statements for services will provide a description of the services performed, the date they were performed, the time devoted to the Capital Farms matter, and the specific hourly rate of Mr. Sackett, the agent, or the clerk that performed the services on Capital Farms' behalf. Time is charged in minimum units of one tenth (.1) of an hour. Except for the expense items listed below, all costs and expenses will be charged at the established hourly rates.

Costs and expenses, in addition to the fees fixed by law or assessed by public agencies, include but are not limited to, overnight mail, messenger, and U.S. Postal rates (all of which will be invoiced at actual costs, without any volume-based discounts), photocopying and other reproduction costs (which will be invoiced at $0.20 per page), travel costs including parking (which will be invoiced at actual costs), and mileage (which will be invoiced at $0.70 per mile).

Upon the execution of this Agreement, and entry of an order by the Bankruptcy Court approving this Agreement under Section 363(b) of the Bankruptcy Code and/or any other applicable statute or rule (the "Approval Order"), Capital Farms shall pay a retainer of $10,000.00 which shall be retained and applied against FMT's final invoice. Any funds remaining on deposit after the conclusion of FMT's services shall be returned to Capital Farms, or as otherwise directed by the Court. FMT will send the Capital Farms periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. Upon transmittal of the invoice, FMT may (at its option) immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice. Capital Farms agrees that invoices are due upon receipt, and will promptly pay the full invoice amount and replenish the Initial Cash on Account. FMT understands that its fees and costs will ultimately be subject to approval by the Bankruptcy Court, and any disallowed fees and costs may be subject to disgorgement. Capital Farms will not seek approval of any cash collateral budget that does not allow it to comply with the terms of this agreement absent an order of the Bankruptcy Court.

FMT's performance of the services may be dependent upon Capital Farms providing FMT with such information and assistance as we may reasonably require from time to time. Capital Farms personnel shall use reasonable skill, care and attention to ensure that all information FMT may reasonably require is provided on a timely basis and is accurate

-1-

and complete and relevant for the purpose for which it is required. Capital Farms shall also notify FMT if Capital Farms subsequently learns that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

In the event the Services provided by FMT involve prospective financial information, FMT's work will not constitute an examination or compilation, or apply agreed-upon procedures, nor shall such work product be prepared in accordance with standards established by the American Institute of Certified Public Accountants or Generally Accepted Accounting Principles, and FMT will express no assurance of any kind with respect to such work product or information contained therein. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. FMT will take no responsibility for the achievability of results or events projected or anticipated by Capital Farms.

Fiduciary Management Technologies and Scott Sackett will be named as additional insured with respect to any insurance policies obtained by Capital Farms and/or the bankruptcy estate.

Subject to any limitation required by the Bankruptcy Court, the Capital Farms agrees to indemnify and hold harmless FMT and its shareholders, directors, officers, managers, employees, contractors, agents and controlling persons (each, an "Indemnified Party") from and against any losses, claims, damages or expenses, or if same was or is or becomes a party to or witness or other participant in, or is threatened to be made a party to or witness or other participant in, any threatened, pending or completed action, suit, proceeding or alternative dispute resolution mechanism, or any hearing, inquiry or investigation, in each case by reason of (or arising in part out of) any event or occurrence related to this agreement or any predecessor agreement for services or the fact that any Indemnified Party is or was an agent, officer director, employee or fiduciary of Capital Farms, or by reason of any action or inaction on the part of any Indemnified Party while serving in such capacity (an "Indemnifiable Event") against expenses (including reasonable attorneys' fees and disbursements), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any Indemnifiable Event. The Indemnified Party shall promptly forward to the Capital Farms all written notifications and other matter communications regarding any claim that could trigger the Capital Farms' indemnification obligations under this Section. If the Capital Farms so elects or is requested by an Indemnified Party, Capital Farms will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the reasonable fees and disbursements of such counsel. In the event, however, such Indemnified Party is advised by counsel that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an Indemnified Party and the Capital Farms, and such Indemnified Party is advised by counsel that there may be legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Capital Farms, or if Capital Farms fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such Indemnified Party, in either case in a timely manner, then such Indemnified Party may employ separate counsel to represent or defend it in any such action or proceeding and the Capital Farms will pay the reasonable fees and disbursements of such counsel; provided, however, that Capital Farms will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for an Indemnified Party in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which Capital Farms assumes, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense. Capital Farms further agrees that the Capital Farms will not, without the prior written consent of the Indemnified Party (which consent shall not be unreasonably withheld or delayed), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not the Indemnified Party or any other Indemnified Party is an actual or potential party to such claim, action, suit or proceeding) unless (i) to the extent that such settlement, compromise or consent purports directly or indirectly to cover the Indemnified Party or any other Indemnified Party, such settlement, compromise or consent includes an unconditional release of the Indemnified Party and each other Indemnified Party from all liability arising out of such claim, action, suit or proceeding, or (ii) to the extent that such settlement, compromise or consent does not purport directly or indirectly to cover the Indemnified Party or any other Indemnified Party, Capital Farms

