3

FEAR WADDELL, P.C.
Peter L. Fear, No. 207238
pfear@fearlaw.com
Gabriel J. Waddell, No. 256289
gwaddell@fearlaw.com
Peter A. Sauer, No. 255957
psauer@fearlaw.com
7650 North Palm Avenue, Suite 101
Fresno, California 93711
(559) 436-6575
(559) 436-6580 (fax)

Attorneys for CAPITAL FARMS, INC.
   Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In re:<br><br><br>CAPITAL FARMS, INC.,<br><br><br><br><br>Debtor and Debtor-in-Possession. | Case No. 25-10074-A-12<br><br>Chapter 12<br><br>D.C. No. FW-2<br><br>Date:  March 6, 2025<br>Time:  10:30 a.m.<br>Place: Dept. A<br>       United States Courthouse<br>       510 19th Street, Bakersfield, CA<br>Judge: Hon. Jennifer E. Niemann |

## ORDER GRANTING USE OF CASH COLLATERAL AND SETTING CONTINUED HEARING DATE

A hearing on the Motion to Use Cash Collateral (the "Motion") by CAPITAL FARMS, INC., Debtor and Debtor in Possession herein ("Debtor") was held at the above-captioned dated, time, and place. Peter L. Fear appeared for the Debtor in Possession. Dirk B. Paloutzian appeared for Secured Creditor Rabo Agrifinance LLC ("Rabo"). Reina J. Clark appeared for Secured Creditor Tech Ag Financial Group, Inc. ("Tech Ag"). Lilian Tsang, Chapter 12 Trustee appeared. Other appearances were as noted on the record. The Court has reviewed the

1     Motion and its supporting documents, and all oppositions and replies with regard to the

2     Motion, including the stipulation regarding use of cash collateral which was filed on February

3     12, 2025 [Dkt. No. 77]. In light of the foregoing, the Court finds good cause to authorize use

4     of cash collateral as detailed below.

5          NOW THEREFORE, it is hereby ORDERED,

6          1.     Debtor is authorized to use cash collateral in the amounts shown on Exhibit A

7     (the "Budget") for the time period of March 6, 2025 to March 26, 2025 (the "Interim Period"),

8     subject to a variance of no more than ten percent (10%). The budget shall not include payment

9     of any wages of insiders, other than the "Office Admin Payroll" shown on the budget. For any

10     lease payments owed by Debtor during the Interim Period, Debtor shall pay the lease payment

11     to the secured creditor of the lessor directly.

12          2.     All creditors with a security interest in the cash collateral being used are hereby

13     granted automatically-perfected replacement liens on, and security interests in, all of the

14     respective Debtors' tangible and intangible prepetition and postpetition property (retroactive as

15     of the petition date) with the same validity, priority, and extent that such creditors had in such

16     prepetition collateral as of the petition date, without the need to file or record financing

17     statements, notices of lien, or similar instruments or to take any other action in order to validate

18     and perfect these replacement liens and security interests.

19          3.     Debtor shall deposit any cash collateral it receives into its bank account at

20     Citizens Business Bank (ending in 3506) (the "CBB Account").

21          4.     Each Friday, beginning March 7, 2025, Debtor shall file (1) a weekly budget

22     variance report for the weekly budget period ending the immediately preceding Wednesday,

23     and (2) a printout from the CBB Account showing all transactions into and out of the account

24     during the weekly budget period.

5.      A further hearing on use of cash collateral will be held on March 26, 2025, at 9:30 a.m. Debtor shall file and serve an updated budget no later than March 19, 2025. Any opposition to the use of cash collateral may be raised at the continued hearing.

6.      The Stipulation on Use of Cash Collateral and Grant of Adequate Protection (attached hereto as Exhibit "B") filed on February 12, 2025 [Dkt. No. 77] is approved, as modified by this order.

APPROVED AS TO FORM:

_____
Dirk Paloutzian, Attorney for
 Rabo Agrifinance LLC

_____
Michael J. Gomez, Attorney for
 Tech Ag Financial Group, Inc.

_____
Lilian G. Tsang, Chapter 12 Trustee

Dated:  March 11 2025

Honorable Jennifer E. Niemann
United States Bankruptcy Judge

CASH COLLATERAL ORDER - 3

1          5.      A further hearing on use of cash collateral will be held on March 26, 2025, at

2   9:30 a.m. Debtor shall file and serve an updated budget no later than March 19, 2025. Any

3   opposition to the use of cash collateral may be raised at the continued hearing.

4          6.      The Stipulation on Use of Cash Collateral and Grant of Adequate Protection

5   (attached hereto as Exhibit "B") filed on February 12, 2025 [Dkt. No. 77] is approved, as

6   modified by this order.

7   APPROVED AS TO FORM:

8   _____
     Dirk Paloutzian, Attorney for
9     Rabo Agrifinance LLC

10  _____
     Michael J. Gomez, Attorney for
11    Tech Ag Financial Group, Inc.

