FEAR WADDELL, P.C.
Peter L. Fear, No. 207238
pfear@fearlaw.com
Gabriel J. Waddell, No. 256289
gwaddell@fearlaw.com
Peter A. Sauer, No. 255957
psauer@fearlaw.com
7650 North Palm Avenue, Suite 101
Fresno, California 93711
(559) 436-6575
(559) 436-6580 (fax)

Attorneys for CAPITAL FARMS, INC.
  Debtor in Possession

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>CAPITAL FARMS, INC.,<br><br><br><br>Debtor and Debtor-in-Possession. | Case No. 25-10074-A-12<br><br>Chapter 12<br><br>D.C. No. FW-12<br><br>Date:  TO BE SET<br>Time:  TO BE SET<br>Place: Dept. A, Courtroom 11, 5th Floor<br>         United States Courthouse<br>         2500 Tulare St., Fresno, California<br>Judge: Hon. Jennifer E. Niemann |

### CHAPTER 12 PLAN DATED APRIL 10, 2025

CAPITAL FARMS, INC., Debtor in Possession herein (hereinafter "Debtor"), submits the following Chapter 12 Plan (the "Plan") pursuant to Section 1221 of the Bankruptcy Code:

Chapter 12 Plan - 1

# I.
# TERM

1.01.　**Family Farmer.** Debtor is a family farmers with regular income and is eligible to be a debtor under Chapter 12 of the Bankruptcy Code.

1.02.　**Plan Payments.** Debtor will submit future income to the supervision and control of the Trustee as is necessary for the execution of the Plan. Debtor will be able to make the payments under the Plan and comply with the provisions of the Plan. The amount to be received by the Trustee on a monthly basis shall be no less than the sum of (1) the monthly payments to be paid through the Chapter 12 Trustee for modified secured claims, (2) the pro rata amount needed to pay Class 1 administrative claims, Class 11 priority claims, and Class 12 general unsecured claims over the term of the Plan, and (3) an amount sufficient to pay the required Chapter 12 Trustee compensation on such payments. Debtor shall make monthly payments to the Chapter 12 Trustee no later than the 15th of each month, with the first such payment due in the month following the Effective Date.

1.03.　**Default.** If Debtor fails to comply with any plan provision, this shall constitute a default under the terms of the plan. The trustee or another interested party may bring a motion to dismiss or seek other appropriate relief upon a default.

1.04.　**Term of the Plan.** Pursuant to Section 1222(c), the Plan provides for payment over a five-year period.

# II.
# CLASSIFICATION AND TREATMENT OF CLAIMS

2.01.　**Class 1 Claims**: Claims entitled to treatment as administrative claims, including Debtor's attorney fees and consultant fees, and Chapter 12 Trustee fees, shall be Class 1 claims. Class 1 claims are claims arising after Debtor filed for relief under Chapter 12 and shall be paid

in full. Any Class 1 claim that requires court approval shall be paid after court approval. Class 1 claims shall be paid by Debtor as an expense necessary for the operation of the business. Class 1 claims shall be paid through the Trustee, or directly by the Debtor, if the order approving the Class 1 claim specifically so provides. Any Class 1 claim paid through the Trustee shall be entitled to priority as provided in Section 507(a). All Class 1 claims shall be paid before there is any distribution on account of the priority and unsecured claims described below. If Debtor pays more than the minimum amount required by paragraph 1.02 above, the Trustee shall pay such additional amount to Class 1 creditors until those claims are paid in full. Debtor estimates that Debtor's attorney fees in this case will be approximately $150,000.00 above the pre-filing retainer paid by Debtor. Debtor's attorney fees and costs approved pursuant to 11 U.S.C. Sec. 330 but remaining unpaid upon the completion of the case, if any, shall not be discharged and shall be paid directly by the Debtor to counsel for the Debtor before and/or after entry of the discharge.

