1  Steven M. Koch #222938
   **LAW OFFICE OF**
2  **STEVEN M. KOCH**
   1148 N. Chinowth Street
3  Visalia, CA 93291
   Telephone: (559) 740-7665
4  Facsimile: (559) 740-7667
   Email: smk@tularecountylaw.com
5
   Attorney for WILBUR-ELLIS
6

7                    UNITED STATES BANKRUPTCY COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9                           FRESNO DIVISION

10
   In re:                          |  Case No. 25-10074-A12
11                                  |
   CAPITAL FARMS, INC.,             |  Chapter 12
12                                  |
   Debtor.                          |  DCN: FW-18
13                                  |
                                    |  Date: September 4, 2025
14                                  |  Time: 10:30AM
                                    |  Crtrm: Dept. A
15                                  |        United States Courthouse
                                    |        519 19th Street
16                                  |        Bakersfield, CA
                                    |
17                                  |  Hon. Jennifer E. Niemann
18
              **EXHIBITS FOR OPPOSITION TO VALUE COLLATERAL**
19
20                        **INDEX OF EXHIBITS**
21
22       / / /
23       / / /
24       / / /
25 .     / / /
26       / / /

                                    1

         **EXHIBITS FOR OPPOSITION TO AMENDED CHAPTER 12 PLAN**

| Exhibit | Title | Page No. |
|---|---|---|
| C | Declaration of Shawn Gill in Support of Amended Plan | 174 - 178 |
| D | Declaration of Shawn Gill Filed in Fresno County Superior Court | 179 - 192 |
| E | Recorded Deed of Trust | 193 - 211 |

LAW OFFICE OF
STEVEN M. KOCH

**EXHIBITS FOR OPPOSITION TO AMENDED CHAPTER 12 PLAN**

# EXHIBIT

# C

4

1  FEAR WADDELL, P.C.
   Peter L. Fear, No. 207238
2  pfear@fearlaw.com
   Gabriel J. Waddell, No. 256289
3  gwaddell@fearlaw.com
   Peter A. Sauer, No. 255957
4  psauer@fearlaw.com
   7650 North Palm Avenue, Suite 101
5  Fresno, California 93711
   (559) 436-6575
6  (559) 436-6580 (fax)

7  Attorney for Capital Farms, Inc.,
     Debtors

8

9

10

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

11

| | |
|---|---|
| 12   In re: | Case No. 25-10074-A-12 |
| 13   CAPITAL FARMS, INC., | Chapter 12 |
| 14           Debtor(s). | D.C. No. FW-17 |

Date:     September 4, 2025
Time:    10:30 a.m.
Place:   Dept. A,
            United States Courthouse
            510 19th Street, Bakersfield, California
Judge:  Hon. Jennifer E. Niemann

**DECLARATION OF SUKHWANT S. GILL IN SUPPORT OF DEBTOR'S MOTION
TO CONFIRM CHAPTER 12 PLAN DATED JULY 29, 2025**

I, SUKHWANT S. GILL, declare as follows:

1.     I am the president of Capital Farms, Inc., the Debtor in this Chapter 12 case

("Debtor"). I have personal knowledge of the following facts and would be competent to testify

if called as a witness.

Declaration in Support of Motion to Confirm Chapter 12 Plan (etc.) - 1

2.　　　　Capital Farms, Inc., conducts farming operations and has done so for many years. Its primary source of income is monies received from its farming operations.

3.　　　　I have reviewed the Plan dated July 29, 2025, which provides for submission of the proceeds of the sales of crops and farming operations to the supervision and control of the trustee as is necessary for the funding of the Plan. As called for in the plan, Capital Farms will submit future income to the supervision and control of the Chapter 12 Trustee as is necessary for the execution of the plan.

4.　　　　The Plan further provides for allowed priority claims including administrative expenses such as fees owed to the Trustee and my attorney, which shall be paid before or at the time of each payment to creditors under the Plan.

5.　　　　The Plan also provides for equal treatment of claims in each class.

6.　　　　To the best of my knowledge, the Plan complies with the requirements of the Bankruptcy Code.

7.　　　　The Debtor owes no fees under Chapter 123 of Title 28 of the United States Code, and my Plan requires no fees to be paid prior to confirmation.

8.　　　　The Debtor has proposed the Plan in good faith, and have not proposed the Plan by any means forbidden by law.

9.　　　　I have not misrepresented any facts in the Plan on behalf of the Debtor , nor does the Debtor wish to manipulate the Bankruptcy Code.

10.　　　The Debtor will make annual payments to the Chapter 12 trustee as set forth in the Plan which will be used to pay the classes of claims in the Plan. This includes modified secured claims in Classes 6 and 7. Many of the secured claims will have their claims valued pursuant to Section 506(a), with the unsecured portion being included in Class 12. Class 11

Declaration In Support of Debtor's Motion to Confirm Chapter 12 Plan (etc.) - 2

priority claims will be paid in full, but after the higher priority claims have been paid. Class 12 claims will receive no distribution under the Plan.

11.    Included herewith as Exhibit A is a liquidation analysis that shows the estimated value of Debtor's assets. As can be seen from this analysis, if Debtor were to be liquidated I do not believe that there would be any funds available for payment to unsecured creditors and Class 11 priority claims would also receive no distribution. The Plan provides that Class 11 priority claims will be paid in full. Consequently, the Plan is a better option for creditors than liquidation.

12.    Rabo Agrifinance LLC ("Rabo"), which has filed claims 11 and 12 and is treated in Classes 6 and 7, has a lien secured by a blanket security interest as reflected in the UCC-1's attached to Rabo's proof of claim. These security interests give Rabo a higher priority lien position in Debtor's assets than any other secured creditor (except for the purchase money liens on a couple of Debtor's pieces of equipment, none of which are being modified by the Plan). As can be seen from the liquidation analysis at Exhibit A, the value of Debtor's assets is not sufficient to cover even the full amount owed to Rabo. However, Rabo's claims are also secured by real property owned by Sutter Land, LLC ("Sutter Land"), and Debtor leases that real property from Sutter Land, which property is necessary for Debtor's Chapter 12 Plan. Consequently, Debtor is not valuing the claim of Rabo pursuant to Section 506(a), but is treating the entirety of the claim as secured. However, the other claims asserting a blanket security interest in Debtor's assets are unsecured pursuant to Section 506(a) because the value of those assets is less than the amount owed to Rabo. For these reasons, Debtor will be bringing a motion to value Debtor's assets and to treat those claims as unsecured.

13.    Included herewith as Exhibit B is a budget that has been prepared by Scott Sackett, Debtor's Chief Restructuring Officer, in consultation with myself. I believe that this budget is a fair estimation of Debtor's anticipated future income and expenses. As can be seen

1    on the budget, Debtor should be able to make all of the payments required by the Plan. On Exhibit

2    B, I have included the assumptions that we used to project the income estimates. There has been

3    a recent drop in almond prices. We have taken this into account in our projections and have

4    attempted to be conservative with these projections.

5        I declare under penalty of perjury that the foregoing statements are true and correct and

6    that if called as a witness herein, I could and would competently testify thereto, and that this

7    declaration was executed on ___7-30 -25___, at ___Sacramento___ California.

8

9              SUKHWANT S. GILL

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Declaration In Support of Debtor's Motion to Confirm Chapter 12 Plan (etc.) - 4

# EXHIBIT

# D

E-FILED
2/25/2025 8:12 PM
Superior Court of California
County of Fresno
By: Sonia Nunez, Deputy

1    William L. Cowin, Esq. (Bar #065532)
    **Law Offices of William L. Cowin, APC**
2    2344 Tulare Street, Suite 300
    Fresno, California 93721
3    Telephone: (559) 445-1234
    Facsimile: (559) 445-0703
4

5        *Attorney for:* SUTTER LAND, UNITED FARM LLC, SUTTER ENTERPRISES, LLC;
    CAPITAL FARMS, LLC; BALJIT SINGH GILL, SUKHWANT SINGH GILL &
6    GURMEJ SINGH GILL

7

8           THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF FRESNO

10   RABO AGRIFINANCE, LLC, a Delaware       Case No. 24CECG05217
    limited liability company,
11
                        DECLARATION OF SUKHWANT
12            Plaintiff,           "SHAWN" GILL IN OPPOSITION TO
         v.                        RABO AGRIFINANCE LLC'S MOTION
13                         TO DISCHARGE AND REPLACE
    SUTTER LAND LLC, a California limited     RECEIVER
14   liability company; UNITED FARM LLC, a
    California limited liability company; SUTTER
15   ENTERPRISES, LLC, a California limited     DATE:    February 27, 2025
    liability; CAPITAL FARMS, INC., a         TIME:     3:39 p.m.
16   California corporation; BALJIT SINGH GILL,   DEPT:    501
    an individual; SUKHWANT SINGH GILL, an
17   individual; and GURMEJ SINGH GILL, an     TRIAL: Not set.
    individual,
18            Defendant.

19

20       I, SUKHWANT "SHAWN" GILL, do hereby declare:

21     1. I am one of the defendants in the above-captioned case and have authority to speak for

22   the various business entity defendants in relation to the alleged obligations to RABO

23   AGRIFINANCE, LLC, a Delaware corporation ("Rabo").

24     2. Specifically, the two orchards that are the subject of this case are known as:

25

DECLARATION OF SUKHWANT GILL ISO OPPOSITION TO MOTION TO DISCHARGE
AND REPLACE RECIEVER         - Page 1

a.  The Brawley Ranch (15555 S. Brawley Ave, Caruthers, CA 93609) owned by Sutter Land, LLC; and,

b.  The Brewer Ranch (located at the Corner of South Brewer Rd and Jackson Rd., Pleasant Grove, CA and is leased by Capital Farms, Inc.)

3.  BALJIT SINGH GILL ("Baljit"), SUKHWANT SINGH GILL aka "Shawn" Gill ("Shawn"), and GURMEJ SINGH GILL ("Gurmej") are members of the same family and are principals in Sutter, Capital, and United. Their involved in the case relates to alleged personal guarantees.

4.  RABO's loans included,

a.  Capital Farms Inc.:

i.  Development Loan 26586001 (Semi annual payment)

ii.  Operating Loan 22120998 (Monthly payment that is roughly $30,000 / month on total principal balance of $3,700,000)

b.  SUTTER LAND LLC:

i.  Original Development Loan 25926003 (Semi annual payment)

ii.  Real Estate Loan 25925001 (Semi Annual payment)

iii.  2nd Development Loan 22121094 ($1 M development Loan, monthly payment that is $7,400 /month)

5.  Defendant SUTTER LAND, LLC, a California limited liability company ("SUTTER") is a land holding company only and all farming is done by CAPITAL. SUTTER holds title to the Brawley Ranch (280 acres planted to almonds), the Natomas Ranch (158 acres planted to almonds), and the Sankey Ranch (238 acres planted to almonds) and is also purchasing the Baseline Ranch (157 acres planted to almonds); however, SUTTER leases all of the properties to CAPITAL FARMS, INC. ("CAPITAL"), which is the entity that is entitled to all crop proceeds.

DECLARATION OF SUKHWANT GILL ISO OPPOSITION TO MOTION TO DISCHARGE AND REPLACE RECIEVER        - Page 2

6.  CAPITAL separately owns and farms one ranch (Brewer Ranch; 315 acres planted to almonds) as well as farming under long-term leases all the properties owned by SUTTER. Those leases are consistent with the average productive life of almond orchards of twenty-five years except the Baseline Ranch lease that will be amended after escrow closes for a longer term.

7.  CAPITAL is currently in a Chapter 12 Bankruptcy reorganization and there is a stipulation requiring all crop proceeds to be paid directly to the secured lenders.

