1

FEAR WADDELL, P.C.
Peter L. Fear, No. 207238
pfear@fearlaw.com
Gabriel J. Waddell, No. 256289
gwaddell@fearlaw.com
Peter A. Sauer, No. 255957
psauer@fearlaw.com
7650 North Palm Avenue, Suite 101
Fresno, California 93711
(559) 436-6575
(559) 436-6580 (fax)

Proposed Counsel for CAPITAL FARMS, INC.,
 Debtor in Possession

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In re: | Case No. 25-10074-A-12 |
| CAPITAL FARMS, INC., | Chapter 12 |
| | D.C. No. FW-17 |
| Debtor and Debtor-in-Possession. | Date:   February 4, 2026<br>Time:   9:30 a.m.<br>Place:  Dept. A, Courtroom 11, 5th Floor<br>          United States Courthouse<br>          2500 Tulare St., Fresno, California<br>Judge: Hon. Jennifer E. Niemann |

**EXHIBITS FOR DEBTOR'S STATUS REPORT REGARDING PLAN
CONFIRMATION AND MODIFIED PLAN**

**INDEX OF EXHIBITS**

| Exhibit | Title | Page No. |
|---|---|---|
| A | Redline of Debtor's Modified Plan Dated January 17, 2026 | 2 |
| B | Proposed Form of Order Confirming Debtor's Modified Plan Dated January 17, 2026 | 18 |

# EXHIBIT A

1  FEAR WADDELL, P.C.
   Peter L. Fear, No. 207238
2  pfear@fearlaw.com
   Gabriel J. Waddell, No. 256289
3  gwaddell@fearlaw.com
   Peter A. Sauer, No. 255957
4  psauer@fearlaw.com
   7650 North Palm Avenue, Suite 101
5  Fresno, California 93711
   (559) 436-6575
6  (559) 436-6580 (fax)

7
   Attorneys for CAPITAL FARMS, INC.
8    Debtor in Possession

9              UNITED STATES BANKRUPTCY COURT

10      EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

11
   In re:                              | Case No. 25-10074-A-12
12                                      |
                                        | Chapter 12
13 CAPITAL FARMS, INC.,                 |
                                        | D.C. No. FW-17
14                                      |
                                        | Date:   TO BE SET
15                                      | Time:   TO BE SET
                                        | Place:  Dept. A, Courtroom 11, 5th Floor
16        Debtor and Debtor-in-Possession. |        United States Courthouse
                                        |         2500 Tulare St., Fresno, California
17                                      | Judge: Hon. Jennifer E. Niemann

18   **CHAPTER 12 PLAN DATED ~~JULY 29~~JANUARY 17, 2025**

19        CAPITAL FARMS, INC., Debtor in Possession herein (hereinafter "Debtor"), submits

20 the following Chapter 12 Plan (the "Plan") pursuant to Section 1221 of the Bankruptcy Code:

21

22

23

24
                          Chapter 12 Plan - 1

# I.
# TERM

1.01.   **Family Farmer.** Debtor is a family farmers with regular income and is eligible to be a debtor under Chapter 12 of the Bankruptcy Code.

1.02.   **Plan Payments.** Debtor will submit future income to the supervision and control of the Trustee as is necessary for the execution of the Plan. Debtor will be able to make the payments under the Plan and comply with the provisions of the Plan. The amount to be received by the Trustee on a monthly basis shall be no less than the sum of (1) the monthly payments to be paid through the Chapter 12 Trustee for modified secured claims, (2) the pro rata amount needed to pay Class 1 administrative claims and Class 11 priority claims over the term of the Plan, and (3) an amount sufficient to pay the required Chapter 12 Trustee compensation on such payments. Debtor shall make monthly payments to the Chapter 12 Trustee no later than the 15th of each month, with the first such payment due in the month following the Effective Date.