-2-

has given the Indemnified Party reasonable prior written notice thereof and used all reasonable efforts, after consultation with the Indemnified Party, to obtain an unconditional release of the other Indemnified Parties hereunder from all liability arising from all liability arising out of such claim, action, suit or proceeding. The Indemnified Party shall not enter into any closing agreement or final settlement that could trigger the Capital Farms indemnification obligations under this Section without the written consent of Capital Farms, which shall not unreasonably be withheld or delayed or conditioned. Capital Farms will not be liable for any settlement of any action, claim, suit or proceeding affected without Capital Farms' prior written consent, which consent shall not be unreasonably withheld or delayed or conditioned, but if settled with the consent of Capital Farms or if there be a final judgment for the plaintiff, Capital Farms agrees to indemnify and hold harmless the Indemnified Party from and against any loss or liability by reason of such settlement or judgment, as the case may be.

This Agreement may be modified by subsequent agreements of the parties only by an instrument in writing signed by all parties and approved by the Bankruptcy Court.

If a dispute arises out of or relating to any aspect of this Agreement between Capital Farms and FMT, the Bankruptcy Court having jurisdiction over Capital Farms' bankruptcy case shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning this Agreement.

Subject to approval of the Bankruptcy Court, this Agreement is terminable by Capital Farms or by FMT at any time upon the giving of thirty (30) days written notice.

Any notice required or permitted to be given under this Agreement must be given in writing and shall be deemed given (a) upon delivery, if delivered personally, (b) two business days following dispatch if sent by certified mail, postage prepaid, return receipt requested, or (c) the next business day if sent via email with a copy concurrently dispatched via commercial overnight courier that guarantees next day delivery and provides a receipt.  All such notices are addressed as follows:

To Capital Farms, Inc.:

        Shawn Gill, President
        Capital Farms, Inc.
        5550 W. Spruce Ave., Ste. 107
        Fresno, CA  93722

        with a copy to

        Peter L. Fear
        Fear Waddell, P.C.
        7650 N. Palm Ave., Ste. 101
        Fresno, CA  93711
        pfear@fearlaw.com

To FMT:      C/O Scott Sackett
        President, Fiduciary Management Technologies, Inc.
        4030 South Land Park Drive, Suite C
        Sacramento, California  95822
        scott.sackett@efmt.com

        with a copy to

        Aaron J. Malo
        Sheppard Mullin Richter & Hampton LLP

-3-

650 Town Center Drive, 10th Floor
Costa Mesa, California 92626
amalo@sheppardmullin.com

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be signed by their duly authorized representatives.

Capital Farms, Inc.

Signature: _Shawn Gill_

Name: SHAWN GILL

Title: PRESIDENT

Date: 2-21-25

FIDUCIARY MANAGEMENT TECHNOLOGIES, INC.

Signature: _____

Name: Scott Sackett

Title: President

Date: _____

-4-

650 Town Center Drive, 10th Floor
Costa Mesa, California 92626
amalo@sheppardmullin.com

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be signed by their duly authorized representatives.

**Capital Farms, Inc.**

Signature: _____

Name:

Title: _____

Date: _____

**FIDUCIARY MANAGEMENT TECHNOLOGIES, INC.**

Signature: _____

Name: Scott Sackett

Title: President

Date: 2/21/2025

-4-