12  _____
     Lilian G. Tsang, Chapter 12 Trustee
13

14

15

16

17  Dated:_____                    _____
                                            United States Bankruptcy Judge
18

19

20

21

22

23

24

# Exhibit A

# Capital Farms Inc
# Profit and Loss
**3 Week budget**

| Filing date | Mar-06-Mar-12 | Mar14-Mar20 | Mar21-Mar-26 | |
|---|---|---|---|---|
| | **Week 1** | **Week 2** | **Week 3** | **Totals** |
| **Income** | | | | |
| Crop - Almonds | 350,000.00 | 0.00 | | **350,000.00** |
| Crop - Almonds - Ins Claim | 19,856.34 | | | **19,856.34** |
| Harvesting (outside) | | | | **0.00** |
| **FSA Grants** | | | | **0.00** |
| Management Fees | 0.00 | 0.00 | 0.00 | **0.00** |
| **Total Income** | $ 369,856.34 | $ 0.00 | $ 0.00 | $ 369,856.34 |
| **Expenses** | | | | |
| Advertising & Marketing | 0.00 | 0.00 | 0.00 | **0.00** |
| **Phone Bill** | 550.00 | 0.00 | 0.00 | **550.00** |
| Bank Charges & Fees | 0.00 | 0.00 | 0.00 | **0.00** |
| Bees - Brewer | 0.00 | 0.00 | 0.00 | **0.00** |
| Bees - Senky | 0.00 | 0.00 | 0.00 | **0.00** |
| Bees - Senky | 0.00 | 0.00 | 0.00 | **0.00** |
| Bees - Brawley | 0.00 | 0.00 | 0.00 | **0.00** |
| Bees - Jamison | 0.00 | 0.00 | 0.00 | **0.00** |
| Bees - Natomas | 0.00 | 0.00 | 0.00 | **0.00** |
| Car & Truck - Payment | 1,000.00 | 0.00 | 0.00 | **1,000.00** |
| Car & Truck - Fuel | 500.00 | 500.00 | 500.00 | **1,500.00** |
| Chemicals/Fertilizer | 33,000.00 | 33,000.00 | 33,000.00 | **99,000.00** |
| Contractors | 2,500.00 | 2,500.00 | 2,500.00 | **7,500.00** |
| Crop Insurance | 2,006.35 | 0.00 | | **2,006.35** |
| DMV Fees | 0.00 | 0.00 | 0.00 | **0.00** |
| Dues & subscriptions | 0.00 | 0.00 | 0.00 | **0.00** |
| Diesel & Fuel | 2,500.00 | 0.00 | 2,500.00 | **5,000.00** |
| Harvesting | 0.00 | 0.00 | 0.00 | **0.00** |
| Insurance | 0.00 | 0.00 | 0.00 | **0.00** |
| Insurance - WC | 350.00 | 350.00 | 350.00 | **1,050.00** |
| Irrigation Supplies | | 0.00 | 0.00 | **0.00** |
| Lease Payments - Brewer | 0.00 | 0.00 | 0.00 | **0.00** |
| Lease Payments - Baseline Rd - 157 acres | 0.00 | 0.00 | 0.00 | **0.00** |
| Lease - Sankey | 145,371.04 | 0.00 | 0.00 | **145,371.04** |
| Lease - Brawley | 0.00 | 0.00 | 0.00 | **0.00** |
| Lease - Brawley (dev voan 2) | 0.00 | 0.00 | | **0.00** |
| Lease - Brawley (dev loan 1) | 0.00 | 0.00 | 0.00 | **0.00** |
| Lease - Jamison | 0.00 | 0.00 | | **0.00** |
| Lease - Natomas | 0.00 | 0.00 | | **0.00** |
| Leasehold Imp- Brewer (Rabo) | 0.00 | 0.00 | 0.00 | **0.00** |
| Legal & Professional Services | 0.00 | 0.00 | 0.00 | **0.00** |
| Office Supplies & Software | | 0.00 | 0.00 | **0.00** |
| Parts & Supply | 500.00 | 500.00 | 500.00 | **1,500.00** |
| Payroll Expenses | 2,500.00 | 2,500.00 | 2,500.00 | **7,500.00** |
| Payroll - Admin/Office | 5,000.00 | 0.00 | 0.00 | **5,000.00** |
| Payroll - Harvesting | 0.00 | 0.00 | 0.00 | **0.00** |

| Filing date | Mar-06-Mar-12 | Mar14-Mar20 | Mar21-Mar-26 | |
|---|---|---|---|---|
| | Week 1 | Week 2 | Week 3 | Totals |
| **Payroll Tax Expenses** | 750.00 | 250.00 | 250.00 | **1,250.00** |
| **Payroll Processing Fees** | 100.00 | 100.00 | 100.00 | **300.00** |
| **PCA Fees** | 3,150.00 | 0.00 | | **3,150.00** |
| **Property Taxes - Baseline** | 0.00 | 0.00 | 0.00 | **0.00** |
| **Property Taxes - Sankey** | | 0.00 | 0.00 | **0.00** |
| **Property Taxes - Brewer** | 0.00 | 0.00 | 0.00 | **0.00** |
| **Property Taxes - Natomas** | | 0.00 | 0.00 | **0.00** |
| **Property Taxes - Natomas** | 0.00 | 0.00 | 0.00 | **0.00** |
| **Property taxes - Brawley** | | 0.00 | 0.00 | **0.00** |
| **Property taxes - Jamison** | 0.00 | 0.00 | 0.00 | **0.00** |
| **Repairs & Maintenance** | 1,000.00 | 0.00 | 1,000.00 | **2,000.00** |
| **Taxes & Licenses** | 0.00 | 0.00 | 0.00 | **0.00** |
| **Utilities - Baseline** | 0.00 | 0.00 | 0.00 | **0.00** |
| **Utilities - Baseline (Jackson rd)** | 0.00 | 0.00 | 0.00 | **0.00** |
| **Utilities - Sankey** | 0.00 | 0.00 | 0.00 | **0.00** |
| **Utilities - Brewer** | 0.00 | 0.00 | 0.00 | **0.00** |
| **Utilities - Natomas** | 0.00 | 0.00 | 0.00 | **0.00** |
| **Utilities - Brawley** | 0.00 | 0.00 | 0.00 | **0.00** |
| **Utilities - Jamison** | 0.00 | 0.00 | 0.00 | **0.00** |
| **Water Coalition Permit Fees** | 2,419.60 | 0.00 | 0.00 | 2,419.60 |
| **Yard Rental -Brewer Rd** | 300.00 | 0.00 | 300.00 | **600.00** |
| **Tech Ag Payment** | | | 5,000.00 | **5,000.00** |
| **Retainer for CRO** | 10,000.00 | | | |
| **Total Expenses** | $    213,496.99 | $    39,700.00 | $    48,500.00 | $    291,696.99 |
| **Accumulated Expenses** | | $    253,196.99 | $    301,696.99 | $    291,696.99 |

Exhibit B

23

1　Michael J. Gomez (State Bar No. 251571)
　　mgomez@frandzel.com
2　Gerrick M. Warrington (State Bar No. 294890)
　　gwarrington@frandzel.com
3　FRANDZEL ROBINS BLOOM & CSATO, L.C.
　1000 Wilshire Boulevard, Nineteenth Floor
4　Los Angeles, California 90017-2427
　Telephone: (323) 852-1000
5　Facsimile: (323) 651-2577

6　Attorneys for Creditor
　TECH AG FINANCIAL GROUP, INC.

7

8

9

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| In re | Case No. 25-10074-A-12 |
| CAPITAL FARMS, INC., | Chapter 12 |
| Debtor. | DCN: FW-2 |
| | **STIPULATION BETWEEN TECH AG FINANCIAL GROUP, INC., RABO AGRIFINANCE, LLC AND DEBTOR CAPITAL FARMS, INC., ON USE OF CASH COLLATERAL AND GRANT OF ADEQUATE PROTECTION** |
| | Date:　February 12, 2025<br>Time:　9:30 a.m.<br>Place:　Dept. A, Ctrm. 11, 5th Floor<br>　　　　United States Courthouse<br>　　　　2500 Tulare St., Fresno, California |
| | Hon. Jennifer E. Niemann |

Secured creditors Tech Ag Financial Group, Inc. ("Tech Ag") and Rabo AgriFinance LLC ("Rabo" and together with Tech Ag the "Lenders" and each individually, a "Lender") and Debtor Capital Farms, Inc. (the "Debtor" and together with Tech Ag, and Rabo the "Parties") stipulate and agree with respect to cash collateral use as follows:

**Recitals**

**The Tech Ag Loan**

A.        On or about October 20, 2022, Tech Ag made a loan to Debtor, evidenced by a Master Note and Security Agreement ("Note and Agreement") in the original principal amount of $350,000.00, which Debtor executed and delivered to Tech Ag (the "Loan").

B.        In connection with the Note and Agreement, Tech Ag issued a Loan Commitment Letter dated October 20, 2022 ("Loan Commitment" and together with Note and Agreement "Tech Ag Loan Documents"). As more fully provided therein, the Loan Commitment provided that the Loan's principal sum due and owing under the Loan Commitment, together with the interest accrued thereon, shall be due and payable before the maturity date of February 1, 2024, and is payable in accordance with and subject to the terms of the Note and Agreement, and secured by the collateral described in and the security interests granted by the Note and Agreement.