### **SECURED CLAIMS**

2.01. **In General.** Except as otherwise provided herein, Secured Claimants shall retain all rights set forth in their notes, judgments, liens, and security documents and Debtor shall perform all terms of their agreements and the judgments against them, including payment of real property taxes and insurance on real property. Secured Claimants shall be allowed to exercise all rights and remedies available to them under the law except as modified by the Plan and operative provisions of the Bankruptcy Code. Each secured creditor shall retain its security interest until the secured claim has been paid in full. Each secured creditor shall be required to release its security interests or liens after its secured claim has been paid in full.

2.01.1. **Post-Chapter 12 Default.** All pre-Effective Date monetary defaults have been considered in the Plan. All such defaults shall be deemed cured on confirmation of the Plan. A Secured Claimant may proceed in accordance with the terms of its security agreements, notes, judgments, liens, security documents, and applicable law without further order of the Court only if Debtor defaults in any payment due after the Chapter 12 case is closed, if the Chapter 12 case is dismissed, or if the Secured Claimant obtains relief from the automatic stay.

2.01.2. **Effect of Plan Completion and Discharge.** Upon entry of the discharge, (1) any lien securing a claim that is treated as an unsecured claim in this Plan shall be released, and (2) where a claim has been bifurcated into secured and unsecured portions through the bankruptcy case, the amount securing the lien shall be reduced to the principal balance of the secured claim. If necessary, Debtor may obtain a judgment or order stating that a lien is released or reduced for recording purposes.

2.01.3. **Untreated Secured Claims.** To the extent any secured claims are not classified by this Chapter 12 Plan, those claims are not modified by the Plan and Debtor shall be required to make the payments required by non-bankruptcy law to keep the collateral securing such secured claims.

2.01.4. **Determination of Section 506(b) Allowed Amounts.** If a claimholder treated as a secured creditor under this Plan seeks payment of post-petition interest, fees, costs or expenses pursuant to 11 U.S.C. § 506(b), the claimholder shall, within 30 days after the Effective Date, file and set for

hearing a motion setting forth (1) a calculation of interest owed, and (2) an itemization of the fees, costs and expenses requested. If such motion seeks payment of the claimholder's attorneys' fees, the motion shall provide (1) an explanation of the reasonableness of the attorneys' fees being sought, and (2) attorneys' billing statements, which may be redacted as necessary to protect disclosure of attorney-client communications, so long as the reasonableness of the fees may still be ascertained. At any hearing on the motion, the claimholder shall have the burden of proof to demonstrate the accuracy of the calculation of interest and the reasonableness of any fees, costs and expenses requested. After such hearing, the Court shall determine the allowed amount, which shall be added to the principal amount of the claim and paid as provided below in the treatment of the remainder of the claim. In lieu of the foregoing, Debtor and the claimholder may stipulate to an amount that should be added to the claim pursuant to Section 506(b). Debtor shall file such stipulation with the Court, with service upon all parties receiving electronic notice pursuant to F.R.B.P. 9036. No later than 30 days after the stipulation has been filed, any party may file an objection to such a stipulation and set the matter for hearing on the Court's regular Chapter 12 law and motion calendar on no less than 14 days' notice. If no party has objected to such a stipulation within 30 days from the date it was filed with the Court, the stipulation shall be treated as a final determination of the amount of the claimholder's Section 506(b) claim. Claimholders shall

not be entitled to any additional claim pursuant to Section 506(b) unless Debtor defaults in its performance under the Plan.

2.02. **Class 2 Claim – Wilbur-Ellis Company**

2.02.1. **Class Description**: The claim of Wilbur-Ellis Company secured by a security agreement against farm assets of the Debtor, as described in Claim No. 4, shall be the Class 2 Claim. According to Claim No. 4 filed herein, the amount of the Class 2 Claim is approximately $338,992.89.