8.  SUTTER ENTERPRISES, LLC owns limited equipment including a harvester valued at about $180K, there is $88K debt against it, creating a threat of repossession if not transferred to CAPITAL where it can be used to farm the properties. Defendants are negotiating an agreement to transfer the equipment owned by SUTTER ENTERPRISES to CAPITAL.

9.  UNITED FARM LLC, a California limited liability company ("UNITED") is a farm management company operated by members of the Gill family. It does not own real property. Its involvement with the subject properties has primarily been as a farm management company implementing day-to-day cultural care of the subject almond orchards. The farm equipment previously owned by UNITED is in the process of being transferred to CAPITAL with the approval of creditors per stipulation.

10. As a part of the Bankruptcy Court filings, I executed the attached declaration in support of the appointment of Mr. Sackett as CRO which outlines the anticipated scope of his duties. **(SEE EXH. A)**

I declare, under penalty of perjury under the laws of the State of California, that the foregoing declaration is true and correct.  Executed on February 25, 2025 at Sacramento, California

SUKHWANT (SHAWN) GILL, Declarant

DECLARATION OF SUKHWANT GILL ISO OPPOSITION TO MOTION TO DISCHARGE AND REPLACE RECIEVER          - Page 3

# EXHIBIT A

4

1  FEAR WADDELL, P.C.
   Peter L. Fear, No. 207238
2  pfear@fearlaw.com
   Gabriel J. Waddell, No. 256289
3  gwaddell@fearlaw.com
   Peter A. Sauer, No. 255957
4  psauer@fearlaw.com
   7650 North Palm Avenue, Suite 101
5  Fresno, California 93711
   (559) 436-6575
6  (559) 436-6580 (fax)

7
   Attorney for CAPITAL FARMS, INC.
8  Debtor in Possession

9              UNITED STATES BANKRUPTCY COURT

10      EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

11
   In re:                          Case No. 25-10074-A-12
12
                                   Chapter 12
13
   CAPITAL FARMS, INC.,            D.C. No. FW-5
14
                                   Date:  March 6, 2025
15                                 Time:  10:30 a.m.
                                   Place: Dept. A, Courtroom 11, 5th Floor
16      Debtor and Debtor-in-Possession.    United States Courthouse
                                            2500 Tulare St., Fresno, California
17                                 Judge: Hon. Jennifer E. Niemann

18

19    **DECLARATION OF SHAWN GILL IN SUPPORT OF DEBTOR'S MOTION FOR
      ORDER AUTHORIZING EMPLOYMENT OF CHIEF RESTRUCTURING OFFICER
20                       PURSUANT TO 11 U.S.C. §363(b)**

21      I, SHAWN GILL, declare as follows:

22      1.    I am the president of Capital Farms, Inc., Debtor and Debtor-in-Possession in the

23   above-captioned bankruptcy matter. My full name is Sukhwant Singh Gill, but I usually go by

24   Shawn Gill.

                                   - 1 -

                              EXHIBIT A

2.     I make this Declaration in support of the Motion for Order Authorizing Employment of Chief Restructuring Officer. Unless otherwise indicated, all statements in this Declaration are based on my personal knowledge, my review of relevant personal documents, or my opinion.

3.     In the course of negotiations between Debtor and Debtor's secured lenders ("Lenders"), the Lenders have requested that Debtor employ a Chief Restructuring Officer ("CRO") to oversee certain aspects of Debtor's reorganization efforts. While I do not believe that a CRO is necessary, Debtor has agreed to the Lenders' request to hire a CRO and to employ Scott Sackett for that purpose.

4.     The duties of the CRO will include the following:

a.   Assist Debtor in preparing its budgets, forecasts, Monthly Operating Reports, and variance reports.

b.   Have access to all of the bank accounts of Debtor, and review and approve in advance all checks, wires, or cash withdrawals.

c.   Review and analyze all existing agreements with the Crop Processors, and determine whether any such agreements should be modified or new agreements entered into.

d.   Periodically review the Debtor's expenditures throughout each month to ascertain that they conform with the Budget, and submit a verification with each Monthly Operating Report that the expenditures for the past month did or did not conform with the Budget.

e.   Within two weeks of retention, report to the Lenders as to certain items details in a cash collateral stipulation.

Declaration in Support of Motion to Employ (etc.) - 2

f. Within sixty (60) calendar days of retention, audit the amount of almonds generated from the Debtor's ranches for 2023 and 2024, the proceeds and advances received, and the use of the proceeds and advances, whether such almonds were delivered in the name of the Debtor, United Farm LLC, or H & J Management.

g. Review all labor expenditure information including worker identity, hours worked, wages, and overhead charges.

h. Review chemical application formulations, amounts, costs, and timing.

i. Review the chemical applications that took place in 2024 and prior to my employment in 2025.

j. Provide on-site supervision of harvest operations, specifically including the loading of trailers and the generation of field tickets and the review of all hauling and hulling contracts and reports as well as all processor contracts.

k. Review any contracts for custom services.

l. Review all crop insurance policies, claims, and payouts.

m. Be available to Lenders from time to time to discuss inquiries from Lenders and answer questions regarding Cash Collateral use, budgeting, expenses, Monthly Operating Reports, variance reports, and forecasts.

5.      Included herewith as Exhibit A is the proposed employment agreement. As noted in the employment agreement, Mr. Sackett is requesting a retainer of $10,000.00 and in our most recently-filed cash collateral budget, we are asking for authorization to use $10,000.00 of cash collateral to fund this retainer.

Declaration in Support of Motion to Employ (etc.) - 3

1    I declare under penalty of perjury that the foregoing statements are true and correct and

2    that if called as a witness herein I could and would competently testify thereto, and that this

3    declaration was executed on 2-21-25 , at FRESNO , California.

4

5

6    SHAWN GILL

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Declaration in Support of Motion to Employ (etc.) - 4

## CHIEF RESTRUCTURING OFFICER SERVICES AGREEMENT

This agreement (the "Agreement") is entered into in conjunction with the Chapter 12 case pending in the United States Bankruptcy Court for the Eastern District of California, In re Capital Farms, Inc., Case No. 25-10074-A-12 between the Capital Farms, Inc. Bankruptcy Estate ("Capital Farms") and Fiduciary Management Technologies, Inc. ("FMT") for FMT to provide its President, Scott Sackett to serve as the Chief Restructuring Officer ("CRO").

Capital Farms agrees that Scott Sackett will provide services as CRO as specified in the Scope of Services approved and Ordered by the Bankruptcy Court. The Scope of Services is attached hereto. The engagement of FMT to perform the services shall be subject to the approval of the Bankruptcy Court and shall be substantially as provided in this Agreement as modified by the retention order approved by the Bankruptcy Court.

FMT's fees for services provided to Capital Farms pursuant to this agreement will be calculated and billed based upon the hourly rate of $300.00 for Scott Sackett. Additionally, services provided by FMT Agents (e.g., field agents, farming services providers, etc.) will be calculated and billed based upon the hourly rate of $175.00 and Services provided by FMT clerical staff on administrative matters (e.g., bookkeepers, secretaries, etc.) will be calculated and billed based upon the hourly rate of $75.00. Additionally, FMT will receive a monthly legal cost allowance not to exceed $2,500.00 for legal costs incurred to help FMT provide services under this Agreement (for the avoidance of doubt, if less than $2,500.00 is incurred in any month, the bankruptcy estate will only be billed for the actual costs incurred). The personnel assigned to the Capital Farms matter may confer among themselves about the matter, as required. When they do confer, each person will charge for the time expended, as long as the work done is reasonably necessary and not duplicative. Likewise, if more than one of the FMT personnel attends a meeting or other proceeding, each will charge for the time spent. Statements for services will provide a description of the services performed, the date they were performed, the time devoted to the Capital Farms matter, and the specific hourly rate of Mr. Sackett, the agent, or the clerk that performed the services on Capital Farms' behalf. Time is charged in minimum units of one tenth (.1) of an hour. Except for the expense items listed below, all costs and expenses will be charged at the established hourly rates.

Costs and expenses, in addition to the fees fixed by law or assessed by public agencies, include but are not limited to, overnight mail, messenger, and U.S. Postal rates (all of which will be invoiced at actual costs, without any volume-based discounts), photocopying and other reproduction costs (which will be invoiced at $0.20 per page), travel costs including parking (which will be invoiced at actual costs), and mileage (which will be invoiced at $0.70 per mile).

Upon the execution of this Agreement, and entry of an order by the Bankruptcy Court approving this Agreement under Section 363(b) of the Bankruptcy Code and/or any other applicable statute or rule (the "Approval Order"), Capital Farms shall pay a retainer of $10,000.00 which shall be retained and applied against FMT's final invoice. Any funds remaining on deposit after the conclusion of FMT's services shall be returned to Capital Farms, or as otherwise directed by the Court. FMT will send the Capital Farms periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. Upon transmittal of the invoice, FMT may (at its option) immediately draw upon the Initial Cash on Account (as replenished from time to time) in the amount of the invoice. Capital Farms agrees that invoices are due upon receipt, and will promptly pay the full invoice amount and replenish the Initial Cash on Account. FMT understands that its fees and costs will ultimately be subject to approval by the Bankruptcy Court, and any disallowed fees and costs may be subject to disgorgement. Capital Farms will not seek approval of any cash collateral budget that does not allow it to comply with the terms of this agreement absent an order of the Bankruptcy Court.

FMT's performance of the services may be dependent upon Capital Farms providing FMT with such information and assistance as we may reasonably require from time to time. Capital Farms personnel shall use reasonable skill, care and attention to ensure that all information FMT may reasonably require is provided on a timely basis and is accurate

-1-

## EXHIBIT A

and complete and relevant for the purpose for which it is required. Capital Farms shall also notify FMT if Capital Farms subsequently learns that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

In the event the Services provided by FMT involve prospective financial information, FMT's work will not constitute an examination or compilation, or apply agreed-upon procedures, nor shall such work product be prepared in accordance with standards established by the American Institute of Certified Public Accountants or Generally Accepted Accounting Principles, and FMT will express no assurance of any kind with respect to such work product or information contained therein. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. FMT will take no responsibility for the achievability of results or events projected or anticipated by Capital Farms.

Fiduciary Management Technologies and Scott Sackett will be named as additional insured with respect to any insurance policies obtained by Capital Farms and/or the bankruptcy estate.