1.03.   **Default.** If Debtor fails to comply with any plan provision, this shall constitute a default under the terms of the plan. The trustee or another interested party may bring a motion to dismiss or seek other appropriate relief upon a default.

1.04.   **Term of the Plan.** Pursuant to Section 1222(c), the Plan provides for payment over a three-year period.

# II.
# CLASSIFICATION AND TREATMENT OF CLAIMS

2.01.   **Class 1 Claims**: Claims entitled to treatment as administrative claims, including Debtor's attorney fees and consultant fees, and Chapter 12 Trustee fees, shall be Class 1 claims. Class 1 claims are claims arising after Debtor filed for relief under Chapter 12 and shall be paid in full. Any Class 1 claim that requires court approval shall be paid after court approval. Class 1

1   claims shall be paid by Debtor as an expense necessary for the operation of the business. Class

2   1 claims shall be paid through the Trustee, or directly by the Debtor, if the order approving the

3   Class 1 claim specifically so provides. Any Class 1 claim paid through the Trustee shall be

4   entitled to priority as provided in Section 507(a). All Class 1 claims shall be paid before there is

5   any distribution on account of the priority and unsecured claims described below. If Debtor pays

6   more than the minimum amount required by paragraph 1.02 above, the Trustee shall pay such

7   additional amount to Class 1 creditors until those claims are paid in full. Debtor estimates that

8   Debtor's attorney fees in this case will be approximately $200,000.00 above the pre-filing

9   retainer paid by Debtor, and that Debtor's consultant fees will be approximately $100,000.00.

10  Debtor's attorney fees and costs approved pursuant to 11 U.S.C. Sec. 330 but remaining unpaid

11  upon the completion of the case, if any, shall not be discharged and shall be paid directly by the

12  Debtor to counsel for the Debtor before and/or after entry of the discharge.

13                                  **SECURED CLAIMS**

14      2.01.   **In General.** Except as otherwise provided herein, Secured Claimants shall retain

15  all rights set forth in their notes, judgments, liens, and security documents and Debtor shall

16  perform all terms of their agreements and the judgments against them, including payment of real

17  property taxes and insurance on real property. Secured Claimants shall be allowed to exercise

18  all rights and remedies available to them under the law except as modified by the Plan and

19  operative provisions of the Bankruptcy Code. Each secured creditor shall retain its security

20  interest until the secured claim has been paid in full. Each secured creditor shall be required to

21  release its security interests or liens after its secured claim has been paid in full.

22          2.01.1. **Post-Chapter 12 Default.** All pre-Effective Date monetary defaults have

23              been considered in the Plan.  All such defaults shall be deemed cured on

24

Chapter 12 Plan [etc.] - 3

confirmation of the Plan.  A Secured Claimant may proceed in accordance with the terms of its security agreements, notes, judgments, liens, security documents, and applicable law without further order of the Court only if Debtor defaults in any payment due after the Chapter 12 case is closed, if the Chapter 12 case is dismissed, or if the Secured Claimant obtains relief from the automatic stay.

2.01.2. **Effect of Plan Completion and Discharge.** Upon entry of the discharge, (1) any lien securing a claim that is treated as an unsecured claim in this Plan shall be released, and (2) where a claim has been bifurcated into secured and unsecured portions through the bankruptcy case, the amount securing the lien shall be reduced to the principal balance of the secured claim. If necessary, Debtor may obtain a judgment or order stating that a lien is released or reduced for recording purposes.

2.01.3. **Untreated Secured Claims.** To the extent any secured claims are not classified by this Chapter 12 Plan, those claims are not modified by the Plan and Debtor shall be required to make the payments required by non-bankruptcy law to keep the collateral securing such secured claims.