C.        In connection with the Note and Agreement, Debtor granted Tech Ag a security interest in now owned or hereafter acquired: all farm products and proceeds thereof, all additions or accessions thereto, and all substitutions and replacements thereof; all crops growing, grown, or to be grown; all harvested crops; all livestock; all warehouse receipts or other documents (negotiable or non-negotiable) issued for storage of such crops; all seed, fertilizer, chemicals and petroleum, and any other crop input products; all contract rights, chattel paper, documents, instruments, accounts, accounts receivable, general intangibles, and cash and non-cash proceeds from the sale, exchange, collection, or disposition of any of the collateral; all entitlements and payments, whether in cash or in kind, arising under any governmental, whether federal or state, agricultural subsidy, deficiency, diversion, conservation, disaster, or any similar or other programs; all farm and business machinery, equipment and tools (the "Collateral").

D.        As of January 10, 2025, under the terms of the Tech Ag Loan Documents, Debtor

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

owes Tech Ag not less than $416,312.21.

**The Rabo Agrifinance LLC 2016 Term Loan**

E.       Rabo and Debtor were parties to that certain Credit Agreement dated as of June 17, 2016, as amended by that certain (i) First Amendment to Loan Documents dated as of May 30, 2020, (ii) Second Amendment to Loan Documents dated as of August 20, 2021, and (iii) Third Amendment to Loan Documents dated as of October 15, 2022 (together with any previous amendments, the "2016 Credit Agreement"), in connection with a term loan (the "2016 TL").  As described below, the 2016 Credit Agreement has been amended and restated.

F.       The 2016 TL is evidenced by that certain Term Loan Note dated as of June 17, 2016, from Debtor to Rabobank, N.A., a national banking association ("RNA"), Rabo's predecessor-in-interest, in the original principal amount of $1,300,000.00 (the "2016 TL Note").

G.       Debtor and AKT BREWER, LLC, a California limited liability company ("AKT"), are parties to that certain Crop Share Farming Lease dated as of July 8, 2015 (the "Lease"), wherein Debtor leases from AKT certain real property located in Placer County, California (referred to as the "Placer Real Property").  The obligations under the 2016 Credit Agreement were secured by that a lien on Debtor's interest in the Placer Real Property pursuant to the Lease (the leasehold interest and any other interest in the Placer Real Property referred to as the "Placer Real Property Collateral") by the terms of that certain Leasehold Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of June 17, 2016, executed by Debtor as "Grantor" in favor of RNA, Rabo's predecessor-in-interest, as "Beneficiary", recorded June 30, 2016 as Document No. 2016-0052371-00 in the official records of Placer County, California (the "Placer Deed of Trust").

H.       RNA, as assignor, executed an Assignment of Deed of Trust in favor of Rabo as assignee, on November 27, 2019, by which RNA assigned the Placer Deed of Trust to Rabo.  The Assignment of Deed of Trust was recorded as Document No. 2019-0105337-00 on December 26, 2019 in the Official Records of Placer County, California (the "Placer Deed of Trust Assignment").

I.        Rabo's security interest in certain property of Debtor that is used in connection with

the operation of the Placer Real Property and may be characterized as personal property under the Placer Deed of Trust was perfected by the filing of that certain UCC Financing Statement, with Debtor as "Debtor" and RNA, Rabo's predecessor-in-interest, as "Secured Party", with the California Secretary of State as Document No. 16-7534054318 on July 1, 2016 (the "Placer Real Property UCC").

J.    Rabo and Debtor entered into that certain Master Credit Agreement dated as of May 19, 2023 (the "Master Credit Agreement"), as an amendment and restatement of the terms and conditions of the 2016 Credit Agreement.  Pursuant to the terms of the Master Credit Agreement, all liens and security interests in any real or personal property granted to or for the benefit of Rabo for purposes of securing the 2016 TL, including, without limitation, the lien of the Placer Deed of Trust and the lien in personal property perfected by the Placer Real Property UCC, also secures all obligations under the Master Credit Agreement.

K.    In connection with the  Master Credit Agreement, Rabo and Debtor executed that certain Facility Sheet (Term Loan) dated as of May 19, 2023, to further evidence the 2016 TL ("Facility Sheet - Term Loan").

L.    The obligations of Debtor under the Facility Sheet - Term Loan 2 are secured by certain personal property of Debtor including, without limitation, accounts, inventory, equipment, fixtures, farm products, payment rights, general intangibles, as well as the proceeds of such personal property (collectively referred to as the "Master Credit Agreement Personal Property Collateral"), pursuant to the terms of that certain Master Security Agreement dated as of May 19, 2023, executed by Debtor in favor of Rabo (the "Master Security Agreement").

M.    Rabo's security interest in the Master Credit Agreement Personal Property Collateral was perfected by the filing of that certain UCC Financing Statement, with Debtor as "Debtor" and Rabo as Secured Party, with the California Secretary of State as Document No. U210110178322 on December 14, 2021 (the "Master Credit Agreement Personal Property UCC").

N.    The 2016 TL Note, the Placer Deed of Trust, the Placer Real Property UCC, the Master Credit Agreement, Facility Sheet - Term Loan, the Master Security Agreement, the Master Credit Agreement Personal Property UCC, and all documents and instruments securing or relating

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

to the obligations represented by the 2016 TL, including but not limited to the documents and instruments listed above, are referred to herein as the "2016 Loan Documents".

O.    As of November 15, 2024, under the terms of the 2016 Loan Documents, Debtor owes Rabo not less than $1,051,737.27, with interest accruing after November 15, 2024.

**The Rabo Agrifinance LLC 2021 RLOC**

P.    Rabo and Debtor were parties to that certain Credit Agreement dated as of August 20, 2021, as amended by that certain (i) First Amendment to Loan Documents dated as of December 31, 2021 and (ii) Second Amendment to Loan Documents dated as of October 27, 2022 (the "Second Amendment", and together with any previous amendments, the "2021 Credit Agreement"), made in connection with an operating line of credit (the "2021 RLOC"). As described below, the 2021 Credit Agreement has been amended and restated.

Q.    The 2021 RLOC is evidenced by that certain Operating Line of Credit Note dated as of August 20, 2021, from Debtor to Rabo in the original principal amount of $4,000,000.00 (the "2021 RLOC Note").

R.    The obligations under the 2021 Credit Agreement are secured by certain personal property of Debtor, including, without limitation, accounts, inventory, equipment, fixtures, farm products, payment rights, general intangibles, as well as the proceeds of such personal property (collectively referred to as the "2021 RLOC Personal Property Collateral"), pursuant to the terms of that certain Security Agreement dated as of August 20, 2021, executed by Debtor in favor of Rabo (the "2021 RLOC Security Agreement").