2.02.2. **Treatment**: The Class 2 claim shall be modified as follows: (1) the claim shall bear interest at the Till Rate after the Effective Date of the Plan, (2) the claim shall be paid monthly interest-only payments, beginning in the month following the Effective Date, (3) in addition, an Annual Excess Reserve Principal Payment shall be paid to the claimant as described in paragraph 4.02, (4) the claim shall be paid in full no later than the date that is 84 months following the first month after the Effective Date, (5) the claimholder shall maintain its claim and its liens until the claim has been paid in full, (6) once the claim has been paid in full, the claimholder shall release its lien, as required by state law, and (7) for the first 60 months after the Effective Date, the payment shall be paid through the Chapter 12 Trustee, after which Debtor shall make the payment directly to the claimholder. As used in this paragraph, the "Till Rate" shall be equal to the Prime Rate most recently published in the Wall Street Journal prior to the Effective Date, plus one (1) percentage point.

2.03. **Class 3 Claim – Kubota Credit Corporation**: The claim of Kubota Credit Corporation secured by farm equipment of the Debtor, as described in Claim No. 5, shall be the Class 3 claim. According to Claim No. 5 filed herein, the amount of the Class 3 Claim is approximately $12,010.05. This claim shall be unmodified by the Plan.

2.04. **Class 4 Claim – Farm Credit Services**: The claim of Farm Credit Services is secured by farm equipment of the Debtor as described in Claim No. 8 filed herein. According to Claim No. 8 filed herein, the amount of the Class 4 Claim is approximately $60,746.77. This claim shall be unmodified by the Plan. This creditor has obtained stay relief and Debtor intends to surrender the equipment to the creditor.

2.05. **Class 5 Claim – Tech Ag Financial Group, Inc.**

2.05.1. **Class Description**: The claim of Tech Ag Financial Group, Inc. secured by a security agreement against farm assets of the Debtor, as described in Claim No. 10, shall be the Class 5 claim. According to Claim No. 10 filed herein, the amount of the Class 5 Claim is approximately $412,896.81.

2.05.2. **Treatment**: The Class 5 claim shall be modified as follows: (1) the claim shall bear interest at the Till Rate after the Effective Date of the Plan, (2) the claim shall be paid monthly interest-only payments, beginning in the month following the Effective Date, (3) in addition, an Annual Excess Reserve Principal Payment shall be paid to the claimant as described in paragraph 4.02, (4) the claim shall be paid in full no later than the date that is 84 months following the first month after the Effective Date, (5) the claimholder shall maintain its claim and its liens until the claim has been paid in full, (6) once the claim has been paid in full, the claimholder shall release its lien, as required by state law, and (7) for the first 60 months after the Effective Date, the payment shall be paid through the Chapter 12 Trustee, after which Debtor shall make the payment directly to the claimholder. As used in this paragraph, the "Till Rate" shall be equal to the Prime Rate most recently published in the Wall Street Journal prior to the Effective Date, plus one (1) percentage point.

2.06. **Class 6 Claim – Rabo Agrifinance LLC**

2.06.1. **Class Description**: The claim of Rabo Agrifinance LLC secured by a security agreement against farm assets of the Debtor, as described in Claim No. 11, shall be the Class 6 claim. According to Claim No. 11 filed herein, the amount of the Class 6 Claim is approximately $1,210,404.27.

2.06.2. **Treatment**: The Class 6 claim shall be modified as follows: (1) the claim shall bear interest at the Till Rate after the Effective Date of the Plan, (2) the claim shall be paid monthly interest-only payments, beginning in the month following the Effective Date, (3) in addition, an Annual Excess Reserve Principal Payment shall be paid to the claimant as described in paragraph 4.02, (4) the claim shall be paid in full no later than the date that is 84 months following the first month after the Effective Date, (5) the claimholder shall maintain its claim and its liens until the claim has been paid in full, (6) once the claim has been paid in full, the claimholder shall release its lien, as required by state law, and (7) for the first 60 months after the Effective Date, the payment shall be paid through the Chapter 12 Trustee, after which Debtor shall make the payment directly to the claimholder. As used in this paragraph, the "Till Rate" shall be equal to the Prime Rate most recently published in the Wall Street Journal prior to the Effective Date, plus one (1) percentage point.