Subject to any limitation required by the Bankruptcy Court, the Capital Farms agrees to indemnify and hold harmless FMT and its shareholders, directors, officers, managers, employees, contractors, agents and controlling persons (each, an "Indemnified Party") from and against any losses, claims, damages or expenses, or if same was or is or becomes a party to or witness or other participant in, or is threatened to be made a party to or witness or other participant in, any threatened, pending or completed action, suit, proceeding or alternative dispute resolution mechanism, or any hearing, inquiry or investigation, in each case by reason of (or arising in part out of) any event or occurrence related to this agreement or any predecessor agreement for services or the fact that any Indemnified Party is or was an agent, officer director, employee or fiduciary of Capital Farms, or by reason of any action or inaction on the part of any Indemnified Party while serving in such capacity (an "Indemnifiable Event") against expenses (including reasonable attorneys' fees and disbursements), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any Indemnifiable Event. The Indemnified Party shall promptly forward to the Capital Farms all written notifications and other matter communications regarding any claim that could trigger the Capital Farms' indemnification obligations under this Section. If the Capital Farms so elects or is requested by an Indemnified Party, Capital Farms will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the reasonable fees and disbursements of such counsel. In the event, however, such Indemnified Party is advised by counsel that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an Indemnified Party and the Capital Farms, and such Indemnified Party is advised by counsel that there may be legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Capital Farms, or if Capital Farms fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such Indemnified Party, in either case in a timely manner, then such Indemnified Party may employ separate counsel to represent or defend it in any such action or proceeding and the Capital Farms will pay the reasonable fees and disbursements of such counsel; provided, however, that Capital Farms will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for an Indemnified Party in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which Capital Farms assumes, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense. Capital Farms further agrees that the Capital Farms will not, without the prior written consent of the Indemnified Party (which consent shall not be unreasonably withheld or delayed), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not the Indemnified Party or any other Indemnified Party is an actual or potential party to such claim, action, suit or proceeding) unless (i) to the extent that such settlement, compromise or consent purports directly or indirectly to cover the Indemnified Party or any other Indemnified Party, such settlement, compromise or consent includes an unconditional release of the Indemnified Party and each other Indemnified Party from all liability arising out of such claim, action, suit or proceeding, or (ii) to the extent that such settlement, compromise or consent does not purport directly or indirectly to cover the Indemnified Party or any other Indemnified Party, Capital Farms

-2-

has given the Indemnified Party reasonable prior written notice thereof and used all reasonable efforts, after consultation with the Indemnified Party, to obtain an unconditional release of the other Indemnified Parties hereunder from all liability arising from all liability arising out of such claim, action, suit or proceeding. The Indemnified Party shall not enter into any closing agreement or final settlement that could trigger the Capital Farms indemnification obligations under this Section without the written consent of Capital Farms, which shall not unreasonably be withheld or delayed or conditioned. Capital Farms will not be liable for any settlement of any action, claim, suit or proceeding affected without Capital Farms' prior written consent, which consent shall not be unreasonably withheld or delayed or conditioned, but if settled with the consent of Capital Farms or if there be a final judgment for the plaintiff, Capital Farms agrees to indemnify and hold harmless the Indemnified Party from and against any loss or liability by reason of such settlement or judgment, as the case may be.

This Agreement may be modified by subsequent agreements of the parties only by an instrument in writing signed by all parties and approved by the Bankruptcy Court.

If a dispute arises out of or relating to any aspect of this Agreement between Capital Farms and FMT, the Bankruptcy Court having jurisdiction over Capital Farms' bankruptcy case shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning this Agreement.

Subject to approval of the Bankruptcy Court, this Agreement is terminable by Capital Farms or by FMT at any time upon the giving of thirty (30) days written notice.

Any notice required or permitted to be given under this Agreement must be given in writing and shall be deemed given (a) upon delivery, if delivered personally, (b) two business days following dispatch if sent by certified mail, postage prepaid, return receipt requested, or (c) the next business day if sent via email with a copy concurrently dispatched via commercial overnight courier that guarantees next day delivery and provides a receipt. All such notices are addressed as follows:

To Capital Farms, Inc.:

        Shawn Gill, President
        Capital Farms, Inc.
        5550 W. Spruce Ave., Ste. 107
        Fresno, CA 93722

        with a copy to

        Peter L. Fear
        Fear Waddell, P.C.
        7650 N. Palm Ave., Ste. 101
        Fresno, CA 93711
        pfear@fearlaw.com

To FMT:      C/O Scott Sackett
        President, Fiduciary Management Technologies, Inc.
        4030 South Land Park Drive, Suite C
        Sacramento, California 95822
        scott.sackett@efmt.com

        with a copy to

        Aaron J. Malo
        Sheppard Mullin Richter & Hampton LLP

-3-

650 Town Center Drive, 10th Floor
Costa Mesa, California 92626
amalo@sheppardmullin.com

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be signed by their duly authorized representatives.

Capital Farms, Inc.

Signature: _Shawn Gill_

Name: SHAWN GILL

Title: PRESIDENT

Date: 2-21-25

FIDUCIARY MANAGEMENT TECHNOLOGIES, INC.

Signature: _____

Name: Scott Sackett

Title: President

Date: _____

-4-

650 Town Center Drive, 10th Floor
Costa Mesa, California 92626
amalo@sheppardmullin.com

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be signed by their duly authorized representatives.

Capital Farms, Inc.

Signature: _____

Name: _____

Title: _____

Date: _____

FIDUCIARY MANAGEMENT TECHNOLOGIES, INC.

Signature: _____

Name: Scott Sackett

Title: President

Date: 2/21/2025

-4-

# EXHIBIT

# E

**FRESNO County Recorder**
**Paul Dictos, C.P.A.**
**DOC-**
**2014-0036967-00**
**Acct 3078-Chicago Title - Fresno**
**Wednesday, APR 02, 2014 15:36:26**
**Ttl Pd  $108.00      Rcpt # 0004083075**
**RGR/R4/3-18**

*Chicago Title*

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

RABOBANK, N.A.
2415 La Brucherie Road
Imperial, CA  92251
Attn:  Commercial Loan Administration Services

45045537 - BC

Space above this line for Recorder's Use

Sutter Land LLC_ETAL_2014 Development to Reterm_$325k
& Reterm_$3.6mln

Development Line of Credit: 402893-3
Term Loan: Assigned at conversion
Real Estate Term Loan: 402893-1

<u>DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING</u>

(Fresno County, California)

THIS DOCUMENT SERVES AS A FINANCING STATEMENT FILED AS A FIXTURE FILING UNDER SECTION 9-502 OF THE
CALIFORNIA UNIFORM COMMERCIAL CODE AND IS A "            MORTGAGE" WITHIN THE MEANING OF
SECTION 9-334(h) OF THE CALIFORNIA UNIFORM COMMERCIAL CODE

      This deed of trust is dated as of March 24, 2014.  It is by SUTTER LAND, LLC, a California limited liability company
("<u>Grantor</u>"), as trustor and debtor, to and in favor of RABOBANK, N.A., a national banking association, as trustee ("<u>Trustee</u>"),
whose address for purposes of this deed of trust is 45 E. River Park Place West, Suite 401, Fresno, CA 93720, for the benefit of
RABOBANK, N.A., a national banking association ("<u>Beneficiary</u>"), as beneficiary and secured party.

      Beneficiary has agreed to make up to $3,965,000.00 in loans to SUTTER LAND, LLC, a California limited liability
company ("<u>Sutter Land, LLC</u>"); UNITED FARM, LLC, a California limited liability company ("<u>United Farm, LLC</u>"); BALJIT S. GILL
("<u>Baljit S. Gill</u>"); SUKHWANT S. GILL ("<u>Sukhwant S. Gill</u>"); and SUTTER ENTERPRISES, LLC, a California limited liability
company ("<u>Sutter Enterprises, LLC</u>") (Sutter Land, LLC; United Farm, LLC; Baljit S. Gill; Sukhwant S. Gill; and Sutter
Enterprises, LLC are individually and collectively, "<u>Borrower</u>") under the terms and conditions of the Credit Agreement between
Borrower and Beneficiary dated as of the date of this deed of trust (the "<u>Credit Agreement</u>").  Each capitalized term used in this
deed of trust that is defined in the Credit Agreement and not defined in this deed of trust will have the meaning specified in the
Credit Agreement.  This deed of trust will be interpreted in accordance with the Drafting Conventions.

**ARTICLE 1 – GRANT**

      To secure repayment of the indebtedness evidenced by the Note (defined herein) and payment and performance of all
other Secured Obligations (defined herein), Grantor irrevocably and unconditionally grants, bargains, sells, and conveys to
Trustee, in trust, for the benefit of Beneficiary, WITH POWER OF SALE and right of entry and possession, all of Grantor's estate,
right, title and interest in and to the following, wherever located, whether now owned or hereafter acquired or arising, and, except
as indicated, whether constituting real estate or personal property (collectively, the "<u>Property</u>"):

      (a)     the real estate and any interest in the real estate located in Fresno County, California, and described in
<u>EXHIBIT A</u> (the "<u>Land</u>");

      (b)     all buildings, structures, improvements, fixtures, attachments, appliances, equipment, machinery and other
articles now or hereafter erected on, affixed or attached to, or located in or on the Land, including all watering and irrigation
apparatus, pumps, motors, generators, pipes, center pivot irrigators and sprinklers, windmills, and fences (the "<u>Improvements</u>");
and

      (c)     all easements, rights-of-way and rights appurtenant to the Land or used in connection with the Land or as a
means of access thereto ("<u>Easements</u>").

(d)      the ground water on, under, pumped from or otherwise available to the Property or any drainage, retention, ditch, canal, reservoir, or other water rights, whether as a result of overlying groundwater rights, contractual rights, or otherwise and whether riparian, appropriative, or otherwise; the right to remove or extract any such ground water including any permits, rights or licenses granted by any Governmental Authority and any rights granted or created by any easement, covenant, agreement or contract with any Person; and any rights to which the Property or Grantor is entitled with respect to surface water, whether such rights are appropriative, riparian, prescriptive or otherwise and whether or not pursuant to historical use, contractual agreement, permit or other governmental authorization; any water right, water allocation for water not yet delivered, distribution right, delivery right, any proscriptive, contractual, easement or other rights necessary or convenient to convey any water to the Property, water storage right, or other water-related entitlement appurtenant to or otherwise applicable to the Property by virtue of the Property being situated within the boundaries of any governmental water district irrigation district or other local agency or within the boundaries of any private water company, mutual water company, or other non-governmental entity and any shares, or any rights under such shares, of any private water company, mutual water company, or other non-governmental entity pursuant to which Grantor or the Property may receive water (collectively, "Water Rights")

(e)      all other tenements, hereditaments and appurtenances to the Land

(f)      minerals, oil, gas, and other hydrocarbon substances, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and other interests and estates in, under and on the Land and other oil, gas and mineral interests with which any of the foregoing interests or estates are pooled or unitized (the "Mineral Rights")

(g)      timber now or hereafter standing or cut

(h)      leases, subleases, licenses, occupancy agreements, concessions and other agreements, granting a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Property (collectively, the "Leases")

(i)      all utility contracts, maintenance agreements, management agreements, service contracts and other agreements directly related to the operation and maintenance of the Property

(j)      all bushes, groves, trees, plants, vines or other plantings, upon or under the Land ("Plantings") including all varieties of Plantings that produce fruit, nuts, or other crops in more than one crop year ("Permanent Crop Plantings")

(k)      any shares, or any rights under such shares, of any private water company, mutual water company, or other non-governmental entity pursuant to which Grantor or the Property may receive water (collectively, the "Water Stock") and any other certificated and uncertificated securities, securities entitlements, securities accounts and commodities accounts

(l)      all Permanent Crop Planting IP Rights (defined herein)

(m)      working drawings, instructional manuals, and rights in processes directly related to the operation of the Property

(n)      other tangible personal property of every kind and description, whether stored on the Land or elsewhere, including all goods, materials, supplies, tools, books, records, chattels, furniture, machinery and equipment or which is in all cases (i) directly related to the operation of the Property or acquired in connection with any construction or maintenance of the Land or the Improvements or (ii) affixed or installed, or to be affixed or installed, in any manner on the Land or the Improvements

(o)      all permits and licenses relating or pertaining to the use or enjoyment of the Property

(p)      proceeds of and any unearned premiums on any insurance policies covering the Property, including the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property (the "Insurance Claims")

(q)      all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Real Estate (the "Condemnation Awards")

(r)      all deposit accounts at Beneficiary and all other deposit accounts from which Grantor may from time to time authorize Beneficiary to debit payments due on the Secured Obligations, and all money or other personal property of Grantor in addition to the foregoing deposited with or otherwise in Beneficiary's or Trustee's possession

(s)      the right, in the name and on behalf of Grantor, upon notice to Grantor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Trustee or Beneficiary in the Property

Sutter Land LLC_ETAL_2014 Development to Reterm_$325k & Reterm_$3.6mln
        Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing
                                        2

                          Exhibits  -  Page 195 of 211

(t)    substitutions, replacements, additions, accessions and proceeds for or to any of the foregoing, and all books, records and files relating to any of the foregoing, including, without limitation, computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data

## ARTICLE 2 - ASSIGNMENT OF RENTS

**2.01    Assignment.** Grantor irrevocably and unconditionally assigns Beneficiary all rents and other benefits derived from the Leases, and all other issues, profits, royalties, bonuses, income and other proceeds of the Property, whether now due, past due or to become due, including all prepaid rents, security deposits and other supporting obligations (the "Rents"). Beneficiary may collect Rents with or without taking possession of the Property. Beneficiary, by its acceptance of this deed of trust does not assume any duty or obligation under the Leases.