2.01.4. **Determination of Section 506(b) Allowed Amounts.** If a claimholder treated as a secured creditor under this Plan seeks payment of post-petition interest, fees, costs or expenses pursuant to 11 U.S.C. § 506(b), the claimholder shall, within 30 days after the Effective Date, file and set for hearing a motion setting forth (1) a calculation of interest owed, and (2) an itemization of the fees, costs and expenses requested. If such motion

1   seeks payment of the claimholder's attorneys' fees, the motion shall

2   provide (1) an explanation of the reasonableness of the attorneys' fees

3   being sought, and (2) attorneys' billing statements, which may be redacted

4   as necessary to protect disclosure of attorney-client communications, so

5   long as the reasonableness of the fees may still be ascertained. At any

6   hearing on the motion, the claimholder shall have the burden of proof to

7   demonstrate the accuracy of the calculation of interest and the

8   reasonableness of any fees, costs and expenses requested. After such

9   hearing, the Court shall determine the allowed amount, which shall be

10  added to the principal amount of the claim and paid as provided below in

11  the treatment of the remainder of the claim. In lieu of the foregoing,

12  Debtor and the claimholder may stipulate to an amount that should be

13  added to the claim pursuant to Section 506(b). Debtor shall file such

14  stipulation with the Court, with service upon all parties receiving

15  electronic notice pursuant to F.R.B.P. 9036. No later than 30 days after

16  the stipulation has been filed, any party may file an objection to such a

17  stipulation and set the matter for hearing on the Court's regular Chapter

18  12 law and motion calendar on no less than 14 days' notice. If no party

19  has objected to such a stipulation within 30 days from the date it was filed

20  with the Court, the stipulation shall be treated as a final determination of

21  the amount of the claimholder's Section 506(b) claim. Claimholders shall

22  not be entitled to any additional claim pursuant to Section 506(b) unless

23  Debtor defaults in its performance under the Plan.

24

Chapter 12 Plan [etc.] - 5

1      2.02.  **Class 2 Claim – Wilbur-Ellis Company**

2      2.02.1. **Class Description**: The claim of Wilbur-Ellis Company secured by a

3  security agreement against farm assets of the Debtor, as described in Claim No. 4, shall be the

4  Class 2 Claim. According to Claim No. 4 filed herein, the amount of the Class 2 Claim is

5  approximately $338,992.89. ~~Debtor believes the entirety of this claim is unsecured pursuant to~~

6  ~~Section 506(a).~~ The amount of the Class 2 secured claim shall be determined pursuant to

7  stipulation between Debtor and the Class 2 creditor.

8      2.02.2. **Treatment**: ~~The Class 2 claim shall be treated as an unsecured claim in~~

9  ~~Class 12 below.~~ The Class 2 secured claim shall be treated as follows: (1) the claim shall not

10  bear interest until the first month following 36 months after the Effective Date, (2) beginning in

11  the first month following 36 months after the Effective Date, the claim shall bear interest at the

12  Till Rate, (3) beginning in the first month that is 36 months after the Effective Date, the claim

13  shall be paid in equal monthly installments of principal and interest fully amortized over 18

14  months, (4) the claim shall be paid in full no later than the date that is 18 months following the

15  first month after 36 months after the Effective Date, (5) the claimholder shall maintain its claim

16  and its liens until the claim has been paid in full, (6) once the claim has been paid in full, the

17  claimholder shall release its lien, as required by state law, and (7) because no payments on the

18  claim shall be made until after the Chapter 12 Trustee has completed making distributions during

19  the 36-month term of the Plan, Debtor shall make all payments described above directly to the

20  claimholder. As used in this paragraph, the "Till Rate" shall be equal to the Prime Rate most

21  recently published in the Wall Street Journal prior to the first month that is 36 months after the

22  Effective Date.

2.03.  **Class 3 Claim – Kubota Credit Corporation**: The claim of Kubota Credit Corporation secured by farm equipment of the Debtor, as described in Claim No. 5, shall be the Class 3 claim. According to Claim No. 5 filed herein, the amount of the Class 3 Claim is approximately $12,010.05. This claim shall be unmodified by the Plan.