S.    Rabo's security interest in the 2021 RLOC Personal Property Collateral was perfected by the filing of that certain UCC Financing Statement, with Debtor as "Debtor" and Rabo as "Secured Party", with the California Secretary of State as Document No. U210110178322 on December 14, 2021 (the "2021 Credit Agreement Personal Property UCC").

T.    The Master Credit Agreement is as an amendment and restatement of the terms and conditions of the 2021 Credit Agreement. Pursuant to the terms of the Master Credit Agreement, all liens and security interests granted to or for the benefit of Rabo for purposes of securing the 2021 RLOC, including, without limitation, the 2021 RLOC Security Agreement, also secures all

5478663v1

5

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  obligations under the Master Credit Agreement.

2      U.    In connection with the Master Credit Agreement, Rabo and Debtor executed that

3  certain Facility Sheet (Operating Line of Credit 1) dated as of May 19, 2023, to further evidence

4  the 2021 RLOC ("Facility Sheet - Operating Line of Credit").

5      V.    The obligations of Debtor under the Facility Sheet - Operating Line of Credit are

6  secured by the Master Credit Agreement Personal Property Collateral pursuant to the terms of the

7  Master Security Agreement, and Rabo's security interest in the Master Credit Agreement Personal

8  Property Collateral is perfected by the Master Credit Agreement Personal Property UCC.

9      W.    The 2021 RLOC Note, the 2021 RLOC Security Agreement, 2021 Credit

10  Agreement Personal Property UCC, the Master Credit Agreement, Facility Sheet - Operating Line

11  of Credit, the Master Security Agreement, the Master Credit Agreement Personal Property, the

12  Master Credit Agreement Personal Property UCC, and all documents and instruments securing or

13  relating to the obligations represented by the 2021 RLOC, including but not limited to the

14  documents and instruments listed above, are referred to herein as the "2021 Loan Documents".

15      X.    As of November 15, 2024, under the terms of the 2021 Loan Documents, Debtor

16  owes Rabo not less than $4,085,040.79, with interest accruing after November 15, 2024.

17      Y.    The Tech Ag Loan Documents, together with the 2016 Loan Documents and the

18  2021 Loan Documents, are referred to herein collectively as the "Loan Documents".

19      Z.    With regard to the foregoing statements, the Parties believe the information stated

20  therein is generally correct and that it is helpful for the purpose of identifying the secured debts at

21  issue. However, the Parties have not exhaustively reviewed its records to verify these statements,

22  and consequently, such statements are without prejudice as to the Parties', or any other parties in

23  interest, right to present information to the contrary should it determine that any of the foregoing

24  statements are incorrect.

25  **Debtor Files Chapter 12**

26      AA.    On January 10, 2025 ("Petition Date"), Debtor filed a voluntary chapter 12

27  bankruptcy petition in the United States Bankruptcy Court for the Eastern District of California,

28  commencing the instant bankruptcy case.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**Cash Collateral**

BB.     On January 13, 2025, Debtor filed a motion for interim and final use of cash collateral ("Cash Collateral Motion"). (Dkt. 6).

CC.     Attached to the Cash Collateral Motion as Exhibit A is a cash collateral budget. Debtors have submitted an amended 3-week budget through March 5, 2025, attached as **<u>Exhibit 1</u>** (the "Budget"). The Parties anticipate that additional budgets will be prepared and approved over the course of this case.

DD.     On January 17, 2025, Tech Ag filed its Response to Debtor's Motion for Authority to Use Cash Collateral ("Response"). (Dkt. 19).

EE.     On January 17, 2025, Rabo filed its Objection to Debtor's Motion for Authority to Use Cash Collateral ("Objection"). (Dkt. 22).

FF.     After considering the Response and Objection, the Court authorized interim use of Cash Collateral, the Court scheduled a further hearing on the Cash Collateral Motion for February 12, 2025, along with a response deadline (the "Cash Collateral Order"). (Dkt. 54).

**Consensual Cash Collateral use**

GG.     The Parties have discussed Debtor's use of cash collateral, and the Lenders hereby consent to Debtor's interim use of its Cash Collateral as set forth below, subject to certain forms of adequate protection, without limitation. This Stipulation sets forth the terms of Debtor's use of the Cash Collateral and adequate protection to be provided and is without prejudice to any further additional forms of adequate protection being granted to Tech Ag and Rabo, respectively.

<b>Stipulation</b>

WHEREFORE, based on the Recitals, which are incorporated herein, the Parties stipulate and agree as follows:

1.     **Cash Collateral Use.**  The Lenders consent to Debtor's interim use of cash collateral ("Cash Collateral" which term is defined as set forth in 11 U.S.C. § 363(a)), subject to the terms and provisions of this Stipulation, including, but not limited to, certain forms of adequate protection, as set forth herein.

2.     **Term; Extensions.**  Such consent to the use of Cash Collateral arises upon

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

approval of this Stipulation by the Court in an order entered on the docket in this bankruptcy case and continues through March 6, 2025. But, such consent shall be automatically and immediately deemed withdrawn upon the occurrence of the Termination Date, as set forth below. Debtor shall be authorized to use the Lenders' Cash Collateral in accordance with the terms of this Stipulation to pay its normal and ordinary operating expenses pursuant to the Budget. Debtor's authorization to use the Lenders' Cash Collateral under this Stipulation shall automatically expire at 5:00 p.m. Pacific Time, California time on the Cash Collateral Termination Date, unless the Parties extend the expiration date by written agreement. Approval of this Stipulation by the Court shall constitute authority by the Court that the parties may extend the Stipulation on similar terms without the necessity or requirement of further Court approval.

3. **Post-Bankruptcy Account.** Debtor shall collect and deposit all Cash Collateral into one, single bank account at Citizens Business Bank (ending in 3506) (the "CBB Account"). Debtor shall at all times keep a record of and be able to account for all credits and debits to the CBB Account. None of the Cash Collateral shall be paid from Debtor's CBB Account to Debtor's pre-petition claims, other than as authorized herein or otherwise authorized by the Court. Debtor shall also provide access to bank account records, including the CBB Account to the Lenders upon demand, and no less than 48 hours after demand is made.

4. **Budget.** Debtor may use Cash Collateral solely to pay expenses incurred by them in the ordinary course of their business in amounts not to exceed the line item expenses provided for in the Budget or a budget previously approved for prior periods ("Approved Expenses"). Debtor may exceed the budgeted amount for any monthly line item expense by up to 10% of the amount budgeted for that weekly expense, provided however that the aggregate expenses in any given week shall not exceed 10% more than the total amount budgeted is each month. Debtor shall not use cash collateral to pay pre-petition claims, other than real property taxes as set forth in the Budget and wages for non-insider employees. Debtor shall not use Cash Collateral to make any Lease payments (except as provided in a budget for prior periods) or payments to any insiders or those related to insiders or their entities, as well as to any affiliates until such time that: (a) all physical assets, other than crops, of United Farm LLC are delivered to Debtor to administer; (b) H

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

& J Management and United Farm LLC send irrevocable, written instructions to the Crop Processors (defined below), and any other crop processors holding crops in their name, to deliver all crop proceeds to Debtor and/or wire such funds to Debtor's CBB Account, and to have the Crop Processors hold such crops and undisbursed crop proceeds in the name of Debtor; and (c) H & J Management and United Farm LLC deliver all crop proceeds and crop advances received to Debtor. Debtor shall immediately cease using Cash Collateral to make any Lease payments or payments to any insiders or those related to insiders or their entities, as well as to any affiliates, if H & J Management, United Farm LLC, insiders, or affiliates interfere with Debtor's collection of crop proceeds for crops delivered in the name of H & J Management and United Farm LLC.