2.07. **Class 7 Claim – Rabo Agrifinance LLC**

2.07.1. **Class Description**: The claim of Rabo Agrifinance LLC secured by a security agreement against farm assets of the Debtor, as described in Claim No. 12, shall be the Class 7 claim. According to Claim No. 12 filed herein, the amount of the Class 7 claim is approximately $4,201,524.97.

2.07.2. **Treatment**: The Class 7 claim shall be modified as follows: (1) the claim shall bear interest at the Till Rate after the Effective Date of the Plan, (2) the claim shall be paid monthly interest-only payments, beginning in the month following the Effective Date, (3) in addition, an Annual Excess Reserve Principal Payment shall be paid to the claimant as described in paragraph 4.02, (4) the claim shall be paid in full no later than the date that is 84 months following the first month after the Effective Date, (5) the claimholder shall maintain its claim and its liens until the claim has been paid in full, (6) once the claim has been paid in full, the claimholder shall release its lien, as required by state law, and (7) for the first 60 months after the Effective Date, the payment shall be paid through the Chapter 12 Trustee, after which Debtor shall make the payment directly to the claimholder. As used in this paragraph, the "Till Rate" shall be equal to the Prime Rate most recently published in the Wall Street Journal prior to the Effective Date, plus one (1) percentage point.

2.08. **Class 8 Claim – T M Duche Nut Co.**

2.08.1. **Class Description**: The claim of T M Duche Nut Co. secured by crop proceeds of the Debtor, as described in Claim No. 13, shall be the Class 8 claim. According to Claim No. 13 filed herein, the amount of the Class 8 Claim is approximately $500,000.00.

2.08.2. **Treatment**: The Class 8 claim shall be modified as follows: (1) within 15 days following the Effective Date, the Class 8 claimant shall turnover to Debtor the entirety of the crop proceeds constituting the collateral for the Class 8 claim, and shall be given a replacement lien against all of Debtor's other assets in the same amount, nature, and priority as the lien held against the crop proceeds and the Class 8 creditor shall not be required to take any further action to fully perfect its lien on Debtor's other assets, (2) the claim shall bear interest at the Till Rate after the Effective Date of the Plan, (3) the claim shall be paid monthly interest-

only payments, beginning in the month following the Effective Date, (4) in addition, an Annual Excess Reserve Principal Payment shall be paid to the claimant as described in paragraph 4.02, (5) the claim shall be paid in full no later than the date that is 84 months following the first month after the Effective Date, (6) the claimholder shall maintain its claim and its liens until the claim has been paid in full, (7) once the claim has been paid in full, the claimholder shall release its lien, as required by state law, and (8) for the first 60 months after the Effective Date, the payment shall be paid through the Chapter 12 Trustee, after which Debtor shall make the payment directly to the claimholder. As used in this paragraph, the "Till Rate" shall be equal to the Prime Rate most recently published in the Wall Street Journal prior to the Effective Date, plus one (1) percentage point.

## PRIORITY AND GENERAL UNSECURED CLAIMS

2.09. **Class 11 Claims:** Allowed unsecured priority claims not otherwise described in the Plan shall be Class 11 claims. Class 11 claimants shall be paid after Class 1 claims are paid in full. Debtor estimates the amount of Class 11 claims to be $57,620.55. Class 11 claims will be paid in full.

2.10. **Class 12 Claims:** Allowed unsecured claims not otherwise described in the Plan shall be Class 12 claims. Class 12 claims shall include claims that may be classified as unsecured claims and discharged in this case pursuant to 11 U.S.C. § 1232, as well as the unsecured portion of claims that are only partially secured pursuant to Section 506(a) and claims that are determined to be unsecured because the security interest was a preferential transfer pursuant to Section 547. Based upon claims filed in the case, Debtor estimates that Class 12 claims total $278,823.51. Class 12 claims shall be paid after payment of all higher priority claims, including Class 1 administrative claims and Class 11 priority claims. Class 12 claims shall be paid in full.