**2.02    Grant of License.** Notwithstanding the provisions of Section 2.01, Beneficiary confers upon Grantor a license to collect and retain the Rents as they become due and payable, so long as there is no Event of Default (the "License"). If an Event of Default has occurred, Beneficiary may terminate the License without notice to or demand upon Grantor.

**2.03    Collection and Application of Rents.** Subject to the License granted to Grantor under Section 2.02, Beneficiary has the right, power and authority to collect any and all Rents. Beneficiary may apply all amounts received by it pursuant to this assignment to pay Secured Obligations, expenses of leasing, operating, maintaining and managing the Property, taxes, charges, claims, assessments, any other liens, and premiums for insurance, in such amounts and in such order as Beneficiary deems appropriate.

**2.04    Notice.** All lessees under any and all Leases are hereby irrevocably authorized and notified by Grantor to rely upon and to comply with (and are fully protected in so doing) any notice or demand by Beneficiary for the payment to Beneficiary of Rents, or for the performance of any of lessees' undertakings under the Leases, and lessees shall have no right or duty to inquire as to whether any Event of Default has actually occurred or is then existing hereunder.

**2.05    Proceeds.** Beneficiary may apply all amounts received by it pursuant to this assignment to pay any of the following in such amounts and in such order as Beneficiary deems appropriate: (a) any and all Secured Obligations; (b) all expenses of leasing, operating, maintaining and managing the Property, including without limitation, the salaries, fees, commissions and wages of a managing agent and such other employees, agents or independent contractors as Beneficiary deems necessary or desirable; (c) all taxes, charges, claims, assessments, any other liens, and premiums for all insurance Beneficiary deems necessary or desirable; (d) the cost of all alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Property.

## ARTICLE 3 – SECURITY AGREEMENT

**3.01    Grant of Security Interest.** Grantor grants to Beneficiary a security interest in and pledges and assigns to Beneficiary all of Grantor's right, title and interest in and to the Property, to the extent characterized as personal property (the "Personalty").

**3.02    Addresses of Debtor and Secured Party.** The address of Grantor adjacent to its signature below is the mailing address of Grantor as debtor under the UCC. The address for Trustee specified in the first paragraph of this deed of trust is the address for Trustee under the UCC as secured party under the UCC; and the address for Beneficiary specified in Article 9 is the address for Beneficiary as secured party under the UCC.

**3.03    Fixture Filing.** This deed of trust constitutes a financing statement filed as a fixture filing under the UCC, covering any Property which now is or later may become a fixture attached to the Land or any Improvement.

## ARTICLE 4 – SECURED OBLIGATIONS

**4.01    Secured Obligations.** Grantor makes the grant, conveyance, transfer and assignment above, makes the irrevocable and absolute assignment in Section 2.01, and grants the security interest under Section 3.01, to secure payment and performance of the following obligations (the "Secured Obligations") in any order of priority that Beneficiary may choose:

(a)    all Obligations (defined in the Credit Agreement), including (i) the Development Line of Credit Note dated as of the date of this deed of trust, from Borrower to Beneficiary in the original principal amount of $325,000.00(ii) the Term Loan Note dated as of the date of this deed of trust, from Borrower to Beneficiary in the original principal amount of $325,000.00(iii) the Real Estate Term Loan Note dated as of the date of this deed of trust, from Borrower to Beneficiary in the original principal

Sutter Land LLC_ETAL_2014 Development to Reterm_$325k & Reterm_$3.6mln
Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing
3

Exhibits  -  Page 196 of 211

amount of $3,640,000.00 (are herein collectively, the "Note") all other indebtedness, liabilities and obligations of Grantor to Beneficiary arising pursuant to any of the Loan Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several;

       (b)     all obligations of Grantor under this deed of trust;

       (c)     all future advances and other obligations that Grantor may agree to pay or perform (whether as principal, surety or guarantor) for the benefit of Beneficiary, when a writing evidences the parties' agreement that the advance or obligation be secured by this deed of trust; and

       (d)     any of the foregoing that arises after the filing of a petition by or against Grantor under an Insolvency Proceeding.

       **4.02**    **Future Secured Obligations.** The Secured Obligations include future advances made by Beneficiary, and for any purpose, and all other future Secured Obligations. Those future advances and other future Secured Obligations are secured to the same extent as if made or incurred on the date of the execution of this deed of trust, and have priority as to third persons with or without actual notice from the time this deed of trust is filed for record as provided by law. If this deed of trust secures a line of credit or there is a future advance, the total amount of indebtedness secured by this deed of trust may decrease or increase from time to time. Grantor shall not file for record any notice limiting the maximum amount secured by this deed of trust (a "Maximum Amount Notice"). A Maximum Amount Notice will be an Event of Default (defined herein). Nothing in this Section 4.02 will constitute a commitment to make additional or future advances which are not specified by the other terms of the Credit Agreement in any amount.

       **4.03**    **Notice of terms of Secured Obligation Documents.** All persons who have or acquire an interest in the Property will be deemed to have received notice of, and will be bound by, the terms of the Credit Agreement, the other Loan Documents, and each other agreement or instrument made or entered into in connection with each of the Secured Obligations (the Loan Documents and those other agreements or instruments, the "Secured Obligation Documents"). These terms include any provisions in the Secured Obligation Documents which permit borrowing, repayment and reborrowing, or which provide that the rate of interest on one or more of the Secured Obligations may vary from time to time.

       **4.04**    **Unsecured Obligations.** This deed of trust does not secure any obligation which is unsecured pursuant to the express terms of the Credit Agreement or any other document, agreement or instrument.

ARTICLE 5 – WARRANTY OF TITLE

       **5.01**    **Warranty of Title.** Grantor represents and warrants that Grantor lawfully possesses and holds fee simple title to all of the Land and the Improvements; that Grantor has the right, power and authority to grant, convey and assign the Property; and that the Property is unencumbered. Grantor especially agrees and declares that the separate estate of each of them, whether vested, contingent or in expectancy, is hereby conveyed and shall be bound for the payment and performance of the Secured Obligations.

       **5.02**    **Defense and Notice of Claims and Actions.** At Grantor's sole expense, Grantor shall protect, preserve and defend the Property and title to and right of possession of the Property, and the security of this deed of trust and the rights and powers of Beneficiary and Trustee created under it, against all adverse claims. Grantor must give Beneficiary and Trustee prompt notice in writing if any claim is asserted which does or could affect any of these matters, or if any action or proceeding is commenced which alleges or relates to any such claim.

       **5.03**    **Liens, Charges and Encumbrances**. Grantor shall immediately discharge any lien on the Property other than Permitted Encumbrances, which Beneficiary has not consented to in writing. Grantor must pay when due each obligation secured by or reducible to a lien, charge or encumbrance which now does or later may encumber or appear to encumber all or part of the Property or any interest in it, whether the lien, charge or encumbrance is or would be senior or subordinate to this deed of trust. "Permitted Encumbrances" shall mean those exceptions to Lender's policy of title insurance covering this deed of trust that Lender deems acceptable in its sole discretion.

       **5.04**    **Permanent Plantings.** All Permanent Crop Plantings are real estate and will remain a part of the Land. In addition to the provisions of this Article above, Grantor represents and warrants that the Permanent Crop Plantings are not subject to intellectual property rights under U.S. or foreign patent, copyright or trademark laws, the Plant Variety Protection Act or similar laws or subject to license from the holder of any such intellectual property rights (collectively "Permanent Crop Planting IP Rights"). To the extent the Land does contain or in the future is cultivated to grow any variety of Permanent Crop Plantings that

Sutter Land LLC_ETAL_2014 Development to Reterm_$325k & Reterm_$3.6mln
    Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing

4

Exhibits  -  Page 197 of 211

are subject to Permanent Crop Planting IP Rights, (a) Grantor represents and warrants that Grantor is the owner of such IP Rights free and clear of any claim, right, title, interest or lien of any other person; (b) Grantor shall notify Beneficiary in writing of the existence of any Permanent Crop Planting IP Rights and Grantor grants Beneficiary a security interest in and a lien upon all of Grantor's present and future rights, title and interests in, to and under Permanent Crop Planting IP Rights; all cash and non-cash proceeds and products of Permanent Crop Planting IP Rights; and all causes of action, past, present and future for infringement, misappropriation or dilution of, or unfair competition regarding any of Permanent Crop Planting IP Rights.

## ARTICLE 6 - REPRESENTATIONS

6.01     <u>Representations.</u>  Grantor represents to Beneficiary that:

(a)      the Property does not represent the proceeds of unlawful activity under any state, federal or foreign law;

(b)      the Property includes all property and rights which may be reasonably necessary or desirable to enable Grantor to use, enjoy and operate the Land and the Improvements for the present uses thereof;

(c)      none of the Land or Improvements is subject to any Lien, offset or claim except any easements and restrictions expressly listed on a schedule of exceptions to coverage in the final commitment for title insurance or pro forma policy of title insurance received by Beneficiary prior to the Closing and not objected to by Beneficiary that are shown in the policy of title insurance insuring the validity and priority of this deed of trust (those Liens, offsets or claims, if any, the "<u>Permitted Exceptions</u>");

(d)      Grantor owns the Personalty free and clear of any security interests, reservations of title or conditional sales contracts, and there is no presently valid financing statement affecting the Personalty on file in any public office;

(e)      Grantor has title to, or (in the case of leased property) valid leasehold interests in, all of their properties and assets, real and personal, including the properties and assets and leasehold interests reflected in the Financial Information (other than any properties or assets disposed of in the ordinary course of business);

(f)      the legal name of Grantor is as appears in the first paragraph of this agreement;

(g)      Grantor has not used any trade name, assumed name or other name except Grantor's name stated in the first paragraph of this agreement;

(h)      if Grantor is anything other than a natural Person, it has complied with all applicable laws concerning its organization, existence and the transaction of its business, and is in existence and good standing in its state of organization and each state in which it conducts its business;

(i)      the execution, delivery and performance by Grantor of this deed of trust is within the powers and authority of Grantor and has been duly authorized;

(j)      to Grantor's knowledge, this deed of trust does not conflict with any Applicable Law;

(k)      this deed of trust is a legal, valid and binding agreement of Grantor, enforceable against Grantor in accordance with its terms, and any instrument or agreement required hereunder, when executed and delivered, will be similarly legal, valid, binding and enforceable ;

(l)      there has been no Material Adverse Effect as to Grantor since the effective date the Financial Information was provided to Beneficiary;

(m)      there is no lawsuit, tax claim or other dispute pending or to Grantor's knowledge threatened against Grantor or the Property that, if determined adverse to Grantor, is reasonably likely to have a Material Adverse Effect;

(n)      Grantor is not the subject of any Judgment;

(o)      this deed of trust does not conflict with, nor is Grantor in default on any credit agreement, indenture, purchase agreement, guaranty, capital lease, or other investment, agreement, or arrangement presently in effect providing for or relating to extensions of credit in respect of which Grantor is in any manner directly or contingently obligated;

(p)      Grantor has filed all tax returns (federal, state, and local) required to be filed and has paid all taxes, assessments, and governmental charges and levies thereon, including interest and penalties;

Sutter Land LLC_ETAL_2014 Development to Reterm_$325k & Reterm_$3.6mln
      Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing
                                    5

                        Exhibits  -  Page 198 of 211

(q)        Grantor has complied with all current and future laws, regulations and ordinances or other requirements of any governmental authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or hazardous substances ("Environmental Laws");

(r)        Grantor has not received any notices of violations of any Applicable Laws; and Grantor is in compliance with all Applicable Laws;

(s)        there are no claims, actions, proceedings or investigations pending or threatened against Grantor or affecting the Property with respect to any violations of Applicable Laws;

(t)        Grantor's place of business, or its chief executive office, if it has more than one place of business, is located at the address specified below; and

(u)        unless otherwise disclosed to Beneficiary, Grantor is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986; and there is no Event of Default or event which, with notice or lapse of time would be an Event of Default.