2.04.  **Class 4 Claim – Farm Credit Services**: The claim of Farm Credit Services is secured by farm equipment of the Debtor as described in Claim No. 8 filed herein. According to Claim No. 8 filed herein, the amount of the Class 4 Claim is approximately $60,746.77. This creditor has obtained stay relief and the equipment has been surrendered to the creditor. Any deficiency balance shall be treated as an unsecured claim in Class 12 below.

2.05.  **Class 5 Claim – Tech Ag Financial Group, Inc.**

2.05.1. **Class Description**: The claim of Tech Ag Financial Group, Inc. secured by a security agreement against farm assets of the Debtor, as described in Claim No. 10, shall be the Class 5 claim. According to Claim No. 10 filed herein, the amount of the Class 5 Claim is approximately $412,896.81. ~~Debtor believes the entirety of this claim is unsecured pursuant to Section 506(a).~~ The amount of the Class 5 secured claim shall be determined pursuant to stipulation between Debtor and the Class 5 creditor.

2.05.2. **Treatment**: ~~The Class 5 claim shall be treated as an unsecured claim in Class 12 below.~~ The Class 5 secured claim shall be treated as follows: (1) the claim shall bear interest at the rate of one percent (1%) per annum beginning on the Effective Date of the Plan and continuing until the 37th month following the Effective Date, (2) the claim shall be paid in equal monthly installments of $4,600 per month, beginning in the month following the Effective Date and continuing until the 36th month following the Effective Date, (3) beginning in the first month following 36 months after the Effective Date, the claim shall bear interest at the Till Rate,

(4) beginning in the first month that is 36 months after the Effective Date, by the 15th of every month, the claim shall be paid in equal monthly installments of principal and interest fully amortized over 18 months, (5) the claim shall be paid in full no later than the date that is 18 months following the first month after 36 months after the Effective Date, (6) the claimholder shall maintain its claim and its liens until the claim has been paid in full, (7) once the claim has been paid in full, the claimholder shall release its lien, as required by state law, (8) the claim shall be paid through the Chapter 12 Trustee during the 36-month plan term, and then directly by the Debtor to the claimholder beginning in the 37th month following the Effective Date, and (9) all Plan payments shall be applied to interest first and then principal. As used in this paragraph, the "Till Rate" shall be equal to the Prime Rate most recently published in the Wall Street Journal prior to the first month that is 36 months after the Effective Date.

    2.06.  **Class 6 Claim – Rabo Agrifinance LLC**

        2.06.1. **Class Description**: The claim of Rabo Agrifinance LLC secured by a security agreement against farm assets of the Debtor, as described in Claim No. 11, shall be the Class 6 claim. According to Claim No. 11 filed herein, the amount of the Class 6 Claim is approximately $1,210,404.27.

        2.06.2. **Treatment**: The Class 6 claim shall be modified as follows: (1) the claim shall bear interest at the Till Rate after the Effective Date of the Plan, (2) the claim shall be paid in equal monthly installments of principal and interest fully amortized over 180 months, beginning in the month following the Effective Date, (3) the claim shall be paid in full no later than the date that is 42 months following the first month after the Effective Date, (4) the claimholder shall maintain its claim and its liens until the claim has been paid in full, (5) once the claim has been paid in full, the claimholder shall release its lien, as required by state law, and

1  (6) for the first 36 months after the Effective Date, the payment shall be paid through the Chapter

2  12 Trustee, after which Debtor shall make the payment directly to the claimholder. As used in

3  this paragraph, the "Till Rate" shall be equal to the Prime Rate most recently published in the

4  Wall Street Journal prior to the Effective Date, plus one (1) percentage point.

5       2.07. **Class 7 Claim – Rabo Agrifinance LLC**

6         2.07.1. **Class Description**: The claim of Rabo Agrifinance LLC secured by a

7  security agreement against farm assets of the Debtor, as described in Claim No. 12, shall be the

8  Class 7 claim. According to Claim No. 12 filed herein, the amount of the Class 7 claim is

9  approximately $4,201,524.97.