5.    **Replacement Liens.**  As a grant of adequate protection, Debtor hereby grants the Lenders valid, enforceable, and perfected replacement liens ("Replacement Liens") on, and security interests in, any and all of Debtor's rights, title, and/or interest in and to all of its tangible and intangible assets, including all farm products, existing and acquired on or after the Petition Date, which includes, but is not limited to, goods, inventory, equipment, accounts, chattel, paper, instruments, lines of credit, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, payment intangibles, general intangibles, all software, and all proceeds and products thereof, arising on or after the Petition Date, but excluding avoidance actions under Chapter 5 of the Bankruptcy Code (collectively, "Postpetition Collateral" and together with the Prepetition Collateral, the "Collateral"). Such Replacement Liens shall be deemed to have attached retroactive as of the Petition Date and shall have the same validity, priority, and extent as the Lenders' prepetition security interests in the Prepetition Collateral.

6.    **[Reserved]**.

7.    **Reporting.**

(a)    As a grant of adequate protection, Debtor shall provide the Lenders with weekly reports no later than 3 days after each week-end, including a line-item by line-item comparison of budgeted-to-actual receipts of Cash Collateral and incurrence and payment of Approved Expenses for the prior week. Debtor shall also provide Lenders with a copy of the Monthly Operating Report that it is required to file with the Court.  Debtor shall report to Lenders

1　any reimbursement and/or other compensation received from any governmental agencies or other

2　entities, including any crop insurance payment for the 2024 almond crop and shall report to the

3　Lenders any requests made for any such compensation.

4　　　　　**(b)**　　　As a further grant of adequate protection, Debtor shall provide Lenders with

5　copies of crop payments and/or advances made by Debtor's crop processors, including Bapu

6　Almond Company, Inc., Campos Brothers Farms, T.M. Duche Co., Inc., and Vann Family

7　Orchards ("Crop Processors") to Debtor for Debtor's 2024 and 2025 almond crop(s). Debtor shall

8　also provide copies of any agreements reached with Debtor's Crop Processors related to or

9　concerning Debtor's 2024 and 2025 almond crop(s), and any further information reasonably

10　requested by Lenders.

11　　　　　**(c)**　　　As a further grant of adequate protection, Debtor shall provide Lenders with

12　certain information related to the leases and leased properties on which Debtor conducts their

13　farming operations ("Leases"). Such information includes but is not limited to a schedule of the

14　Leases, the landlord for each Lease, the rent reserved under each Lease, when the rent comes due,

15　and the estimated cure amounts for the Leases, and any further information reasonably requested

16　by Lenders.

17　　　　　**(d)**　　　As a further grant of adequate protection, Debtor shall hire a non-insider

18　consultant acceptable to Lenders to assist Debtor in preparing its budgets, forecasts, Monthly

19　Operating Reports, and variance reports. The consultant shall be paid only such amount(s) as

20　agreed by Lenders as an Approved Expense. The consultant shall have access to all of the bank

21　accounts of Debtor, including the CBB Account, and no checks, wires, or cash withdrawals shall

22　be made absent the approval of the consultant. Further, the existing agreements with the Crop

23　Processors shall not be modified absent the approval of the consultant and no new agreements will

24　be entered into with any crop processors, including the Crop Processors, without the approval of

25　the consultant. The consultant shall periodically review the Debtor's expenditures throughout

26　each month to ascertain that they conform with the Budget, and submit a verification with each

27　Monthly Operating Report that the expenditures for the past month did or did not conform with

28　the Budget. Within two weeks of the consultant's retention, the consultant shall report to the

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1   Lenders on: (a) the basis of Debtor's purported $342,000 obligation to United Farm LLC listed on

2   Schedule E/F (styled as "United Farms Inc" in the schedule); (b) the basis of the discrepancy

3   between the 246,286 lbs of almonds delivered in the name of United Farm LLC to the crop

4   processor and the 231,010 lbs of almonds generated by Jameson Ranch for 2024 that Sukhwant

5   Singh Gill aka Shawn Gill testified United Farm LLC "previously operated" (Dkt. 41, Gill Decl., ¶

6   23.c.); (c) the existence of any subordination, nondisturbance, and attornment agreements between

7   the Debtor and the lenders of the Debtor's landlords; (d) confirm the crop processor and Lease

8   information set forth in 7(b) and (c) above; (e) confirm receipt of any 2024 crop advances and use

9   of the crop advances; and (f) prepare inventory of United Farm LLC assets and that they are under

10  the control of the Debtor. Within sixty (60) calendar days of retention, the consultant shall audit

11  the amount of almonds generated from the Debtor's ranches for 2023 and 2024, the proceeds and

12  advances received, and the use of the proceeds and advances, whether such almonds were

13  delivered in the name of the Debtor, United Farm LLC, or H & J Management. The consultant

14  shall make himself/herself/itself available to Lenders from time to time to discuss inquiries from

15  Lenders and answer questions regarding Cash Collateral use, budgeting, expenses, Monthly

16  Operating Reports, variance reports, and forecasts.

17      8.      **Taxes & Insurance.** As a grant of adequate protection, Debtor shall pay all

18  postpetition taxes when they come due (including any and all property taxes, sales taxes, income

19  taxes, use taxes, and any other taxes related to its operations), maintain insurance as required by

20  the Loan Documents, and comply with all other requirements of the Loan Documents that are

21  necessary to preserve and maintain the value of the Lenders' Collateral, liens, and security

22  interests, including, but not limited to, the Replacement Liens.

23      9.      **Disposition of Collateral.** As a grant of adequate protection, Debtor shall not use,

24  lease, sell, and/or expend directly or indirectly the Collateral and/or Cash Collateral outside the

25  ordinary course of its business without prior written consent of the Lenders.

26      10.     **No Priming or Pari Passu Liens.** As a grant of adequate protection, except as

27  otherwise agreed to in writing by the Lenders, during the term of this Stipulation, Debtor shall be

28  enjoined and prohibited from granting any security interests or liens, including liens created under

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

§ 364(d) of the Bankruptcy Code, which are senior to, or pari passu with the Lenders' security interests or liens in the Prepetition Collateral, Postpetition Collateral, and/or Cash Collateral.

11.     **Inspection of Collateral.**  As a grant of adequate protection, after reasonable notice, Debtor shall permit representatives, agents, attorneys, and/or employees of the Lenders to visit, inspect, have reasonable access to, and/or consult with, as the case may be for the purpose of conducting the Lenders' field examinations, (a) Debtor's books, records, and assets, (b) the personnel of Debtor who are familiar with its assets, books, and records or the information set forth therein, and (c) such other information as the Lenders may reasonably request. Debtor shall cooperate, consult with, and provide to such representatives, agents, attorneys, and/or employees all such information as they may reasonably request. Lenders  shall use good faith to conduct these examinations.