## III.

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

3.01. Upon confirmation of the Plan, Debtor shall assume the following leases and executory contracts:

    3.01.1. Lease of Brewer Ranch (approx. 315 acres) with Brewer 315.

    3.01.2. Lease of Brawley Ranch (approx. 277 acres) with Sutter Land, LLC.

    3.01.3. Lease of Sankey Ranch (approx. 238 acres) with Sutter Land, LLC.

    3.01.4. Lease of Natomas Ranch (approx. 158 acres) with Sutter Land, LLC.

    3.01.5. Lease of Jameson Ranch (approx. 152 acres) with Sukhwant Gill.

    3.01.6. Sublease of Baseline Ranch (approx. 157 acres) with Sutter Land, LLC.

3.02. All other pre-petition executory contracts or unexpired leases shall be deemed rejected.

## IV.

## MEANS FOR EXECUTING THE PLAN

4.01. **Payments from Farming Operations:** Debtor will continue to operate the farming operation following confirmation of the Plan and will use their farming income to make payments as described herein.

4.02. **Annual Payments Toward Principal on Secured Debt:** Beginning on the 31st day (the "Excess Reserve Payment Date") of the month following the first anniversary of the Effective Date, and continuing every year thereafter, Debtor will make an "Annual Excess Reserve Principal Payment" toward the principal amount of Classes 2, 5, 6, 7 and 8 (the "Modified Secured Classes"), if, after making all payments required by the Plan and paying all of Debtor's other required expenses, Debtor has more than $2.5 million in cash reserves. The

Annual Excess Reserve Principal Payment shall be calculated by subtracting $2.5 million from the amount of Debtor's cash reserves as of the Excess Reserve Payment Date. The Annual Excess Reserve Principal Payment shall be distributed to the Modified Secured Classes, on a pro rata basis, to pay down the principal amount of those claims. During the time this case is in Chapter 12, such payments shall be made through the Chapter 12 Trustee. Thereafter, Debtor shall make such payments directly to creditors.

4.03. **Balance of Proceeds Not Used For Plan Execution.** Other than the distributions listed in this Section, any money generated by Debtor, including cash collateral, may be used to meet other farm or operational needs of Debtor.

## V.

## CHAPTER 7 COMPARISON

5.01. The value of property is to be distributed under the Plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of Debtor was liquidated under Chapter 7, Title 11, United States Code on the Effective Date.

## VI.

## GOOD FAITH

6.01. The Plan complies with Chapter 12 and all other provisions of the Bankruptcy Code. Any fee, charge or amount required to be paid under Title 28 of the United States Code or required by the Plan to be paid before confirmation has or will be paid before confirmation. The Plan has been proposed in good faith and not by any means forbidden by law.

## VII.

## CONFIRMATION PROCEDURE

7.01. The Court may confirm the Plan and accept the allegations asserted herein if written objections to the Plan are not filed with the Court and served on counsel for Debtor and the Trustee. The hearing on confirmation shall be governed by the provisions of Section 1224.

## VIII.

## REVESTMENT OF PROPERTY IN DEBTOR

8.01. The automatic stay shall be lifted upon entry of discharge unless otherwise provided by court order or the Plan. Property of the estate shall vest in accordance with applicable law if the case is converted to Chapter 7 or Chapter 11 of the Bankruptcy Code. Property of the estate shall vest in Debtor upon entry of discharge unless otherwise provided.

## IX.

## OTHER PROVISIONS

9.01. <u>Post Confirmation Financing:</u> Debtor shall not incur postpetition debt except in the ordinary course of business without Court approval.

9.02. <u>Chapter 12 Payments:</u> Debtor shall make all payments required under the Plan to the Chapter 12 Trustee, unless otherwise instructed in writing. Payments shall be made as stated in paragraph 1.02 of the Plan.

9.03. <u>Effect of Confirmation:</u> Except as provided for in Section 1228(a), the provisions of a Chapter 12 Plan confirmed by the Court bind Debtor and each creditor whether or not the claim of such creditor is provided for by the Plan and whether or not such creditor has objected to, accepted, or rejected the Plan. Property vesting in Debtor after the entry of a discharge shall be free and clear of any claim or interest of any creditor provided for by the Plan except as provided in Section 1228(a), the Plan, or the Order Confirming the Plan.