## ARTICLE 7 – COVENANTS

**7.01**    <u>Performance of Secured Obligations</u>.  Grantor shall promptly pay and perform each Secured Obligation in accordance with its terms.

**7.02**    <u>Maintenance and Preservation of Property</u>.  Grantor shall:

(a)        immediately discharge any lien on the Property which Beneficiary has not consented to in writing, and shall also pay when due each obligation secured by or reducible to a lien, charge or encumbrance which now or hereafter encumbers or appears to encumber all or part of the Property, whether the lien, charge or encumbrance is or would be senior or subordinate to this deed of trust;

(b)        not alter, remove or demolish any portion of the Improvements, except as permitted or required by the Credit Agreement;

(c)        maintain (or cause to be maintained) all policies of insurance required under the Credit Agreement and pay (or cause payment of) all premiums for that insurance on or prior to the date when due;

(d)        promptly and completely repair and/or restore any portion of the Property which becomes damaged or destroyed, in a good and workmanlike manner in accordance with sound building practices, whether or not Grantor has received the proceeds of any Insurance Claim;

(e)        not commit or allow any waste of the Property, nor do or suffer to be done any act whereby the value of any part of the Property may be lessened;

(f)        not initiate or allow any change in any zoning or other land use classification which affects the Property or any part of it, except as permitted or required by the Credit Agreement;

(g)        if the Land is agricultural, keep the Property in good condition and repair; operate the Property, whether improved pastures, orchards, grazing, timber, or crop lands, in a good and husbandmanlike manner in accordance with accepted principles of sound agricultural and forestry practices; take all reasonable precautions to control wind and water erosion; fertilize improved pastures, if any, where necessary to maintain a good stand of desirable grasses; protect orchards and timber, if any, by reasonable precautions against loss or damage by fire including the maintenance of appropriate fire breaks; and neither to remove nor permit the removal of any timber, buildings, oil, gas, mineral, stone, rock, clay, fertilizer, gravel or top soil without the prior written consent of Beneficiary;

(h)        keep all Permanent Plantings cultivated, irrigated, fertilized, sprayed and fumigated, and shall replace all dead or unproductive trees, vines and other Permanent Plantings with new ones;

(i)        complete appropriation and all other requirements, if any, necessary to obtain the issuance of any license or water permit issued to Grantor, and take all other steps required or advisable for purposes of perfecting and maintaining in good status all other Water Rights;

Sutter Land LLC_ETAL_2014 Development to Reterm_$325k & Reterm_$3.6mln
      Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing
6

Exhibits  -  Page 199 of 211

      (j)        not bring or keep any article on the Property or cause or allow any condition to exist on it, if that could invalidate or would be prohibited by any insurance coverage required to be maintained by Grantor on the Property or any part of it under this deed of trust; and

      (k)        perform all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value and utility.

      **7.03**      **Compliance with Applicable Law**  Grantor shall not commit or allow any act upon or use of the Property which would violate any Applicable Law, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property.

      **7.04**      **Taxes and Assessments**.  Grantor shall pay (a) prior to delinquency all taxes, levies, charges and assessments imposed by Applicable Law or any public or quasi-public authority or utility company which are (or if not paid, may become) a lien on all or part of the Property or any interest in it, or which may cause any decrease in the value of the Property or any part of it (individually and collectively "Impositions"); (b) any and all intangible taxes and documentary stamp taxes determined at any time to be due on or as a result of the Secured Obligations, this deed of trust or any other Loan Documents, together with any and all interest and penalties thereon; and (c) taxes, levies, charges and assessments on Beneficiary's or Secured Parties' interest therein or upon this mortgage or the Secured Obligations (collectively, "Mortgage Taxes"); except that if the amount of Mortgage Taxes exceeds the Maximum Rate, Grantor will not be required to pay any such excess.  If after the date of this deed of trust, the State of California passes any law deducting from the value of Land for the purpose of taxation any lien thereon, or changing in any way the laws for the taxation of mortgages or debts secured by mortgage for state or local purposes, or the manner of the collection of any such taxes, so as to affect this deed of trust, then within 180 days after notice by Beneficiary to Grantor, Grantor shall pay all Secured Obligations.  Notwithstanding the foregoing provisions of this Section 7.04, Grantor may, at its expense, contest the validity or application of any Imposition by appropriate legal proceedings promptly initiated and conducted in good faith and with due diligence, provided that (a) Beneficiary is satisfied that neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, or lost as a result of such contest, and (b) Grantor shall have posted a bond or furnished such other security required from time to time by Beneficiary.

      **7.05**      **Damages and Insurance and Condemnation Proceeds**.  Beneficiary may, at its option, (a) in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on warranty, or for damage, injury or loss to all or part of the Property, and it may make any compromise or settlement of the action or proceeding; (b) participate in any action or proceeding relating to any Condemnation Award; and (c) join Grantor in adjusting any Insurance Claim.  All insurance proceeds, Condemnation Awards, and proceeds of any other claim based on warranty, or for damage, injury or loss to the Property which Grantor may receive or be entitled to must be paid to Beneficiary.  In each instance, Beneficiary may apply those proceeds first toward reimbursement of all of Beneficiary's costs and expenses of recovering the proceeds or Condemnation Award, including Legal Fees.  The balance shall, at Beneficiary's option, be applied to pay or Prepay (with any applicable Prepayment Consideration, if any) some or all of the Secured Obligations in such order and proportions as it may choose.  GRANTOR HEREBY SPECIFICALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ALL RIGHTS OF A PROPERTY OWNER GRANTED UNDER CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1265.225(A), WHICH PROVIDES FOR ALLOCATION OF CONDEMNATION PROCEEDS BETWEEN A PROPERTY OWNER AND A LIENHOLDER, AND ANY OTHER LAW OR SUCCESSOR STATUTE OF SIMILAR IMPORT.

      **7.06**      **Site Visits, Observation and Testing**.  Beneficiary and its agents and representatives may enter and visit the Property at any reasonable time for the purposes of observing it, performing appraisals or inspections, taking and removing soil or groundwater samples, and conducting tests on any part of it, as provided in the Credit Agreement, and otherwise to determine Grantor's compliance with this deed of trust.

      **7.07**      **Prohibited Transfers.**  Grantor agrees that a material factor in Beneficiary's decision to enter into the Secured Obligation Documents is the expertise, financial status and other characteristics of Grantor.  Grantor shall not make or permit any Prohibited Transfer.  Upon any Prohibited Transfer Beneficiary may declare all Secured Obligations to be due and payable immediately.  "Prohibited Transfer" means:  (a) any sale, contract to sell, conveyance, encumbrance, pledge, mortgage, lease of the Property not expressly permitted under this instrument or the other Secured Obligation Documents, or other transfer of all or any material part of the Property or any interest in it, including any transfer of Mineral Rights, Water Rights, or Water Stock, whether voluntary, involuntary, by operation of law or otherwise; (b) if Grantor is a corporation, any transfer or transfers of shares of the voting power or the direct or indirect beneficial ownership of Grantor; (c) if Grantor is a partnership, withdrawal or removal of any general partner, dissolution of the partnership under Applicable Law, or any transfer or transfers of the partnership interests; (d) if Grantor is a limited liability company, withdrawal or removal of any managing member, termination of

Sutter Land LLC_ETAL_2014 Development to Reterm_$325k & Reterm_$3.6mln
Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing
7

Exhibits  -  Page 200 of 211

the limited liability company or any transfer or transfers of the voting power or the ownership of the economic interest in the Grantor; or (e) if Grantor is a trust, withdrawal or removal of any trustee or revocation of the trust.

**7.08    Compensation and Reimbursement of Costs and Expenses.** Grantor shall pay (a) fees in the maximum amounts legally permitted, or reasonable fees as may be charged by Beneficiary or Trustee when the law provides no maximum limit, for any services that Beneficiary or Trustee may render in connection with this deed of trust, including Beneficiary's providing a statement or Trustee's rendering of services in connection with a reconveyance; (b) all of Beneficiary's or Trustee's costs and expenses which may be incurred in rendering any such services; and (c) all costs, expenses and other advances which may be incurred or made by Beneficiary or Trustee in any efforts to enforce any terms of this deed of trust or protect the Property, including any rights or remedies afforded to Beneficiary or Trustee under Section 8.02, whether any lawsuit is filed or not, including any bankruptcy or other voluntary or involuntary proceeding, in or out of court, for the adjustment of debtor-creditor relationships, or in defending any action or proceeding arising under or relating to this deed of trust, including attorneys' fees and other legal costs, costs of any Foreclosure Sale (defined herein) and any cost of evidence of title. If Beneficiary chooses to dispose of Property through more than one Foreclosure Sale, Grantor must pay all costs, expenses or other advances that may be incurred or made by Beneficiary or Trustee in each of those Foreclosure Sales.

**7.09    Indemnification.** GRANTOR SHALL INDEMNIFY TRUSTEE AND BENEFICIARY AGAINST AND SHALL HOLD THEM HARMLESS FROM ALL LOSSES, DAMAGES, LIABILITIES, CLAIMS, CAUSES OF ACTION, JUDGMENTS, COURT COSTS, ATTORNEYS' FEES AND OTHER LEGAL EXPENSES, COST OF EVIDENCE OF TITLE, COST OF EVIDENCE OF VALUE, AND OTHER COSTS AND EXPENSES WHICH EITHER MAY SUFFER OR INCUR: (A) IN PERFORMING ANY ACT REQUIRED OR PERMITTED BY THIS DEED OF TRUST OR ANY OF THE OTHER SECURED OBLIGATION DOCUMENTS OR BY LAW; (B) BECAUSE OF ANY FAILURE OF GRANTOR TO PAY OR PERFORM ANY OF THE SECURED OBLIGATIONS; OR (C) BECAUSE OF ANY ALLEGED OBLIGATION OF OR UNDERTAKING BY BENEFICIARY TO PERFORM OR DISCHARGE ANY OF THE REPRESENTATIONS, WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN ANY DOCUMENT RELATING TO THE PROPERTY (OTHER THAN SUCH WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN THE SECURED OBLIGATION DOCUMENTS). THIS AGREEMENT BY GRANTOR TO INDEMNIFY TRUSTEE AND BENEFICIARY SURVIVES THE RELEASE AND CANCELLATION OF ANY OR ALL OF THE SECURED OBLIGATIONS AND THE FULL OR PARTIAL RELEASE AND/OR RECONVEYANCE OF THIS DEED OF TRUST

**7.10    Payments Due Under This Deed Of Trust.** Grantor must pay all obligations to pay money arising under this deed of trust immediately upon demand by Trustee or Beneficiary. Each such obligation shall bear interest from the date the obligation arises at the Default Rate.