10         2.07.2. **Treatment**: The Class 7 claim shall be modified as follows: (1) the claim

11  shall bear interest at the Till Rate after the Effective Date of the Plan, (2) the claim shall be paid

12  in equal monthly installments of principal and interest fully amortized over 180 months,

13  beginning in the month following the Effective Date, (3) the claim shall be paid in full no later

14  than the date that is 42 months following the first month after the Effective Date, (4) the

15  claimholder shall maintain its claim and its liens until the claim has been paid in full, (5) once

16  the claim has been paid in full, the claimholder shall release its lien, as required by state law, and

17  (6) for the first 36 months after the Effective Date, the payment shall be paid through the Chapter

18  12 Trustee, after which Debtor shall make the payment directly to the claimholder. As used in

19  this paragraph, the "Till Rate" shall be equal to the Prime Rate most recently published in the

20  Wall Street Journal prior to the Effective Date, plus one (1) percentage point.

21         2.07.3. **Class 8 Claim – T M Duche Nut Co.** The claim of T M Duche Nut Co.

22  secured by crop proceeds of the Debtor, as described in Claim No. 13, shall be the Class 8 claim.

23

24

1  According to Claim No. 13 filed herein, the amount of the Class 8 Claim is approximately

2  $500,000.00. The Class 8 claim shall be unmodified by the Plan.

3  **PRIORITY AND GENERAL UNSECURED CLAIMS**

4      2.08.  **Class 11 Claims:** Allowed unsecured priority claims not otherwise described in

5  the Plan shall be Class 11 claims. Class 11 claimants shall be paid after Class 1 claims are paid

6  in full. Debtor estimates the amount of Class 11 claims to be $57,620.55. Class 11 claims will

7  be paid in full.

8      2.09.  **Class 12 Claims:** Allowed unsecured claims not otherwise described in the Plan

9  shall be Class 12 claims. Class 12 claims shall include claims that may be classified as unsecured

10  claims and discharged in this case pursuant to 11 U.S.C. § 1232, as well as the unsecured portion

11  of claims that are only partially secured pursuant to Section 506(a) and claims that are

12  determined to be unsecured because the security interest was a preferential transfer pursuant to

13  Section 547. Based upon claims filed in the case, Debtor estimates that Class 12 claims total

14  $278,823.51. Class 12 claims shall receive no distribution under the Plan.

15  **III.**

16  **PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

17      3.01.   Unless the Court approves new or modified leases taking the place of the leases

18  below, upon confirmation of the Plan, Debtor shall assume the following leases and executory

19  contracts:

20          3.01.1. Lease of Brewer Ranch (approx. 315 acres) with Brewer 315.

21          3.01.2. Lease of Brawley Ranch (approx. 277 acres) with Sutter Land, LLC.

22          3.01.3. Lease of Sankey Ranch (approx. 238 acres) with Sutter Land, LLC.

23          3.01.4. Lease of Natomas Ranch (approx. 158 acres) with Sutter Land, LLC.

24

Chapter 12 Plan [etc.] - 10

3.01.5. Lease of Jameson Ranch (approx. 152 acres) with Sukhwant Gill.

3.01.6. Sublease of Baseline Ranch (approx. 157 acres) with Sutter Land, LLC.

3.02.    All other pre-petition executory contracts or unexpired leases shall be deemed rejected.

## IV.

## MEANS FOR EXECUTING THE PLAN

4.01.    **Payments from Farming Operations:** Debtor will continue to operate the farming operation following confirmation of the Plan and will use their farming income to make payments as described above.

4.02.    **Balance of Proceeds Not Used For Plan Execution.** Other than the distributions listed in this Section, any money generated by Debtor, including cash collateral, may be used to meet other farm or operational needs of Debtor.