12.     **Automatic Perfection.**  All agreements, security interests, and liens, including, but not limited to the Replacement Liens, contemplated or granted by this Stipulation (collectively, "Automatically Perfected Liens") are deemed effective and automatically perfected retroactive as of the Petition Date.  Such Automatically Perfected Liens are deemed perfected automatically— without the need for any filing, recording, or any other form of compliance with any state and/or federal law—upon the entry of an order by the Bankruptcy Court approving this Stipulation. the Lenders will not be required to file UCC financing statements, amendments, continuations, and/or any other documents in any jurisdiction or take any other actions in order to perfect its Automatically Perfected Liens. Nonetheless, the Lenders are granted limited relief from the automatic stay as further set forth in paragraph 16 below to perfect the Automatically Perfected Liens under non-bankruptcy law.

13.     **Stipulation Binding Upon Successors.**  The terms and conditions of this Stipulation shall be binding on the parties hereto and their assigns immediately upon the approval hereof by the Bankruptcy Court. All provisions of this Agreement are binding upon this estate, all of Debtor's successors, any successor estate, all creditors, and any and all other actual or potential successors in interest to Debtor, including without limitation, any trustee appointed in this chapter 12 case, except any trustee in a chapter 7 case if the case is converted, any committees

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  formed in either this chapter 12 case or following any conversion of this case, and/or any

2  successor estates which are, or which may hereafter be, appointed, created, or approved. Nothing

3  in this Stipulation shall prohibit a party in interest from appearing or being heard with respect to

4  future budget periods or other extensions of Cash Collateral use.

5      14.    **[Reserved]**.

6      15.    **Waivers of Surcharge Rights, etc.**  For the period during which use of Cash

7  Collateral is authorized, Debtor, their professionals, the estate, and/or any and all other parties in

8  interest, including successor estates that may come into being, hereby waive any and all rights to

9  recover any surcharge against the Lenders, its Prepetition Collateral, Postpetition Collateral, or

10  Cash Collateral, including, but not limited to, any claim under 11 U.S.C. §§ 506(c), 552(b), under

11  the so-called "equities of the case exception," and/or other applicable rule or law, including

12  without limitation as to the Lenders' allowed secured claim or liens arising out of and/or relating

13  to this bankruptcy case or any case or proceeding to which this case may be converted.

14      16.    **Limited Waiver of Automatic Stay.**  The automatic stay presently in effect in this

15  case pursuant to 11 U.S.C. § 362 is hereby modified by the terms and conditions hereof, to

16  effectuate the terms hereof and permit the adequate protection provisions in favor of the Lenders

17  and the extent necessary to enable the Lenders to record the order entered by the Bankruptcy Court

18  approving this Stipulation as the Lenders deems appropriate.

19      17.    **No Waiver / Reservation of Rights.**  Neither the entry of an order approving this

20  Stipulation nor the acceptance of the payments set forth herein shall constitute, or be deemed to

21  be, a waiver of any of Lenders rights or claims under the Loan Documents or applicable law, or a

22  cure of any default by Debtor under the Loan Documents.  Except as otherwise set forth herein,

23  both the Lenders and Debtor  reserve all rights that each may have with respect to the Prepetition

24  Collateral, Postpetition Collateral, and Cash Collateral in this chapter 12 case. The Lenders

25  expressly reserve all rights to seek relief from or modification of the automatic stay, appointment

26  of a trustee, dismissal or conversion of the case, or any other remedies that it may have. This

27  Stipulation shall not operate to modify, alter, impair, affect, abrogate, amend, restrict, and/or

28  nullify the rights of the Lenders with respect to any person or entity other than Debtor, nor release,

alter, impair, affect, and/or abrogate any debts, claims, demand, actions, and/or causes of action in law and equity, whether known or unknown, that the Lenders may have as to any person or entity other than the Debtor. Nothing contained in this Stipulation shall require or be deemed to require the Lenders to make an additional loan or to extend further financing or other financial accommodations to or for benefit of the Debtor.

18. **Modification and Amendment.** No waiver, modification, or amendment of any of the provisions hereof shall be effective unless it is set forth in writing, signed by the parties hereto and approved by the Bankruptcy Court, except the Debtor shall have the right to (a) use Cash Collateral for purposes not specified in the Budget as consented to by the Lenders in writing, and (b) conduct its business pursuant to the terms of this Stipulation after expiration of the Budget, if the Lenders consent to an additional budget in writing, without further order of the Court.

19. **Preservation of Lenders' Rights.** No subsequent stay, modification, termination, failure to extend the term of, or vacation of this Stipulation shall affect, limit, or modify any claim for the adequate protection or any claim granted hereunder, owed by Debtor to the Lenders, incurred pursuant to this Stipulation or otherwise, nor shall any such stay, modification, or vacation limit, affect or modify the validity, enforceability, or perfection of any such security interest, lien, or priority granted or reaffirmed in connection therewith. The adequate protection cannot be subordinated, lose its status, or be deprived of the benefit of the liens granted to the Lenders hereunder by any subsequent order in this case.

20. **Survival.** In the event that the case is dismissed, converted, otherwise suspended, or substantively consolidated, neither the entry of an order approving this Stipulation nor the dismissal or conversion of this case shall affect the rights of the Lenders under their Loan Documents, or the terms and conditions of this Stipulation, including the security interests, liens and Super Priority Claim granted herein, and all the rights and remedies of the Lenders thereunder shall be and remain in full force and effect as if the case had not been filed or the case had not been dismissed, converted, suspended or substantively consolidated. Notwithstanding any termination of Debtor's authority to use the Cash Collateral pursuant to the terms hereof, all liens, priorities, rights and remedies provided to the Lenders in this Stipulation shall survive such

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  termination and remain in full force and effect with respect to any prepetition obligations to the

2  Lenders, any claims and obligations arising under this Stipulation, outstanding on such

3  termination date and any fees incurred by the Lenders after termination of this Stipulation in

4  enforcing its rights under this Stipulation. Notwithstanding any stay, modification, vacation, or

5  reversal of this Stipulation, any indebtedness, obligation or liability incurred by Debtor  pursuant

6  to this Stipulation arising prior to the later of the effective date of such stay, modification, vacation

7  or reversal, or the Lenders' receipt of notice thereof, shall be governed in all respects by the

8  original provisions of this Stipulation, and the Lenders shall continue to be entitled to all of the

9  rights, remedies, privileges and benefits, including any payments authorized herein and all security

10 interests, liens and priorities granted herein, with respect to all such indebtedness, obligations or

11 liabilities incurred or existing prior to such date, and with respect to Debtor's use of the Cash

12 Collateral prior to such date. Without limiting the generality of the foregoing, in the event any

13 court hereafter modifies any of the provisions of this Stipulation, such modifications shall not

14 affect the rights, remedies, liens, priorities, concessions, and waivers granted to the Lenders or

15 acknowledged pursuant to this Stipulation with respect to the obligations and the prepetition

16 obligations, and any Cash Collateral which is used prior to any such modifications.