9.04. <u>Modification of Chapter 12 Plan Before Confirmation:</u> Debtor may modify the Plan at any time before confirmation so long as the provisions of Section 1223 are satisfied.

9.05. <u>Modification of Chapter 12 Plan After Confirmation:</u> Modification of the Plan is permissible in accordance with Section 1229.

9.06. <u>Discharge:</u> Consistent with Section 1228, the Court shall enter a discharge of all debts provided for by the Plan after completion of the payments through the Chapter 12 Trustee required by the Plan. Property of the estate shall vest in Debtor and the Court shall terminate the services of the Trustee after the discharge is entered.

9.07. <u>Cooperation and Reporting:</u> Debtor shall file all periodic reports required by the Court or the Trustee and shall file such reports in a timely manner. Debtor shall file all federal, state, and local tax returns as required by law and shall deliver all completed federal, state, and local tax returns to the Trustee at least thirty days before the due date for all such returns. Debtor shall transmit any and all grower payment reports to the Trustee within 15 days of receipt by Debtor of the report. The Trustee may provide tax returns and grower payment reports to Secured Claimants who request such information. To the extent possible, Debtor shall add Trustee as a party to be notified in the event of cancellation on Debtor's liability insurance policies. The taxes owed by Debtor as shown by the tax returns shall be paid by Debtor on or before the date such taxes become due. Debtor shall meet with the Trustee or his representatives as required by the Court or the Trustee. All fees and costs charged by the Trustee, as allowed by law, shall be paid from the funds of the Chapter 12 estate.

9.08. <u>Claims:</u> Unsecured claimants and priority claimants, if any, must file a proof of claim in accordance with Fed. R. Bankr. P. 3002 to have an allowed claim except as provided by Fed. R. of Bankr. P. 3004 and 3005 or order of the Court. A claim which is timely filed shall be allowed unless objection is made to it. It shall be the duty of Debtor to object to a disputed claim and the Trustee shall make distribution on account of such claim until an objection is filed.

However, the Trustee may suspend payments to a creditor holding a disputed claim until the objection is heard and determined by the Court if Debtor file an objection to the claim within ninety days of the Effective Date.

Claims filed and allowed in the manner permitted by the Bankruptcy Code for post-petition debt incurred by Debtor may be paid in full without interest in such order and on such terms as the Trustee may determine.

9.09 <u>Terminology:</u> Unless otherwise defined, all references to the following terms shall have the following meaning:

1. **Debtor** shall mean the Chapter 12 petitioner.

2. All references to a "**Section**" shall refer to applicable sections of Title 11 of the United States Code.

3. **Bankruptcy Code** shall mean Title 11 of the United States Code.

4. **Court** shall mean the United States Bankruptcy Court for the Eastern District of California.

5. **Effective Date** is the first business day after fourteen days following entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

6. **Trustee** shall mean the Chapter 12 Trustee appointed in connection with this proceeding.

9.10. <u>No Third Party Rights:</u> Nothing contained in this Plan is intended to, nor shall it be construed or deemed to confer any rights, powers, or privileges on any person, firm, partnership, corporation, limited liability company, or any other entity that is not a creditor in this bankruptcy case, the Debtor, the standing Chapter 12 Trustee, or their successor in interest.

Chapter 12 Plan [etc.] - 15

## X.

## JURISDICTION

10.01. Property of the estate and property of the Debtor shall remain under the jurisdiction of the Court during the pendency of the Plan except as otherwise provided in the Plan. The Court shall have the same jurisdiction over Debtor, property of the Debtor, and the property of the estate during the pendency of the Plan as the Court had on the date the Voluntary Petition under Chapter 12 was filed.

CAPITAL FARMS, INC.

Date: 4/10/25   By: _____
SHAWN GILL, its
President