### ARTICLE 8 – EVENTS OF DEFAULT AND REMEDIES

**8.01    Events of Default.** The following each shall be an event of default under this deed of trust (an "Event of Default"):

(a)    an Event of Default under the Credit Agreement;

(b)    a Prohibited Transfer;

(c)    the Financial Information or any representation in this deed of trust is materially substantially incorrect or materially misleading;

(d)    the filing of any notice limiting the maximum amount secured by this deed of trust to a sum less than the maximum amount secured as specified herein, or if no such amount is specified, to any amount;

(e)    for more than 10 days after notice from Beneficiary, Grantor is in default under any term, covenant or condition of this deed of trust not previously described in this Section 8.01, which can be cured by the payment of a sum of money; or

(f)    for 30 days after notice from Beneficiary, Grantor is in default under any term, covenant or condition of this deed of trust not previously described in this Section 8.01; provided that if (i) it is reasonably certain that the default can be cured by Grantor within that 30 day period and (ii) Grantor has commenced curing that default within that 30 day period and thereafter diligently and expeditiously proceeds to cure that default, then that 30 day period shall be extended for so long as reasonably required by Grantor in the exercise of due diligence to cure that default, up to a maximum of 90 days after the notice to Grantor of the Event of Default.

**8.02**　　**Remedies**.　At any time after an Event of Default:

　　(a)　　**Acceleration**.　Beneficiary may declare any or all of the Secured Obligations to be due and payable immediately.

　　(b)　　**Receiver**.　Beneficiary may apply to any court of competent jurisdiction for, and obtain appointment of, a receiver for the Property.

　　(c)　　**Entry**.　Beneficiary, in person, by agent or by court- appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and may also do any and all other things in connection with those actions that Beneficiary may consider necessary and appropriate to protect the security of this deed of trust.　Such other things may include: taking and possessing all of Grantor's or the then owner's books and records; entering into, enforcing, modifying, or canceling leases on such terms and conditions as Beneficiary may consider proper; obtaining and evicting tenants; fixing or modifying rents; collecting and receiving any payment of money owing to Grantor; completing any unfinished construction; and/or contracting for and making repairs and alterations.　If Beneficiary so requests, Grantor will assemble all of the Property that has been removed from the Land and make all of it available to Beneficiary at the site of the Land.　GRANTOR HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS BENEFICIARY AS GRANTOR'S ATTORNEY-IN-FACT TO PERFORM SUCH ACTS AND EXECUTE SUCH DOCUMENTS AS BENEFICIARY CONSIDERS APPROPRIATE IN CONNECTION WITH TAKING THESE MEASURES, INCLUDING ENDORSEMENT OF GRANTOR'S NAME ON ANY INSTRUMENTS.　Regardless of any provision of this deed of trust or the other Secured Obligation Documents, Beneficiary shall not be considered to have accepted any property other than cash or immediately available funds in satisfaction of any obligation of Grantor to Beneficiary, unless Beneficiary has given express written notice of its election of that remedy in accordance with the UCC.

　　(d)　　**Cure; Protection of Security**.　Trustee or Beneficiary may cure any breach or default of Grantor, and if it chooses to do so in connection with any such cure, Trustee or Beneficiary may also enter the Property and/or do any and all other things which it considers necessary or appropriate to protect the security of this deed of trust.　Such other things may include: appearing in and/or defending any action or proceeding which purports to affect the security of, or the rights or powers of Trustee or Beneficiary under, this deed of trust; paying, purchasing, contesting or compromising any encumbrance, charge, lien or claim of lien which in Trustee's or Beneficiary's judgment is or may be senior in priority to this deed of trust, such judgment of Trustee or Beneficiary to be conclusive as among the parties to this deed of trust; obtaining insurance and/or paying any premiums or charges for insurance required to be carried under the Credit Agreement; otherwise caring for and protecting any and all of the Property; and/or employing counsel, accountants, contractors and other appropriate persons to assist Trustee or Beneficiary.　Trustee and Beneficiary may take any of the actions permitted under this Section 8.02 either with or without giving notice to any person.　Notwithstanding the foregoing, in no event will Trustee or Beneficiary have any obligation to take any of the actions set forth in this clause (d).

　　(e)　　**Uniform Commercial Code Remedies**.　Beneficiary may exercise any or all of the remedies granted to a secured party under the UCC.

　　(f)　　**Judicial Action**.　Beneficiary may bring an action in any court of competent jurisdiction to foreclose this deed of trust or to obtain specific enforcement of any of the covenants or agreements of this deed of trust.

　　(g)　　**Power of Sale**.　Under the power of sale granted under this deed of trust (the "Power of Sale") , Beneficiary has the discretionary right to cause some or all of the Property, including the Personalty, to be sold or otherwise disposed of in any combination and in any manner permitted by Applicable Law.

　　　　(i)　　**Sales of Personal Property**.　For purposes of the Power of Sale, Beneficiary may elect to treat as Personalty any Property which is intangible or which can be severed from the Land or Improvements without causing structural damage.　If it chooses to do so, Beneficiary may dispose of any Personalty separately from the sale of real property, in any manner permitted by Division 9 of the UCC, including any public or private sale, or in any manner permitted by any other applicable law.　Any proceeds of any such disposition shall not cure any Event of Default or reinstate any Secured Obligation for purposes of Section 2924c of the California Civil Code.

　　　　(ii)　　**Non-Judicial Foreclosure Sales of Real Property or Mixed Collateral**.　Beneficiary may choose to dispose of some or all of the Property which consists solely of real property in any manner then permitted by applicable law.　In its discretion, Beneficiary may also or alternatively choose to dispose of some or all of the Property, in any combination consisting of both real and personal property, together in one sale to be held in accordance with the law and procedures applicable to real property, as permitted by the UCC.　Grantor agrees that such a sale of Personalty together with real property constitutes a commercially reasonable sale of the personal property.　For purposes of the

Sutter Land LLC_ETAL_2014 Development to Reterm_$325k & Reterm_$3.6mln
Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing
9

Exhibits　-　Page 202 of 211

Power of Sale, either a sale of real property alone, or a sale of both real and personal property together in accordance with the UCC, will sometimes be referred to as a "Non-Judicial Foreclosure Sale." Before any Non-Judicial Foreclosure Sale, Beneficiary or Trustee must give such notice of default and election to sell as may then be required by law. When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Trustee must sell the property being sold at a public auction to be held at the time and place specified in the notice of sale. Neither Trustee nor Beneficiary have any obligation to make demand on Grantor before any Non-Judicial Foreclosure Sale. From time to time in accordance with then applicable law, Trustee may, and in any event at Beneficiary's request must, postpone any Non-Judicial Foreclosure Sale by public announcement at the time and place noticed for that sale. At any Non-Judicial Foreclosure Sale, Trustee must sell to the highest bidder at public auction for cash in lawful money of the United States. , Trustee must execute and deliver to the purchaser(s) a deed or deeds conveying the property being sold without any covenant or warranty whatsoever, express or implied. The recitals in any such deed of any matters or facts, including any facts bearing upon the regularity or validity of any Non-Judicial Foreclosure Sale, are conclusive proof of their truthfulness. Any such deed shall be conclusive against all persons as to the facts recited in it.

(h)     Single or Multiple Foreclosure Sales. If the Property consists of more than one lot, parcel or item of property, Beneficiary may: (i) Designate the order in which the lots, parcels and/or items shall be sold or disposed of or offered for sale or disposition; and (ii) Elect to dispose of the lots, parcels and/or items through a single consolidated sale or disposition to be held or made under the Power of Sale, or in connection with judicial proceedings, or by virtue of a judgment and decree of foreclosure and sale; or through two or more such sales or dispositions; or in any other manner Beneficiary may deem to be in its best interests (any such sale or disposition, a "Foreclosure Sale;" any two or more, "Foreclosure Sales"). If it chooses to have more than one Foreclosure Sale, Beneficiary at its option may cause the Foreclosure Sales to be held simultaneously or successively, on the same day, or on such different days and at such different times and in such order as it may deem to be in its best interests. No Non-Judicial Foreclosure Sale will terminate or affect the liens of this deed of trust on any part of the Property which has not been sold, until all of the Secured Obligations have been paid in full.

8.03     Credit Bids. At any Foreclosure Sale, any person, including Grantor, Trustee or Beneficiary, may bid for and acquire the Property or any part of it to the extent permitted by then applicable law. Instead of paying cash for that property, Beneficiary may settle the purchase price by crediting the sales price of the property against the following obligations:

(a)     First, the portion of the Secured Obligations attributable to the expenses of sale, costs of any action and any other sums for which Grantor is obligated to reimburse Trustee or Beneficiary; and

(b)     Second, all other Secured Obligations in any order and proportions as Beneficiary may choose.

8.04     Application of Foreclosure Sale Proceeds. Trustee and Beneficiary shall apply the proceeds of any Foreclosure Sale in the following manner:

(a)     First, to pay the portion of the Secured Obligations attributable to the expenses of sale, costs of any action and any other sums for which Grantor is obligated to reimburse Trustee or Beneficiary;

(b)     Second, to pay the portion of the Secured Obligations attributable to any sums expended or advanced by Trustee or Beneficiary under the terms of this deed of trust which then remain unpaid;

(c)     Third, to pay all other Secured Obligations in any order and proportions as Beneficiary may choose; and

(d)     Fourth, to remit the remainder, if any, to the person or persons entitled to it.

8.05     Application of Rents and Other Sums. Beneficiary must apply any and all Rents collected by it pursuant to the assignment provided in Article 2 of this deed of trust, and any and all other sums, other than the proceeds of a Foreclosure Sale, received or collected by Beneficiary, in the following manner:

(a)     First, to pay the portion of the Secured Obligations attributable to the costs and expenses of collection of such sums incurred by Trustee, Beneficiary or any receiver appointed in accordance with this deed of trust;

(b)     Second, to pay any and all Secured Obligations in any order and proportions as Beneficiary in its sole discretion may choose, and any and all expenses incident to the Property as provided in Section 2.05, and in such order and proportions as Beneficiary in its sole discretion may choose; and

(c)     Third, to remit the remainder, if any, to the person or persons entitled thereto.

Sutter Land LLC_ETAL_2014 Development to Reterm_$325k & Reterm_$3.6mln
Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing
10

Exhibits  -  Page 203 of 211

8.06    **No Liability for Funds Not Received.** Trustee and Beneficiary have no liability for any funds which it does not actually receive.

## ARTICLE 9 – NOTICES

All notices, approvals, consents, and other communications, under this deed of trust ("Notices") must be given in accordance with and will be subject to the terms and provisions of the Credit Agreement. Notices must be mailed or delivered, if to Grantor, to the address adjacent Grantor's signature below; if to Trustee, to the address in the first paragraph of this deed of trust; if to Beneficiary, to 45 E. River Park Place West, Suite 401, Fresno, CA 93720, Attention: Commercial Loan Administration Services; and in the case of any other Person, to the address designated by that Person in a notice to Grantor and Beneficiary.

## ARTICLE 10 – REQUEST FOR NOTICE

Grantor requests that a copy of any notice of default and any notice of sale be mailed to it at the address specified adjacent to its signature below.

## ARTICLE 11 – TRUSTEE AND BENEFICIARY

11.01    **Releases, Extensions, Modifications and Additional Security.** Without affecting the personal liability of any Person, including Grantor and Borrower, for the payment of the Secured Obligations or the lien of this deed of trust on the remainder of the Property for the unpaid amount of the Secured Obligations:

(a)    Beneficiary may from time to time and without notice: (i) release any person liable for payment of any Secured Obligation; (ii) extend the time for payment, or otherwise alter the terms of payment, of any Secured Obligation; (iii) accept additional real or personal property of any kind as security for any Secured Obligation, whether evidenced by deeds of trust, mortgages, security agreements or any other instruments of security; or (iv) alter, substitute or release any property securing the Secured Obligations.