## V.

## CHAPTER 7 COMPARISON

5.01.    The value of property is to be distributed under the Plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of Debtor was liquidated under Chapter 7, Title 11, United States Code on the Effective Date. In a Chapter 7 liquidation, unsecured creditors would receive no distribution.

## VI.

## GOOD FAITH

6.01.    The Plan complies with Chapter 12 and all other provisions of the Bankruptcy Code.  Any fee, charge or amount required to be paid under Title 28 of the United States Code

or required by the Plan to be paid before confirmation has or will be paid before confirmation. The Plan has been proposed in good faith and not by any means forbidden by law.

## VII.

## CONFIRMATION PROCEDURE

7.01.    The Court may confirm the Plan and accept the allegations asserted herein if written objections to the Plan are not filed with the Court and served on counsel for Debtor and the Trustee. The hearing on confirmation shall be governed by the provisions of Section 1224.

## VIII.

## REVESTMENT OF PROPERTY IN DEBTOR

8.01.    The automatic stay shall be lifted upon entry of discharge unless otherwise provided by court order or the Plan. Property of the estate shall vest in accordance with applicable law if the case is converted to Chapter 7 or Chapter 11 of the Bankruptcy Code. Property of the estate shall vest in Debtor upon entry of discharge unless otherwise provided.

## IX.

## OTHER PROVISIONS

9.01.    Post Confirmation Financing:  Debtor shall not incur postpetition debt except in the ordinary course of business without Court approval.

9.02.    Chapter 12 Payments:  Debtor shall make all payments required under the Plan to the Chapter 12 Trustee, unless otherwise instructed in writing. Payments shall be made as stated in paragraph 1.02 of the Plan.

9.03.    Effect of Confirmation:  Except as provided for in Section 1228(a), the provisions of a Chapter 12 Plan confirmed by the Court bind Debtor and each creditor whether or not the claim of such creditor is provided for by the Plan and whether or not such creditor has objected to, accepted, or rejected the Plan. Property vesting in Debtor after the entry of a discharge shall

be free and clear of any claim or interest of any creditor provided for by the Plan except as provided in Section 1228(a), the Plan, or the Order Confirming the Plan.

9.04.   Modification of Chapter 12 Plan Before Confirmation:  Debtor may modify the Plan at any time before confirmation so long as the provisions of Section 1223 are satisfied.

9.05.   Modification of Chapter 12 Plan After Confirmation:  Modification of the Plan is permissible in accordance with Section 1229.

9.06.   Discharge:  Consistent with Section 1228, the Court shall enter a discharge of all debts provided for by the Plan after completion of the payments through the Chapter 12 Trustee required by the Plan.  Property of the estate shall vest in Debtor and the Court shall terminate the services of the Trustee after the discharge is entered.

9.07.   Cooperation and Reporting:  Debtor shall file all periodic reports required by the Court or the Trustee and shall file such reports in a timely manner.  Debtor shall file all federal, state, and local tax returns as required by law and shall deliver all completed federal, state, and local tax returns to the Trustee at least thirty days before the due date for all such returns. Debtor shall transmit any and all grower payment reports to the Trustee within 15 days of receipt by Debtor of the report. The Trustee may provide tax returns and grower payment reports to Secured Claimants who request such information. To the extent possible, Debtor shall add Trustee as a party to be notified in the event of cancellation on Debtor's liability insurance policies. The taxes owed by Debtor as shown by the tax returns shall be paid by Debtor on or before the date such taxes become due.  Debtor shall meet with the Trustee or his representatives as required by the Court or the Trustee.  All fees and costs charged by the Trustee, as allowed by law, shall be paid from the funds of the Chapter 12 estate.

9.08.   Claims:  Unsecured claimants and priority claimants, if any, must file a proof of claim in accordance with Fed. R. Bankr. P. 3002 to have an allowed claim except as provided by Fed. R. of Bankr. P. 3004 and 3005 or order of the Court. A claim which is timely filed shall

be allowed unless objection is made to it. It shall be the duty of Debtor to object to a disputed claim and the Trustee shall make distribution on account of such claim until an objection is filed. However, the Trustee may suspend payments to a creditor holding a disputed claim until the objection is heard and determined by the Court if Debtor file an objection to the claim within ninety days of the Effective Date.