17      21.    **Defaults.**  Each of the following shall constitute a default under this Stipulation

18 (each a "Default"):

19          (a)    Non-compliance by Debtor with any of the express terms or provisions of

20 this Stipulation;

21          (b)    Any person or entity obtains an order permitting the use Cash Collateral

22 without the Lenders' express written consent. For purposes of this subparagraph, Debtor agrees

23 that they will not support any action which could result in expenditures materially different than as

24 set forth in the Budget;

25          (c)    Any violation of line item variance limits and/or failure of strict

26 performance by Debtor of any provision of the Budget; and/or

27

28

(d)    Debtor knowingly furnishes or knowingly makes any false, inaccurate or materially incomplete representation, warranty, certificate, report or summary in connection with or pursuant to this Stipulation.

22.    **Notice of Default; Opportunity to Cure.** Each Lender may give notice of any Default to Debtor by sending an email to Debtor's counsel of record and the other Lender's counsel of record stating that there has been a Default and describing such Default (a "Notice of Default"). Upon the respective Lender providing a Notice of Default, Debtor shall have 3 business days to cure each Default. If Debtor does not so cure the defaults, then each such Default shall be deemed an "Uncured Default."

23.    **Events of Default.**  Each of the following shall constitute an event of default under this Stipulation (each an "Event of Default"):

(a)    Entry of an order converting Debtor's chapter 12 case to chapter 7 of the Bankruptcy Code, which order is not stayed within fourteen (14) days of the entry thereof;

(b)    Entry of an order dismissing this case, which order is not stayed within fourteen (14) days of the entry thereof;

(c)    Entry of an order by the Bankruptcy Court removing Debtor's authority over the Collateral, or authorizing a trustee to operate the business of the Debtor, or appointing an examiner, which order is not stayed within fourteen (14) days of the entry thereof;

(d)    Entry of an order granting any of the Lenders or any other secured creditor relief from the automatic stay;

(e)    The filing of any motion by Debtor to obtain financing, other than financing from the Lenders, that seeks either to prime the Lenders' liens or seeks pari passu treatment of the Lender without the written consent of the Lenders;

(f)    Failure of Debtor to comply with any material terms, conditions, or covenants contained in this Stipulation, including Debtor's failure to pay the Lenders the Payments when due;

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

(g) The reversal, vacatur, stay, amendment, supplementation, and/or other modification of this Stipulation (without the Lenders' consent) in a manner which shall, in the sole opinion of the Lenders, materially or adversely affect the rights of the Lenders hereunder; and/or

(h) An uncured Default.

24. **Remedies Upon Occurrence of Event of Default.** If an Event of Default occurs, each Lender may immediately file a Notice of Event of Default in the instant bankruptcy case. Upon such filing on the CM/ECF docket, and as of the very moment of such filing:

(a) Debtor's authorization to use Cash Collateral pursuant to this Stipulation shall terminate immediately and automatically, without any obligation of the Lenders to provide further notice to Debtor (the "Termination Date").

(b) Debtor shall notice a hearing on continued use of cash collateral within seven (7) calendar days of the Notice of Default Date, which hearing shall take place within fourteen (14) days of the Notice of Default Date. At the emergency hearing, the Court shall consider whether continued use of Cash Collateral shall be authorized.

(c) Each Lender may notice a hearing on relief from stay and/or for adequate protection on shortened time with the hearing to be held at least within fourteen (14) days of the Notice of Default Date.

25. **Retention of Jurisdiction.** This Stipulation shall be incorporated into any order approving it, and the Bankruptcy Court shall retain exclusive jurisdiction over the subject matter of this Stipulation in order to resolve any dispute in connection with it, including, but not limited to any interpretation and/or enforcement of rights and duties set forth hereunder.

26. **Miscellaneous.**

(a) No rights are intended to be created hereunder for the benefit of any third party or creditor or any direct or indirect incidental beneficiary except as specifically provided herein.

(b) The Lenders have entered into this Stipulation and consented to the use of the Cash Collateral in good faith and is entitled to all of the protections provided to such an entity.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

(c)     Debtor is authorized and directed to perform all acts and execute and comply with the terms of such other documents, instruments and agreements necessary to effectuate the terms and conditions of this Stipulation.

(d)     If any party, creditor, entity, statutory or ad hoc committee challenges the validity of the Loan Documents and the claims of the Lenders arising therefrom, including the security interests and liens on the Prepetition or Postpetition Collateral, neither the Cash Collateral nor the proceeds from any sale, transfer, disposition or hypothecation of the Prepetition or Postpetition Collateral shall be used to fund the challenge.

(e)     Any order approving this Stipulation shall be effective immediately upon its entry, and shall be effective retroactive to the Petition Date.

(f)     Except as otherwise expressly provided in this Stipulation, the terms and conditions of the Loan Documents shall remain in full force and effect and the Lenders shall have all of their rights and remedies thereunder, subject to the provisions of Bankruptcy Code and any orders of the Bankruptcy Court.

(g)     Nothing contained in this Stipulation and the order thereon shall be deemed or be construed to waive, reduce, or otherwise diminish the rights of the Lenders to seek additional or different adequate protection of its interests under the Loan Documents, to seek relief from the automatic stay, or to take any other action in this Bankruptcy Case, including but not limited to, seeking relief from the automatic stay. Furthermore, nothing contained in this Stipulation shall be deemed or be construed to be an admission that the Lenders are adequately protected.

(h)     This Stipulation may be executed in original, e-mail or facsimile signature and in counterpart copies, and this Stipulation shall be deemed fully executed and effective when all parties have executed and possess a counterpart, even if no single counterpart contains all signatures.

(i)     As a grant of further adequate protection, Debtor shall submit a cash collateral budget for a 3-week period by February 20, 2025, and make itself available to discuss the budget by February 28, 2025.  A further hearing for use of cash collateral on the new budget

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  will be heard on March 6, 2025, at 10:30 a.m.  Any objections to the new budget shall be

2  submitted by March 3, 2025.  The parties may adjust these deadlines by stipulation.

3                              [Signatures on Following Page]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**So Stipulated.**

DATED: February 12, 2025

FRANDZEL ROBINS BLOOM & CSATO, L.C.
MICHAEL J. GOMEZ
GERRICK M. WARRINGTON

By:  _/s/ Michael J. Gomez_
MICHAEL J. GOMEZ
Attorneys for TECH AG FINANCIAL GROUP,
INC.

DATED: February 12, 2025

BAKER MANOCK & JENSEN, PC
DIRK B. PALOUTZIAN

By:  _Dirk B. Paloutzian_
DIRK B. PALOUTZIAN
Attorneys for RABO AGRIFINANCE LLC

DATED: February 12, 2025

FEAR WADDELL, P.C
PETER L. FEAR

By:  _Peter L. Fear_
PETER L. FEAR
Attorneys for Debtor CAPITAL FARMS, INC.