11.02    **Authority of Beneficiary.** Without affecting the personal liability of any Person, including Grantor, for the payment of the Secured Obligations or the lien of this deed of trust on the remainder of the Property for the unpaid amount of the Secured Obligations, Trustee may perform any of the following acts when requested to do so by Beneficiary in writing: (a) consent to the making of any plat or map of the Property or any part of it; (b) join in granting any easement or creating any restriction affecting the Property; (c) join in any subordination or other agreement affecting this deed of trust or the lien of it; or (d) reconvey the Property or any part of it without any warranty.

11.03    **Exculpation of Trustee and Beneficiary.** None of Beneficiary, Trustee will be directly or indirectly liable to Grantor or any other person as a consequence of any of the following: (a) the exercise of or failure to exercise any rights, remedies or powers granted to it in this deed of trust; (b) any failure or refusal to perform or discharge any obligation or liability of Grantor under any agreement related to the Property or under this deed of trust; or (c) any loss sustained by Grantor or any third party resulting from any failure to lease the Property or from any other act or omission in managing the Property after an Event of Default, unless the loss is caused by the willful misconduct and bad faith of Beneficiary, Trustee, respectively. GRANTOR HEREBY EXPRESSLY WAIVES AND RELEASES ALL LIABILITY OF THE TYPES DESCRIBED ABOVE, AND AGREES THAT NO SUCH LIABILITY BE ASSERTED AGAINST OR IMPOSED UPON TRUSTEE OR BENEFICIARY.

11.04    **Substitution of Trustee.** Beneficiary may substitute a successor to any Trustee named in or acting under this deed of trust in any manner now or later to be provided at Applicable Law.

## ARTICLE 12 – RECONVEYANCE

When all Secured Obligations have been paid in full, Beneficiary has no obligation to make additional Loans and there are no further obligations under the Loan Documents, Trustee shall execute and deliver an instrument reconveying the Property, or so much of it as is then held under this deed of trust, without warranty to the person or persons legally entitled to it. In the reconveyance, the grantee may be described as "the person or persons legally entitled thereto," and the recitals of any matters or facts shall be conclusive proof of their truthfulness. Trustee and Beneficiary will have no duty to determine the rights of persons claiming to be rightful grantees of any reconveyance of the Property.

Sutter Land LLC_ETAL_2014 Development to Reterm_$325k & Reterm_$3.6mln
Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing
11

Exhibits - Page 204 of 211

## ARTICLE 13– MISCELLANEOUS

**13.01** <u>Additional Provisions</u>. The Secured Obligation Documents state all of the terms and conditions of the parties' agreement regarding the matters mentioned in or incidental to this deed of trust. The Secured Obligation Documents also grant further rights to Beneficiary and contain further agreements and affirmative and negative covenants by Grantor which apply to this deed of trust and to the Property.

**13.02** <u>Entire Agreement</u>. This deed of trust and the other Secured Obligation Documents collectively: (i) represent the sum of the understandings and agreements between Beneficiary and Grantor concerning this credit; (ii) replace any prior oral or written agreements between Beneficiary and Grantor concerning this credit; and (iii) are intended by Beneficiary and Grantor as the final, complete and exclusive statement of the terms agreed to by them. In the event of any conflict between this deed of trust and any other agreements required by this deed of trust, this deed of trust will prevail.

**13.03** <u>Other Acts</u>. Grantor shall cooperate with Beneficiary for the purposes of, and perform all acts which may be necessary or advisable to perfect any Lien provided for in this deed of trust or to carry out the intent of this agreement. Promptly (but in no event more than ten days) after request by Beneficiary, Grantor will execute, acknowledge and deliver any document which Beneficiary deems necessary or advisable for these purposes, and will, on demand, pay any expenses incurred by Beneficiary in the preparation, execution and filing of any such documents.

**13.04** <u>No Waiver or Cure</u>. Each waiver by Trustee or Beneficiary must be in writing, and no waiver is to be construed as a continuing waiver. No waiver is to be implied from any delay or failure by Trustee or Beneficiary to take action on account of any default of Grantor. Consent by Trustee or Beneficiary to any act or omission by Grantor must not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Trustee's or Beneficiary's consent to be obtained in any future or other instance. The exercise by Trustee or Beneficiary of any right or remedy under this deed of trust or the other Secured Obligation Documents or under Applicable Law, shall not: cure or waive a breach, Event of Default or notice of default under this deed of trust or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed and all other defaults under the Secured Obligation Documents, have been cured); or impair the security of this deed of trust; or prejudice Trustee, Beneficiary or any receiver appointed in accordance with this deed of trust, in the exercise of any right or remedy afforded any of them under this deed of trust; or be construed as an affirmation by Beneficiary of any tenancy, lease or option, or a subordination of the lien of this deed of trust.

**13.05** <u>Merger</u>. No merger shall occur as a result of Beneficiary's acquiring any other estate in or any other lien on the Property.

**13.06** <u>Waiver of Dower, Homestead, and Distributive Share</u>. Grantor relinquishes all right of dower and waives all right of homestead and distributive share in and to the Property. Grantor waives any right of exemption as to the Property.

**13.07** <u>Waiver of Marshalling</u>. Grantor waives all rights, legal and equitable, it may now or hereafter have to require marshalling of assets or to require upon foreclosure sales of assets in a particular order, including any rights provided by California Civil Code Sections 2899 and 3433, as those sections may be amended from time to time. Each successor and assign of Grantor, including any holder of a lien subordinate to this deed of trust, by acceptance of its interest or lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

**13.08** <u>Waiver of Certain Other Laws</u>. To the full extent Grantor may do so, Grantor agrees that Grantor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for appraisement, valuation, stay, extension or redemption, and Grantor, for Grantor, and its representatives, successors and assigns, and for any and all persons ever claiming any interest in the Property, to the extent permitted by law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, or notice of election to mature or declare due the whole of the Secured Obligations in the event of foreclosure of the lien created by this deed of trust.

**13.09** <u>Joint and Several Obligations</u>. If Grantor consists of more than one Person, each Grantor (a) acknowledges and undertakes, together with the other Grantors, joint and several liability for the indebtedness, liabilities and obligations of Grantor under this deed of trust; (b) acknowledges that this deed of trust is the independent and several obligation of each Grantor and may be enforced against each Grantor separately, whether or not enforcement of any right or remedy hereunder has been sought against any other Grantor; and (c) agrees that its liability hereunder and under any other Secured Obligation Document shall be absolute, unconditional, continuing and irrevocable. GRANTOR EXPRESSLY WAIVES ANY

Sutter Land LLC_ETAL_2014 Development to Reterm_$325k & Reterm_$3.6mln
    Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing

12

Exhibits  -  Page 205 of 211

REQUIREMENT THAT BENEFICIARY EXHAUST ANY RIGHT, POWER OR REMEDY AND PROCEED AGAINST THE OTHER GRANTORS UNDER THIS DEED OF TRUST, OR ANY OTHER SECURED OBLIGATION DOCUMENTS, OR AGAINST ANY OTHER PERSON UNDER ANY GUARANTY OF, OR SECURITY FOR, ANY OF THE SECURED OBLIGATIONS.

    **13.10**     **Authority to Bind Grantor.** If Grantor is comprised of multiple Persons, any Person comprising Grantor is hereby authorized to bind all parties comprising Grantor. Beneficiary may, at any time and without notice, waive any prior requirement that requests, authorizations, or other actions be taken only by a Designated Person.

    **13.11**     **Binding Effect; Successors and Assigns.** The Secured Obligation Documents shall inure to the benefit of and shall be binding upon the parties and their respective successors and assigns; provided, that Grantor shall not assign its rights or obligations hereunder without Beneficiary's consent. However, this section does not waive the provisions of Section 7.07; and Grantor shall not assign its rights or obligations hereunder without Beneficiary's consent. Beneficiary may transfer all or any portion of their rights under the Secured Obligation Documents to any other Person. Beneficiary may disclose to any actual or proposed transferee any information that Grantor has delivered to Beneficiary in connection with the negotiation of this deed of trust or pursuant to the Secured Obligation Documents; and Grantor shall cooperate fully with Beneficiary in providing that information to any actual or proposed transferee.

    **13.12**     **Rights and Remedies Cumulative.** All rights and remedies under this deed of trust and the Secured Obligation Documents are cumulative, and the exercise of any one or more of them does not constitute an election of remedies.

    **13.13**     **Severability.** Any provision of any Secured Obligation Document which is prohibited or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of that Secured Obligation Document or affecting the validity or enforceability of that provision in any other jurisdiction; except that if such provision relates to the payment of any monetary sum, then Beneficiary may, at its option, declare all Secured Obligations immediately due and payable.

    **13.14**     **Amendments in Writing.** This deed of trust may not be amended, changed, modified, altered or terminated without the prior written consent of Beneficiary.

    **13.15**     **Governing Law.** This deed of trust shall be governed and interpreted by applying the laws of the State of California (the "Governing Law State") without regard or reference to its conflict of laws principles.

    **13.16**     **JURISDICTION AND VENUE.** GRANTOR IRREVOCABLY AGREES THAT, AT THE OPTION OF BENEFICIARY, ALL ACTIONS, PROCEEDINGS OR COUNTERCLAIMS ARISING OUT OF OR RELATING TO THIS DEED OF TRUST OR ANY OTHER LOAN DOCUMENT WILL BE LITIGATED IN THE SUPERIOR COURT OF CALIFORNIA, FRESNO COUNTY, CALIFORNIA, OR THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA. GRANTOR IRREVOCABLY CONSENTS TO SERVICE, JURISDICTION, AND VENUE OF THOSE COURTS FOR ALL SUCH ACTIONS, PROCEEDINGS AND COUNTERCLAIMS AND WAIVES ANY OTHER VENUE TO WHICH IT MIGHT BE ENTITLED BY VIRTUE OF DOMICILE, HABITUAL RESIDENCE OR OTHERWISE.

    **13.17**     **Counterpart Execution.** This deed of trust may be executed in counterparts, each of which will be an original and all of which together are deemed one and the same instrument.

    **13.18**     **Necessary Action.** Beneficiary is authorized to execute any other documents or take any other actions necessary to effectuate this deed of trust and the consummation of the transactions contemplated herein.

    **13.19**     **Credit Report.** Beneficiary is authorized to order a credit report and verify all other credit information, including past and present loans and standard references from time to time to evaluate the creditworthiness of Grantor. Without limitation, a copy of the consent for release of information, general authorization or similar document on file with Beneficiary shall authorize third Persons to provide the information requested from time to time.

    **13.20**     **Time of the Essence.** Time is of the essence of this deed of trust.

Sutter Land LLC_ETAL_2014 Development to Reterm_$325k & Reterm_$3.6mln
Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing
13

Exhibits  -  Page 206 of 211

**13.21    No Construction Against Drafter.** Each Party has participated in negotiating and drafting this deed of trust, so if an ambiguity or a question of intent or interpretation arises, this deed of trust is to be construed as if the parties had drafted it jointly, as opposed to being construed against a Party because it was responsible for drafting one or more provisions of this deed of trust.