Claims filed and allowed in the manner permitted by the Bankruptcy Code for post-petition debt incurred by Debtor may be paid in full without interest in such order and on such terms as the Trustee may determine.

9.09    Terminology:   Unless otherwise defined, all references to the following terms shall have the following meaning:

1.       **Debtor** shall mean the Chapter 12 petitioner.

2.       All references to a "**Section**" shall refer to applicable sections of Title 11 of the United States Code.

3.       **Bankruptcy Code** shall mean Title 11 of the United States Code.

4.       **Court** shall mean the United States Bankruptcy Court for the Eastern District of California.

5.       **Effective Date** is the first business day after fourteen days following entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

6.       **Trustee** shall mean the Chapter 12 Trustee appointed in connection with this proceeding.

9.10.    No Third Party Rights: Nothing contained in this Plan is intended to, nor shall it be construed or deemed to confer any rights, powers, or privileges on any person, firm,

1  partnership, corporation, limited liability company, or any other entity that is not a creditor in

2  this bankruptcy case, the Debtor, the standing Chapter 12 Trustee, or their successor in interest.

3                                            **X.**

4                                    **JURISDICTION**

5          10.01. Property of the estate and property of the Debtor shall remain under the

6  jurisdiction of the Court during the pendency of the Plan except as otherwise provided in the

7  Plan.  The Court shall have the same jurisdiction over Debtor, property of the Debtor, and the

8  property of the estate during the pendency of the Plan as the Court had on the date the Voluntary

9  Petition under Chapter 12 was filed.

10                                   CAPITAL FARMS, INC.

11 Date:_____          By:    _____

12                                       SHAWN GILL, its
                                          President

13

14

15

16

17

18

19

20

21

22

23

24

Chapter 12 Plan [etc.] - 15

# EXHIBIT B

4

Fear Waddell, P.C.
Peter L. Fear, No. 207238
pfear@fearlaw.com
Gabriel J. Waddell, No. 256289
gwaddell@fearlaw.com
Peter A. Sauer, 255957
psauer@fearlaw.com
7650 North Palm Avenue, Suite 101
Fresno, California 93711
(559) 436-6575
(559) 436-6580 (fax)

Attorneys for CAPITAL FARMS, INC.
  Debtor in Possession

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In re:<br><br><br>CAPITAL FARMS, INC.,<br><br><br><br><br>Debtor and Debtor-in-Possession. | Case No. 25-10074-A-12<br><br>Chapter 12<br><br>D.C. No. FW-17<br><br>Date:   February 4, 2026<br>Time:   9:30 a.m.<br>Place:  Dept. A, Courtroom 11, 5th Floor<br>            United States Courthouse<br>            2500 Tulare St., Fresno, California<br>Judge: Hon. Jennifer E. Niemann |

**ORDER CONFIRMING DEBTOR'S MODIFIED CHAPTER 12 PLAN DATED
JANUARY 17, 2026**

Debtor in Possession Capital Farms, Inc. ("Debtor") filed a Chapter 12 Plan dated July 29, 2025 (Dkt. No. 253), which was originally set for hearing on September 4, 2025. The Plan was opposed by Chapter 12 Trustee Lilian G. Tsang ("Trustee") (Dkt. No. 288), Creditor Wilbur-Ellis Company, LLC ("Wilbur-Ellis") (Dkt. No. 278), Creditor Farm Credit Services of America PCA d/b/a AgDirect ("AgDirect") (Dkt. No. 276), and Creditor Tech Ag Financial Group, Inc. ("Tech Ag") (Dkt. No. 296). Because there were issues of fact in dispute, the Court entered a