**Approved as to Form By:**

DATED: February 12, 2025

By  _Lilian G. Tsang_
LILIAN G. TSANG
Chapter 12 Trustee

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

# EXHIBIT 1

# Capital Farms Inc
## Profit and Loss
### 3 Week budget

| | Feb 13 - Feb 19<br>Week 1 | Feb 20 - Feb 26<br>Week 2 | Feb 27 - March 5<br>Week 3 | Totals |
|---|---|---|---|---|
| **Income** | | | | |
| Crop - Almonds | | 100,000.00 | | **100,000.00** |
| Crop - Almonds - Ins Claim | 178,000.00 | 0.00 | | **178,000.00** |
| Harvesting (outside) | | | | **0.00** |
| **FSA Grants** | 32,484.46 | | | **32,484.46** |
| Management Fees | 0.00 | 0.00 | 0.00 | **0.00** |
| **Total Income** | $   210,484.46 | $   100,000.00 | $   0.00 | $   310,484.46 |
| **Expenses** | | | | |
| Advertising & Marketing | 0.00 | 0.00 | 0.00 | **0.00** |
| **Phone Bill** | 550.00 | 0.00 | 0.00 | **550.00** |
| Bank Charges & Fees | 0.00 | 0.00 | 0.00 | **0.00** |
| Bees - Brewer | 0.00 | 0.00 | 0.00 | **0.00** |
| Bees - Senky | 0.00 | 0.00 | 0.00 | **0.00** |
| Bees - Senky | 0.00 | 0.00 | 0.00 | **0.00** |
| Bees - Brawley | 0.00 | 0.00 | 0.00 | **0.00** |
| Bees - Jamison | 0.00 | 0.00 | 0.00 | **0.00** |
| Bees - Natomas | 0.00 | 0.00 | 0.00 | **0.00** |
| Car & Truck - Payment | 1,000.00 | 0.00 | 0.00 | **1,000.00** |
| Car & Truck - Fuel | 500.00 | 500.00 | 500.00 | **1,500.00** |
| Chemicals/Fertilizer | 10,000.00 | 0.00 | 34,800.00 | **44,800.00** |
| Contractors | 2,100.00 | 2,100.00 | 2,100.00 | **6,300.00** |
| Crop Insurance | 6,972.25 | 0.00 | | **6,972.25** |
| DMV Fees | 0.00 | 0.00 | 0.00 | **0.00** |
| Dues & subscriptions | 0.00 | 0.00 | 0.00 | **0.00** |
| Diesel & Fuel | 1,000.00 | 0.00 | 1,000.00 | **2,000.00** |
| Harvesting | 0.00 | 0.00 | 0.00 | **0.00** |
| Insurance | 0.00 | 0.00 | 0.00 | **0.00** |
| Insurance - WC | 2,000.00 | 0.00 | 0.00 | **2,000.00** |
| Irrigation Supplies | 1,500.00 | 0.00 | 0.00 | **1,500.00** |
| Lease Payments - Brewer | 0.00 | 0.00 | 0.00 | **0.00** |
| Lease Payments - Baseline Rd - 157 acres | 0.00 | 0.00 | 0.00 | **0.00** |
| Lease - Sankey | 0.00 | 0.00 | 0.00 | **0.00** |
| Lease - Brawley | 0.00 | 0.00 | 0.00 | **0.00** |
| Lease - Brawley (dev voan 2) | 0.00 | 0.00 | 7,467.56 | **7,467.56** |
| Lease - Brawley (dev loan 1) | 0.00 | 0.00 | 0.00 | **0.00** |
| Lease - Jamison | 0.00 | 0.00 | 7,500.00 | **7,500.00** |
| Lease - Natomas | 0.00 | 0.00 | 19,500.00 | **19,500.00** |
| Leasehold Imp- Brewer (Rabo) | 0.00 | 0.00 | 0.00 | **0.00** |

|  | Feb 13 - Feb 19 Week 1 | Feb 20 - Feb 26 Week 2 | Feb 27 – March 5 Week 3 | Totals |  |
|---|---|---|---|---|---|
| Legal & Professional Services | 0.00 | 0.00 | 0.00 | 0.00 | |
| Office Supplies & Software | 100.00 | 0.00 | 0.00 | 100.00 | |
| Parts & Supply | 550.00 | 375.00 | 550.00 | 1,475.00 | |
| Payroll Expenses | 2,000.00 | 2,000.00 | 2,000.00 | 6,000.00 | |
| Office Admin Payroll | 5,000.00 | 0.00 | 0.00 | 5,000.00 | |
| Payroll - Harvesting | 0.00 | 0.00 | 0.00 | 0.00 | |
| Payroll Tax Expenses | 350.00 | 200.00 | 350.00 | 900.00 | |
| PCA Fees | 0.00 | 0.00 | 0.00 | 0.00 | |
| Property Taxes - Baseline | 0.00 | 0.00 | 0.00 | 0.00 | |
| Property Taxes - Sankey | 23,895.04 | 0.00 | 0.00 | 23,895.04 | Due 12/2024 |
| Property Taxes - Brewer | 0.00 | 0.00 | 0.00 | 0.00 | |
| Property Taxes - Natomas | 19,697.95 | 0.00 | 0.00 | 19,697.95 | Due 12/2024 |
| Property Taxes - Natomas | 0.00 | 0.00 | 0.00 | 0.00 | |
| Property taxes - Brawley | 20,482.89 | 0.00 | 0.00 | 20,482.89 | Due 12/2024 |
| Property taxes - Jamison | 0.00 | 0.00 | 0.00 | 0.00 | |
| Repairs & Maintenance | 500.00 | 0.00 | 500.00 | 1,000.00 | |
| Taxes & Licenses | 0.00 | 0.00 | 0.00 | 0.00 | |
| Utilities - Baseline | 0.00 | 0.00 | 0.00 | 0.00 | |
| Utilities - Baseline (Jackson rd) | 0.00 | 0.00 | 0.00 | 0.00 | |
| Utilities - Sankey | 0.00 | 0.00 | 0.00 | 0.00 | |
| Utilities - Brewer | 0.00 | 0.00 | 0.00 | 0.00 | |
| Utilities - Natomas | 0.00 | 0.00 | 0.00 | 0.00 | |
| Utilities - Brawley | 0.00 | 0.00 | 0.00 | 0.00 | |
| Utilities - Jamison | 0.00 | 0.00 | 0.00 | 0.00 | |
| Water Coalition Permit Fees | 0.00 | 0.00 | 0.00 | 0.00 | |
| Yard Rental -Brewer Rd | 300.00 | 0.00 | 300.00 | 600.00 | |
| Tech Ag Adeq. Prot. | 0.00 | 5,000.00 | | 5,000.00 | |
| Total Expenses | $ 98,498.13 | $ 10,175.00 | $ 76,567.56 | $ 185,240.69 | |
| Accumulated Expenses | | $ 108,673.13 | $ 185,240.69 | $ 185,240.69 | |
| Cash Flow Requirements | $ 111,986.33 | $ 89,825.00 | -$ 76,567.56 | $ 125,243.77 | |