**13.22    INDEMNIFICATION.** GRANTOR SHALL DEFEND, INDEMNIFY AND HOLD TRUSTEE AND BENEFICIARY ITS OFFICERS, DIRECTORS, EMPLOYEES, PARTNERS, AGENTS AND ATTORNEYS (THE "INDEMNIFIED PERSONS") HARMLESS AGAINST ANY AND ALL LOSSES OF ANY KIND OR NATURE WHATSOEVER THAT MAY BE IMPOSED ON, INCURRED BY, OR ASSERTED AGAINST THE INDEMNIFIED PERSONS: (I) INCURRED AS A RESULT OF THE FAILURE BY GRANTOR TO BORROW THE AMOUNT SPECIFIED IN A LOAN REQUEST (INCLUDING ANY FAILURE RESULTING FROM THE FAILURE TO FULFILL THE APPLICABLE CONDITIONS PRECEDENT), INCLUDING ANY LOSS OF ANTICIPATED PROFITS AND LOSSES BY REASON OF THE LIQUIDATION OR REEMPLOYMENT OF DEPOSITS OR OTHER FUNDS ACQUIRED BY LENDER TO FUND THE LOAN; (II) AS A RESULT OF ITS ACTS OR OMISSIONS WHICH RESULT FROM COMMUNICATIONS GIVEN OR PURPORTED TO BE GIVEN, BY GRANTOR OR ANY DESIGNATED PERSON, WHICH ARE INTERRUPTED, WHICH ARE MISUNDERSTOOD, OR WHICH ARE IN FACT FROM UNAUTHORIZED PERSONS; (III) ARISING OUT OF OR RESULTING FROM THE VIOLATION BY GRANTOR OF ANY ENVIRONMENTAL LAW; (IV) RESULTING FROM THE RELIANCE BY TRUSTEE OR BENEFICIARY ON EACH NOTICE PURPORTEDLY GIVEN BY OR ON BEHALF OF GRANTOR; AND (V) ARISING OUT OF CLAIMS ASSERTED AGAINST THE INDEMNIFIED PERSONS AS A RESULT OF TRUSTEE OR BENEFICIARY BEING PARTY TO THIS DEED OF TRUST OR THE TRANSACTIONS CONSUMMATED PURSUANT TO THIS DEED OF TRUST; except that Grantor shall have no obligation to an Indemnified Person under this section with respect to Losses resulting from the gross negligence or willful misconduct of that Indemnified Person as determined by a court of competent jurisdiction. If and to the extent that an Indemnity is unenforceable for any reason, Grantor shall make the maximum contribution to the payment and satisfaction thereof which is permissible under Applicable Law. The provisions of all Indemnities shall survive the reconveyance of this deed of trust.

**13.23    WAIVER OF TRIAL BY JURY.** GRANTOR (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY IN ANY ACTION OR PROCEEDING FOR THE RESOLUTION OF ANY CONTROVERSY OR CLAIM THAT ARISES OUT OF OR RELATES TO: (I) THIS DEED OF TRUST; OR (II) ANY LOAN DOCUMENT, WHETHER ARISING IN CONTRACT, TORT OR BY STATUTE (INDIVIDUALLY AND COLLECTIVELY, A "CONTROVERSY OR CLAIM"); AND, (B) TO THE EXTENT PERMITTED BY APPLICABLE LAW, WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY CONTROVERSY OR CLAIM TO THE EXTENT SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THE PROVISIONS OF THIS SECTION ARE GIVEN KNOWINGLY AND VOLUNTARILY; AND ARE A MATERIAL INDUCEMENT FOR THE BENEFICIARY ENTERING INTO THE CREDIT AGREEMENT AND OTHER LOAN DOCUMENTS.

Grantor is signing and delivering this deed of trust effective as of the day and year first written above.

**GRANTOR**

Address for notices:

251Shrike Circle
Sacramento, California 95834
Attention: Baljit S. Gill

**SUTTER LAND, LLC,** a California limited liability company

By: _[signature]_
SUKHWANT S. GILL
Manager

Sutter Land LLC_ETAL_2014 Development to Reterm_$325k & Reterm_$3.6mln
Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing
14

Exhibits  -  Page 207 of 211

STATE OF CALIFORNIA _____)
                              ) ss
COUNTY OF _Sacramento_____)

On _3/.30/14_, 20__, before me, _L. Akers_____, a notary public, personally appeared _Sukhwant S. Gill_____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_L. Akers_____

L. AKERS
COMM. # 2030207
NOTARY PUBLIC - CALIFORNIA
SACRAMENTO COUNTY
COMM. EXPIRES JULY 19, 2017

Sutter Land LLC_ETAL_2014 Development to Reterm_$325k & Reterm_$3.6mln
Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing
15

## EXHIBIT A

Sutter Land LLC_ETAL_2014 Development to Reterm_$325k & Reterm_$3.6mln
DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

### Legal Description of Real Estate

Fresno County, California

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA OF THE COUNTY OF FRESNO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

\bPARCEL 1: Apn 041-231-38

The North half of the Northeast quarter of the Southwest quarter of Section 25, Township 16 South, Range 19 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the United States Government Township Plats.

Excepting therefrom an undivided one-half interest in and to all oil, gas and other hydrocarbons and minerals within or underlying said property, together with all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of said real property, and also the right to drill for, produce and use water from said real property in connection with drilling or mining operations thereon, as heretofore reserved of record.

Also Excepting therefrom an undivided one-fourth interest in and to all oil, gas and other hydrocarbons and minerals within or underlying said property, together with all easements and rights necessary or convenient for the production, storage and transportation thereof and the exploration and testing of said real property, and also the right to drill for, produce and use water from said real property in connection with drilling or mining operations thereon.

PARCEL 2:  Apn 041-231-37

The South half of the Northeast quarter of the Southwest quarter of Section 25, Township 16 South, Range 19 east, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the Official Plat thereof.

Excepting therefrom the East 25 feet of said premises, to the use for public road purposes, as provided in the Deed recorded in Book 486, Page 305 of Deeds.

Also Excepting therefrom an undivided one-half interest in all oil, gas and other hydrocarbon substances or minerals underlying said premises, as reserved in Deed from Helen L. Reeder, a widow, to Henry W. Bonesteel and Nellie M. Bonesteel, husband and wife, as joint tenants, dated February 2, 1945, recorded December 28, 1945, Document No. 62513.

And Also Excepting therefrom an undivided one-fourth interest in all oil, gas and minerals, as reserved in the Deed from Henry W. Bonesteel and Nellie M. Bonesteel, his wife,  to F. Marion Caudle and Phelia Caudle, husband and wife, as joint tenants, dated December 28, 1945 recorded January 30, 1946, Document No. 8902.

PARCEL 3: Apn 041-231-36

The North half of the Southeast quarter of the Southwest quarter of Section 25, Township 16 South, Range 19 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the Official Plat thereof.

Excepting therefrom an undivided one-half interest in all oil, gas and mineral rights, as reserved in the Deed dated November 5, 1956 and recorded November 19, 1956 in Book 3846 Page 290 of Official Records, Document No. 80639.

Also Excepting therefrom an undivided one-fourth interest in all oil, gas and mineral rights as excepted in the Deed from Harry R. Anderson and Lois Anderson, husband and wife, to Roy B. Swarens and Mrs. Dave J. Apple, as joint tenants, recorded December 2, 1959 as Document No. 84730.

PARCEL 4:

Sutter Land LLC_ETAL_2014 Development to Reterm_$325k & Reterm_$3.6mln
   deed of trust, Assignment of Rents, Security Agreement,
Fixture filing and Request for Notice

A non-exclusive easement for the purpose of laying, constructing, reconstructing, repairing, operating and maintaining an irrigation pipeline system over and across the following described property for the benefit of property described at Parcel 2 above and other property lying in the North half of the Northwest quarter of the Southwest quarter of said Section 25.

The East 20 feet of the South half of the Northwest quarter of the Southwest quarter and the North half of the Southwest quarter of the Southwest quarter of Section 25, Township 16 South, Range 19 East, Mount Diablo Base and Meridian, in the County of Fresno, State of California, according to the Official Plat thereof.

**PARCEL 5:** APN 041-231-08S (portion)

The East half of the Northeast quarter of Section 26, Township 16 South, Range 19 East, Mount Diablo Base and Meridian, according to the Official Plat thereof.

EXCEPTING THEREFROM one-half of all oil, gas, petroleum and mineral rights of whatsoever nature, kind or description, lying under the surface of said property;

ALSO EXCEPTING THEREFROM 25% of all oil, gas, petroleum and mineral rights, as reserved in the deed from Charles Pedreira and La Verne Pedreira, husband and wife, to John R. Adams, a married man and Eugene L. Adams, a married man and Reed L. Adams, a single man, each as to an undivided one-half interest, dated February 18, 1958, recorded March 12, 1958, in Book 4041 Page 75 of Official Records, Document No. 17352; being 25% of 100% of all oil, gas and minerals.

**PARCEL 6:** APN 041-231-08S (portion)

The Southeast quarter of the Northwest quarter and the Southwest quarter of the Northeast quarter of Section 26, Township 16 South, Range 19 East, Mount Diablo Base and Meridian, according to the Official Plat thereof;

EXCEPTING THEREFROM 50% of all minerals, oil, gas and other hydrocarbon substances in, on or underlying said real property, with right of ingress and egress to and from and over said property for the purpose of exploring for, producing and removing the same and subject to the rights and privileges as are necessary or convenient in exercising and enjoying said rights, as reserved in the deed dated March 27, 1956, from Wm. C. Crossland and Nell F. Crossland, husband and wife, to John R. Adams, Eugene L. Adams and Reed L. Adams, recorded March 27, 1956, in Book 3746 Page 130 of Official Records, Document No. 23059.

**PARCEL 7:** APN 041-370-08S

The East half of the Northeast quarter of the Southeast quarter of Section 26, Township 16 South, Range 19 East, Mount Diablo Base and Meridian, according to the Official Plat thereof.

EXCEPTING THEREFROM the East and North 20 feet thereof for public road purposes, as provided in the Deed recorded in Book 462, Page 280 of Deeds.

ALSO EXCEPTING THEREFROM an undivided one-half interest in and to all oil, gas and minerals in and under said property, as reserved in the Deed from E. C. Nystrem and Edith C. Nystrem, his wife, to Harry Judson Harvey and Lucille Harvey, husband and wife, as joint tenants, dated February 16, 1953, recorded April 14, 1953 in Book 3293, Page 527 of Official Records, Document No. 21600.

ALSO EXCEPTING THEREFROM an undivided one-half interest in and to all oil, gas and other hydrocarbons and minerals therein and thereunder, together with all easements and rights necessary or convenient for the transportation thereof and the exploration and testing of the said real property and also the right to drill for, produce and use water from the said real property in connection with its drilling or mining operations thereunder, as reserved in the Deed from W. H. Foreman, a single man, to Frank Reddell and Hazel Reddell, husband and wife, recorded October 22, 1971 in Book 5948, Page 325 of Official Records, Document No. 84636.

**PARCEL 8:** APN 041-370-07S

The West half of the Northeast quarter of the Southeast quarter and the East half of the East half of the Northwest quarter of the Southeast quarter of Section 26, Township 16 South, Range 19 East, Mount Diablo Base and Meridian, according to the Official Plat thereof.

EXCEPTING THEREFROM the North 20 feet.

ALSO EXCEPTING THEREFROM that portion lying Southwesterly of Liberty Canal.

ALSO EXCEPTING THEREFROM all oil, gas, minerals, and other hydrocarbon substances in and under said land, as reserved by Kirpal Singh Sidhu and Nasib Kaur Sidhu, husband and wife, by Deed recorded December 15, 1981 as Document No. 108872.

**PARCEL 9:** APN 041-231-39

The north half of the northwest quarter of the southwest quarter of Section 25, Township 16 South, Range 19 East, Mount Diablo Base and Meridian, according to the official plat thereof.

EXCEPTING THEREFROM all oil, gas, other hydrocarbon substances and minerals of any kind or character, in, on, or thereunder, as reserved in deeds of record.

APN: 041-231-08S, 041-231-36S, 041-231-37S, 041-231-38S, 041-231-39S, 041-370-07S, 041-370-08S