Order Confirming Chapter 12 Plan (etc.) - 1

Scheduling Order (the "Plan Scheduling Order") with regard to discovery and other procedural issues (Dkt. No. 314), which provided for multiple discovery deadlines and an Evidentiary Hearing Setting Conference on June 3, 2026 at 9:30 a.m. Since the entry of the Plan Scheduling Order, Debtor has resolved all of the objections to the Plan. These resolutions were documented by stipulations with the Trustee (Dkt. No. 327), Wilbur-Ellis (Dkt. No. 325), AgDirect (Dkt. No. 334), and Tech Ag (Dkt. No. 353). Debtor has filed a Modified Chapter 12 Plan dated January 17, 2026 (the "January 17 Plan"), incorporating all of these changes. The January 17 Plan does not negatively affect any other creditor.

Because all objections to the plan have now been resolved, the Court set a status conference on February 4, 2026, to consider the proposed modifications in the proposed January 17 Plan. Peter L. Fear appeared for Debtor. Lilian G. Tsang, the Chapter 12 Trustee appeared. Michael J. Gomez appeared for Tech Ag. Ferando Almaraz appeared for Rabo Agrifinance LLC. Other appearances were as noted on the record. The Court after consideration of the Plan as revised, the evidence submitted, and the records and files in this Chapter 12 case, has determined that the January 17 Plan may be confirmed.

IT IS HEREBY ORDERED

1.      Debtors' Modified Chapter 12 Plan Dated January 17, 2026 (the "Plan") is confirmed. A copy of the confirmed Plan is attached hereto as Exhibit A.

2.      Debtor shall continue to employ Scott Sackett as Chief Restructuring Officer of the Debtor so long as he is willing to serve or until Debtor's discharge is entered, whichever comes first. Debtor shall file monthly operating reports until Debtor's discharge is entered.

3.      Debtor shall pursue recovery of transfers to insiders of Debtor's Statement of Financial Affairs. Any funds recovered from such pursuit shall be paid to the Chapter 12 Trustee

Order Confirming Chapter 12 Plan (etc.) - 2

for payment to unsecured Class 1, 11, and 12 claims, in their relative order of priority. Within 6 months of the Effective Date, with respect to the transfers made to each insider, Debtor shall have either (1) commenced litigation to recover the transfer, (2) filed a motion seeking Bankruptcy Court approval of a settlement of claims related to such transfer, or (3) determined that the potential claim to recover such transfer is not worth pursuit and filed the notice described below. If the Debtor believes that any claim to recover a transfer is not worth pursuit, the Debtor shall provide all of the information and documentation as to the potential claim to the Chapter 12 Trustee. If the Chapter 12 Trustee agrees that the claim is not worth pursuit, Debtor and the Chapter 12 Trustee shall jointly file with the Court a Notice of Intention to Not Pursue Avoidable Transfer. This Notice shall provide the details regarding the potentially avoidable transfer and why the Debtor and the Trustee believe that pursuit of the transfer is not worth pursuit. The Notice shall also state that if any party objects to the Debtor not pursuing the transfer, that party may, within 28 days of filing of the Notice, file and serve an Objection to the Notice and set the hearing on that Objection to occur no earlier than 14 days after the filing of the Objection. In the Objection, the objecting party shall provide the reasons for the Objection and state the dollar amount the objecting party is willing to pay for assignment of the claims. At the hearing on the Objection, if Debtor and Trustee still believe that the claim is not worth pursuit, the claim may be assigned to the objecting party, provided that the Court determines that the amount to be paid

/////

/////

/////

/////

Order Confirming Chapter 12 Plan (etc.) - 3

1   for assignment of the claim is sufficient to make a reasonable distribution to creditors after

2   payment of administrative claims related to the assignment.

3

4   Date:_____

    _____
    UNITED STATES BANKRUPTCY JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Order Confirming Chapter 12 Plan (etc.) - 4